UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF

SUPPLEMENTAL MEMORANDUM CONCERNING THE ADMINISTRATIVE PROCESSING OF THE REQUEST FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE

In support of the AO 250 motion dated October 16, 2026. Submitted pro se by Gilmar Pereira da Silva Junior, Federal Bureau of Prisons Register No. 74744-511.

I. PURPOSE AND SCOPE OF THIS SUPPLEMENTAL MEMORANDUM

I submit this memorandum to demonstrate, through a concrete sequence of events, that the administration of Federal Correctional Complex Coleman Low, its Warden, the members of my Unit Team, and its dental department have failed to provide an effective and timely response to the serious medical circumstances underlying my request for compassionate release. I am not presenting a mere disagreement with an unfavorable decision. I am identifying specific administrative acts and omissions that interfered with the handling of my application while my medical condition remained unresolved.

This memorandum does not replace the principal medical grounds, proposed release plan, or other arguments presented in my AO 250 motion. Its separate purpose is to address administrative conduct, lack of transparency, retention of original documents and medical records, and the disconnect between the institution's knowledge of my clinical needs and its failure to arrange an effective solution.

II. THE INSTITUTION'S KNOWLEDGE OF MY MEDICAL CONDITION SINCE MY ARRIVAL

I arrived at Federal Correctional Complex Coleman Low on May 4, 2026. I remained in the Special Housing Unit for eight days, until May 12, 2026. During my custody, my therapeutic orthodontic appliance was damaged; I lost teeth and experienced continuing jaw pain, difficulty chewing, and complications related to a prior mandibular reconstruction and a titanium plate. These circumstances were not first disclosed when I sought compassionate release. They were known through my repeated requests for dental and medical assistance.

By May 15, 2026, there was a dental record concerning my ongoing orthodontic treatment. Further dental contacts and communications occurred on July 2 and July 6, 2026; I submitted an administrative remedy on July 20, 2026; there was another dental contact on July 21, 2026; and I submitted a dental sick-call request on July 30, 2026. I continued seeking assistance during August 2026. This repeated contact matters because the institution had continuing notice of my condition and repeated opportunities to address it.

Dr. Gina, a dentist in the Coleman Low dental department, personally examined me and obtained a panoramic dental radiograph, or Panorex. Despite this clinical assessment, a retained tooth fragment remains in my gum, causing discomfort and bad breath, and the necessary treatment has not been completed. The dental department also confirmed in writing that it does not have the specialist or specialized treatment necessary for my condition. The institution therefore knew both the nature of my need and the limits of the treatment available inside the facility.

III. EARLIER REQUESTS AND MY FOURTH URGENT WRITTEN COMMUNICATION TO THE WARDEN ON AUGUST 16, 2026

Before submitting the complete compassionate-release application, I made repeated requests for medical assistance and administrative intervention. On August 16, 2026, I directed a fourth urgent written communication to the Warden through the institutional inmate-to-staff request process. I identified three earlier requests that had not resulted in a satisfactory response, described the deterioration of my health, and sought action in light of the lack of appropriate treatment.

My August 16, 2026 communication was not a general inquiry about how to file paperwork. It identified the medical problem, its urgency, the failure of prior requests to produce relief, and the institutional intervention I was seeking. From that point, the Warden's office had notice that I was pursuing compassionate-release review for medical reasons. Subsequent internal routing cannot erase that earlier communication or its substance.

IV.. PERSONAL DELIVERY OF THE COMPLETE APPLICATION TO CAPTAIN S. XIMENES AT THE WARDEN'S OFFICE ON AUGUST 28, 2026

On August 28, 2026, at approximately 3:00 p.m., I went to the Warden's office and personally delivered my formal Reduction in Sentence / Compassionate Release application. Because the Warden was absent, Captain S. Ximenes, the officer present at the office, accepted and read the materials and stated that he would forward them to the Warden.. The submission included my signed and dated application and the supporting materials I had assembled for review.

After this delivery, the issue was no longer whether I had taken steps to submit my request. I had physically delivered the application to the Warden's office through an institutional officer. The movement of those papers among the Captain, the Warden, and the Unit Team was within the institution's control. The administration should not disregard the actual date of delivery merely because its own internal processing occurred later, without accounting for the intervening period.

---

I also used the institutional messaging system to request preservation of the records, confirmation of receipt, and identification of the actual processing date. These communications were deliberate efforts to establish a reliable account of what happened to my application.

V. THE AUGUST 31, 2026 INSTITUTIONAL RESPONSE AND THE UNEXPLAINED REFERRAL TO THE UNIT TEAM

On August 31, 2026, at approximately 8:00 a.m., another incarcerated person delivered to me an institutional response sheet associated with my request, directing me toward the Unit Team process. This occurred after Captain S. Ximenes had accepted and read my application at the Warden's office on August 28, 2026. The response did not identify where the previously submitted papers were, who had custody of them, whether the Warden had reviewed them, or why I was being sent through another administrative channel.

The Unit Team may properly assist with collecting information and routing a request. But telling me to contact another office did not answer what had happened to the application already received at the Warden's office. The requirement of prompt consideration of medically based compassionate-release requests is not satisfied by unexplained referrals that leave the applicant unable to determine whether his submission is being processed.

VI. MY WRITTEN REQUEST TO CASE MANAGER T. CHIN ON SEPTEMBER 2, 2026, AND ITS RETURN ON SEPTEMBER 30, 2026

On September 2, 2026, I submitted a further written request to Case Manager T. Chin, a member of the Unit Team responsible for my housing unit. I sought concrete information about the processing of my compassionate-release application, including confirmation of its status and the relevant receipt date. The request was not returned to me until September 30, 2026, almost four weeks later. During that interval, I remained without a meaningful account of how the application had moved through the institution.

Case Manager T. Chin also did not provide the date on which the Warden received my application, invoking confidentiality. That response prevented me from obtaining a basic administrative fact directly relevant to my access to judicial review. A date of receipt is not a clinical diagnosis or private information about another person. It concerns the institution's handling of my own application.

VII. THE SEPTEMBER 3, 2026 ADMINISTRATIVE DATE DOES NOT ERASE MY EARLIER SUBMISSIONS

The Warden's subsequent denial identifies September 3, 2026 as the date of receipt of my request. Yet I had already submitted my urgent communication to the Warden on August 16, 2026 and physically delivered the formal application to Captain S. Ximenes at the Warden's office on August 28, 2026. These are separate, concrete events. The institution's later recorded date does not explain what happened between delivery and entry into its administrative process.

Federal law allows a prisoner to seek judicial consideration of compassionate release after fully exhausting administrative appeals or after 30 days have elapsed from the Warden's receipt of the request, whichever occurs first. For that reason, the date and manner of receipt matter. The institution controlled the routing and recordkeeping of my papers; its records should account for the discrepancy rather than placing the consequences of unexplained internal delay on me.

VIII. WARDEN C. C. RHODES'S DENIAL SIGNED OCTOBER 6, 2026 AND DELIVERED OCTOBER 7, 2026

Warden C. C. Rhodes signed the institutional denial on October 6, 2026. Case Manager T. Chin delivered it to me on October 7, 2026. The denial states that the application was received on September 3, 2026 and addresses my circumstances in a manner that does not meaningfully resolve the specialized maxillofacial needs I had placed before the institution.

The denial fails to engage adequately with the central facts of my application: prior mandibular reconstruction, a titanium plate, damage to a therapeutic orthodontic appliance, tooth loss, persistent pain, difficulty chewing, a retained dental fragment, and the absence of the specialist treatment needed to address those problems. A response that does not confront these combined circumstances does not provide a meaningful explanation of how the institution expects my condition to be treated.

The Warden was responsible for prompt review and a written explanation of a denial. Describing a complex maxillofacial condition in generalized terms while failing to address the institution's admitted lack of specialized treatment leaves the essential medical question unanswered: what actual treatment will be provided, by whom, and when?

IX. PROMPT AND EXPEDITED PROCESSING OF MEDICALLY BASED REQUESTS

The federal administrative framework governing compassionate release requires prompt review by the Warden and expedited handling of requests based on medical circumstances. These requirements are significant because delay can aggravate an untreated condition. In my case, the interval between the urgent communications, physical delivery, internal routing, and written denial occurred while my pain and functional limitations continued.

The institution has not resolved my medical situation. Federal Correctional Complex Coleman Low has not arranged an effective solution for the specialized treatment I require. This is not merely a complaint about the tone of an administrative response. The practical outcome is that I remain in custody with an acknowledged need for care that the facility's dental department cannot provide.

X. FAILURE TO RETURN MY ORIGINAL APPLICATION MATERIALS AND COMPLETE MEDICAL RECORDS

The institution did not return the original documents included in my Reduction in Sentence / Compassionate Release application, or the original supporting materials submitted with it.. I retain copies of some of those papers, which is why I am able to submit copies to the Court. Possession of copies does not mean that the originals were returned. In addition, my medical and dental records have not been returned or made fully available to me, and I do not possess copies of all of those records.

This withholding has impaired my ability to determine precisely what was reviewed, verify the completeness of the administrative file, and present the Court with the complete clinical history. The institution possesses the original submission, the internal routing information, and the underlying medical records. Its control of those materials must not obscure the actual history of my requests or prevent meaningful consideration of the medical circumstances.

---

XI. THE DENTAL DEPARTMENT'S LACK OF SPECIALIZED CAPABILITY AND FAILURE TO PROVIDE AN EFFECTIVE REMEDY

The Coleman Low dental department has no specialist available to treat my case and does not offer the specialized treatment I need. The dental department itself confirmed that limitation in writing. Despite that acknowledgment, the institution has not secured an effective resolution of my condition. Examination, imaging, and written communications have not produced the necessary specialized care.

The treatment I need is not elective cosmetic dentistry. My orthodontic appliance serves a therapeutic purpose related to a preexisting maxillofacial condition. Damage to that appliance, tooth loss, ongoing jaw pain, impaired chewing, a retained tooth fragment, and the history of mandibular reconstruction must be considered together. The institution cannot adequately address these circumstances by treating each symptom as an isolated routine dental complaint.

XII.. REPEATED ADMINISTRATIVE REMEDIES DID NOT PRODUCE TREATMENT OR A SUBSTANTIVE SOLUTION

I also used the formal administrative remedy process to seek assistance and document failures in care. I submitted an administrative remedy on July 20, 2026; it was rejected on August 17, 2026; I resubmitted it on August 18, 2026; and I received a response dated September 10, 2026, associated with Remedy No. 1289925-F1. These steps occurred alongside my requests for dental care and my efforts to obtain compassionate-release consideration.

Instead of producing specialized treatment or a substantive explanation of how and when my clinical needs would be met, the administrative course generated further responses, referrals, and procedural obstacles. I pursued the channels made available to me, but those efforts did not resolve the medical condition that prompted them.

XIII. RESPONSIBILITIES OF THE WARDEN, CAPTAIN, UNIT TEAM, AND DENTAL DEPARTMENT

Warden C. C. Rhodes, as the official responsible for the institutional decision, had responsibility for prompt and reasoned consideration of the application. Captain S. Ximenes, who received and read the application at the Warden's office, was the officer who accepted the materials and represented that they would be forwarded. Case Manager T. Chin, as a member of my Unit Team, handled subsequent requests and delivered the denial. The dental department, including Dr. Gina, had direct knowledge of my condition and the absence of specialized treatment within the facility.

I ask the Court to examine these concrete acts and omissions and their effects, rather than speculate about any individual employee's subjective intent. The institution controls the receipt logs, internal routing records, medical files, and referral decisions. Those records can establish how my application was handled and why the acknowledged need for specialized care has remained unresolved.

XIV. REQUEST FOR JUDICIAL CONSIDERATION AND RELIEF

I respectfully request that the Court accept this memorandum as a supplement to my AO 250 motion dated October 16, 2026 and consider the complete sequence of administrative events when evaluating my compassionate-release request. I ask the Court to consider the earlier submissions, the unexplained discrepancy in receipt dates, the delay and referrals, the inadequacy of the written denial in addressing my actual medical condition, and the continued absence of effective specialized treatment.

I further request, to the extent appropriate in resolving this motion, that the Court require the institution to account for the processing and custody of my application, the disposition of my original materials, the location and availability of my complete medical and dental records, and the steps taken or not taken to arrange specialized maxillofacial treatment. I ask that administrative failures not be permitted to defeat meaningful judicial review of my medical circumstances.

I declare that the events personally described in this memorandum are true to my knowledge and reflect the actions I took, the communications I made, and the documents I received. I submit this memorandum without counsel so that the Court may evaluate the administrative history together with the medical grounds presented in my AO 250 motion.

Respectfully submitted,

Gilmar Pereira da Silva Junior
Federal Bureau of Prisons Register No. 74744-511
Federal Correctional Complex Coleman Low
Date: OCTOBER 16, 2026 Signature: [signature]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No.: 8:25-cr-00144-KKM-SPF Division: 11 - TAMPA
STATEMENT OF GROUNDS FOR RELEASE

Attachment to AO 250, Section V Incorporated by Reference
Defendant Gilmar Pereira da Silva Junior (BOP Register No. 74744-511), proceeding pro se, submits this Statement in support of his motion under 18 U.S.C. § 3582(c)(1)(A). This Statement is incorporated into Section V of Form AO 250 by the notation "SEE ATTACHED STATEMENT OF GROUNDS INCORPORATED HEREIN." It identifies the legal grounds and the evidence the Court is respectfully requested to evaluate; it does not replace the accompanying motion, sworn declarations, medical records, or release plan.

I. GOVERNING STANDARD

Section 3582(c)(1)(A) authorizes a sentence reduction after exhaustion of the statutory administrative prerequisite when extraordinary and compelling reasons warrant relief, the reduction is consistent with the applicable Sentencing Commission policy statement, and the Court has considered the applicable factors under 18 U.S.C. § 3553(a). Under U.S.S.G. § 1B1.13, the Court must also assess whether the defendant would pose a danger to any person or the community under 18 U.S.C. § 3142 (g). The defendant bears the burden of supporting the factual predicates for relief with reliable evidence.

II. SERIOUS MEDICAL AND DENTAL CIRCUMSTANCES

The central individualized concern is the defendant's documented history of mandibular reconstruction involving a titanium plate, the loss of four teeth, and ongoing orthodontic and dental needs. Dental Sick Call records dated July 21 and July 30, 2026, and the underlying surgical and clinical records should be reviewed together to determine the present functional effects, including pain, chewing, oral health, access to specialist follow-up, and whether necessary treatment can be provided in a timely and consistent manner in custody. The defendant does not contend that the presence of a titanium plate or dental impairment, standing alone, automatically establishes eligibility.

The Court is asked to determine whether the clinical evidence establishes a qualifying serious medical condition under U.S.S.G. § 1B1.13(b)(1), including any material limitation on self-care or other medically supported qualifying circumstances. To the extent the record does not yet establish the severity, prognosis, or adequacy of available care, the defendant requests consideration of updated treatment records and a current clinical assessment rather than an inference unsupported by the evidence.

III. ADMINISTRATIVE HISTORY AND STATUTORY PREREQUISITE

The defendant states that he submitted a request for compassionate release to the institution on September 2, 2026. The administrative materials include a response dated September 10, 2026, identified as Remedy No. 1289925-F1, and a later denial bearing a September 23, 2026 heading, signed October 6, 2026, and delivered October 7, 2026. The supporting correspondence and remedy records should be attached and identified accurately. Because more than thirty days elapsed after September 2, 2026, the defendant invokes the lapse-of-thirty-days alternative in § 3582(c)(1)(A), subject to proof of the date the warden actually received the request and that the submission sought compassionate release. Administrative remedy BP-8, BP-9, BP-10 and BP-11 records are offered as corroborating context, not as a substitute for the statutory showing.

IV. INDIVIDUALIZED CIRCUMSTANCES AND REHABILITATION

The defendant entered FCC Coleman Low on May 4, 2026, and reports an approximately eight-day placement in the Special Housing Unit. These events are included only insofar as admissible records illuminate the timeline of access to treatment and administrative requests; this filing does not assert that a disagreement about confinement conditions independently creates a compassionate-release ground. The defendant also reports participation in daily English-as-a-Second-Language study, Adult Continuing Education, and Kairos Ministry #1, as well as eligibility for First Step Act programming. Verified program and conduct records are relevant to the individualized § 3553(a) and public-safety assessment. Rehabilitation is not asserted as an independent extraordinary and compelling reason, consistent with 28 U.S.C. § 994(t) and U.S.S.G. § 1B1.13(d).

V. SECTION 3553(a), PUBLIC SAFETY, AND RELEASE PLANNING

The defendant respectfully requests a fresh, individualized assessment of the nature and circumstances of the offense, his history and characteristics, the punishment already served, deterrence, protection of the public, and the need for medical care in the most effective manner. The underlying offense, sentence, criminal history, institutional disciplinary record, and proposed supervision conditions must be evaluated on their actual record; this Statement does not presume those factors favor release without that examination.

The accompanying proposed release plan identifies potential family support from his father Gilmar Pereira da Silva, mother Maria das Graças Gomes da Silva, sister Gilmara Gomes da Silva, sons João Vitor Lima e Silva and João Miguel Leandro

Silva, and partner Andreza Cristina Martins. Any proposed residence, financial assistance, medical appointments, transportation, and supervision arrangements should be confirmed by the respective supporting declarations. The defendant requests consideration of enforceable supervised-release conditions as appropriate; family support alone is not a substitute for the statutory public-safety finding.

VI. REQUEST FOR RELIEF

For the foregoing reasons, and based upon the AO 250 motion, supporting sworn declarations, medical and dental records, administrative correspondence, rehabilitation materials, and proposed release plan, the defendant respectfully asks the Court to: (1) consider this Statement as incorporated into Section V; (2) determine whether the documented circumstances meet a ground recognized by § 1B1.13; (3) evaluate the applicable § 3553(a) and § 3142(g) factors; and (4) if all statutory requirements are met, reduce the custodial term to time served or grant another lawful reduction, with any appropriate supervised-release conditions. Alternatively, if a material medical or administrative issue cannot be resolved on the existing record, the defendant asks the Court to permit appropriate supplementation consistent with its rules and discretion.

Respectfully submitted,

Gilmar Pereira da Silva Junior
BOP Register No. 74744-511
FCC Coleman Low
Date: 10/16/2026

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF
DEFENDANT'S PRO SE MOTION FOR SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)
AND INCORPORATED MEMORANDUM OF LAW

Defendant Gilmar Pereira da Silva Junior, BOP Register No. 74744-511, appearing pro se, respectfully moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). This motion sets forth the specific relief requested, pertinent facts, legal grounds, and incorporated memorandum. Defendant does not contend that every complaint about medical care, standing alone, constitutes an extraordinary and compelling reason. He requests an individualized assessment of a complex mandibular condition, specialized treatment needs, and care actually available.

This case does not concern merely elective or cosmetic dental treatment. Before incarceration, Defendant underwent mandibular reconstruction following a serious motorcycle accident, including placement of a titanium plate and screws, and was receiving functional orthodontic treatment. His intake examination recorded "ORTHO TREATMENT IN PROGRESS." While incarcerated, Defendant reports damage to his appliance, loss of approximately four teeth, pain, and difficulty chewing and eating. Despite repeated requests, he states he has not received conclusive information about coordinated specialist assessment of his reconstructed jaw, damaged appliance, occlusion, and progressive tooth loss.

Defendant therefore requests review of the entire record under U.S.S.G. § 1B1.13(b)(1)(C), together with 18 U.S.C. § 3582(c)(1)(A), the applicable § 3553(a) factors, and the release plan below.

I. SPECIFIC RELIEF REQUESTED

Defendant requests that the Court reduce his custodial sentence to time served and impose an appropriate term of supervised release, subject to such conditions as the Court deems necessary, including home detention and electronic monitoring if appropriate. He further requests conditions permitting prompt evaluation and treatment by qualified dental, orthodontic, periodontal, and oral and maxillofacial specialists as clinically indicated.

Defendant does not ask the Court to exercise the Bureau of Prisons' separate administrative authority to designate the place of imprisonment or order BOP home confinement. He seeks judicial sentence reduction under § 3582(c)(1)(A), followed by supervised release with legally permissible conditions.

II. STATUTORY PREREQUISITE TO FILING

Section 3582(c)(1)(A) permits a defendant to move for sentence reduction after fully exhausting administrative rights to appeal the BOP's failure to bring a motion on his behalf, or after 30 days have elapsed from the warden's receipt of his request, whichever is earlier.

On August 28, 2026, Defendant states that he personally delivered a written Reduction in Sentence / Compassionate Release request to Captain S. Ximenes for forwarding to the Warden. According to the records and information described, receipt by the Warden was acknowledged on September 3, 2026. The denial correspondence bears a date of September 23, 2026, was signed by Acting Warden C. C. Rhodes on October 6, 2026, and was delivered to Defendant on October 7, 2026. These distinct dates should not be conflated. More than 30 days elapsed between September 3 and October 12, 2026. Defendant states that his administrative request invoked 18 U.S.C. § 3582(c)(1)(A), described his dental and mandibular condition, and proposed a release plan. The corresponding institutional documents should establish its content and receipt.

The administrative chronology also includes communications to the Unit Team and Case Manager, a September 2, 2026 COP-OUT, and requests to confirm processing of the RIS. Defendant asks the Court to consider the available documentation, including September 3 receipt and the subsequent response, without presuming an unproven internal date. If further evidence of receipt or content is necessary, Defendant requests an opportunity to supplement the record to the extent procedurally permitted.

III. CHRONOLOGY OF EVENTS

A. Pre-incarceration structural condition. Before federal custody, Defendant suffered a serious motorcycle accident requiring mandibular reconstruction with a titanium plate and screws. He was undergoing therapeutic orthodontic treatment associated with the reconstructed jaw. He describes the treatment as functional and therapeutic, not cosmetic.

B. Arrival at FCC Coleman Low and initial deterioration. Defendant arrived on May 4, 2026, and states he was placed in the Special Housing Unit approximately two hours later, remaining there until about May 12, 2026. He reports that the reason was not adequately explained and that the experience caused fear and distress. He reports damage or breakage of the orthodontic appliance around May 6 and tooth loss beginning around May 7. The sequence and causes should be compared against custody and medical records; temporal proximity alone is not offered as clinical proof of causation.

---

C. May 15 dental documentation. The May 15, 2026 BP-A0618 examination records "ORTHO TREATMENT IN PROGRESS." Defendant offers this not as an independent diagnosis but as contemporaneous institutional documentation of ongoing orthodontic treatment upon entry into custody. He requests consideration of BP-A0618 alongside the dental chart, PANOREX, other images, and complete clinical record.
D. June and July requests. On June 2, 2026, Defendant sought assessment of his mandibular condition, titanium plate, and orthodontic appliance. He reports being told that orthodontic care was unavailable locally and being directed to Dental Sick Call. The written document dated July 20, 2026 expressly records his request for appliance adjustment, his report of losing three or four teeth, and his concern about further loss. July 20, 2026 is the date appearing on the document itself, not an inference drawn from a photograph. Defendant asks that this record be considered according to its stated date and together with other contemporaneous requests.
E. July 30 record. The July 30, 2026 BP-S358.060 contains the notation "PATIENT REFUSED TO SIGN." Defendant does not dispute that the notation appears, but disputes any inference that it constitutes refusal of all treatment or of the specialized care sought in this motion. He requests review of the entire encounter, identification of what treatment was actually offered, and a distinction between declining to sign a particular form and declining clinically appropriate specialist care.
F. Escalating August requests and administrative remedies. Defendant continued seeking assistance through dental, medical, administrative, and written channels. The record identifies requests for medical records, attempts to obtain in-person care, an urgent request to the Warden on August 16, a BP-9 associated with Remedy 1287596-F1 rejected on August 17, another BP-9 associated with Remedy 1289925-F1 on August 18, and other written communications. Defendant also reports filing a BP-10 administrative appeal. Its form, remedy number, submission date, proof of receipt, issues raised, and institutional response, if any, should be reviewed as part of the evidentiary chronology. Those BP-10 particulars are not contained in the source document reviewed and are not presumed. Defendant requests the complete BP-10 and processing history to establish precisely the persistence of his complaints and the administrative steps taken.
G. August 24 Dental Sick Call and institution-held PANOREX. Defendant submitted a written form reporting a broken orthodontic appliance, four lost teeth, and difficulty chewing and eating following mandibular reconstruction. He expressly stated, "I AM NOT REFUSING TREATMENT," and requested evaluation, documentation, specialist referral, or a continuity-of-care plan. He reports that dentist Gina Torres-Marin consulted or viewed his PANOREX image. According to Defendant, the PANOREX remains in FCC Coleman Low's custody and has not been furnished despite repeated requests for access and a copy. Each request and any response should be assessed by date when produced. Defendant's lack of possession must not be confused with the nonexistence of the image. He requests preservation and production of the image, associated report, available metadata and access records, the complete record of the encounter, and any specialty referral or utilization review. The Sick Call form documents his communication, but is not an independent expert opinion about severity or causation.
H. Formal RIS request. On August 28, 2026, Defendant submitted the formal RIS/Compassionate Release request described above. Rather than simply demanding release, it sought review of the full medical record, status of specialist referral, adequacy of available custodial treatment, and a compassionate-release decision accompanied by a concrete housing and treatment plan.
I. Continuing condition. Defendant reports that the underlying problem remains unresolved: missing teeth, impaired chewing and eating, a damaged therapeutic appliance, concern about further deterioration, and no definitive specialist treatment pathway known to him. He does not ask the Court to diagnose him from allegations alone, but to assess whether the documented need for specialist care, functional deterioration, and treatment history satisfy the applicable legal standard.
IV. EXTRAORDINARY AND COMPELLING MEDICAL CIRCUMSTANCES
U.S.S.G. § 1B1.13(b)(1)(C) recognizes an extraordinary and compelling reason where a medical condition requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. The provision does not require a terminal diagnosis. The relevant inquiries are the need for specialized or long-term care, whether that care is being provided, and the risk arising from its absence.
The evidence bears on each element. First, the condition involves more than one tooth: a reconstructed jaw, implanted titanium hardware, therapeutic orthodontic treatment, a damaged appliance, reported tooth loss, and impaired chewing. Second, the May 15 institutional record documents ongoing orthodontic treatment, while later communications indicate orthodontics is not available locally at Dental Low. Third, Defendant describes progressive consequences, including approximately four lost teeth and difficulty eating. Fourth, despite repeated encounters and written requests, the currently available record does not identify a completed specialist plan addressing the structural and orthodontic issues together.
The distinction between routine dental services and the specialized care alleged here is essential. Cleaning, antiseptic rinse, extraction, or other routine intervention may be appropriate for particular problems, but does not by itself answer whether a reconstructed jaw, implanted hardware, therapeutic appliance, occlusion, missing teeth, and risk of further deterioration require coordinated specialist assessment. Defendant asks the Court to compare care actually delivered with care clinically required, rather than equating access to some dental service with the specialized care contemplated by § 1B1.13(b)(1)(C).
Defendant acknowledges his burden to establish through reliable evidence the need for specialized or long-term care, inadequacy of care actually provided, and risk of serious deterioration without that care. The notation of ongoing orthodontic treatment, Sick Call forms, and reported functional limitations warrant close examination but do not alone substitute for specialist opinion. He therefore seeks review of the complete medical record, PANOREX, referral records, and institutional

---

responses without treating records not yet produced as presumed proof.

VI. RELEASE PLAN AND ACCESS TO SPECIALIZED CARE
If relief is granted, Defendant proposes to reside at 4418 Spring Blossom Dr., Kissimmee, Florida 34746, subject to verification by United States Probation. Andreza Cristina Martins is identified as the person responsible for the residence and a member of his support network. Defendant states that he has proof of address, work experience in construction and finishes, employment opportunities he can document, and a Chevrolet Express 2500 Cargo Van for transportation and lawful work. He reports previously complying with electronic monitoring without violations, subject to verification. He is willing to comply strictly with supervision, travel restrictions, and restitution obligations.
The proposed continuity-of-care plan is to promptly seek clinical assessment by a dentist and orthodontist and an oral and maxillofacial surgeon, including imaging and referral for periodontal or prosthetic rehabilitation if clinically indicated. Defendant does not claim to currently have health insurance: he intends to explore coverage and payment options after release, including provider payment plans. Medication, procedures, and treatment timing will be determined by licensed professionals. The plan identifies concrete initial steps without promising treatment or insurance not yet secured.
Defendant recognizes that housing, support, treatment, and supervision arrangements remain subject to verification. He asks that any correctable deficiency in the plan be addressed by verification or supplementation rather than by assuming that community specialist care is unavailable.
VII. 18 U.S.C. § 3553(a) AND PUBLIC SAFETY
Sentence reduction requires consideration of the applicable § 3553(a) factors and § 1B1.13 policy statement. Defendant does not ask the Court to disregard the seriousness of the offense, original sentencing objectives, deterrence, respect for law, public protection, or avoidance of unwarranted disparities.
The previously submitted Judgment indicates conviction under 18 U.S.C. § 287, a 37-month custodial sentence, three years of supervised release, restitution of $103,646.00, and a $100.00 special assessment, subject to verification against the complete judgment and any amendments. Defendant does not minimize the seriousness of false claims against the government or the obligation to make restitution. He asks the Court to assess whether time already served, effective supervision, lawful employment, financial obligations, and access to needed care can satisfy punishment, deterrence, and public-safety objectives while respecting the original sentence and his prior conduct.
The requested relief permits the Court to address sentencing and safety concerns through supervised-release conditions. Home detention, electronic monitoring, reporting, compliance with treatment, travel restrictions, employment requirements, and other appropriate conditions can provide meaningful structure while allowing access to specialist assessment allegedly unavailable in custody. Defendant's willingness to accept strict supervision does not replace the § 3553(a) analysis but informs whether a modified sentence can remain sufficient without being greater than necessary.
VIII. JUDICIAL SENTENCE REDUCTION WITHOUT ASSUMING BOP PLACEMENT AUTHORITY
If its requirements are met, § 3582(c)(1)(A) authorizes the Court to reduce a term of imprisonment and, within statutory limits, impose a term of probation or supervised release with appropriate conditions not exceeding the unserved portion of the original prison term. Defendant does not seek to automatically add a new term to the three years of supervised release already imposed; he requests legally proper specification of any modification. Home detention and electronic monitoring are proposed as supervision conditions, if authorized and appropriate, not as an order directing BOP home confinement.
This distinction matters because the practical objective safe community treatment under rigorous supervision may be structured within judicial sentence-modification authority without asking the Court to administer the BOP's internal placement powers.
IX. ALTERNATIVE PROCEDURAL RELIEF
If the Court finds the present record insufficient to resolve the medical question, Defendant requests, before denial based on a documentary gap he cannot independently cure, a reasonable opportunity to supplement, a specific response from the United States, and, if appropriate, an order preserving and producing BOP-controlled documents: the complete dental and medical record; the original PANOREX, digital image, and reports; requests and responses concerning access to that image; BP-A0618; BP-S358.060 and context for "PATIENT REFUSED TO SIGN"; Dental Sick Call forms; specialist referrals, authorizations, denials, and utilization review; BP-9 and BP-10 filings, administrative-remedy history and responses; and documentation of receipt, processing, and disposition of the August 28, 2026 RIS. Defendant asks the Government to clarify whether an orthodontist or oral and maxillofacial surgeon evaluated him, what care was offered, and whether an effective continuity-of-care plan exists. If a material dispute remains, he asks the Court, within its discretion, to consider supplemental evidence, medical declarations, a hearing, or other suitable procedural relief. He does not contend every measure is mandatory, but seeks a reasoned decision with proportionate access to relevant institution-controlled evidence.
If the Court finds the 30-day statutory prerequisite insufficiently shown because the Warden's internal receipt date is disputed, Defendant requests an opportunity to submit institutional confirmation of September 3, 2026 receipt and the administrative decision records, without confusing the statutory 30-day route under § 3582(c)(1)(A) with BP-9 or BP-10 processing. Alternatively, he requests time to cure the specific evidentiary deficiency to the extent permitted by applicable procedural rules,

---

rather than treating unavailable BOP-controlled records as proof that no request was made.

X. CONCLUSION AND REQUEST FOR RELIEF

For these reasons, in light of the reconstructed mandibular condition, documentation of functional orthodontic treatment, progressive complaints of tooth loss and impaired eating, repeated administrative requests, and the need to assess specialized care actually available, Defendant respectfully requests consideration of the facts and evidence as a whole, without treating routine dental care as an automatic substitute for specialist assessment, and asks that the Court:

1. find the prerequisite under 18 U.S.C. § 3582(c)(1)(A) satisfied on the submitted evidence, or permit targeted supplementation concerning receipt by the Warden;
2. find, upon review of the full record, that the medical circumstances meet U.S.S.G. § 1B1.13(b)(1)(C), if the evidence establishes a need for specialized care, its absence, and a risk of serious deterioration;
3. consider the applicable factors under 18 U.S.C. § 3553(a) and available conditions protecting the public and preserving the objectives of sentencing;
4. reduce the custodial sentence to time served if the statutory requirements are satisfied;
5. impose an appropriate term of supervised release, including home detention and electronic monitoring if deemed appropriate;
6. permit prompt specialist assessment and treatment in the community consistent with supervision conditions; and
7. grant any other appropriate and legally authorized relief, including a response from the United States or targeted supplementation of the medical and administrative record if necessary.

Respectfully submitted,

[signature]

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low
Date: OCTOBER 16, 2026

CERTIFICATE OF SERVICE

I certify that on 10/16/2026, I served a true and correct copy of this Motion upon the United States Attorney's Office for the Middle District of Florida by USPS, at FCC COLEMAN LOW. This certificate must be completed and signed only after service has actually occurred, in accordance with applicable service rules.

[signature]

GILMAR PEREIRA DA SILVA JUNIOR

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF
DECLARATION OF MAILING COURT FILING (NOT SERVICE)

I, Gilmar Pereira da Silva Junior, declare that on the date written below, I deposited the original Pro Se Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A), with its incorporated memorandum and accompanying attachments/exhibits included in that mailing, into the authorized outgoing correspondence system at FCC Coleman Low, addressed for filing to:

Clerk of the United States District Court
Middle District of Florida Tampa Division
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, FL 33602

Method of transmission: U.S. Mail through FCC Coleman Low institutional outgoing court/legal correspondence procedures, subject to applicable institutional processing requirements.

This is a declaration of mailing for filing, not a certificate of service upon an opposing party. I sign only after the described mailing has actually been deposited with institutional personnel or in the authorized institutional mailing system.

Date of actual mailing/deposit: OCTOBER 16, 2026

Signature: ______________________

Gilmar Pereira da Silva Junior, Pro Se

---

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF
Defendant: Gilmar Pereira da Silva Junior, Pro Se | BOP Reg. No. 74744-511
CERTIFICATE OF SERVICE GOVERNMENT
I, Gilmar Pereira da Silva Junior, certify that on the date written below, I deposited a true and correct copy of my Pro Se Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A), together with its incorporated memorandum and accompanying attachments/exhibits included in that mailing, into the authorized outgoing correspondence system at FCC Coleman Low, addressed to counsel for the United States as follows:
Office of the United States Attorney
Middle District of Florida Tampa Office
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Method of service: U.S. Mail, submitted through FCC Coleman Low institutional outgoing legal/court correspondence procedures, subject to the institution's applicable processing requirements.
I certify the above only upon actual deposit of the described mailing into the authorized institutional mail system. This certificate does not attest to receipt or delivery by the addressee.
Date of actual mailing/deposit: OCTOBER 16, 2026
Signature: [redacted]
Gilmar Pereira da Silva Junior, Pro Se

GILMAR PEREIRA DA SILVA JR. | BOP 74744-511 | PERSONAL STATEMENT TO THE COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
v.
GILMAR PEREIRA DA SILVA JR.

NOV 6 2026 PM12:04
FILED - USDC - FLMD - TPA

Case No. 8:25-cr-144-KKM-SPF

Hon. Kathryn Kimball Mizelle

DEFENDANT'S PERSONAL FACTUAL STATEMENT CONCERNING CONDITIONS AT FCC COLEMAN LOW, CONTINUING MEDICAL/DENTAL DETERIORATION, AND EFFORTS TO OBTAIN HELP

October 7, 2026

1. PURPOSE AND FILING POSTURE

Your Honor:

My name is Gilmar Pereira da Silva Junior, BOP Register No. 74744-511. I am confined at FCC Coleman Low in Florida in connection with United States v. Gilmar Pereira da Silva Jr., Case No. 8:25-cr-144-KKM-SPF. I respectfully submit this personal factual statement so that the Court can understand what has happened to me since I entered FCC Coleman Low on May 4, 2026, what I have done to obtain help, what remains unresolved, and why my health and my ability to navigate the institutional process have become inseparable from the AO 250 compassionate-release filing I am preparing.

I am not sending this as a private communication to Chambers and I am not asking the Court to act on an off-the-record request. I intend this statement to be submitted through the Clerk for filing in my criminal case, with service as required, so that what I say is part of the record. I am also not asking this letter, standing alone, to substitute for my AO 250 motion. I am asking that my circumstances be understood as a continuous chronology rather than as isolated forms, dental visits, grievances, or administrative events.

2. WHAT I BROUGHT WITH ME INTO CUSTODY

Before entering federal custody, I had suffered a serious motorcycle accident and undergone mandibular reconstruction with titanium hardware. I was in therapeutic orthodontic treatment connected to that reconstructed jaw and to the condition of my teeth. This was not, and is not, a cosmetic preference. When FCC Coleman Low examined me on May 15, 2026, its own BP-A0618 A&O Dental Examination recorded: "ORTHO TREATMENT IN PROGRESS." That institutional record is important because it confirms that the orthodontic treatment existed when I entered custody and was part of my clinical history.

3. ARRIVAL AT FCC COLEMAN LOW AND PLACEMENT IN THE SHU

I entered FCC Coleman Low on May 4, 2026. Almost immediately after my arrival, I was placed in the Special Housing Unit (SHU). I remained there for approximately eight days, approximately May 4 through May 12, with my records and prior submissions identifying cells 130 and 129.

I affirm to the Court that I was placed in the SHU. This was the beginning of the deterioration I have been trying to explain ever since. During that period I experienced severe difficulty maintaining basic oral hygiene and caring for the therapeutic appliance. I did not have the normal access I needed to a toothbrush and to ordinary hygiene and appliance maintenance. I experienced psychological pressure, humiliation, fear, uncertainty, and difficulty obtaining the medical and dental assistance I was asking for. I have repeatedly requested preservation and review of the housing, movement, SHU, welfare-check, medical, psychology,

On September 30 I therefore prepared a formal demand for a written, point-by-point explanation of how the institution and BOP considered their procedures satisfied: what rule authorized a BP-A0148 to remain without disposition, signature and date; where the official record of the August 28 receipt was; who received, copied, routed or filed my exhibits; what policy was applied to my September 2 COP-OUT; why there was no written disposition if a verbal response supposedly existed; and who could review the conduct if the complaint itself involved the Unit Team.

This is why the Unit Team issue is so important to me. I did what I was instructed to do. I went where I was directed. I submitted the paper I was told to submit. I waited. I asked for dates and documentation. Instead of obtaining a clear decision and a reliable paper trail, I remained uncertain about who was responsible for processing the request and what had actually been done with it.

9. ADMINISTRATIVE BARRIERS WHILE TRYING TO PROTECT MY HEALTH AND LEGAL RIGHTS

My ability to document and pursue these matters has also been affected by practical institutional barriers. My legal and administrative file grew to more than approximately 800 pages. I encountered shortages or lack of Copy Cards, unpredictable access to copying, lockdowns, unclear Unit Team access, outdated notice-board information, envelope and mailing constraints, and difficulty obtaining the copies needed for administrative appeals and legal submissions. These obstacles mattered because every stage required me to preserve dates, copies, forms and proof while I was simultaneously dealing with pain, difficulty eating, disturbed sleep and fear about my health.

I repeatedly requested preservation of relevant records, including SHU and housing records, movement records, medical and dental records, PANOREX/imaging, EMR entries, treatment plans, referrals, Utilization Review records, Specialty Services records, records concerning the alleged refusal of treatment, TRULINCS messages, Administrative Remedy records, Unit Team and Warden records, mail records and any relevant video or other evidence. I have been trying to prevent the history from becoming a dispute about memory after records disappear.

10.. EFFORTS TO OBTAIN HELP OUTSIDE FCC COLEMAN LOW

I did not limit my requests for help to the people inside FCC Coleman Low. When the internal process failed to produce a durable solution, I sought assistance through outside federal oversight and legal channels.

I sought assistance from the U.S. Office of Special Counsel during the period associated with Special Counsel Hampton Dellinger or the successor/acting leadership, asking for federal oversight and intervention concerning what was happening at FCC Coleman Low. When no meaningful solution reached me, I later escalated the matter again to Special Counsel Charles N. Baldis, asking for immediate review, protective action, written acknowledgment and response, preservation of evidence, and referral to any federal authority with jurisdiction if OSC itself could not provide the needed relief.

I also prepared and pursued requests for independent review through Department of Justice oversight channels, including the DOJ Office of the Inspector General, asking for review of the continuing medical/dental deterioration, record handling, institutional processes and failures to produce a definitive specialized-care pathway. My materials also reflect efforts directed toward CIGIE-related oversight channels.

I sought legal assistance through federal defense channels, including Assistant Federal Public Defender Ryan J. Maguire and the Office of the Federal Defender for the Middle District of Florida. A September 2 communication connected with Federal Defender counsel was identified in my materials as recommending consideration of a medical furlough. I explored medical furlough and escorted medical treatment because my objective was not to create conflict; it was to reach appropriate care safely.

These outside efforts are important not because every office had authority to grant every form of relief, but because they show the extent to which I have tried to find someone who could take responsibility for the unresolved problem. Some institutional contacts did respond to individual requests for example, Dental told me orthodontic treatment was not provided locally, and administrative papers were returned but those responses did not produce the specialist care or durable resolution I was seeking. For several outside requests, I have not received a substantive response that solved the problem. I do not want to state that an office never responded where the complete transmission and response record is not presently in my possession; I

ATTACHMENT 1

# UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Case No. 8:25-cr-00144-KKM-SPF
(Write the number of your criminal case.)

v.

GILMAR PEREIRA DA SILVA JÚNIOR
Write your full name here.

## PROPOSED RELEASE PLAN

**In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)**

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

If you provide information in this document that you believe should not be publicly available, you may request permission from the court to file the document under seal. If the request is granted, the document will be placed in the electronic court files but will not be available to the public.

Do you request that this document be filed under seal?

☒ Yes ☐ No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 1

## PROPOSED RELEASE PLAN

To the extent the following information is available to you, please include the information requested below. This information will help the U.S. Probation and Pretrial Services Office prepare for your release if your motion is granted.

### A. Housing and Employment

Provide the full address where you intend to reside if you are released from prison.

4418 SPRING BLOSSOM DR. - KISSIMMEE, FL 34746

Provide the name and phone number of the property owner or renter of the address where you will reside if you are released from prison.

ANDREZA CRISTINA MARTINS MORENO
+1 (689) 233-4301

Provide the names (if under the age of 18, please use only their initials), ages, and relationship to you of any other residents living at the above-listed address.

N/A

Do you know where you will work if you are released? If so, please provide the name and address of the employer and describe your job duties. If you do not have a specific employer, please describe the type of work you plan to do upon release.

YES, I HAVE A FLOORING COMPANY, J&D INNOVATIONS SERVICES LLC, 4418 SPRING BLOSSOM DR. - KISSIMMEE, FL 34746 - SEE ATTACHMENT 1.

List any additional housing or employment resources available to you.

I MAINTAINS PROFESSIONAL CONTACTS AND CONCRETE OPPORTUNITIES FOR LAWFUL EMPLOYMENT, SEE ATTACHMENT 1.

### B. Medical Needs

Will you require ongoing medical care if you are released from prison?

☒ Yes ☐ No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 1

Will you have access to health insurance if released?

☐ Yes ☒ No

If yes, provide the name of your insurance company and the last four digits of the policy number.

WHEN ME RELEASED, I GET A HEALTH INSURANCE.

If no, how do you plan to pay for your medical care?

COVERAGE, COSTS, MEDICATION, SURGICAL NECESSITY, AND TREATMENT SCHEDULES CANNOT RESPONSIBLY BE DETERMINED IN ADVANCE OF APPROPRIATE CLINICAL EVALUATION.

If no, are you willing to apply for government medical services (Medicaid/Medicare)?

☐ Yes ☒ No

Do you have copies of your medical records documenting the condition(s) for which you are seeking release?

☒ Yes ☐ No

If yes, please include them with your motion.

If no, where are the records located?

AND FCC COLEMAN LOW HAVE MY X-RAY PANOREX.

Are you prescribed medication in the facility where you are incarcerated?

☐ Yes ☒ No

If yes, list all prescribed medication, dosage, and frequency.

Do you require durable medical equipment (e.g., wheelchair, walker, oxygen, prosthetic limbs, hospital bed)?

☒ Yes ☐ No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 1

If yes, list equipment required.

THERAPEUTIC ORTHODONTIC APPLIANCE AND YOUR SUPPLY FOR CARE.

Do you require assistance with self-care such as bathing, walking, toileting?

☐ Yes ☒ No

If yes, list the required assistance and how it will be provided.

N/A

Do you require assisted living?

☐ Yes ☒ No

If yes, provide the address of the anticipated home or facility and the source of funding to pay for it.

N/A

Are the people you are proposing to reside with aware of your medical needs?

☒ Yes ☐ No

Do you have other community support that can assist with your medical needs?

☐ Yes ☒ No

Provide their names, ages, and relationship to you. If the person is under the age of 18, please use only their initials.

Will you have transportation to and from your medical appointments?

☒ Yes ☐ No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 1

Describe the method of transportation.

ACCESS TO A CHEVROLET EXPRESS 2500 CARGO VAN FOR TRANSPORTATION AND ANDREZA ALSO HAS A VEHICLE AND CAN ASSIST WITH ALTERNATIVE TRANSPORTATION.

**SIGNATURE**

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

OCTOBER 16, 2026
Date

[signature]
Signature

GILMAR PEREIRA DA SILVA JR.
Printed Name

74744-511
Federal Bureau of Prisons Register No.

FCC COLEMAN LOW
Federal Bureau of Prisons Facility

P.O. BOX 1031, COLEMAN, FL -33521
Institution's Address



PEREIRA DA SILVA JR, GILMAR 74744511

---

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF
ATTACHMENT 1 PROPOSED RELEASE PLAN
Submitted in Support of Defendant's Pro Se Motion Under 18 U.S.C. § 3582(c)(1)(A)

I. PURPOSE AND IMMEDIATE REENTRY FRAMEWORK

Defendant Gilmar Pereira da Silva Junior (BOP Register No. 74744-511), currently incarcerated at FCC Coleman Low, respectfully submits this individualized and operational release plan. Should the Court grant a sentence reduction, Defendant has an identified residence, personal support, transportation, professional experience, and a firm commitment to comply strictly with federal supervision. This plan is intended to facilitate prompt access to specialized clinical evaluation and responsible community reintegration, without portraying medical or financial decisions that can only be made after release as already finalized.

II. ESTABLISHED RESIDENCE AND PRIMARY SUPPORT

Defendant will reside at 4418 Spring Blossom Dr., Kissimmee, Florida 34746. Andreza Cristina Martins, his girlfriend and the person responsible for the residence, will be his primary source of day-to-day support. They remain in regular contact and discuss the practical arrangements for his reintegration. Defendant will provide proof of address in his own name. He does not offer, or condition this plan upon providing, Andreza's personal documents or property-ownership documents for the residence. He accepts legally required residence verification and supervision visits.

III. SUPERVISION, HISTORY OF APPEARANCES, AND ACCOUNTABILITY

Defendant accepts all mandatory, standard, and special conditions of supervised release set forth in the Judgment (Doc. 57), as well as any other lawful conditions imposed by the Court. He will report to U.S. Probation within the prescribed period, disclose material changes, and observe all restrictions on travel, employment, and communications.

Before incarceration, Defendant was subject to federal electronic/location monitoring, including in-person visits by the supervising officer to the proposed residence and his workplace, as well as video contacts. According to Defendant's account of his supervision history, there were no monitoring violations. He appeared for required court proceedings and voluntarily surrendered to begin serving his sentence after being authorized to self-surrender. Defendant reports that his passport remains in the custody of the Brazilian Federal Police. These factors, together with a fixed residence and his willingness to accept renewed monitoring if ordered, provide concrete safeguards against flight risk.

Defendant acknowledges the seriousness of his conviction under 18 U.S.C. § 287, involving false, fictitious, or fraudulent claims. The fact that physical violence is not an element of that offense does not eliminate the need for individualized assessment. Accordingly, his commitments to lawful conduct, financial transparency, and supervision are essential parts of this plan.

IV. CONTINUITY OF MEDICAL, DENTAL, ORTHODONTIC, AND ORAL AND MAXILLOFACIAL CARE

Defendant sustained severe mandibular trauma in a motorcycle accident and underwent reconstruction involving titanium hardware. His orthodontic appliance serves a therapeutic, not cosmetic, purpose. During custody, he reports damage to the appliance, tooth loss, pain, difficulty chewing, and worsening of his condition, as described in institutional communications and records.

Defendant has repeatedly sought care through Dental Sick Call and written communications. Dental Low's August 17, 2026 response to his August 7 message again referred him to Dental Sick Call without resolving his reported need for specialized evaluation. The PANOREX imaging remains in FCC Coleman Low's possession. Defendant has repeatedly requested access to it but has not received it, as reflected in the records of his requests. His lack of access to the imaging is not the result of disinterest or inaction on his part.

Following release, Defendant will promptly seek evaluation by oral and maxillofacial surgeons, orthodontists, and any other specialists whose involvement proves necessary in the Kissimmee/Orlando area. He will seek independent evaluations and cost estimates as clinically feasible and available. Only qualified professionals will determine updated diagnoses, necessary imaging, risks, urgency, medications, interventions, and treatment sequence. Defendant will follow clinical guidance and keep U.S. Probation informed as necessary to comply with supervision.

V. HEALTH INSURANCE AND PAYMENT GUIDED BY SPECIALIST EVALUATION

The selection of treatment, health or dental insurance, and payment arrangements will depend on the assessments of specialists whom Defendant can consult following release. Coverage, costs, medication, surgical necessity, and treatment schedules cannot responsibly be determined in advance of appropriate clinical evaluation. Once professional recommendations are available, Defendant will assess provider networks, eligibility, insurance options, direct payment, installment arrangements, and programs offered by clinics or hospitals, as applicable. He commits to pursuing a financially responsible solution without

---

promising coverage or resources that have not yet been established.

VI. LAWFUL EMPLOYMENT, FINANCIAL STABILITY, AND TRANSPORTATION

Defendant has a degree in Business Administration and more than fifteen years of experience in construction, particularly flooring installation. He maintains professional contacts and reports concrete opportunities for lawful employment, as well as tools and equipment with which to resume work when authorized and medically able. He will disclose employment activities and income to U.S. Probation as required and comply with court-ordered financial obligations.

He has access to a Chevrolet Express 2500 Cargo Van for transportation and carrying work tools. Andreza also has a vehicle and can assist with alternative transportation. These resources support travel to the residence, supervision appointments, medical consultations, and employment, subject to applicable licensing, registration, insurance, and travel-authorization requirements.

VII. FAMILY, PERSONAL, AND COMMUNITY SUPPORT

Andreza Cristina Martins, Defendant's partner, is his principal source of household support in Kissimmee, maintains regular contact during incarceration, and participates in planning his return to the community. Defendant's family network is specifically identified: his father, Gilmar Pereira da Silva; his mother, Maria das Graças Gomes da Silva; his sister, Gilmara Gomes da Silva; and his two sons, João Vitor Lima e Silva and João Miguel Leandro Silva. These family relationships, maintained during his sentence, provide meaningful emotional and personal connections for a responsible return to life in the community.

Defendant intends to strengthen his relationship with his sons, fulfill his parental responsibilities within applicable legal conditions, and maintain regular communication with his parents and sister. His identified family members and Andreza form a network of belonging, guidance, and stability, complemented by existing community and professional ties. This plan does not assume that each family member has undertaken a specific financial, housing, or transportation obligation; rather, it recognizes the practical importance of these continuing relationships to successful reintegration.

Family support does not replace Defendant's personal accountability. He will remain directly responsible for complying with Court conditions, reporting to U.S. Probation, maintaining lawful activity, following medical recommendations, and meeting financial obligations. Family relationships, established housing, and preexisting professional connections reduce disruption during transition and support a stable, supervisable routine.

VIII. INSTITUTIONAL CONDUCT AND INDIVIDUALIZED RISK ASSESSMENT

Defendant reports a positive, nonviolent disciplinary history at FCC Coleman Low, without incident reports. The June 11, 2026 Individualized Needs Plan records no disciplinary incidents during the preceding six months and includes institutional indicators relating to classification and release preparation. Defendant reports low security classifications and Good Conduct Time. He states that his temporary placement in the Special Housing Unit (SHU) was not attributable to violent conduct or a disciplinary violation.

The institutional assessments he describes did not identify needs in the categories of illicit substance use, anger/hostility, or cognitions. These classifications are administrative indicators, not medical diagnoses. Considered together with voluntary surrender, prior monitoring, employment prospects, and his support network, they reinforce the feasibility of responsible community supervision.

IX. COMPLETED EDUCATION, DAILY ESL ATTENDANCE, REHABILITATION, AND FSA

Defendant HAS COMPLETED the RPP/MCAA release preparation program; this is not a prospective or unfinished course. He attends English as a Second Language (ESL) classes daily at FCC Coleman Low. The institution maintains daily attendance records. Defendant also participates in Adult Continuing Education (ACE) activities, completed a Constitutional Law course, participated in KAIROS PRISON MINISTRY INTERNATIONAL #1, and completed additional courses reflected in his certificates.

Defendant reports that he is eligible under the First Step Act (FSA). This eligibility is presented as one aspect of his institutional participation and preparation, without asserting a specific number of earned credits or an automatic release date. His educational activities, completion of RPP/MCAA, and continued ESL participation demonstrate discipline, skill development, and practical preparation for employment, communication, and community life.

Defendant does not contend that rehabilitation alone compels compassionate release. He presents it as a complementary consideration alongside his clinical needs, institutional conduct, supervision arrangements, and other individualized factors.

X. IMPLEMENTATION: FIRST 72 HOURS, 30 DAYS, AND 90 DAYS

Within the first 72 hours: Defendant will travel to the approved residence; contact and report to U.S. Probation within the required deadlines; review his supervision conditions; arrange transportation; begin contacting specialists for dental, orthodontic, and oral and maxillofacial evaluation; and communicate with professional contacts.

Within the first 30 days: Defendant will attend available appointments; undergo examinations ordered by qualified professionals; obtain clinical recommendations and progressively assess insurance and payment options based on those recommendations; resume lawful work as authorized and medically feasible; and maintain communication with U.S. Probation.

Within the first 90 days: Defendant will continue indicated treatment and specialist follow-up, establish a stable supervision and employment routine, organize finances consistent with actual expenses, and strengthen family and community relationships. Any medical limitations will be communicated when necessary and addressed without violating court orders.

XI. PUBLIC SAFETY AND THE PURPOSES OF SENTENCING

This plan offers practical measures relevant to the Court's assessment under 18 U.S.C. § 3553(a), 18 U.S.C. § 3142(g), and U.S.S.G. § 1B1.13, as applicable. Stable housing, Defendant's record of appearances, prior electronic supervision, self-

---

surrender, family support, transportation, potential employment, institutional discipline, and commitment to specialized treatment provide mutually reinforcing safeguards. Defendant will accept supervision, provide truthful information, comply with financial conditions, and submit to any monitoring measure lawfully imposed.

XII. CONCLUSION AND REQUEST

Defendant presents a concrete and implementable release plan, with an established address, an identified primary support person, a family network, transportation and employment resources, and an express willingness to comply with all judicial conditions. He does not ask the Court to rely on vague assurances: he identifies a framework that U.S. Probation can supervise and that can be adjusted to lawful requirements and clinically established needs.

His mandibular and dental condition requires specialist evaluation that cannot be replaced by speculation. Defendant intends to begin that evaluation promptly following release, at which point qualified specialists can determine treatment, examinations, medications, insurance coverage, and payment arrangements. His repeated efforts to obtain care and access to the PANOREX, together with his educational and institutional preparation, demonstrate his initiative in seeking a responsible solution.
Completion of RPP/MCAA, daily ESL attendance, other educational activities, reported FSA eligibility, his history of court appearances, and his support network reinforce his capacity for orderly reintegration. Considered together, these factors provide a structured means of continuing care and protecting the community while preserving the authority of the Court and U.S. Probation.
For these reasons, Defendant respectfully requests that the Court consider this Proposed Release Plan together with his motion and the case record when deciding his request under 18 U.S.C. § 3582(c)(1)(A).
Respectfully submitted,

Gilmar Pereira da Silva Junior, Pro Se
BOP Register No. 74744-511
FCC Coleman Low

ATTACHMENT 2

# UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Case No. 8:25-cr-00144-KKM-SPF
(Write the number of your criminal case.)

v.

GILMAR PEREIRA DA SILVA JUNIOR
Write your full name here.

## MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION

**In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)**

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

[X] Yes [ ] No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 2

## MEDICAL RECORDS AND ADDITIONAL MEDICAL INFORMATION

To the extent that you have medical records or additional medical information that supports your motion for compassionate release, please attach those records or that information to this document.

### SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

OCTOBER 16, 2026
Date

[signature]
Signature

GILMAR PEREIRA DA SILVA JR.
Printed Name

74744-511
Federal Bureau of Prisons Register No.

FCC COLEMAN LOW
Federal Bureau of Prisons Facility

P.O. BOX 1031, COLEMAN, FL - 33521
Institution's Address

---

I RESPECTFULLY REQUEST URGENT ACTION.
Respectfully,
GILMAR PEREIRA DA SILVA JUNIOR
REG. NO. 74744-511
FCC COLEMAN LOW
COL-B-D
CASE NO. 8:25-cr-144-KKM-SPF

---

FROM: 74744511
TO: COL- Units B3/B4
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 06/03/2026 10:23:26 AM

To: Case Manager & Unit Manager
Inmate Work Assignment: N/A

Good Morning,

I arrived here at Coleman-Low on May 4th, 2026. I'm now coming up on 30 days, and I understand that I will soon have my first team. I wanted to provide an electronic and documented message regarding the matter below in the hopes that this can come up during my team, or if you can respond me in other manner that would be fine too.

I self-surrendered, and the day I arrived I was put in SHU where I stayed for 8 days. Prior that, during an intake interview I was asked if I had any drug/substance history, if I had any family problems and if I had any history of violence, and I answered in the negative to all of those questions. I was then put in SHU, which was confusing because no one ever told me that there was an investigation, nor was I told that I was going to be put in a disciplinary unit or location.

For the entire week, I asked every day to the guards in SHU why I was there, and all of them gave me no response or ignored me. There was even an officer who saw during intake and later when he saw me in the SHU he asked me "why are you here?!" and I told him I did not know why. I was given little to no clothes for days nor was I given amenities for hygiene or medication. On the 8th day, three officers came to my SHU cell and told me that I was "going home," and then I was put in a holding cell, and after one hour they took me back to the SHU. Then later they finally took me out of the SHU and brought me to B4 which is my current unit. As of today, I still do not understand why any of this happened. I do not know if there was an investigation, nor do I know why I was put in a disciplinary unit/cell. It was my first day here, and I self-surrendered, so it makes no sense why I was put in SHU in the first place, much less why I was left there for 8 days.

Again, with my first team coming up I plan to bring this up, but I wanted to provide this message prior so that you are aware of this situation and my request for answers.

Thank you for your attention,

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/06/2026 12:32:02 PM

We don't do Orthodontic treatment here, but if you are experiencing pain,discomfort or any dental concern sick call is available: Open dental sick call is Monday, Tuesday, and Thursday at 0730. It is first come, first seen.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, July 2, 2026 1:40 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Dental
Inmate Work Assignment: N/A

I'm in urgent need of dental care because I have braces that need to be adjusted every 15 days. This is due to the fact that I was in a motorcycle accident that resulted in a surgery on my jaw. When I arrived to Coleman-Low I was put in SHU for several days and my braces were broken during that time. Without adequate dental care I'm at risk of losing teeth.

Thank you,

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 07/20/2026 08:46:22 PM

To: Medical
Inmate Work Assignment: N/A

Good Morning/Afternoon,

I'm requesting a paper printout of my medical & dental records going back to when I first arrived here on May 4, 2026. I had a dental appointment a couple weeks after arriving. I need a printout of that and any other medical appointments & callouts for my records.

Thank you,

GILMAR PEREIRA DA SILVA JR.

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 07/31/2026 11:52:21 AM

To: Warden
Inmate Work Assignment: N/A

To the Warden,

I respectfully request your immediate attention to my case. On July 27, 2026, I submitted a BP-9 Administrative Remedy Request regarding an extremely urgent medical matter involving my physical, psychological, and oral health.

I understand that there is an administrative response period for a B-9, however given the seriousness of my medical condition I respectfully ask that my request be reviewed and addressed as soon as possible -- prior to the deadline for an ordinary response -- in order to prevent my condition from worsening and causing irreversible harm.

My purpose in submitting this request is not to create conflict, but to prevent a recognized medical condition from becoming an irreversible injury that could be avoided through timely and appropriate medical care.

I respectfully ask that my BP-9 be given priority and that the necessary steps be taken immediately. I sincerely hope this matter will receive the priority warranted by its seriousness, preventing avoidable harm through prompt and appropriate action by the agency.

Respectfully,

Gilmar Pereira da Silva Jr.

TO THE SPECIAL COUNSEL
U.S. Office of Special Counsel (OSC)

AUGUST 1, 2026

Subject: Urgent request for independent review, institutional protection, referral to the competent authorities, and adoption of appropriate measures in light of the facts described in the Master Statement of Facts

Dear Special Counsel,

My name is Gilmar Pereira da Silva Junior, currently in custody at the Federal Correctional Complex Coleman Low (FCC Coleman Low), Register Number USM 74744-511.

With the utmost respect for the institutions of the United States, I am writing to submit to you this letter together with my Master Statement of Facts and all available supporting documentation, respectfully requesting that the facts described therein be carefully reviewed by this esteemed Office and, if deemed appropriate, referred to the competent authorities for the appropriate action.

The attached documentation presents a chronological, detailed, and substantiated account of the events related to my health condition during my period of incarceration, including medical and dental records, administrative appeals filed, examinations performed, formal requests for specialized care, institutional responses received, and the continuing progression of my clinical condition.

However, the facts described are not limited solely to medical matters.

As described in detail in the attached documentation, since my arrival at FCC Coleman Low I have faced a series of events that, taken together, have caused profound physical, psychological, and emotional suffering.

From the very first days of my custody, I was placed in isolation in the Special Housing Unit (SHU), a circumstance that, as set out in the accompanying documentation, represented one of the most traumatic moments of my entire incarceration. To my understanding, this measure was imposed without adequate justification, producing consequences that remain present to this day.

From that episode onward, my daily routine came to be marked by constant difficulties that profoundly affected my dignity, my health, my emotional stability, and my confidence that my requests would be reviewed impartially.

Over time, as detailed in the Master Statement of Facts, I began to experience repeated denials of requests related to my health, delays in obtaining specialized care, limitations on access to the treatment I needed, administrative obstacles, ongoing suffering, and growing concern over the progression of my clinical condition.

In addition to these difficulties, I report that I was frequently subjected to situations that I understood to be humiliating, degrading, and incompatible with the respect that must be guaranteed to the dignity of any person deprived of liberty.

During this period, I experienced episodes of intense emotional suffering, persistent feelings of insecurity, fear of irreversible deterioration of my health, a progressive loss of hope of obtaining adequate treatment, and constant worry about the future consequences of the lack of specialized care.

The events described have produced effects that go beyond the physical.

My quality of life has deteriorated significantly.

My emotional health has been deeply affected.

My ability to cope with incarceration has progressively diminished.

My expectation of recovery has been replaced by a constant sense of concern about possible permanent after-effects.

According to my account, the combination of the worsening medical condition, the institutional difficulties faced, the repeated denials, the absence of an effective solution, the constant administrative obstacles, and the prolongation of this situation over time has produced extremely significant personal losses and harm that may prove permanent.

The documentation also demonstrates that my dental condition predates my incarceration.

Before entering the custody of the Bureau of Prisons, I underwent reconstructive jaw surgery as a result of a serious motorcycle accident.

For this reason, I required ongoing specialized dental care to preserve the reconstruction that had been performed and to prevent future complications.

As shown in the attached documents, I repeatedly sought to continue this treatment during my period of custody, filing administrative appeals, attending the appointments made available to me, and repeatedly reporting the worsening of my symptoms.

Despite these efforts, I remain deeply concerned about the progression of my clinical condition, the risk of irreversible harm, and the possibility of the permanent loss of important functions related to my oral health.

In light of the totality of the circumstances presented, I respectfully request that this Office consider:

- conducting a complete, independent, objective, and impartial review of all documentation submitted;
- assessing whether the facts described warrant investigation or referral to the competent federal agencies;
- examining whether institutional mechanisms exist that are capable of ensuring adequate protection of my rights;

---

assessing the need to adopt measures aimed at reducing the risk of any retaliation resulting from the submission of this documentation;
taking into account the urgency of the medical situation described;
assessing whether the totality of the facts warrants institutional intervention to ensure adequate medical and dental care;
considering any other legally appropriate measures aimed at protecting my physical and psychological integrity and my rights.
I further request that this situation be considered in light of its humanitarian nature.
According to my account, the suffering described in this documentation continues to occur on a daily basis.
Each new delay, each denial, each difficulty faced, and each day without a solution increases the risk of worsening my state of health and of consolidating after-effects that may be irreversible.
For this reason, I respectfully request that this documentation receive urgent review.
Should the facts presented and the evidence attached be found to be consistent, I request that the appropriate institutional measures be adopted or referred in order to ensure an independent and impartial assessment of the situation.
I also respectfully request that the information contained in this documentation be taken into account by any competent authorities who may in the future review my legal situation, including in the context of any future request for release, insofar as it reflects, according to my account and the documentation submitted, circumstances directly related to the preservation of my health, my dignity, and the need for access to adequate specialized treatment.
My purpose is not to anticipate legal conclusions or to make accusations beyond what can be demonstrated by the attached evidence.
I seek only that the facts be examined independently, objectively, impartially, and transparently, in light of the available evidence, the applicable law, and the fundamental principles protecting human dignity.
I submit this request in absolute good faith, with deep respect for the legal system of the United States and for the important role played by the U.S. Office of Special Counsel in protecting legality, institutional integrity, the public interest, and the rights guaranteed by law.
I sincerely thank you for your attention, for the time devoted to reviewing this documentation, and for any consideration that may be given to my case.
Respectfully,

Gilmar Pereira da Silva Junior
USM No. 74744-511
Federal Correctional Complex Coleman Low

AUGUST 1, 2026

August 1, 2026
Office of the Attorney General of the United States
U.S. Department of Justice (DOJ)
Attn: Civil Rights Division Special Litigation Section
950 Pennsylvania Avenue NW, Washington, DC 20530, USA
Re: Formal Complaint Medical/Dental Neglect and Possible Violation of Constitutional Rights at the Federal Correctional Complex Coleman Low (BOP)
Dear Mr./Madam Attorney General,
I am writing to you and to the United States Department of Justice, through the Civil Rights Division, to file a formal complaint regarding facts that occurred at the Federal Correctional Complex Coleman Low (FCC Coleman Low), a facility operated by the Federal Bureau of Prisons (BOP), an agency under this Department's oversight.
The facts described in this complaint may constitute a breach of the duties of custody and care established under 18 U.S.C. § 4042, as well as a possible violation of constitutional guarantees under the Fifth and Eighth Amendments to the United States Constitution, particularly with regard to the prohibition against deliberate indifference to serious medical needs.
Summary of Facts
I am a Brazilian citizen currently in the custody of the Federal Bureau of Prisons (BOP), serving my sentence at the Federal Correctional Complex Coleman Low (FCC Coleman Low), where I arrived on May 4, 2026.
Before my incarceration, I suffered a serious motorcycle accident that required jaw reconstruction surgery, including the implantation of a titanium plate, and the permanent, therapeutic use of an orthodontic appliance, whose periodic maintenance is essential to preserve the stability of the reconstructed bone structure.
Shortly after my arrival at the facility, I was placed in the Special Housing Unit (SHU), where I remained in isolation for approximately eight days, without having, to this day, received a clear administrative justification for that measure, and without any dental care commensurate with the complexity of my clinical condition.
Since then, and to this day, I have repeatedly requested specialized dental treatment, without the necessary treatment being effectively provided. As a result of the interruption of continuous care, I have already lost four teeth, and my clinical condition continues to progressively worsen.
On at least three separate occasions, members of the facility's own dental staff have acknowledged including after the facility performed a panoramic X-ray that my case requires specialized treatment that is not available at FCC Coleman Low, and I was even advised that treatment should be provided urgently outside the institution.
On July 30, 2026, during another dental appointment, I declined to sign a document that, as I understood it, would have recorded that I was refusing the dental recommendations provided which does not reflect reality, since I have never refused treatment and, on the contrary, have continuously sought it since my arrival at the facility.
I fear administrative retaliation, including transfer to another facility, because of my repeated requests for care and the administrative remedies (BP-9) I have already filed, which is why I am also requesting protective measures against any possible reprisals.
Requests
In light of the foregoing, and within the Department of Justice's and the Attorney General's legal authority, I respectfully request:

---

That a formal investigation be opened into the facts reported, regarding the alleged medical/dental neglect occurring at FCC Coleman Low;

That the possible violation of constitutional rights protected under the Fifth and Eighth Amendments be assessed, in light of the deliberate indifference standard as applied to serious medical needs;

That this complaint be referred to the Office of Inspector General (DOJ-OIG) and, if applicable, to the Office of Special Counsel (OSC), for independent administrative investigation;

That urgent action be directed to the Federal Bureau of Prisons so that I am provided, without further delay, the specialized dental treatment already deemed necessary by the facility's own dental staff;

That protective measures be adopted against any administrative retaliation or facility transfer resulting from the administrative remedies (BP-9) and requests for assistance I have already filed;

Guidance on the procedures applicable under the Federal Tort Claims Act (FTCA) and the Prison Litigation Reform Act (PLRA) for potential civil liability for the harm already suffered;

That this complaint be handled with the urgency the situation requires, given the risk of irreversible worsening of my health condition.

Closing Remarks

I remain fully available to this Office and the Department of Justice to provide any clarification and additional documentation necessary for the investigation of this complaint.

I look forward to your response and thank you in advance for your attention to this request.

Respectfully,

Gilmar Pereira da Silva Junior
[BOP Register Number]

Enclosures

Master Statement of Facts, in full;
Copies of administrative remedy forms BP-9, BP-10, and/or BP-11, where available;
Relevant medical and dental records, where available;

TO THE ATTORNEY GENERAL OF THE UNITED STATES
AND TO THE INSPECTOR GENERAL OF THE U.S. DEPARTMENT OF JUSTICE OFFICE OF INSPECTOR GENERAL
Subject: Request for urgent review, protection, institutional referral, and appropriate action regarding the facts described in the Master Statement of Facts

Dear Sir or Madam,

My name is Gilmar Pereira da Silva Junior, currently in custody at the Federal Correctional Complex Coleman Low (FCC Coleman Low), Register Number USM 74744-511.

With the utmost respect, I am submitting to you my Master Statement of Facts, together with the documents referenced therein, so that the facts described may be known and reviewed by the competent authorities.

The statement presents, in chronological and documented form, the events related to my health condition during my period of incarceration, including my medical condition prior to entering the custody of the Federal Bureau of Prisons, my repeated requests for specialized dental care, the administrative appeals filed, the appointments provided, the medical and dental examinations performed, and the progression of my clinical condition.

Before my incarceration, I had already undergone reconstructive jaw surgery as a result of a serious motorcycle accident, and as a result required ongoing specialized dental follow-up care.

As described in the attached documentation, I have been seeking the continuation of this treatment since my arrival at FCC Coleman Low. I also filed an Administrative Remedy Request (BP-9), the outcome of which I am still awaiting.

Although I am using the administrative mechanisms available to me, I am deeply concerned that my health condition continues to progress while this procedure remains pending. Given the urgency I attribute to my clinical condition, I considered it necessary to submit this documentation directly to the Department of Justice and to the Department of Justice Office of Inspector General, so that they may be aware of the situation while the administrative procedure is still pending.

The Special Housing Unit (SHU) Episode

I consider it necessary to report, with due emphasis, an episode that, in my understanding, is directly related to the overall facts presented in this letter. On my very first day at FCC Coleman Low, I was placed in the Special Housing Unit (SHU), where I remained for 8 days, without ever having been given an adequate justification for this measure to this day.

According to my account, this episode remains unexplained to this day. When I raised the matter with the administration, I was told, by both the Unit Manager and the Case Manager responsible for my unit, that the matter "no longer matters," that it "is in the past," and that I should simply forget what I experienced during those 8 days. I respectfully understand that this institutional response, in addition to failing to clarify the reasons for the measure, reflects a lack of interest in properly investigating what occurred.

I further report that, during appointments with the unit's psychology staff, the professionals responsible for my care acknowledged, in conversation with me, that my placement in the SHU had resulted from an error. I understand that these appointments were recorded by audio and video cameras in the rooms where they took place, and that such recordings may confirm the content of these conversations. Despite this verbal acknowledgment, I have not received, to date, any effective remedial measure, formal clarification, or additional support as a result of this finding.

Pattern of Institutional Treatment

In addition to the SHU episode, I report that, throughout my entire period in custody at FCC Coleman Low, I have faced a recurring pattern of difficulties that, taken together, have profoundly affected my physical and emotional health, my dignity, and my confidence in the internal protection mechanisms.

Among these facts, I report: repeated denials of requests related to my health and other legitimate needs; recurring delays in the review of and response to administrative requests; episodes in which I was subjected to shouting and forms of communication that I consider incompatible with the respectful treatment owed to any person in custody; situations that I understood to be discriminatory; and moments in which I felt humiliated or embarrassed in the course of my daily activities.

I understand that each of these episodes, taken individually, would already merit attention. Taken together, and added to the SHU episode and the difficulties related to my dental treatment, I understand that they constitute an ongoing pattern of suffering that continues to this day..

Impact on My Daily Life and Health Condition

As a direct consequence of these events, my daily life remains extremely difficult. My physical and emotional condition is in continuous decline, and I have well-founded concern that some of the harm already suffered may be irreversible. Living daily in this environment has caused me constant suffering, ongoing insecurity, and the sense that my rights and my dignity have not been duly respected.

Requests to This Department

I respectfully request that, within the legal authority of your respective offices, you consider:

carefully reviewing the documentation submitted, including the facts relating to the SHU and the pattern of institutional

---

treatment described;

assessing the need to refer the case to the competent units for investigation;

taking into account the urgency of the medical situation described in the documentation;

assessing the need to adopt measures to ensure that my clinical condition is examined by the competent medical authorities;

considering, if deemed appropriate, measures aimed at reducing the risk of any retaliation or other consequences resulting from the submission of this documentation;

directing or referring the case through the appropriate institutional channels, in accordance with the legal authority of each agency;

adopting, recommending, or facilitating any legally appropriate measures that may contribute to a proper review of the facts presented, including with respect to the preservation of any audio and video recordings mentioned in this letter.

My purpose is not to anticipate legal conclusions or to assign responsibility before a proper investigation has taken place. I seek only to ensure that the facts described in the Master Statement of Facts are known, reviewed impartially, and considered together with my medical and dental records, imaging studies, administrative records, communications made through TRULINCS, and the other documents accompanying this letter.

Finally, I respectfully request that this documentation, once reviewed by your offices, also be brought, through legally appropriate means, to the attention of the judicial authority presiding over my case, so that she may have complete information about the facts reported here when reviewing any future request related to my legal situation.

I submit this request in good faith, with absolute respect for the rule of law, the Constitution of the United States, and the institutions responsible for oversight, enforcement, and the application of the law.

I sincerely thank you for your attention and for the time devoted to reviewing this documentation.

Respectfully,

Gilmar Pereira da Silva Junior
USM No. 74744-511
Federal Correctional Complex Coleman Low

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Warden LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/04/2026 08:52:01 AM

Pereira,

Did you go to sick call this morning and if not when was the last time you went to sick call?

Also you can address your concerns with Medical Leadership at mainline M, T, Th, F.

In addition they have open house for medical to address your concerns during mainline every Thursday.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Friday, July 31, 2026 3:52 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Warden
Inmate Work Assignment: N/A

To the Warden,

I respectfully request your immediate attention to my case. On July 27, 2026, I submitted a BP-9 Administrative Remedy Request regarding an extremely urgent medical matter involving my physical, psychological, and oral health.

I understand that there is an administrative response period for a B-9, however given the seriousness of my medical condition I respectfully ask that my request be reviewed and addressed as soon as possible -- prior to the deadline for an ordinary response -- in order to prevent my condition from worsening and causing irreversible harm.

My purpose in submitting this request is not to create conflict, but to prevent a recognized medical condition from becoming an irreversible injury that could be avoided through timely and appropriate medical care.

I respectfully ask that my BP-9 be given priority and that the necessary steps be taken immediately. I sincerely hope this matter will receive the priority warranted by its seriousness, preventing avoidable harm through prompt and appropriate action by the agency.

Respectfully,

Gilmar Pereira da Silva Jr.

[signature]

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/05/2026 12:52:26 PM

To: MEDICAL
Inmate Work Assignment: N/A

PLEASE, I NEED A PAPER PRINTOUT OF MY MEDICAL & DENTAL RECORDS GOING BACK TO WHEN I FIRST ARRIVED HERE ON MAY 4, 2026.
I NEED A PRINTOUT OF THAT AND ANY ORTHER MEDICAL APPOIMENTS & CALLOUTS FOR MY RECORDS.

THANK YOU,
GILMAR PEREIRA DA SILVA JR.
#74744-511
FCC COLEMAN LOW - B4

---

FROM: 74744511
TO: Food Service
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 01:48:06 PM

To: GENERAL - FOOD SERVICES
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECTC: Request for appropriate Diet, my treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident. Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Dear Food Services Staff,

I respectfully request that my dietary needs be reviewed in light on my medical condition.

Because of my jaw condition, tooth loss, and increasing difficulty chewing, I have increasing difficulty eating regular meals.

Please review my situation and advise whether a modified diet can be provided while my medical condition continues.

Thank you so much for your consideration,

Gilmar Pereira da Silva Jr.
Reg.: Number: 74744-511
FCC COLEMAN LOW

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Psychology Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 05:00:39 PM

To: PSYCHOLOGY - GENERAL
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECT: REQUEST FOR URGENT ASSISTENCE or WHAT PROCEDURE i SHOULD FOLLOW TO PROTECT MY HEALTH

Dear Psychology Services Staff,

My treatment requires specialized follow-up because of my reconstructed jaw after serious motorcycle accident. Although I have been evaluated by Dental Services. I still have not received a solution for the treatment that has been discussed.

I am requesting urgent help. The situation related to my dental treatment, resulting from mandibular reconstruction after a motorcycle accident, has been causing me growing psychological distress. The pain, tooth loss, difficulty eating, and uncertainly about the continuation of my treatment have significantly affected my emotional well-being.

I request urgent attention so that this matter can also be addressed and monitored.

Thank you so much for your attention.

Gilmar Pereira da Silva Jr.
Reg.: Number: 74744-511
FCC COLEMAN LOW

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 09:41:36 AM

To: GENERAL WARDEN
Inmate Work Assignment: Gilmar Pereira da Silva

Dear Warden,

I am respectfully requesting your urgent attention to my case once again. Dental low has already stated that there is no Orthodontic Specialist available to treat my condition, and Program Statement P6400.03 - Dental Services itself confirms that this type of specialized treatment is not offered at this facility. I must reinforce that my Orthodontic appliance can not be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction with a titanium plate.

I have already attended Sick Call and was seen, but without any resolution to the main problem. I respectfully ask what I should do given this situation. I also remind you that I previously sent a message requesting urgent attention to my BP-9, and I received a response that dis not address the issue reported, an issue that can not wait any longer.

I request effective actions and than you so much for your attention,

Respectfully,
Gilmar Pereira da Silva Jr.
Reg. Number.: 74744-511
FCC COLEMAN LOW

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 11:21:44 AM

To: DENTAL LOW - GENERAL
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECTD: My treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident, Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Dear Dental Low Staff,

I am requesting guidance on what on steps I should take to continue my specialized dental treatment or what procedure I should follow to protect my health,related to the reconstruction if my jaw following a motorcycle accident, which included the placement of a titanium plate and the use an orthodontic appliance.

Dental Low has already stated that there is no orthodontic specialist available to treat my condition, and Program Statement P6400.03 - Dental Services itself confirms that this type of specialized treatment is not at this BOP.

I must reinforce that my orthodontic appliance cannot be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction whit a titanium plate.

I have already attended Sick Call and was seen, but without any resolution to the main problem. I respectfully ask what I should do given my situation.

I must emphasize that my suffering is increasing every day this treatment remains unaddressed: I have already lost four teeth, the appliance is damaged, and I am having difficulty eating. I urgently request clear guidance on the next steps to my treatment.

Thank you so much for your attention,

Gilmar Pereira da Silva Jr.
Reg. Number: 74744-511
FCC COLEMAN LOW

---

FROM: 74744511
TO: Food Service
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 01:48:06 PM

To: GENERAL - FOOD SERVICES
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECTC: Request for appropriate Diet, my treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident. Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Dear Food Services Staff,

I respectfully request that my dietary needs be reviewed in light on my medical condition.

Because of my jaw condition, tooth loss, and increasing difficulty chewing, I have increasing difficulty eating regular meals.

Please review my situation and advise whether a modified diet can be provided while my medical condition continues.

Thank you so much for your consideration,

Gilmar Pereira da Silva Jr.
Reg.: Number: 74744-511
FCC COLEMAN LOW

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 05:13:10 PM

To: HEALYH SERVICES - GENERAL
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECT: REQUEST FOR MY MEDICAL ASSISTENCE

Dear Health Services Staff,

I respectfully request your assistance regarding my medical and dental conduction.

My treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident. Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Please advise what additional medical steps can be taken to protect my health and help prevent further deterioration of my condition.

I have submited Sick Call request and attended Dental appoiments.

I must reinforce that my orthodontic appliance cannot be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction with a titanium plate.

Thank you so much for your consideration.

Gilmar Pereira da Silva Jr.
Reg.: Number: 74744-511
FCC COLEMAN LOW

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/10/2026 04:40:35 PM

To: Medical Records
Inmate Work Assignment: N/A

URGENT REQUEST: COMPLETE REVIEW AND RELEASE OF MY MEDICAL AND DENTAL RECORDS

Dear Health Services/Medical Records Staff,

I respectfully request an URGENT and complete review of my Medical and Dental Records, because the records previously provided to me appear to be incomplete. The documents I received are missing certain diagnoses, portions of my medical and dental history, and other information, and several sections contain blank or incomplete fields.

I am not asking the Medical Department to create documents that do not exist. Rather, I am formally requesting that my medical, dental, clinical and related records be thoroughly reviewed in all applicable systems and files so that I may receive a complete and accurate copy of the records that actually exist concerning my care.

Please specifically review and provide, to the extent these records exist:

1. My initial medical evaluation upon arrival at FCC Coleman Low, including my complete intake medical assessment, medical history, diagnoses, complaints, examinations, findings and treatment or medical recommendations documented at the time;

2. All medical records relating to the period during which I was confined in the Special Housing Unit (SHU), including medical evaluations, sick-call requests, medical complaints, encounters, diagnoses, medications, clinical observations, treatment, referrals, and any other medical documentation generated during that period.

3. All medical evaluations performed after I was released from the SHU and transferred to Housing Unit B4, including any medical assessment, examination, complaint, diagnosis, or clinical note created at or around that time;

4. My complete Dental Services records, including my initial dental evaluation, dental history, diagnoses, examinations, treatment, procedures, progress notes, and other dental records;

5. The initial evaluation of my orthodontic condition and orthodontic appliance, including any documentation concerning the condition of my braces/appliance, teeth, prior orthodontic treatment, dental history, diagnosis, or evaluation performed when I arrived at the institution;

6. The panoramic X-ray that was performed, together with the corresponding radiology report, interpretation, or dental report;

7. Any dental evaluation or clinical documentation describing my condition based upon the panoramic X-ray, including the name and signature or identification of the dental professional responsible;

8. All medical records concerning requests or encounters with General Medicine / Primary Care, including requests that I submitted for general medical evaluation;

9. All records concerning requests, referrals, appointments, or evaluations involving Ophthalmology, Orthopedics, Psychology/Mental Health, and any other medical or clinical specialty that I requested, was referred to, or was evaluated by;

10. All electronic messages that I sent through TRULINCS concerning my medical or dental care, not only messages sent to the Dental Department, but also messages concerning or directed to General Medicine, physicians, Ophthalmology, Orthopedics, Psychology/Mental Health, Dental Services, and any other Health Services Department;

11. Any responses, referrals, appointments, medical encounters, or clinical notes generated as a result of those TRULINCS requests or messages, to the extent such records exist;

12. All diagnoses, medical histories, examination results, laboratory or imaging records, clinical notes, consultations, referrals, prescriptions, treatments, evaluations, and other records that are part of my Medical and Dental Records but were not included

---

in the records previously provided to me.

I also respectfully request that the Medical Records Department compare the records previously provided to me against the records currently maintained in the applicable medical, dental, and electronic systems, in order to determine whether any pages, diagnoses, examinations, imaging studies, reports, clinical notes, histories, or other records were omitted from the copy I previously received.

If any requested record cannot be provided, I respectfully ask that I be informed specifically whether the record:

*does not exist;
*could not be located;
*is maintained in another medical, dental, or institutional system or department;
*or is subject to a specific review or restriction before disclosure.

This request is particularly important because I am attempting to maintain a complete and accurate record of my medical and dental history during my confinement at FCC Coleman Low, especially concerning the events surrounding my confinement in the SHU and the medical and dental care provided before, during, and after that period.

Accordingly, please treat this message as my formal request for a complete review and release of my existing Medical and Dental Records relating to my care.

I respectfully ask that the Medical Records Department carefully review all applicable records and systems before responding so that I may receive the most complete copy of my existing medical and dental records possible.

I would greatly appreciate the promptest possible response and processing of this request, given the importance of these records to my ongoing medical and dental care and to maintaining an accurate history of my treatment. I would also appreciate receiving a written response to this most urgent request.

Respectfully,

Gilmar Perreira da Silva Jr.
Register No. 74744-511

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/11/2026 09:25:47 PM

To: Warden (BP-9 Follow Up)
Inmate Work Assignment: N/A

FORMAL AND URGENT REQUEST - THIRD REQUEST FOR RESPONSE TO BP-9

Dear Warden,

I respectfully submit this message as my THIRD FORMAL REQUEST for a response to my BP-9, which I submitted on July 20, 2026, for processing under the Federal Bureau of Prisons Administrative Remedy Program.

Since submitting my BP-9, I have been waiting for the Warden's formal response. As of today, August 11, 2026, I have not received the Warden's decision or response to my BP-9, and I have not received any written notification informing me that an extension of time was necessary to respond to my request.

I respectfully ask that the status of my BP-9 be reviewed immediately and that I be provided with the formal response to my administrative remedy.

ADMINISTRATIVE REMEDY RESPONSE TIME

I respectfully bring attention 28 C.F.R. Sec. 542.18, which establishes the response periods applicable to requests and appeals under the Administrative Remedy Program.

I understand that, once a Request or Appeal is accepted and logged into the Administrative Remedy Index, the Warden generally has 20 calendar days to provide a written response.

The regulation also provides for an extension of the response period under certain circumstances, but the inmate is to be informed in writing of such an extension.

As of today, I have not received any written notice informing me that the Warden requires or has granted an extension of time to respond to my BP-9.

I therefore respectfully request that the status of my BP-9 be verified and that the formal response be provided to me as soon as possible.

EXTREME URGENCY OF MY REQUEST

I respectfully ask that you understand that this is not an ordinary administrative request.

The matters described in my BP-9 concern circumstances that, according to my personal experience and the facts I reported, have had serious consequences for my physical health, dental condition, emotional well-being, and overall ability to function during my confinement.

I have repeatedly sought assistance.

I have requested help from different institutional departments and staff members.

I have used the administrative channels available to me.

I have repeatedly requested assistance and explanations.

I continue to pursue an institutional resolution through the procedures established by the Bureau of Prisons.

For these reasons, the continued absence of a response is causing me substantial concern because I remain without a formal determination regarding the issues raised in my BP-9.

---

I am not asking for special treatment.

I am asking for my administrative remedy to be reviewed and for the formal response required under the Administrative Remedy Program to be provided to me.

MY GOOD-FAITH EFFORT TO CONTINUE THE ADMINISTRATIVE PROCESS

On August 10, 2026, I also contacted my Unit Counselor J. Toro and requested a BP-10 because I intend to continue through the Administrative Remedy Program and do want there to be any misunderstanding that I have voluntarily failed to pursue any administrative step.

I was informed that I would have to wait for the Warden to return the BP-9 before the BP-10 could be provided to me.

I am therefore submitting this message to formally document that I am actively attempting to continue the administrative remedy process and that I am not voluntarily refusing, abandoning, or bypassing the administrative procedure.

My intention is to comply fully with all applicable administrative requirements.

FORMAL REQUEST

Accordingly, I respectfully request:

1. That the status of my BP-9 submitted on July 20, 2026 be immediately reviewed;
2. That the date on which my BP-9 was actually logged into the Administrative Remedy Index be confirmed;
3. That I be provided with the Warden's formal written response to my BP-9;
4. If an extension of time has been granted or is being claimed, that I be informed in writing of the extension and the new anticipated response date;
5. That, given the urgent nature of the issues raised in my BP-9, my request be treated with the highest practicable priority;
6. That it be documented that this is my THIRD REQUEST for a response to my BP-9;
7. That it be documented that, on August 10, 2026, I contacted Counselor J. Toro to request a BP-10 and expressly demonstrated my intention to continue the Administrative Remedy Program;
8. That no administrative delay be attributed to me because I am actively seeking a response and attempting to continue the administrative process;
9. That I receive a written response to this request.

I respectfully ask that Warden to consider the seriousness and urgency of the matters raised in my BP-9 and the continuing impact that these circumstances are having on my health and daily life within the institution.

I am not seeking conflict with the administration. I am seeking an institutional, documented, and appropriate resolution of matters that I believe are extremely important to my health, well-being, and legal rights.

Thank you for your attention to this matter. I respectfully await the formal response to my BP-9.

Respectfully,

Gilmar Pereira da Silva Jr.
Register No. 74744-511
FCC Coleman Low

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 07:46:52 PM

To: NO RESPONSE TO BP-9 - MESSAGE 1
Inmate Work Assignment: Gilmar Pereira Da Silva

FOURTH FORMAL AND URGENT REQUEST TO THE WARDEN

NO RESPONSE TO BP-9 - MEDICAL AND DENTAL EMERGENCY - EVIDENCE PRESERVATION - ACCESS TO RECORDS - PROTECTION FROM RETALIATION - REQUEST FOR IMMEDIATE ACTION

Date: August 16, 2026

TO: Warden - Federal Correction Complex, Coleman-Low

FROM: Gilmar Pereira da Silva Junior
BOP Register No. 74744-511
Unit: B4
Case No. 8:25-CR-144-KKM-SPF
United States District Judge: Katheryn Kimball Mizelle

SUBJECT: FOURTH FORMAL AND URGENT REQUEST: THREE PRIOR REQUESTS WITHOUT RESPONSE, PROGRESSIVE DETERIORATION OF MY HEALTH, LACK OF SPECIALIZED DENTAL TREATMENT, LACK OF RESPONSE FROM INSTITUTIONAL DEPARTMENTS, AND REQUEST FOR IMMEDIATE INTERVENTION

WARDEN:

I am sending this communication through TRULINCS FOR THE FOURTH TIME, after already submitting three prior urgent requests asking you to become directly aware of my situation, give special attention to my BP-9, and take immediate action to protect my health and address the problems I have been experiencing at FCC Coleman Low.

To date, I have not received an effective response, guidance, concrete intervention, or meaningful assistance that was resolved my situation.

This fourth communication therefore serves two purposes:

1. to request immediate intervention; and
2. to create a clear, contemporaneous formal record that I have repeatedly sought assistance through available institutional channels while my condition continues to deteriorate.

I am not sending this message for convenience.

I am sending it because I have repeatedly sought help and still have not received an adequate solution.

I. MY MEDICAL AND DENTAL CONDITION REQUIRES URGENT ATTENTION

When I entered FCC Coleman Low on May 4, 2026, I already had a complex medical and dental condition resulting from a serious motorcycle accident. I suffered a fractured jaw and underwent reconstructive mandibular treatment which has a therapeutic purpose. I do not use orthodontic treatment for cosmetic reasons.

Before incarceration, I required specialized follow-up and periodic maintenance.

My MASTER STATEMENT OF FACTS documents this pre-existing condition and the need for continued treatment.

During approximately right days in the Special Housing Unit (SHU), from May 4 through May 11, 2026, my orthodontic appliance was damaged.

---

On May 6, I noticed that the wire had broken and that my teeth had become mobile.

I repeatedly requested help.

On May 7, I lost teeth and continued requesting medical, dental and medication assistance.

These events are documented chronologically in my MASTER STATEMENT OF THE FACTS.

After leaving the SHU, my condition was not resolved.

Over the following months, my condition continued to deteriorate. I have now lost four teeth, my orthodontic appliance remains broken, I have difficulty chewing, and I remain constantly concerned about protecting my reconstructed jaw.

II. BOP'S OWN POLICY RECOGNIZES THAT ORTHODONTICS IS NOT WITHIN THE NORMAL SCOPE OF BOP DENTAL SERVICES

There is an especially important issue in my case.

BOP's own Program Statement P6400.03 ("Patient Care") states that orthodontic treatment is not within the normal scope of Bureau of Prisons dental services.

BOP's official BP-A1041: Consent for Removal of Orthodontic Appliances, prescribed by P6400, also states that orthodontic treatment is not routinely within the scope of BOP Dental Services (BOP).

However, the same BOP policy provides that when dental services require specialist assistance, arrangements may be made for specialist care through the applicable approval process (BOP).

Therefore my question is direct:

If FCC Coleman Low does not have the specialist required to treat my condition, what procedure is BOP using to ensure that I receive the specialized treatment necessary to protect my reconstructed jaw and remaining teeth?

Simply telling me that the specialist is not available is not an adequate solution.

BOP policy itself provides a mechanism for situations requiring specialist assistance.

I therefore request a formal written response explaining what action will be taken.

III. BOP'S OWN PANORAMIC X-RAY DOCUMENTS MY CONDITION

FCC Coleman Low performed a panoramic X-ray as part of my dental care.

During my dental appointments, I was informed that my condition was complex and required specialized treatment that was not available at this institution.

Only July 30, 2026, I again reported:

*my broken orthodontic appliance;
*the loss of four teeth;
*my concern regarding my reconstructed jaw;
*and my need for specialized treatment.

I asked that the panoramic X-ray already maintained in BOP records be reviewed.

As I observed during the appointment, it was not reviewed.

During that same appointment, I was again informed that the specialized treatment required for my condition was not available at FCC Coleman Low and, as I understood it, that treatment should urgently be provided outside the institution.

---

I request that the X-ray and all records relating to it are immediately located, preserved, and included in the review of my case.

IV. I AM NOT REFUSING TREATMENT

I want to make this absolutely clear:

I AM NOT REFUSING TREATMENT.

Since the first day I arrived at FCC Coleman Low, I have requested treatment.

During the July 30, 2026 appointment, I was presented with a document which, as I understood it, stated that I was refusing dental recommendations.

I did not sign that document because that statement was not accurate.

I want treatment.

I have repeatedly requested treatment.

My MASTER STATEMENT OF THE FACTS specifically documents this event.

V. I HAVE SOUGHT HELP FROM EVERY AVAILABLE DEPARTMENT

My situation has not been reported only to the Warden.

I have repeatedly sought assistance from:

HEALTH SERVICES LOW

I have sent messages requesting assistance.

I have not received an effective response resolving my situation.

DENTAL LOW

I have sent messages.

I have also appeared there personally.

On August 13, 2026, I personally went to Dental Low to deliver another urgent request for assistance and relief concerning my treatment.

At that time, I was informed that Dental Low had instructed the receptionist not to accept further formal complaints of this nature.

I request that this incident be formally documented and clarified.

PSYCHOLOGY

I have also requested assistance from Psychology and personally went to that department.

I have not received an effective solution.

FOOD SERVICES

I have also sent requests concerning Food Services.

I have not received an effective response.

---

WARDEN

I have already sent three prior requests.

I am now sending the FOURTH FORMAL AND URGENT REQUEST.

I still have no adequate solution.

VI. FORMAL QUESTION TO THE WARDEN

Given all of this, I formally ask:

WHO CAN HELP ME IF I HAVE ALREADY CONTACTED THE RESPONSIBLE DEPARTMENTS AND CONTINUE TO RECEIVE NO RESPONSE OR SOLUTION?

I have attempted to use the internal procedures.

I have sent messages.

I have personally gone to departments.

I have filed Administrative Remedies.

I have requested medical and dental care.

I have requested assistance from the Warden.

And I still do not have an adequate solution.

If my situation continues without a response, I will have to seek assistance through all lawful external channels available to me, including my defense counsel, the federal court handling my case, appropriate federal oversight authorities, and other authorities with jurisdiction.

VII. FOURTH REQUEST FOR A RESPONSE TO MY BP-9

I have already submitted three prior TRULINCS requests asking the Warden to give special attention to my BP-9.

I have received no response.

I also have not been informed that any extension of time was required to respond to my BP-9.

Under 28 C.F.R. Sec. 542.18, once an Administrative Remedy Request is accepted and logged, the Warden generally has 20 calendar days to respond. When a request is determined to be an emergency threatening an inmate's immediate health or welfare, the regulation requires a response by the third calendar day after filing.

The regulation allows one 20-day extension at the institution level, but staff must inform the inmate of the extension in writing.

The same regulation provides that if an inmate does not receive a response within the applicable period, including any extension, the inmate may consider the absence of a response a denial at that level.

Therefore I formally request:

1. My BP-9 Remedy ID/number;
2. date received;
3. date logged;
4. current status;
5. whether it was accepted or rejected;
6. who is responsible for the response;
7. applicable response deadline;

---

8. whether an extension exists;
9. if an extension exists, when I was notified;
10. the new deadline.

I request a written response.

VIII. I DO NOT WANT THE LACK OF A RESPONSE USED AGAINST ME

I am attempting to comply with the administrative remedy procedure.

I therefore request that it not later be stated that I simply failed to use available administrative remedies.

I am using them.

I am documenting my attempts.

I requested a response three times.

I am now requesting it for the fourth time.

If the applicable response period has expired, I also request written guidance regarding the next available administrative step, including the BP-10.

BOP regulations provide that the BP-10 is the appeal to the Regional Director and that failure to receive a response within the applicable period may be treated as a denial at that level.

IX. TRULINCS FORMAL RECORD OF MY REQUESTS

BOP officially identifies TRULINCS as the electronic messaging system used at Bureau of Prisons institutions, including electronic communication with staff through the functions available at the institution. BOP also states that these messages are monitored and that the system has a 13,000-character limit (BOP).

I am not claiming that a TRULINCS message replaces a BP-9, BP-10, or BP-11.

I am requesting that my messages be treated and preserved as contemporaneous records of the notices I provided to the administration and the requests for assistance I made.

I therefore request preservation of all my TRULINCS messages concerning:

*the Warden;
*Health Services;
*Dental;
*Psychology;
*Food Services;
*Commissary;
*Unit Team;
*BP-9;
*and all other matters related to my health and the facts described herein.

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 08:55:01 PM

To: NO RESPONSE TO BP-9 - MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

X. IMMEDIATE PRESERVATION OF EVIDENCE

I formally request preservation of all evidence relating to my case, including:

*medical records;
*dental records;
*panoramic X-ray;
*images and examinations;
*dental evaluations;
*records concerning the four lost teeth;
*records concerning my orthdontic appliance;
*records concerning my mandibular reconstruction;
*TRULINCS;
*BP-8;
*BP-9;
*BP-10;
*BP-11;
*SENTRY records;
*SHU records;
*records concerning cells 130 and 129;
*movement records;
*staff schedules and logs;
*internal communications;
*video recordings;
*audio recordings, if any;
*July 30, 2026 dental records;
*records concerning my August 13, 2026 visit to Dental Low;
*and all other records relating to my case.

My MASTER STATEMENT OF THE FACTS already formally requests preservation of these materials.

XI. REQUEST FOR ALL MEDICAL AND DENTAL RECORDS

I have requested my records from Health Services Low three times.

However, the records I received appear to be incomplete.

Among the information I could not locate are records concerning the panoramic X-ray performed by the BOP, as well as TRULINCS communications relating to my treatment.

Under 5 U.S.C. Section 552a(d), subject to applicable legal exemptions, an individual may request access to records about himself maintained in a system of records and obtain copies of such records.

I therefore formally request copies of all records legally accesible to me, including:

*panoramic X-ray;
*interpretation/report of the X-ray;
*dental notes;
*evaluations;
*diagnoses;
*referrals;

---

*recommendations;
*records concerning my appliance;
*records concerning my four lost teeth;
*records concerning the need for a specialist;
*treatment records;
*and all other records concerning my condition.

If any record is lawfully withheld or redacted, I request written identification of what record was withheld, the legal basis for withholding it, and what review or appeal procedure is available, when applicable.

XII. MY INSTITUTIONAL RECORD SHOULD REFLECT MY REPEATED ATTEMPTS TO OBTAIN HELP

I request that all of my requests, communications, referrals, responses, decisions, and actions concerning this matter be properly documented.

I do not want my future institutional record to state that I failed to seek assistance.

I AM REPEATEDLY SEEKING ASSISTANCE.

I request that this fact be preserved in the appropriate institutional records.

XIII. PROTECTION AGAINST RETALIATION

I formally request protection against any form of retaliation arising from my exercise of my rights.

This includes, to the extent protected by applicable law:

*retaliation;
*threats;
*improper disciplinary action;
*interference with Administrative Remedies;
*interference with communication with my defense counsel;
*interference with access to courts;
*retaliatory transfer;
*retaliatory classification changes;
*or any other adverse action motivated by my complaints, requests for medical or dental care, or efforts to seek judicial review.

I am using available procedures.

I am not refusing to follow institutional rules.

I am attempting to obtain assistance and protection.

XIV. REQUEST FOR OFFICIAL NOTICE OF DECISIONS AFFECTING ME

I request that any significant decision directly affecting:

*my custody;
*my classification;
*medical treatment;
*dental treatment;
*access to Administrative Remedies;
*communication with defense counsel;
*transfer;
*or other rights directly related to my situation

be officially documented.

To the extent legally and operationally possible, I request notice stating:

---

*what decision was made;
*who made it;
*when it was made;
*the basis for the decision;
*what procedure was used;
*and what review or appeal mechanism was available.

XV. COPY CARD AND ACCESS TO COURTS

I have also reported another problem through TRULINCS.

For approximately two consecutive weeks, Commissary has reportedly had no Copy Cards available for purchase.

I sent a message requesting assistance.

I also personally went to Commissary.

I was unable to obtain an adequate solution.

This is particularly concerning because I am currently preparing administrative and judicial documents.

I understand that there is not necessarily an unlimited constitutional right to free copies.

However, meaningful access to the courts is constitutionally protected. I therefore request that, while Copy Cards are unavailable, the institution provide a lawful and reasonable method for obtaining the copies necessary for my legal documents, whether through the Law Library, Unit Team, or other appropriate institutional procedure.

I request a temporary solution while the item remains unavailable.

XVI. URGENT MEDICAL AND DENTAL EVALUATION

I request an immediate and complete evaluation of my condition, considering:

*prior accident;
*mandibular reconstruction;
*titanium plate;
*orthodontic appliance;
*broken appliance;
*four lost teeth;
*difficulty chewing;
*panoramic X-ray;
*prior dental history;
*FCC Coleman Low dental appointments;
*July 30 appointment;
*August 13 request;
*and all other existing records.

I request written answers to the following:

1. What is my current diagnosis?

2. What is the current condition of my reconstructed jaw?

3. What is the current condition of my orthodontic appliance?

4. What treatment is medically necessary?

5. What specialist is required?

---

6. Is that specialist available at FCC Coleman Low?

7. If not, what procedure will be used to obtain the specialist?

8. Is there a risk of additional permanent injury from continued delay?

9. What treatment will be provided immediately while I await any referral?

10. What is the plan to prevent further loss and protect my mandibular reconstruction?

I request that these matters be documented in my medical record.

XVII. REQUEST FOR EVALUATION FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE

I formally request that my circumstances be evaluated, as applicable, under BOP Program Statement 5050.50 and 18 U.S.C. Section 3582(c)(1)(A).

I understand that the Warden does not have the authority to independently modify the sentence imposed by Judge Katheryn Kimball Mizelle.

However, federal law permits, under certain circumstances, a defendant to seek a sentence reduction from the sentencing court based upon extraordinary and compelling reasons, after the applicable administrative requirement is satisfied. The statute provides that a defendant may proceed after exhausting administrative rights or after 30 days from the Warden's receipt of the request, whichever occurs first.

Therefore, I request that this communication be:

1. received;
2. officially recorded;
3. reviewed;
4. processed under the applicable procedure; and
5. answered in writing.

I request consideration of every legally available alternative, including:

*Reduction in Sentence / Compassionate Release
*Home Confinement;
*Prerelease Custody;
*or another lawful mechanism that would allow me to receive the specialized treatment I currently cannot adequately receive inside the institution.

If a lawful mechanism exists that would permit me to serve the remainder of my sentence outside the prison environment under conditions determined by the appropriate authorities, I request that possibility be formally evaluated.

My objective is to obtain the specialized treatment I urgently need and, to the extent possible, repair the damage to my health.

I also request that my Assistant Federal Public Defender Ryan J. Maguire receive the information necessary to urgently evaluate this possibility before the sentencing court.

XVII. MY SITUATION IS NOT AN ISOLATED COMPLAINT.

My situation did not begin now.

It began when I entered FCC Coleman Low on May 4, 2026.

I spent approximately eight days in the SHU.

My orthodontic appliance was damaged.

---

I lost teeth.

I requested help.

I continued requesting help.

My condition continued to deteriorate.

I have now lost four teeth.

My appliance remains broken.

I have a reconstructed jaw with a titanium plate.

I have difficulty chewing.

There is a panoramic X-ray performed by BOP.

And I was informed during multiple dental encounters that my condition required specialized treatment that was not available at the institution.

XIX. I CANNOT CONTINUE WAITING

Warden,

I respectfully ask you to understand the seriousness of this situation.

I do not want to wait until additional or permanent damage occurs before action is taken.

I am asking for help now.

I am trying to protect my health now.

I am trying to protect my remaining teeth now.

I am trying to protect my reconstructed jaw now.

And I am attempting to do so through the institutional mechanisms available to me.

XX. IMMEDIATE ACTION REQUESTED.

I respectfully request that the Warden ensure or direct, as appropriate:

1. A formal response to my BP-9;
2. Written information concerning the BP-9 status, number, deadline, and any extension;
3. Written guidance concerning the BP-10 if the applicable response period has expired;
4. Urgent medical and dental evaluation;
5. Review and preservation of the panoramic X-ray;
6. Specialist evaluation of my orthodontic appliance;
7. Referral to a specialist when the required treatment is unavailable at the institution;
8. Preservation of all evidence;

---

9. Preservation of all relevant TRULINC communications;
10. Provision of legally accessible medical and dental records;
11. Official documentation of my August 13, 2026 visit to Dental Low;
12. Responses to requests submitted to Health Services, Dental, Psychology and Food Services;
13. A temporary lawful solution for obtaining necessary legal copies while Copy Cards are unavailable;
14. Protection against retaliation;
15. Official documentation of significant decisions affecting me;
16. Formal evaluation of Reduction in Sentence/Compassionate Release or another applicable lawful mechanism;
17. Communication of relevant action to my Assistant Federal Public Defender Ryan J. Maguirre as permitted.

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 09:26:52 PM

To: NO RESPONSE TO BP-9 - MESSAGE 3
Inmate Work Assignment: Gilmar Pereira Da Silva

XXI. FORMAL NOTICE REGARDING FURTHER LEGAL ACTION

This is my FOURTH FORMAL AND URGENT REQUEST to the Warden through TRULINCS.

I have contacted the responsible departments.

I have personally gone to institutional departments.

I have contacted Health Services.

I have contacted Dental.

I have contacted Psychology.

I have contacted Food Services.

I have contacted Commissary.

I have requested a response to my BP-9.

I have sent three previous messages to the Warden.

And I still do not have an adequate solution.

Therefore, if my situation continues without a response or effective action, I will continue using all lawful avenues available to me, including:

*my Assistant Federal Public Defender;
*the United States District Court handling my case;
*appropriate federal authorities;
*the Department of Justice;
*the DOJ Office of Inspector General;
*appropriate legislative authorities;
*and any other authority with jurisdiction.

This is not intended as a threat.

It is formal notice that I have attempted to resolve these matters internally and must seek additional lawful protection and guidance when internal mechanisms do not produce a solution.

XXII. FINAL REQUEST

Warden,

I respectfully request that this fourth communication be treated as a:

FORMAL, URGENT, AND PRIORITY REQUEST FOR INTERVENTION.

My health is deteriorating.

My orthodontic appliance remains broken.

---

I have lost four teeth.

I have a reconstructed jaw.

There is a panoramic X-ray performed by the BOP.

There are medical records.

There are dental records.

There are TRULINCS messages.

There are Administrative Remedies.

There are SHU records.

There are dental appointments.

There are documents capable of corroborating the facts.

I am not asking anyone simply to believe my words.

I am asking that:

THE RECORDS BE RECEIVED.

THE EVIDENCE BE PRESERVED.

MY CONDITION BE EVALUATED.

THE NECESSARY TREATMENT BE PROVIDED.

MY BP-9 BE ANSWERED.

MY ADMINISTRATIVE RIGHTS BE PRESERVED.

MY RECORDS BE PROVIDED TO THE EXTENT PERMITTED BY LAW.

AND THAT I BE PROTECTED FROM RETALIATION FOR SEEKING HELP AND EXERCISING MY RIGHTS.

I am asking for help before additional and potentially permanent harm occurs.

Please do not leave this fourth request unanswered.

I respectfully request a formal written response, and clear information regarding what action will be taken and within what timeframe.

Respectfully,

Gilmar Pereira Da Silva Junior
BOP Register No. 74744-511
FCC Coleman Low Unit B4
Case No. 8:25-CR-144-KKM-SPF
United States District Judge Katheryn Kimball Mizelle

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/17/2026 12:37:02 PM

If you are experiencing pain or discomfort, dental sick call is available:
Open dental sick call is Monday, Tuesday, and Thursday at 0730. It is first come, first seen.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Friday, August 7, 2026 11:21 AM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: DENTAL LOW - GENERAL
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECTD: My treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident, Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Dear Dental Low Staff,

I am requesting guidance on what on steps I should take to continue my specialized dental treatment or what procedure I should follow to protect my health,related to the reconstruction if my jaw following a motorcycle accident, which included the placement of a titanium plate and the use an orthodontic appliance.

Dental Low has already stated that there is no orthodontic specialist available to treat my condition, and Program Statement P6400.03 - Dental Services itself confirms that this type of specialized treatment is not at this BOP.

I must reinforce that my orthodontic appliance cannot be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction whit a titanium plate.

I have already attended Sick Call and was seen, but without any resolution to the main problem. I respectfully ask what I should do given my situation.

I must emphasize that my suffering is increasing every day this treatment remains unaddressed: I have already lost four teeth, the appliance is damaged, and I am having difficulty eating. I urgently request clear guidance on the next steps to my treatment.

Thank you so much for your attention,

Gilmar Pereira da Silva Jr.
Reg. Number: 74744-511
FCC COLEMAN LOW

---

UNITED STATES DEPARTMENT OF JUSTICE

OFFICE OF THE INSPECTOR GENERAL

INVESTIGATIONS DIVISION OIG HOTLINE

ATTN: INSPECTOR GENERAL / DOJ OIG EXECUTIVE LEADERSHIP

SUBJECT: EXTRAORDINARY AND URGENT REQUEST FOR INTERVENTION, INDEPENDENT INVESTIGATION, PRESERVATION OF EVIDENCE, AND REFERRAL TO COMPETENT AUTHORITIES

GILMAR PEREIRA DA SILVA JUNIOR
BOP REGISTER NO.: 74744-511
CASE NO.: 8:25-cr-144-KKM-SPF
UNITED STATES DISTRICT JUDGE: KATHERYN KIMBALL MIZELLE
FACILITY: FCC COLEMAN LOW COL-B-D
DATE: AUGUST 19, 2026

I. PURPOSE AND CENTRAL REQUEST

I, Gilmar Pereira da Silva Junior, respectfully submit this communication to the United States Department of Justice Office of the Inspector General (DOJ OIG) to request an independent, urgent, and extraordinary review and investigation of everything that has occurred to me since my arrival at FCC Coleman Low.

I am not asking the DOJ OIG to replace the United States District Court, my attorney, or the Bureau of Prisons' administrative remedy procedures.

I am asking the appropriate federal oversight authority to investigate whether the facts described herein demonstrate a pattern of neglect, abuse, omission, supervisory failure, noncompliance with applicable policies, inadequate medical or mental-health care, recordkeeping failures, administrative obstruction, possible retaliation, or other misconduct involving BOP employees, programs, or operations.

I am also requesting the immediate preservation of evidence and urgent referral to any competent authority whenever the DOJ OIG determines that the circumstances present a risk to my health, safety, administrative rights, or effective access to the Court.

IMPORTANT: I expressly recognize that the DOJ OIG does not possess judicial authority to directly "authorize" my release from custody. A sentence reduction based upon extraordinary and compelling reasons is a matter for the United States District Court under 18 U.S.C. § 3582(c)(1)(A), subject to the statutory requirements.

Accordingly, I respectfully ask the DOJ OIG to investigate and document the facts, preserve the evidence, and, when legally appropriate, refer the relevant facts and findings to my attorney, the BOP, the appropriate oversight authority, and/or the Court.

II. WHY I AM CONTACTING THE DOJ OIG

The DOJ OIG states that it receives allegations involving waste, fraud, abuse, and misconduct related to DOJ employees, programs, and operations, including the Federal Bureau of Prisons.

The DOJ OIG also has authority to investigate allegations involving abuse of civil rights and civil liberties by DOJ employees.

---

My complaint is not based upon one isolated incident.

It consists of a documented sequence of:

* requests for assistance;
* TRULINCS communications;
* medical and dental requests;
* Psychology requests;
* Food Services requests;
* Trust Funds/Commissary requests;
* Sick Call visits;
* BP-8 submissions;
* BP-9 submissions;
* requests for records;
* personal visits to institutional departments;
* communications with the Warden;
* communications with my attorney; and
* repeated attempts to obtain meaningful relief through the BOP's internal procedures.

Despite these repeated efforts, I continue to experience serious problems without what I believe to be an adequate and effective resolution.

---

III. SUMMARY OF THE PROBLEMS I AM REPORTING

I respectfully request that the DOJ OIG investigate the following matters:

1.. My placement in the SHU, which I believe was improper.
2. My requests for help and assistance while in the SHU.
3. The psychological consequences I associate with my SHU confinement.
4. My contact with Psychology, including my request for help from Mr. B. Kennedy on my second day in the SHU.
5. My serious medical and dental history arising from a motorcycle accident.
6. My mandibular reconstruction.
7. The titanium plate associated with that reconstruction.
8. My orthodontic treatment associated with the reconstruction.
9. The damage to my orthodontic appliance..
10. The loss of four teeth that I have reported during my incarceration.
11. My difficulty chewing and eating.
12. The panoramic X-ray performed by Dental Low.
13. The statement that an orthodontic specialist is not available locally.
14. Repeated responses from Dental directing me to Sick Call even though I had already attended Sick Call.
15. The absence, to my knowledge, of a meaningful documented plan for specialized follow-up.
16. The lack of an effective response from Psychology.
17. The lack of an effective response from Food Services.
18. The prolonged lack of Copy Cards.
19. The impact of the Copy Card shortage on my ability to prepare legal documents.
20. Difficulties and uncertainty concerning the processing of my BP-9.
21. My requests for Health Services records that, according to my report, were incomplete.
22. The apparent omission of my panoramic X-ray and certain TRULINCS communications from records provided to me.
23. My concern regarding possible retaliation.
24. My urgent need for intervention by my attorney.
25. The need for immediate evaluation of compassionate release or other appropriate judicial relief.

IV. SHU AND PSYCHOLOGY

I report that I was placed in the SHU under circumstances that I believe were improper.

During that period, I repeatedly requested help and assistance.

On my second day in the SHU, I had contact with the Psychology Department and remember specifically asking Mr. B. Kennedy, an employee associated with Psychology Low, for assistance.

Based upon my experience, I did not receive the assistance I was requesting.

The SHU period is extremely important to my complaint because I associate that period with consequences that continue to affect me.

I am not attempting to make a medical diagnosis of myself.

I am requesting that the appropriate professionals and investigators review what happened and determine whether I received the care, evaluation, monitoring, and assistance that should have been provided.

I respectfully request preservation and review of:

* SHU placement records;

---

* the justification and documentation supporting my placement;
* SHU logs;
* welfare-check records;
* Psychology records;
* records of contacts with me;
* requests for assistance;
* TRULINCS communications;
* incident reports;
* identification of employees involved;
* and any video, audio, electronic, or other records that remain available.

On August 7, 2026, I also sent Psychology Low a TRULINCS request with the subject:

"REQUEST FOR URGENT ASSISTENCE OR WHAT PROCEDURE I SHOULD FOLLOW TO PROTECT MY HEALTH."

To my knowledge, I did not receive an effective response or meaningful intervention.

I am therefore requesting renewed attention to this matter.

V. HEALTH SERVICES AND DENTAL SERIOUS AND ONGOING MEDICAL CONCERNS

My medical and dental situation is one of the principal reasons for this urgent complaint.

I have a history of a serious motorcycle accident that resulted in mandibular reconstruction, including a titanium plate, and orthodontic treatment associated with that reconstruction.

My orthodontic appliance is currently damaged/broken.

I have reported the loss of four teeth during my incarceration.

I have also reported difficulty chewing and eating.

I want to make this absolutely clear:

I do not use the orthodontic appliance for cosmetic purposes.

It is related to my treatment following mandibular reconstruction.

Dental Low has evaluated me and performed a panoramic X-ray.

I was also informed, according to my report, that there is no orthodontic specialist available locally.

The central problem is therefore not simply that I am requesting treatment for ordinary dental discomfort.

I have already gone to Dental Sick Call.

The unresolved question is:

If the specialized treatment I require is not available at FCC Coleman Low, what procedure is being followed to ensure that I receive appropriate specialized care?

I respectfully request that the DOJ OIG investigate whether my condition has been properly evaluated, documented, referred, and managed.

VI. DETAILED DENTAL TIMELINE

---

June 2, 2026

I submitted a request to Dental Low.

July 6, 2026

I received a response directing me to Dental Sick Call.

I attended Sick Call.

August 7, 2026

I sent another detailed TRULINCS request to:

DENTAL LOW GENERAL

I explained:

* my mandibular reconstruction;
* the titanium plate;
* the orthodontic appliance;
* the need for specialized follow-up;
* the reported loss of four teeth;
* my difficulty eating;
* and the increasing seriousness of my condition.

August 13, 2026

I personally went to Dental Low to deliver another request for help and assistance concerning my treatment.

According to my report, I was informed that the receptionist had allegedly been instructed not to accept additional formal complaints of that nature.

I respectfully request that this statement be independently investigated, including:

* who allegedly issued the instruction;
* whether the instruction actually existed;
* whether it was written or verbal;
* whether it was consistent with BOP policy;
* and whether it interfered with my ability to submit administrative complaints.

August 17, 2026

I again received a response directing me to Dental Sick Call.

The response stated:

"IF YOU ARE EXPERIENCING PAIN ON DISCONFORT, DENTAL SICK CALL IS AVAILABLE: OPEN DENTAL SICK CALL IS MONDAY, TUESDAY AT 0730. IT IS FIRST COME, FIRST SEEN."

This response did not address the specific questions raised in my August 7 request regarding specialized treatment and continuation of treatment.

I respectfully request that the DOJ OIG determine whether these responses were actually reviewed individually or whether my requests were simply being answered with a standardized response without addressing their substance.

---

VII. PANORAMIC X-RAY AND MEDICAL/DENTAL RECORDS

Dental Low performed a panoramic X-ray.

I have requested my Health Services records on three separate occasions, according to my records.

I identified what I believe may be omissions, including:

* the panoramic X-ray;
* related documentation;
* certain TRULINCS communications;
* and other records concerning my requests for treatment.

I respectfully request that the DOJ OIG determine:

1. When the panoramic X-ray was performed.
2. Who performed it.
3. Where the image is stored.
4. Whether a formal report exists.
5. Who reviewed or interpreted it.
6. What treatment plan was documented.
7. Whether a referral was requested.
8. Whether Specialty Services or Utilization Review was involved.
9. Whether an orthodontic referral was considered.
10. Which TRULINCS messages were received.
11. Which responses were generated.
12. Whether any records were omitted from the records provided to me.
13. If so, why those records were omitted.

VIII. FOOD SERVICES

On August 7, 2026, I sent a request to Food Services concerning my difficulty eating due to my dental condition.

To my knowledge, I did not receive an effective response or meaningful solution.

My request is not merely about food preference.

It concerns my ability to eat while dealing with a damaged orthodontic appliance, reported loss of teeth, mandibular reconstruction, and difficulty chewing.

I respectfully request that my difficulty eating be documented and that Health Services/Dental evaluate whether a modified diet or other appropriate accommodation is medically indicated.

I ask the DOJ OIG to determine:

* whether my request was received;
* who received it;
* whether it was referred;
* whether it was answered;
* and, if no action was taken, why not.

---

IX. COPY CARDS IMPACT ON MY LEGAL RIGHTS

The prolonged lack of Copy Cards has become a serious problem.

Initially, I reported that I needed six Copy Cards for purchase on August 8, 2026.

By August 18, 2026, my need had already exceeded nine Copy Cards/credits.

I have a case file exceeding approximately 800 pages.

I need to make copies of:

* BP-8;
* BP-9;
* medical records;
* dental records;
* legal filings;
* administrative remedies;
* documents for my attorney;
* documents for the Court;
* and materials that must be sent to outside oversight agencies.

August 17, 2026

I delivered a BP-8 to Counselor J. Toro concerning the Copy Card shortage.

August 18, 2026 approximately 9:30 a.m.

I delivered a new BP-9 to Counselor J. Toro.

He again became aware of the Copy Card problem and, according to my report, indicated that he would attempt to expedite the matter.

I was unable to make the copies I needed of documents prepared on August 17 and August 18.

This is particularly serious because my inability to obtain copies is not merely an inconvenience.

It affects my ability to:

* preserve legal records;
* submit administrative remedies;
* provide evidence to my attorney;
* provide evidence to oversight agencies;
* and prepare materials for judicial proceedings.

I respectfully ask the DOJ OIG to investigate whether the prolonged lack of Copy Cards and the absence of an effective alternative are materially interfering with my ability to exercise administrative and judicial rights.

X. ADMINISTRATIVE REMEDIES BP-8, BP-9, BP-10 AND BP-11

The BOP Administrative Remedy Program is governed by 28 C.F.R. Part 542.

Relevant provisions include:

28 C.F.R. § 542.10 establishes the purpose and scope of the Administrative Remedy Program.

---

28 C.F.R. § 542.11 addresses responsibilities concerning receipt, recording, review, investigation, and response.

28 C.F.R. § 542.13 addresses informal resolution.

28 C.F.R. § 542.14 addresses BP-9 submissions and the general filing period, including extensions for valid reasons.

28 C.F.R. § 542.15 addresses BP-10 and BP-11 appeals.

28 C.F.R. § 542.18 establishes response periods and provides special treatment for requests determined to be of an emergency nature threatening an inmate's immediate health or welfare.

On August 18, 2026, at approximately 9:30 a.m., I delivered a new BP-9 to Counselor J. Toro.

To my knowledge, I was not informed that the Warden had requested or received an extension of time to respond.

I am not asking the DOJ OIG to automatically conclude that every delay constitutes a legal violation.

I am asking the OIG to audit:

* when my BP-9 was received;
* when it was entered into the system;
* who received it;
* who reviewed it;
* whether it was classified as emergency;
* whether an extension was requested;
* whether an extension was granted;
* whether the extension was communicated to me;
* and whether the applicable deadlines were followed.

XI. RECORDS PRIVACY ACT AND FOIA

I have requested my Health Services records three times, according to my records.

I believe that some information may have been omitted, including the panoramic X-ray and certain TRULINCS communications.

The Administrative Remedy Program recognizes that FOIA and Privacy Act requests have separate procedures, including under 28 C.F.R. § 542.10(c).

For my own records, 5 U.S.C. § 552a(d) is particularly relevant because it provides an access mechanism for records concerning an individual, subject to applicable statutory exceptions.

5 U.S.C. § 552, the Freedom of Information Act, may also apply to records subject to FOIA.

I am not asking the DOJ OIG to replace the proper FOIA or Privacy Act process.

I am asking the OIG to investigate the integrity and preservation of records if there is evidence that relevant records were omitted, lost, altered, or not properly preserved.

XII. PROTECTION AGAINST RETALIATION

I have been using the internal BOP channels in good faith.

I respectfully request protection against retaliation related to:

* filing complaints;

---

* submitting BP-8/BP-9;
* requesting medical treatment;
* requesting dental treatment;
* requesting psychological assistance;
* communicating with my attorney;
* requesting records;
* contacting oversight authorities;
* and exercising administrative or judicial rights.

I am not asserting that any future transfer would automatically constitute retaliation.

However, I respectfully request that any evidence of retaliation be investigated and that relevant records be preserved.

XIII. CONSTITUTIONAL RIGHTS AND LEGAL AUTHORITIES TO BE EVALUATED

I respectfully ask the DOJ OIG to evaluate the facts under all applicable authorities.

I am not presenting the following as definitive legal conclusions. I am asking the appropriate investigators and legal authorities to determine whether they apply.

These include:

* the Eighth Amendment;
* Estelle v. Gamble, concerning serious medical needs;
* Farmer v. Brennan, concerning deliberate indifference;
* the First Amendment, including protection for lawful petition and grievance activity;
* applicable constitutional principles concerning access to courts;
* 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act;
* 18 U.S.C. § 4042, concerning BOP responsibilities;
* 18 U.S.C. § 4001(b)(1);
* 28 C.F.R. Part 542;
* 28 C.F.R. Part 513, Subpart D;
* 28 C.F.R. Part 543, Subpart C, when applicable;
* 5 U.S.C. § 552a(d);
* 5 U.S.C. § 552;
* 18 U.S.C. § 3582(c)(1)(A);
* 18 U.S.C. § 3553(a);
* and the Federal Prison Oversight Act, Pub. L. No. 118-71 (2024), including provisions concerning federal prison oversight.

I respectfully request that the DOJ OIG also consider any other statute, regulation, BOP policy, or precedent that may apply.

XIV. COMPASSIONATE RELEASE AND REQUEST TO RETURN HOME

My medical and custodial circumstances are the reason I am asking my attorney to urgently evaluate compassionate release.

Under 18 U.S.C. § 3582(c)(1)(A), a Court may reduce a sentence when the statutory requirements are satisfied, including the existence of extraordinary and compelling reasons and consideration of the applicable factors under 18 U.S.C. § 3553(a).

The statute also contains the administrative exhaustion/lapse provision concerning a request to the Warden.

I want to make the distinction completely clear:

I am not asking the DOJ OIG to issue a judicial release order.

I am asking the DOJ OIG to:

---

1. investigate the underlying facts;
2. preserve the evidence;
3. evaluate any immediate health or safety concerns;
4. communicate relevant findings to my attorney;
5. refer appropriate matters to the competent authorities;
6. preserve evidence that may be relevant to a judicial motion;
7. and, where legally appropriate, facilitate communication with the authorities capable of providing judicial relief.

My goal is to return home and continue my medical and dental treatment outside BOP custody if my attorney and the Court determine that such relief is legally available.

XV. WHY I BELIEVE AN INDEPENDENT INVESTIGATION IS NECESSARY

The most concerning part of my situation is not one single event.

It is the repetition and pattern.

I ask Dental for help and receive instructions to go to Sick Call, even though I have already gone to Sick Call.

I ask Psychology for help and receive no meaningful response.

I ask Food Services for help and receive no meaningful response.

I ask Trust Funds/Commissary about Copy Cards and remain without a practical solution.

I send messages to the Warden requesting urgent intervention and do not receive the intervention I am requesting.

I submit BP-8 and BP-9 forms and continue to experience uncertainty regarding processing and response.

I request medical records and identify possible omissions.

I repeatedly attempt to resolve these matters internally.

This is why I am asking an independent federal oversight authority to look at the entire pattern rather than treating each incident as an unrelated administrative complaint.

---

XVI. EXTRAORDINARY REQUEST FOR URGENT DOJ OIG INTERVENTION

In light of the totality of the circumstances, I respectfully request, WITH THE HIGHEST LEVEL OF URGENCY, that the DOJ OIG:

1. Formally receive and record this complaint.
2. Provide a reference or case number, if applicable.
3. Conduct an urgent triage..
4. Determine whether the allegations fall within OIG investigative jurisdiction.
5. Immediately preserve relevant evidence.
6. Preserve TRULINCS communications.
7. Preserve relevant video, electronic logs, SHU records, medical records, dental records, Psychology records, Food Services records, Trust Funds records, and Administrative Remedy records.
8. Identify employees responsible for receiving and responding to my requests.
9. Determine whether my complaints were actually received.
10. Determine whether my complaints were individually reviewed.
11. Determine whether standardized responses were repeatedly used without addressing the substance of my requests.
12. Investigate possible supervisory failures.
13. Investigate possible neglect, abuse, or misconduct.
14. Investigate possible recordkeeping failures.
15. Investigate possible policy violations.
16. Investigate any evidence of retaliation.
17. Evaluate the urgency of my medical condition.
18. Evaluate my dental condition and access to specialized care.
19. Evaluate my psychological concerns associated with the SHU.
20. Evaluate my difficulty eating.
21. Evaluate the Copy Card situation and its effect on my legal rights.
22.. Audit the processing of my BP-8 and BP-9.
23. Verify applicable deadlines and any extensions.
24. Preserve the integrity of my administrative history.
25. Consider interviewing me, if necessary and appropriate, without improper interference by employees whose conduct is being questioned.
26. Consider an inspection or visit, including an unannounced inspection if deemed appropriate.
27. Immediately communicate any identified serious risk to my health or safety to the appropriate authority.
28. Refer relevant matters to my attorney when legally appropriate.
29. Preserve facts relevant to any compassionate-release proceeding.
30. Refer any matter outside OIG jurisdiction to the appropriate agency rather than simply closing the matter without meaningful direction.

XVII. REQUEST FOR CONFIDENTIALITY AND PROTECTION

I respectfully request that this complaint be treated with the maximum confidentiality permitted by law.

I understand that an investigation may require information to be shared with appropriate officials.

Nevertheless, I request that my identity, communications, supporting evidence, and the nature of my complaint be protected to the maximum extent legally possible.

I also request immediate preservation of all relevant evidence to prevent the loss, alteration, destruction, or disappearance of records.

---

XVIII. REQUEST RELATED TO MY RELEASE

My ultimate goal is to return home and continue my medical and dental treatment outside BOP custody.

Again, I recognize that the DOJ OIG does not possess the authority to order my release.

My request is that, if an investigation identifies serious facts, extraordinary circumstances, misconduct, medical neglect, or other circumstances that may be relevant to judicial relief, the DOJ OIG appropriately communicate or refer those facts to the competent authorities, especially my attorney.

I respectfully request that the urgency of my health and the cumulative nature of these circumstances be considered when determining whether this complaint warrants expedited attention.

XIX. CONCLUSION EXTRAORDINARY APPEAL FOR HELP

I am asking for help because I have attempted to resolve these matters through the internal BOP system.

I have not simply remained silent.

I have repeatedly:

* sent TRULINCS messages;
* gone to Sick Call;
* gone personally to Dental;
* contacted Psychology;
* contacted Food Services;
* contacted Trust Funds;
* contacted the Warden;
* submitted BP-8;
* submitted BP-9;
* requested medical records;
* requested dental records;
* communicated with my attorney;
* and documented my attempts.

I am asking the DOJ OIG to look at the entire sequence of events.

Not merely one message.

Not merely one BP-9.

Not merely one dental appointment.

Not merely the Copy Card shortage.

Not merely one Psychology request.

Not merely one Food Services request.

I respectfully ask the DOJ OIG to examine the entire pattern beginning with my SHU placement and continuing through my medical and dental problems, psychological concerns, Food Services requests, Copy Card problems, Administrative Remedies, records requests, and the impact of these matters on my health and ability to exercise my legal rights.

I respectfully request an independent investigation into whether the facts demonstrate:

* neglect;

---

* abuse;
* omission;
* supervisory failure;
* failure to provide appropriate care;
* policy violations;
* recordkeeping failures;
* administrative obstruction;
* retaliation;
* or any other misconduct within DOJ OIG jurisdiction.

I AM REQUESTING URGENT INTERVENTION.

I AM REQUESTING IMMEDIATE PRESERVATION OF EVIDENCE.

I AM REQUESTING PROTECTION AGAINST RETALIATION.

I AM REQUESTING IMMEDIATE ATTENTION TO ANY RISK TO MY HEALTH AND SAFETY.

And if the investigation identifies facts that should be presented to the United States District Court, I respectfully request that those facts be appropriately referred so that my attorney may seek whatever judicial relief is available under the law.

I do not want to continue submitting requests that disappear without meaningful resolution.

I need an independent federal authority to examine what is happening.

I respectfully ask the DOJ Office of the Inspector General to take this complaint seriously, investigate the facts, preserve the evidence, and take or recommend whatever lawful action is within its authority to protect my rights, health, safety, and access to justice.

Respectfully submitted,

GILMAR PEREIRA DA SILVA JUNIOR
BOP REGISTER NO.: 74744-511
FCC COLEMAN LOW COL-B-D
CASE NO.: 8:25-cr-144-KKM-SPF

AUGUST 19, 2026

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/29/2026 08:24:57 PM

To: FORMAL DOCUMENTATION OF PERSONAL DELIVERY
Inmate Work Assignment: Gilmar Pereira Da Silva

SUBJECT: FORMAL DOCUMENTATION OF PERSONAL DELIVERY, REDUCTION IN SENTENCE / COMPASSIONATE RELEASE REQUEST.
AUGUST 28, 2026

Dear Warden-FCC Coleman Low,

I am sending this TRULINCS message to formally document and preserve a contemporaneous record of the events that occurred yesterday, August 28, 2026, concerning my formal request for Reduction in Sentence / Compassionate Release under 28 C.F.R. Section 571.61 and 18 U.S.C. Section 3582(c)(1)(A).

Yesterday, August 28, 2026, at approximately 3:00 PM, I personally went to the appropriate institutional area to deliver my formal request addressed to the Warden of FCC Coleman Low.

I personally delivered the following documents:

ATTACHED 01 - COMPLETE 10-PAGE FORMAL REQUEST TO THE WARDEN

"UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FORMAL REQUEST TO THE WARDEN
REDUCTION IN SENTENCE / COMPASSIONATE RELEASE
28 C.F.R. Section 571.61
18 U.S.C. Section 3582(c)(1)(A)"

This document is dated August 28, 2026, was personally signed by me, contains 10 pages, and constitutes my complete formal request for Warden review and consideration of Reduction in Sentence / Compassionate Release.

BP-A0148 - INMATE REQUEST TO STAFF

"U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
INMATE REQUEST TO STAFF
BP-A0148
CDFRM
PRESCRIBED BY P5511
THIS FORM REPLACES BP-148.070 AND BP-S148.070
FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER"

At FCC Coleman Low, I understand this form to be used as an INMATE REQUEST TO STAFF / "COP-OUT." I addressed this request to the Warden as an additional and contemporaneous administrative record specifically to document and reinforce the delivery of my formal Reduction in Sentence / Compassionate Release request.

At approximately 3:00 PM, on August 28, 2026, the Warden was not physically present at the institution. I therefore delivered the documents to CAPTAIN S. XIMENES of FCC Coleman Low.

Captain S. Ximenes reviewed the documents and informed that the Warden was not at the institution and that he would deliver the documents to the Warden.

I thanked Captain Ximenes and clearly explained that I wanted the documents delivered to the Warden and formally considered as my request.

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I am sending this TRULINCS / "Electronic Request to Staff" message to the Warden for the specific purpose of creating an additional contemporaneous written record confirming that I personally attempted and completed delivery of my formal request through an authorized institutional staff member when the Warden was not physically present.

I respectfully request that this message, together with the documents personally delivered yesterday, August 28, 2026, be preserved as part of the administrative record concerning my Reduction in Sentence / Compassionate Release request.

I also respectfully request confirmation, when administrative possibly, that the Warden received the documents from Captain S. Ximenes and that the request has been logged and received, on August 28, 2026.

For clarity, I am making every reasonable effort available to me to pursue the BOP Administrative process, to comply with the requirement that I use available administrative remedies, and to provide the institution with a meaningful opportunity to review and resolve my situation before further judicial action is considered.

I am not attempting to bypass the BOP administrative process. To the contrary, I am documenting my continued and good-faith efforts to use that process.

I am also providing a copy of this communication and the underlying documentation to my Federal Defender so that counsel may accurately inform the Court of yesterday's (August 28, 2026) events and of my continued efforts to pursue administrative remedies.

I respectfully ask the Warden to review my request as soon as practicable, particularly because the request concerns serious and continuing medical/dental circumstances and because I have repeatedly sought institutional assistance and appropriate treatment.

I understand that the 30-day period referenced in 18 U.S.C. Section 3582(c)(1)(A) is relevant to the statutory exhaustion framework following receipt of a request by the Warden. I therefore respectfully request that the actual date of receipt of my request be accurately recorded and preserved.

I am not asking for special treatment or preferential handling. I am asking only that my formal request be received, accurately recorded, reviewed under the applicable procedures, and answered in accordance with applicable law and BOP regulations.

Please preserve this TRULINCS / "Electronic Request to Staff" communication as part of the administrative record.

Thank you for your attention to this matter.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low
Case No. 8:25-cr-144-KKM-SPF
August 29, 2026

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/21/2026 09:42:02 AM

You can make sick call at any time .
You were on the call out 7/30/2026 and you refused treatment.
If you want to obtain copy of your records you can contact medical records.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Tuesday, August 18, 2026 9:11 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: URGENT FORMAL RESPONSE TO DENTAL LOW MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

8. I HAVE TAKEN MULTIPLE STEPS TO OBTAIN HELP

Today, August 18, 2026, at approximately 9:30 am, I delivered a new BP-9 to Counselor J. Toro.

J. Toro became aware of the urgency of the situation and stated that he would expedite the BP-9 so that it would reach the responsible person, including the Warden.
Yesterday, August 17, 2026, I also delivered a BP-8 to J. Toro concerning the urgent Copy Card problem.
I also sent a formal TRULINCS message to Trust Fund concerning the lack of Copy Cards and, to date, I have not received a response or resolution.

These facts demonstrate that I am using the institutional procedures available to me.

I AM NOT IGNORING THE SYSTEM.
I AM REPEATEDLY USING THE SYSTEM.
The problem is that the procedures I have used are not resolving the underlying issues.

9. I AM REQUESTING A DEFINITIVE RESPONSE NOT ANOTHER GENERIC INSTRUCTION
I respectfully respect that Dental Low NOT respond again by merely telling me to attend Sick Call.
I have already done that.

I request answers to the following questions:
1. Has my panoramic X-ray been reviewed by a dentist?
2. What findings were documented?
3. Was my broken appliance documented?
4. Was the loss of four teeth documented?
5. Were my mandibular reconstruction and titanium plate documented?
6. Was my difficult eating documented?
7. Have I received a Treatment Planning Examination for these problems?
8. If not, why not?
9. What is my current dental priority classification?
10. Is my condition considered urgent under Program Statement 6400.03?
11. It is considered emergency dental care?
12. If not, what is the clinical reason?
13. Has the Chief Dental Officer reviewed my case?
14. Has the Regional Chief Dentist been consulted?
15. Has Utilization Review been initiated?
16. If not, why not?
17. If specialty care is clinically indicated, has an EMR referral/consultation been initiated?
18. If no referral is being made, what is the clinical basis?
19. What is my actual treatment plan?
20. What is the next clinical action?
21. Who is responsible for that action?

---

22. What is the expected timeframe?
23. What should I do if my condition worsens before that action occurs?

I respectfully request direct answers to these questions.

10. REQUEST FOR WRITTEN DOCUMENTATION

I respectfully request that the answers above be documented in my medical/dental record and that I receive a written response through an authorized communication channel.
If Dental Low believes that no further action is necessary, I request the clinical basis for that decision.
If Dental Low believes that treatment is necessary but cannot be performed at FCC Coleman Low, I request that you identify the applicable referral or Utilization Review procedure and the current status.

If the reason is that orthodontic treatment is outside the normal scope of BOP dental services, I understand that policy.
That is precisely why I am asking what procedure applies when an inmate has a broken orthodontic appliance associated with prior mandibular reconstruction and the institution does not have the necessary specialist.

11. I AM REQUESTING CONTINUITY OF CARE AND PREVENTION OF FURTHER DETERIORATION
I am not asking Dental Low to perform treatment outside its authority.
I am asking Dental Low to determine:
-what treatment is appropriate;
-what treatment requires a specialist;
-what referral procedure applies;
-what Utilization Review is required;
-and what will be done while I await definitive care.

I also request that my incarceration not simply become a reason for the underlying condition to remain unresolved without a documented clinical plan.
My concern is not theoretical.
I HAVE ALREADY LOST FOUR TEETH.
I AM EXPERIENCING DIFFICULTY EATING.
MY ORTHODONTIC APPLIANCE REMAINS BROKEN.
MY JAW WAS PREVIOUSLY RECONSTRUCTED.
I AM REPORTING CONTINUING DETERIORATION.

Therefore, I need a medically responsible plan rather than another instruction that sends me back to the beginning of the same process.

12. FORMAL REQUEST FOR IMMEDIATE SUPERVISORY REVIEW
Because I have repeatedly requested assistance and continue to receive responses that do not address the specific questions presented, I respectfully request that this communication be reviewed by:
-Chief Dental Officer
-Health Administrator, as appropriate;
-and, if clinically indicated, Regional Chief Dentist or another responsible dental authority.

I am requesting REVIEW, not punishment of any staff member.
My objective is to obtain a definitive clinic and administrative response.

13. PRESERVATION OF THIS MESSAGE AND RELATED RECORDS
I request preservation of this TRULINCS message and all prior communications related to my dental condition.
This includes, at minimum:
-my June 2, 2026 request and July 6 response;
-my August 7, 2026 request and August 17 response;
-this August 18, 2026 response;
-prior Dental Sick Call encounters;
-panoramic X-ray;
-dental records;
-treatment notes;
-any documentation concerning treatment refusal or alleged treatment refusal;

---

-referral records;
-Utilization Review records;
-and related EMR entries.

I request that my record accurate reflect:
what I requested, when I requested it, what I was told, what examination was performed, what findings were documented, what treatment was provided, and what treatment plan was established.

14. FINAL AND URGENT REQUEST
DENTAL LOW:
Please understand the purpose of this communication.
I am not submitting another complaint simply to complain...
I am submitting this communication because I have repeatedly followed the instruction to seek care and the underlying problem remains unresolved. I am asking for:
THE NEXT STEP.
A TREATMENT PLAN.
REVIEW OF MY PANORAMIC X-RAY.
DOCUMENTATION OF MY CONDITION.
A DETERMINATION OF THE PRIORITY OF MY CARE.
CONSIDERATION OF UTILIZATION REVIEW AND SPECIALTY REFERRAL WHEN CLINICALLY INDICATED.
REVIEW OF MY CASE BY A RESPONSIBLE AUTHORITY.
AN INDIVIDUALIZED RESPONSE TO MY REQUEST.

PLEASE DO NOT SEND ME ANOTHER GENERIC MESSAGE TELLING ME TO ONLY ATTEND DENTAL SICK CALL.
I HAVE ALREADY DONE THAT.
I am asking:
WHAT HAPPENS AFTER SICK CALL WHEN THE PROBLEM REMAINS UNRESOLVED?

If the answer is that I must attend Sick Call again, please explain specifically what clinical evaluation or treatment will be performed this time to address the unresolved condition described in the communication.
If the answer is that I require a Treatment Planning Examination, please initiate or schedule it.
If the answer is that I require Specialty Referral, please initiate or explain the applicable referral process.
If the answer is that no additional treatment is clinically indicated, please document and explain the clinical basis.
If the answer is that my condition cannot be treated at FCC Coleman Low, please explain what procedure is available for me to receive appropriate treatment at another BOP facility or through the applicable specialty-care process.

I respectfully request an individualized written response.
I am asking for help because, after repeatedly using the procedures available to me within this institution, I genuinely do not know what else I can do.

I RESPECTFULLY REQUEST URGENT ACTION.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
REG. NO. 74744-511
FCC COLEMAN LOW
COL-B-D
CASE NO. 8:25-CR-144-KKM-SPF

---

FROM: Food Service
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/31/2026 10:17:02 AM

Food service doesn't accept "requests" for medical diets through TruLincs. You MUST submit a diet order to F/S staff, written by medical or dental.

To: SECOND FORMAL AND URGENT REQUEST - FOOD SERVICE
Inmate Work Assignment: Gilmar Pereira Da Silva

GILMAR PEREIRA DA SILVER JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLEMAN LOW | COL-B-D
DATE: AUGUST 18, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST - REQUEST FOR FOOD COMPATIBLE WITH MY DENTAL CONDITION AND IMMEDIATE ACTION

TO THE FOOD SERVICES TEAM - FCC COLEMAN LOW:

I am submitting this message as my SECOND FORMAL REQUEST FOR ASSISTANCE through TRULINCS because my first request, sent on August 7, 2026, requesting attention, assistance, and a solution because of my dental condition and the difficulty I have been experiencing eating, has not, to my knowledge, received a response or concrete action.

I am again requesting assistance because the situation continues and, each day the problem remains unresolved, my concern increases regarding my health, nutrition, and the long-term consequences that may result from being unable to eat adequately while my dental problem remains unresolved.

I NEED THIS SECOND REQUEST TO BE READ AND REVIEWED INDIVIDUALLY.

I am not asking Food Services to make a medical or dental diagnosis. I understand that prescribing a medical diet depends on an evaluation and clinical order. I am asking Food Services to formally acknowledge the difficulty eating that I am reporting, refer the matter to the appropriate department when necessary, and tell me what procedure I must follow to obtain food compatible with a possible clinical need.

The BOP officially states that its health services include medical, dental, and mental health care and that its Food Services program works together with medical treatment and nutritional guidance. BOP guidance concerning Medical Diets also establishes that special diets require a current dietary order. Therefore, if my condition requires a modified diet, I request that the matter be referred for the necessary clinical evaluation and, if an order is issued, that Food Services implement the corresponding diet.

My dental situation is specific and has already been repeatedly communicated.

I have a history of a serious motorcycle accident, jaw reconstruction, a titanium plate, and use of an orthodontic appliance related to the treatment. The appliance is damaged. I reported the loss of four teeth and difficulty eating. Dental Low performed an evaluation and panoramic X-ray, and I have been attempting to obtain a definitive solution for continued treatment.

I do not use an orthodontic appliance for cosmetic purposes.

My concern is that my daily food intake be compatible with the condition I am experiencing while the dental issue remains unresolved.

On August 7, 2026, I sent a formal request to Food Services through TRULINCS. I explained that I was experiencing difficulty eating because of damage related to the appliance and my dental condition and requested guidance, assistance, and a solution.

To date, I have not received an effective response or been informed of any concrete action.

---

This is therefore the SECOND TIME I have formally requested Food Services Intervention.

I do not consider it acceptable for a request concerning my ability to eat to remain unanswered, especially when the institution has already been informed that there is a documented dental problem under treatment.

The issue is not simply "what food I prefer."

The issue is whether I can adequately and safely consume the food provided given the dental condition I have reported.

When a person has difficulty chewing, pain, discomfort, or mechanical limitations involving the mouth and teeth, inadequate food may make it even more difficult to consume sufficient food and fluids. Depending on the individual's clinical condition, inadequate food intake my contribute to weight loss, insufficient calories and nutrients, worsening nutritional status, and difficulty recovering. I am not asserting that these consequences have already occurred in my case as a diagnosis; I am warning of the risk and requesting evaluation before the problem worsens.

In addition, if certain hard, crunchy, or difficult-to-chew foods are increasing my discomfort or making eating more difficult, a professional should evaluate whether temporary dietary modification is necessary.

That is precisely why I am requesting a coordinated solution among Food Services, Dental, and Health Services.

I AM NOT ASKING FOOD SERVICES TO PRESCRIBE A DIET.

I AM ASKING FOOD SERVICES NOT TO IGNORE THE PROBLEM.

If the decision must be medical, please refer my request to Health Services/Dental and inform me.

If there is a specific procedure for obtaining a Medical Diet or Special Diet, please inform me.

If I need a current medical order, please tell me and arrange or direct me to the necessary evaluation.

If a dietary order already exists in my medical record, please confirm, within applicable limits, whether it has been forwarded to Food Services.

If there is no order, please tell me which department should initiate the process.

WHAT CANNOT CONTINUE IS THE SILENCE.

I am already using other channels to seek a solution to my dental problem. I have sought assistance from Dental, Health Services, Psychology, the Warden, and other departments, and I have been using TRULINCS and Administrative Remedies.

My overall health situation is causing me distress and concern.

At the same time that I am trying to resolve my dental problem, I am also trying to preserve my administrative and judicial rights.

I have a federal criminal case, Administrative Remedies in progress, medical and dental documents, record requests, communications with my defense counsel, and hundreds of pages in documentation.

The lack of adequate food in the face of a condition that makes chewing difficult adds another physical concern to an already extremely difficult situation.

THEREFORE I REQUEST THE FOLLOWING IMMEDIATE ACTIONS:

1. Confirm receipt of this second request.
2. Locate and record my first request sent to Food Services on August 7, 2026.
3. Inform me in writing whether that request was referred to any department.
4. Immediately refer the issue to Health Services/Dental for clinical evaluation if Food Services does not have authority to determine the diet.
5. Inform me of the procedure I must follow to obtain a Medical Diet/Special Diet evaluation.

---

6. Determine whether there is currently a dietary order relating to my condition.
7. If there is a dietary order, confirm that it is being communicated to and implemented by Food Services.
8. If there is no order, inform me which professional/department should evaluate the need.
9. While I await evaluation, inform me whether there is an institutional procedure for a temporary food solution when an inmate reports significant difficulty chewing.
10. Formally record that I reported difficulty eating because of my dental condition.
11. Preserve this message and the message sent on August 7, 2026 as part of the request record.
12. Inform me of the department responsible for the next step.
13. Inform me of the timeframe or expected date for evaluation or guidance.
14. If Food Services believes it cannot take any action, forward the request to the appropriate department instead of simply closing it.
15. If a modified diet is available only upon clinical order, arrange or direct the referral necessary for clinical evaluation.

I WANT TO MAKE CLEAR WHAT COULD HAPPEN IF THE SITUATION CONTINUES WITHOUT A SOLUTION.

I am not saying that all of these consequences will necessarily occur to me. I am identifying risks that need to be evaluated by professionals:

insufficient food intake;
insufficient calorie and nutrient intake;
weight loss;
worsening nutritional status;
dehydration if difficulty eating also affects fluid intake;
increased pain or discomfort when chewing;
greater difficulty maintaining an adequate diet;
worsening chewing difficulty;
possible negative effects on recovery and maintenance of health;
increased physical vulnerability while my dental problem remains unresolved;
increased physical and psychological distress;
and possible need for more complex medical intervention if a treatable problem remains unevaluated.

Again, I am not asserting that these consequences have already occurred or that they necessarily will occur. I am asking the institution NOT to wait for them to happen before taking action.

My request is preventive and urgent.

I am trying to prevent an already known problem from becoming a greater consequence.

I also need to document that my difficulty cannot be resolved simply by saying "seek Dental Sick Call," because I have already sought Dental and there is already a history of evaluation, panoramic X-ray, and requests for continued treatment.

Food Services do not need to resolve my dental treatment.

But Food Services can, within its authority, explain the correct procedure so that a possible dietary need can be evaluated and, if there is a medical order, implemented.

That is what I am requesting.

I ask that no one interpret this message as an attempt to obtain preferential food treatment.

I am requesting food compatible with a health condition that has already been reported and evaluated by the dental department.

I also that this request not be answered only with a general sentence.

I want to know:

WHAT IS THE PROCEDURE?
WHO IS RESPONSIBLE?
WHAT IS THE NEXT STEP?

---

DO I NEED A MEDICAL ORDER?
WHO MUST ISSUE THAT ORDER?
IS A MODIFIED DIET AVAILABLE?
HOW CAN I BE EVALUATED?
WHEN WILL THIS BE DONE?

There are objective questions and I expect objective answers.

If Food Services is not the correct department to answer, I request that the message be forwarded to the responsible department.

I also request that the date of this second request be recorded so that it is documented that the institution was again informed of my difficulty eating.

I am trying to resolve this issue internally while respecting institutional rules.

I am not refusing food.

I am not demanding a specific menu without evaluation.

I am requesting an evaluation and a solution compatible with my condition.

My situation is already extremely difficult, and I do not want food to become another aggravating factor.

I ask for special attention because I remain in custody and do no have the same ability to seek outside care that a person in the community would have.

Therefore, when a health condition may require dietary modification, I need the internal system to function.

This is my SECOND FORMAL REQUEST.

My first request was sent on August 7, 2026.

To date, I have not received a response or solution of which I am aware.

I am now formally documenting that I continue to need assistance.

I request that this message be treated as an URGENT request for coordination between Food Services and Health Services/Dental.

I await a response and urgent action.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/18/2026 09:11:10 PM

To: URGENT FORMAL RESPONSE TO DENTAL LOW MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

8. I HAVE TAKEN MULTIPLE STEPS TO OBTAIN HELP

Today, August 18, 2026, at approximately 9:30 am, I delivered a new BP-9 to Counselor J. Toro.

J. Toro became aware of the urgency of the situation and stated that he would expedite the BP-9 so that it would reach the responsible person, including the Warden.
Yesterday, August 17, 2026, I also delivered a BP-8 to J. Toro concerning the urgent Copy Card problem.
I also sent a formal TRULINCS message to Trust Fund concerning the lack of Copy Cards and, to date, I have not received a response or resolution.

These facts demonstrate that I am using the institutional procedures available to me.

I AM NOT IGNORING THE SYSTEM.
I AM REPEATEDLY USING THE SYSTEM.
The problem is that the procedures I have used are not resolving the underlying issues.

9. I AM REQUESTING A DEFINITIVE RESPONSE NOT ANOTHER GENERIC INSTRUCTION
I respectfully respect that Dental Low NOT respond again by merely telling me to attend Sick Call.
I have already done that.

I request answers to the following questions:
1. Has my panoramic X-ray been reviewed by a dentist?
2. What findings were documented?
3. Was my broken appliance documented?
4. Was the loss of four teeth documented?
5. Were my mandibular reconstruction and titanium plate documented?
6. Was my difficult eating documented?
7. Have I received a Treatment Planning Examination for these problems?
8. If not, why not?
9. What is my current dental priority classification?
10. Is my condition considered urgent under Program Statement 6400.03?
11. It is considered emergency dental care?
12. If not, what is the clinical reason?
13. Has the Chief Dental Officer reviewed my case?
14. Has the Regional Chief Dentist been consulted?
15. Has Utilization Review been initiated?
16. If not, why not?
17. If specialty care is clinically indicated, has an EMR referral/consultation been initiated?
18. If no referral is being made, what is the clinical basis?
19. What is my actual treatment plan?
20. What is the next clinical action?
21. Who is responsible for that action?
22. What is the expected timeframe?
23. What should I do if my condition worsens before that action occurs?

I respectfully request direct answers to these questions.

10. REQUEST FOR WRITTEN DOCUMENTATION

I respectfully request that the answers above be documented in my medical/dental record and that I receive a written response through an authorized communication channel.

---

If Dental Low believes that no further action is necessary, I request the clinical basis for that decision.
If Dental Low believes that treatment is necessary but cannot be performed at FCC Coleman Low, I request that you identify the applicable referral or Utilization Review procedure and the current status.

If the reason is that orthodontic treatment is outside the normal scope of BOP dental services, I understand that policy.
That is precisely why I am asking what procedure applies when an inmate has a broken orthodontic appliance associated with prior mandibular reconstruction and the institution does not have the necessary specialist.

11. I AM REQUESTING CONTINUITY OF CARE AND PREVENTION OF FURTHER DETERIORATION
I am not asking Dental Low to perform treatment outside its authority.
I am asking Dental Low to determine:
-what treatment is appropriate;
-what treatment requires a specialist;
-what referral procedure applies;
-what Utilization Review is required;
-and what will be done while I await definitive care.

I also request that my incarceration not simply become a reason for the underlying condition to remain unresolved without a documented clinical plan.
My concern is not theoretical.
I HAVE ALREADY LOST FOUR TEETH.
I AM EXPERIENCING DIFFICULTY EATING.
MY ORTHODONTIC APPLIANCE REMAINS BROKEN.
MY JAW WAS PREVIOUSLY RECONSTRUCTED.
I AM REPORTING CONTINUING DETERIORATION.

Therefore, I need a medically responsible plan rather than another instruction that sends me back to the beginning of the same process.

12. FORMAL REQUEST FOR IMMEDIATE SUPERVISORY REVIEW
Because I have repeatedly requested assistance and continue to receive responses that do not address the specific questions presented, I respectfully request that this communication be reviewed by:
-Chief Dental Officer
-Health Administrator, as appropriate;
-and, if clinically indicated, Regional Chief Dentist or another responsible dental authority.

I am requesting REVIEW, not punishment of any staff member.
My objective is to obtain a definitive clinic and administrative response.

13. PRESERVATION OF THIS MESSAGE AND RELATED RECORDS
I request preservation of this TRULINCS message and all prior communications related to my dental condition.
This includes, at minimum:
-my June 2, 2026 request and July 6 response;
-my August 7, 2026 request and August 17 response;
-this August 18, 2026 response;
-prior Dental Sick Call encounters;
-panoramic X-ray;
-dental records;
-treatment notes;
-any documentation concerning treatment refusal or alleged treatment refusal;
-referral records;
-Utilization Review records;
-and related EMR entries.

I request that my record accurate reflect:
what I requested, when I requested it, what I was told, what examination was performed, what findings were documented, what treatment was provided, and what treatment plan was established.

14. FINAL AND URGENT REQUEST

---

DENTAL LOW:
Please understand the purpose of this communication.
I am not submitting another complaint simply to complain...
I am submitting this communication because I have repeatedly followed the instruction to seek care and the underlying problem remains unresolved. I am asking for:
THE NEXT STEP.
A TREATMENT PLAN.
REVIEW OF MY PANORAMIC X-RAY.
DOCUMENTATION OF MY CONDITION.
A DETERMINATION OF THE PRIORITY OF MY CARE.
CONSIDERATION OF UTILIZATION REVIEW AND SPECIALTY REFERRAL WHEN CLINICALLY INDICATED.
REVIEW OF MY CASE BY A RESPONSIBLE AUTHORITY.
AN INDIVIDUALIZED RESPONSE TO MY REQUEST.

PLEASE DO NOT SEND ME ANOTHER GENERIC MESSAGE TELLING ME TO ONLY ATTEND DENTAL SICK CALL.
I HAVE ALREADY DONE THAT.
I am asking:
WHAT HAPPENS AFTER SICK CALL WHEN THE PROBLEM REMAINS UNRESOLVED?

If the answer is that I must attend Sick Call again, please explain specifically what clinical evaluation or treatment will be performed this time to address the unresolved condition described in the communication.
If the answer is that I require a Treatment Planning Examination, please initiate or schedule it.
If the answer is that I require Specialty Referral, please initiate or explain the applicable referral process.
If the answer is that no additional treatment is clinically indicated, please document and explain the clinical basis.
If the answer is that my condition cannot be treated at FCC Coleman Low, please explain what procedure is available for me to receive appropriate treatment at another BOP facility or through the applicable specialty-care process.

I respectfully request an individualized written response.
I am asking for help because, after repeatedly using the procedures available to me within this institution, I genuinely do not know what else I can do.

I RESPECTFULLY REQUEST URGENT ACTION.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
REG. NO. 74744-511
FCC COLEMAN LOW
COL-B-D
CASE NO. 8:25-CR-144-KKM-SPF

---

FROM: 74744511
TO: Trust Fund
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/19/2026 11:48:40 AM

To: Trust Fund Supervisor - Message 1
Inmate Work Assignment: Gilmar Pereira Da Silva

SECOND FORMAL AND URGENT REQUEST - COPY CARDS
GILMAR PEREIRA DA SILVA JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLENAN LOW | COL-B-D
DATE: AUGUST 18, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST - COPY CARDS OUT OF STOCK ARE PREVENTING LEGAL DOCUMENT REPRODUCTION AND IMPAIRING MY ADMINISTRATIVE AND COURT PROCEEDINGS

TO COMMISARY / TRUST FUND (FCC COLEMAN LOW):

I am submitting this message for the second time to request URGENT, CONCRETE, AND IMMEDIATE action concerning a problem that is no longer simply a Commissary product-availability issue. It is directly affecting my ability to prepare, reproduce, organize and send documents necessary for my administrative, legal and judicial proceedings.

I previously sent a message entitled:

"URGENT: COPY CARD OUT-OF-STOCK ISSUE DIRECTLY AFFECTING MY ADMINISTRATIVE AND COURT PROCEEDINGS"

In that communication, I explained that I needed 6 Copy Cards for purchase on August 8, 2026 because I have an ongoing need to produce legal documents.
Today, August 19, 2026, I still cannot contain Copy Cards. My need has also increased. I no longer need only the original 6 Copy Cards requested. I now need more than 9 Copy Cards and, more importantly, continuous access to copy credits/capacity because my case contains hundreds of pages and the documentary record I need to reproduce exceeds approximately 800 pages.
According to my records, the produce shortage has continued for several weeks, and the specific attempt to purchase 6 Copy Cards on August 8 was not resolved. I therefore ask that this be treated not as an ordinary temporary stock issue, but as a problem that is concretely interfering with my access to legal document preparation.

THE PROBLEM IS NOW IMMEDIATE.
Today I was unable to make copies of the BP-9 that I prepared and delivered today. Yesterday, August 17, 2026, I was also unable to make copies of the BP-8 that I delivered to Counselor J. Toro.
As a result, I am being forced to prepare and submit administrative documents without being able to maintain sufficient copies for my own records, provide complete documentation to counsel, preserve complete exhibit sets, and send supporting evidence to authorities from whom I am seeking assistance.
This is even more serious because this is not a single proceeding.

I have a federal criminal case, BOP Administrative Remedies, medical and dental matters, records requests, communications with counsel, possible Court proceedings, and formal communications to different agencies. I need to maintain organized and complete copies of everything I submit all evidence supporting my claims.
My documentary record exceeds approximately 800 pages. I am also continuously generating new documents, BP-8s, BP-9s, record requests, exhibits, statements, medical and dental requests, and documents intended for counsel and appropriate authorities.

Therefore, the need is not for a one-time purchase of six credits. I need an IMMEDIATE AND CONTINUING SOLUTION that allows me to make legal copies regularly, including daily when necessary.
BOP legal-activities guidance recognizes mechanisms in situations in which an inmate has an immigent court process and needs additional copy credits but cannot obtain them from Commissary on time, including the use of Form BP-199 in applicable circumstances.
BOP guidance also recognizes procedures for reproducing essential legal materials when the legal-copying equipment is

---

unavailable or not functioning.
I am not claiming that these policies create an automatic right to an unlimited number of Copy Cards. I am making a narrower request: there is a concrete, documented, current legal need; Copy Cards remain unavailable; my documents are accumulating; and I need the institution to tell me IMMEDIATELY what alternative mechanism will be provided so that I can reproduce my legal materials while the product remains out of stock.

THEREFORE, I REQUEST AND DEMAND AN IMMEDIATE ADMINISTRATIVE SOLUTION:
1. Provide a written explanation of why Copy Cards remain unavailable.
2. State when Commissary/Trust Fund expects the stock to be restored.
3. Immediately provide an alternative method for me to produce the legal copies I need while the stock is unavailable.
4. Consider the applicable procedure for additional legal-copy credits, including the BP-199, when the requirements are met.
5. Identify the person responsible for resolving this issue.
6. Establish a regular method by which I can reproduce my case materials without being repeatedly blocked by stock shortages.
7. State whether there is a weekly Copy Card limit, and, if so, identify the written rule establishing that limit.
8. If a limit prevents the quantity required for my legal proceedings, identify the exceptional or alternative mechanism available for urgent legal needs.
9. Consider my current need for more than 9 Copy Cards/credits and, more importantly, my continuing need to reproduce hundreds of pages.
10. Provide specific instructions for reproducing a documentary record exceeding approximately 800 pages.
11. Preserve this message as a formal record of my request.
12. Provide an individualized response, rather than a generic response merely directing me to Commissary.
13. If Commissary is not the responsible office, immediately forward this request to the Trust Fund Supervisor, Unit Manage, Unit Team, Satellite Operations Administrator, or another responsible official.
14. Inform me in writing of the procedure I must follow to obtain the copies necessary for my proceedings while the product remains unavailable.
15. Consider the urgency created by administrative and judicial deadlines.

I NEED TO MAKE THIS ABSOLUTELY CLEAR:
I am not requesting Copy Cards for entertainment, personal correspondence, or a non-legal purpose.
I am requesting access to reproduction of legal documents necessary to protect my rights.
I have documents concerning my federal criminal case, BOP Administrative Remedies, BP-8, BP-9, medical and dental records, records requests, communications with counsel, exhibits, and documents that need to be sent to different authorities.

Yesterday, August 18, 2026, I could not make copies of my new BP-9.
The day prior, August 17, 2026, I could not make copies of my BP-8.
I also need to reproduce documents being sent to my federal public defender, administrative authorities, and agencies from which I am requesting intervention.
The lack of a functional reproduction mechanism is creating a real practical obstacle.
I CANNOT BE PLACED IN THE POSITION OF HAVING TO CHOOSE WHICH PART OF MY CASE I WILL COPY AND WHICH PART I WILL LEAVE WITHOUT COPIES.
I also cannot be simply required to wait indefinitely for inventory to return when documents are subjects to ongoing deadlines and procedures.
My previous request already demonstrated that this problem was affecting my proceedings. This is the SECOND TIME I have had to formally ask Commissary/Trust Fund for help and action.

Since the first request, the problem has not been resolved. Instead my need has increased.
The problem now includes:
BP-8;
BP-9;
possible subsequent administrative appeals;
medical documents;
dental documents;
records requests;
documents for counsel;
documents for the Court when appropriate;
documents for administrative agencies;
exhibits;
statements;
copies for my personal legal file; and

---

hundreds of pages already existing in my case.

I also request that my situation be considered together with the fact that I am attempting to comply with BOP Administrative procedures within applicable deadlines. A prolonged lack of a reproduction mechanism cannot simply be treated as an inconvenience when its practical consequence is difficulty maintaining and sending necessary documentation.

I AM NOT REQUESTING SPECIAL PRIVILEGE.
I am requesting a functional, documented, reasonable means to conduct legal activites within institutional rules.
If the solution is through BP-199, Unit Manager, Law Library, Trust Fund, Satellite Operations Administrator, institutional reproduction, or another authorized procedure, TELL ME IN WRITING.
If I need to demonstrate an imminent deadline, I can provide the corresponding documents.
If I need to demonstrate sufficient funds to pay for copies, please tell me the official procedure.
If there is a weekly limit, please identify the rule and the procedure for circumstances in which legal needs exceed that limit.
If the issue is exclusively inventory, provide an immediate alternative while inventory is unavailable.
WHAT CANNOT CONTINUE IS THE ABSENCE OF A SOLUTION.

Please immediately forward this message to the Trust Fund Supervisor and the responsible Commissary official if the recipient does not have authority to resolve it.
I also request a TRULINCS response documenting:
(a) who received this request;
(b) what action will be taken;
(c) what alternative is available;
(d) the timeframe for resolution;
(e) what procedure I should use for urgent copies;
(f) what procedure I should use for high-volume copies.
I am attempting to comply with my legal obligations and preserve my rights. I cannot do so adequately if I cannot reproduce my own legal documents.

I therefore request URGENT ATTENTION, IMMEDIATE ACTION, AND A CONCRETE SOLUTION.

This is the second formal request I have submitted regarding this same problem.
If the institution believes another department must resolve this issue, please do not simply close the request: forward it to the appropriate department and inform me in writing.
Please also preserve this communication as evidence that I notified the institution, before any applicable deadlines, of the practical inability to make the copies necessary for my proceedings.
I am attempting to resolve this matter internally and respectfully. I want an institutional solution.
Finally, I am requesting consideration of a solution that permits more than 3 Copy Cards/credits per week when documented legal needs exceed that amount, or an equivalent alternative mechanism. My current needs exceeds 9 Copy Cards and will continue.

---

FROM: Psychology Services LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/21/2026 09:02:01 AM

Good morning Mr. Pereira Da Silva,

Please report to the Psychology Department on the 1:00PM move today to address your concerns.

Thank you,

Dr. Kennedy

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, August 20, 2026 2:40 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: SECOND FORMAL AND URGENT REQUEST
Inmate Work Assignment: Gilmar Pereira Da Silva

SECOND FORMAL AND URGENT REQUEST - PSYCHOLOGY LOW

GILMAR PEREIRA DA SILVA JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLEMAN LOW | COL-B-D
DATE: AUGUST 20, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST FOR PSYCHOLOGICAL ASSISTANCE. NO RESPONSE TO THE AUGUST 7, 2026 REQUEST AND NEED FOR IMMEDIATE EVALUATION.

TO THE PSYCHOLOGY LOW TEAM (FCC COLEMAN LOW):

I am sending this message as my SECOND FORMAL REQUEST FOR HELP through TRULINCS because my first request, sent on August 7, 2026, under the subject "REQUEST FOR URGENT ASSISTANCE OR WHAT PROCEDURE I SHOULD FOLLOW TO PROTECT MY HEALTH," has not, to date, received an effective response, individualized guidance, or concrete action of which I am aware.

I am making this second request because I no longer know what procedure I should follow in order to be effectively heard and evaluated by the Psychology team.

I am not senting this message as a general complaint. I am asking that a mental-health professional individually review the situation I have been reporting and determine, within the scope of professional authority, what evaluation, care follow-up, or referral is necessary.

My psychological concern is directly related to events I have experienced since arriving at FCC Coleman Low, particularly the period during which I was placed in the SHU, a situation that I believe occurred improperly and that was deeply traumatic for me.

During my time in the SHU, I asked for help. I asked for clemency. I tried to explain that I was suffering and needed assistance. On the second day I was in the SHU, I had contact with the Psychology staff and specifically remember asking Mr. B. Kennedy, an employee who works in Psychology Low, for help. On that occasion, according to my experience, I did not receive the assistance I was requesting.

I am reporting this fact again because it is part of the source of the suffering I continue to carry.

Since then, I have been afraid that the psychological consequences of these events may remain with me for the rest of my life. I have ongoing concerns about the effects of everything that happened, the possibility of permanent emotional consequences, and the impact that continuing custody is having on me.

---

I have also been facing serious medical and dental concerns at the same time.

My condition involves jaw reconstruction following a serious motorcycle accident, a titanium plate, an orthodontic appliance related to the treatment, a broken appliance, reported loss of four teeth, difficulty eating, and the absence of a definitive solution for continued treatment. I have already been evaluated by Dental, a panoramic X-ray was performed, and I continue trying to obtain a solution.

The fact that I am simultaneously facing physical, dental, administrative, and legal problems significantly increases my distress and sense of vulnerability.

I have repeatedly requested assistance through different channels. I have sent TRULINCS messages to the Warden, Dental, Health Services, Psychology, Food Services, and Trust Fund/Commissary. I have also personally gone to departments when possible and used Administrative Remedies.

Despite this, I continue encountering situations in which my requests remain unanswered or receive responses that do not resolve the main issue...

Specifically regarding Psychology, my first request was sent on August 7, 2026, and to this date I have not received a response that allows me to know whether I was referred for evaluation, whether my request was recorded, whether an appointment is scheduled, or what procedure I should follow.

Therefore, this second request needs to be treated as a formal and urgent request for evaluation and not simply filed as an ordinary message.

I NEED A PSYCHOLOGY PROFESSIONAL TO READ THIS MESSAGE AND ANSWER THE QUESTIONS BELOW:

1. Was my August 7, 2026 request received and recorded?
2. Was any evaluation or screening performed because of that request?
3. Is a Psychology appointment scheduled for me?
4. If not, what procedure should I follow to obtain an evaluation?
5. Can a Psychology professional conduct an individualized evaluation of the psychological effects related to the period I spent in the SHU and the other circumstances I have reported?
6. Can I receive psychological follow-up while I remain in custody?
7. If the professional determines that my situation requires more frequent follow-up, a referral, or another intervention, what procedure will be followed?
8. Is there any record of the requests for help I made while in the SHU, including the contact I had with Mr. B. Kennedy?
9. Can those records be preserved and included in my treatment history?
10. If Psychology determines that treatment is not indicated, I request that this conclusion be formally recorded and communicated rather than simply leaving my request unanswered.

I AM NOT ASKING ANYONE TO CONFIRM A CONCLUSION THAT HAS NOT YET BEEN EVALUATED.

I AM ASKING FOR A PROFESSIONAL EVALUATION.

I am not in a position to diagnose myself, I am not stating that I have a particular diagnosis. I am stating that I am suffering, that I am afraid of the psychological consequences of everything that happened, and that I need a professional to evaluate my situation.

I also need to make clear that my request is not limited to the present moment.

I am concerned about long-term effects.

I am afraid of leaving this experience carrying permanent psychological consequences. I am afraid that the events related to the SHU, the feeling of helplessness I experienced when I asked for help, the continuing medical and dental problems, and the lack of responses to my requests may leave lasting effects that follow me for the rest of my life.

That is precisely why I am asking for help BEFORE the situation becomes even more difficult.

---

I do not want to wait until a more serious crisis occurs before someone considers my request urgent.

I do not want the absence of a response to be interpreted as the absence of suffering.

I do not want my ability to continue functioning within the institution to be automatically interpreted as proof that I do not need care.

I am doing what I can to communicate my situation in an organized and respectful manner.

I also ask that this request be considered together with my history of attempts to obtain medical, dental, and administrative assistance.

I am facing a sequence of problem that are already difficult individually. Taken together, they increase my sense of insecurity and vulnerability.

My current situation includes, among other matters:

suffering related to the period in the SHU;
a request for help made while in the SHU;
contact with Psychology on the second day of my SHU placement;
a request for help to Mr. B. Kennedy;
absence, according to my experience, of effective assistance on that occasion;
concern about permanent psychological consequences;
concern about my physical and dental health;
jaw reconstruction;
titanium plate;
broken orthodontic appliance;
reported loss of four teeth;
difficulty eating;
panoramic X-ray;
repeated requests to Dental and Health Services;
repeated TRULINCS messages;
Administrative Remedies;
BP-8 and BP-9;
difficulties obtaining copies of legal documents;
concern about administrative and judicial deadlines;
attempts to obtain intervention from my defense counsel;
and the need to preserve documents and evidence related to my case.

All of this is happening while I remain in custody.

Therefore, I ask that Psychology not analyze my message as an isolated request.

I ask that the situation be considered as a whole.

I also request preservation of the records related to my Psychology requests, including this message and the previous message sent on August 7, 2026.

If the institution has a specific procedure for requests for psychological assistance made through TRULINCS, I ask that the procedure be applied and that I be informed of it.

If I need to appear personally at Psychology, please tell me exactly when and how I should do so.

If I need to complete a form, please tell me which form.

If I need to undergo screening, please conduct the screening.

If I need to request Mental Health Sick Call, please tell me.

If there is already an internal procedure that should have been initiated because of my first message, please inform me of its status.

WHAT CANNOT CONTINUE IS MY NOT KNOWING WHETHER MY REQUEST WAS RECEIVED, WHETHER IT WAS RECORDED, WHETHER IT WAS REVIEWED, AND WHETHER ANYONE IS TAKING ACTION.

I also request that, if there is an immediate concern regarding my psychological safety or well-being, a professional evaluate me without delay.

I am not requesting specific treatment without an evaluation. I am requesting access to an appropriate professional evaluation.

I also request that my request be treated confidentially within applicable limits and that any necessary referral be documented.

I request protection against any form of retaliation for requesting psychological assistance, reporting suffering, using TRULINCS, filing Administrative Remedies, or seeking legal assistance.

I am not making personal accusations against Psychology professionals.

I am am reporting facts as I experienced them and asking a professional to examine the situation.

I also do not want this message interpreted as an attempt to replace healthcare professionals.

On the contrary: I am asking the professionals to perform the evaluation that only they have the technical competence to conduct.

My goal is to protect my health.

I want to leave this situation without carrying avoidable psychological harm for the rest of my life.

That is why I am asking for help now.

THERFORE, I REQUEST THE FOLLOWING IMMEDIATE ACTIONS:

1. Confirmation of receipt of this second request.
2. Confirmation that the August 7, 2026 request was located and reported.
3. An individualized psychological evaluation.
4. Evaluation of psychological effects related to the period in the SHU.
5. Review of reports related to my contact with Psychology during the SHU, including the contact I remember having with Mr. B. Kennedy.
6. Evaluation of the need for psychological follow-up.
7. Establishment of a follow-up plan, if clinically indicated.
8. Clear guidance regarding the procedure I must follow to obtain care.
9. Formal documentation of any decision not to provide care, if that is the professional conclusion.
10. Preservation of this message and the August 7, 2026 message.
11. Information regarding the next step and approximate timeframe for an appointment.
12. Urgent evaluation if Psychology determines that my situation presents an immediate risk or requires emergency intervention.

Finally, I ask that this message not be answered merely with a generic instruction to seek assistance from another department.

I am already seeking help.

I await a response and urgent action.

Respectfully,

Gilmar Pereira Da Silva Jr.

---

FROM: 74744511
TO: Food Service
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/20/2026 09:23:25 PM

To: SECOND FORMAL AND URGENT REQUEST - FOOD SERVICE
Inmate Work Assignment: Gilmar Pereira Da Silva

GILMAR PEREIRA DA SILVER JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLEMAN LOW | COL-B-D
DATE: AUGUST 18, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST - REQUEST FOR FOOD COMPATIBLE WITH MY DENTAL CONDITION AND IMMEDIATE ACTION

TO THE FOOD SERVICES TEAM - FCC COLEMAN LOW:

I am submitting this message as my SECOND FORMAL REQUEST FOR ASSISTANCE through TRULINCS because my first request, sent on August 7, 2026, requesting attention, assistance, and a solution because of my dental condition and the difficulty I have been experiencing eating, has not, to my knowledge, received a response or concrete action.

I am again requesting assistance because the situation continues and, each day the problem remains unresolved, my concern increases regarding my health, nutrition, and the long-term consequences that may result from being unable to eat adequately while my dental problem remains unresolved.

I NEED THIS SECOND REQUEST TO BE READ AND REVIEWED INDIVIDUALLY.

I am not asking Food Services to make a medical or dental diagnosis. I understand that prescribing a medical diet depends on an evaluation and clinical order. I am asking Food Services to formally acknowledge the difficulty eating that I am reporting, refer the matter to the appropriate department when necessary, and tell me what procedure I must follow to obtain food compatible with a possible clinical need.

The BOP officially states that its health services include medical, dental, and mental health care and that its Food Services program works together with medical treatment and nutritional guidance. BOP guidance concerning Medical Diets also establishes that special diets require a current dietary order. Therefore, if my condition requires a modified diet, I request that the matter be referred for the necessary clinical evaluation and, if an order is issued, that Food Services implement the corresponding diet.

My dental situation is specific and has already been repeatedly communicated.

I have a history of a serious motorcycle accident, jaw reconstruction, a titanium plate, and use of an orthodontic appliance related to the treatment. The appliance is damaged. I reported the loss of four teeth and difficulty eating. Dental Low performed an evaluation and panoramic X-ray, and I have been attempting to obtain a definitive solution for continued treatment.

I do not use an orthodontic appliance for cosmetic purposes.

My concern is that my daily food intake be compatible with the condition I am experiencing while the dental issue remains unresolved.

On August 7, 2026, I sent a formal request to Food Services through TRULINCS. I explained that I was experiencing difficulty eating because of damage related to the appliance and my dental condition and requested guidance, assistance, and a solution.

To date, I have not received an effective response or been informed of any concrete action.

This is therefore the SECOND TIME I have formally requested Food Services Intervention.

---

I do not consider it acceptable for a request concerning my ability to eat to remain unanswered, especially when the institution has already been informed that there is a documented dental problem under treatment.

The issue is not simply "what food I prefer."

The issue is whether I can adequately and safely consume the food provided given the dental condition I have reported.

When a person has difficulty chewing, pain, discomfort, or mechanical limitations involving the mouth and teeth, inadequate food may make it even more difficult to consume sufficient food and fluids. Depending on the individual's clinical condition, inadequate food intake my contribute to weight loss, insufficient calories and nutrients, worsening nutritional status, and difficulty recovering. I am not asserting that these consequences have already occurred in my case as a diagnosis; I am warning of the risk and requesting evaluation before the problem worsens.

In addition, if certain hard, crunchy, or difficult-to-chew foods are increasing my discomfort or making eating more difficult, a professional should evaluate whether temporary dietary modification is necessary.

That is precisely why I am requesting a coordinated solution among Food Services, Dental, and Health Services.

I AM NOT ASKING FOOD SERVICES TO PRESCRIBE A DIET.

I AM ASKING FOOD SERVICES NOT TO IGNORE THE PROBLEM.

If the decision must be medical, please refer my request to Health Services/Dental and inform me.

If there is a specific procedure for obtaining a Medical Diet or Special Diet, please inform me.

If I need a current medical order, please tell me and arrange or direct me to the necessary evaluation.

If a dietary order already exists in my medical record, please confirm, within applicable limits, whether it has been forwarded to Food Services.

If there is no order, please tell me which department should initiate the process.

WHAT CANNOT CONTINUE IS THE SILENCE.

I am already using other channels to seek a solution to my dental problem. I have sought assistance from Dental, Health Services, Psychology, the Warden, and other departments, and I have been using TRULINCS and Administrative Remedies.

My overall health situation is causing me distress and concern.

At the same time that I am trying to resolve my dental problem, I am also trying to preserve my administrative and judicial rights.

I have a federal criminal case, Administrative Remedies in progress, medical and dental documents, record requests, communications with my defense counsel, and hundreds of pages in documentation.

The lack of adequate food in the face of a condition that makes chewing difficult adds another physical concern to an already extremely difficult situation.

THEREFORE I REQUEST THE FOLLOWING IMMEDIATE ACTIONS:

1. Confirm receipt of this second request.
2. Locate and record my first request sent to Food Services on August 7, 2026.
3. Inform me in writing whether that request was referred to any department.
4. Immediately refer the issue to Health Services/Dental for clinical evaluation if Food Services does not have authority to determine the diet.
5. Inform me of the procedure I must follow to obtain a Medical Diet/Special Diet evaluation.
6. Determine whether there is currently a dietary order relating to my condition.
7. If there is a dietary order, confirm that it is being communicated to and implemented by Food Services.
8. If there is no order, inform me which professional/department should evaluate the need.

---

9. While I await evaluation, inform me whether there is an institutional procedure for a temporary food solution when an inmate reports significant difficulty chewing.
10. Formally record that I reported difficulty eating because of my dental condition.
11. Preserve this message and the message sent on August 7, 2026 as part of the request record.
12. Inform me of the department responsible for the next step.
13. Inform me of the timeframe or expected date for evaluation or guidance.
14. If Food Services believes it cannot take any action, forward the request to the appropriate department instead of simply closing it.
15. If a modified diet is available only upon clinical order, arrange or direct the referral necessary for clinical evaluation.

I WANT TO MAKE CLEAR WHAT COULD HAPPEN IF THE SITUATION CONTINUES WITHOUT A SOLUTION.

I am not saying that all of these consequences will necessarily occur to me. I am identifying risks that need to be evaluated by professionals:

insufficient food intake;
insufficient calorie and nutrient intake;
weight loss;
worsening nutritional status;
dehydration if difficulty eating also affects fluid intake;
increased pain or discomfort when chewing;
greater difficulty maintaining an adequate diet;
worsening chewing difficulty;
possible negative effects on recovery and maintenance of health;
increased physical vulnerability while my dental problem remains unresolved;
increased physical and psychological distress;
and possible need for more complex medical intervention if a treatable problem remains unevaluated.

Again, I am not asserting that these consequences have already occurred or that they necessarily will occur. I am asking the institution NOT to wait for them to happen before taking action.

My request is preventive and urgent.

I am trying to prevent an already known problem from becoming a greater consequence.

I also need to document that my difficulty cannot be resolved simply by saying "seek Dental Sick Call," because I have already sought Dental and there is already a history of evaluation, panoramic X-ray, and requests for continued treatment.

Food Services do not need to resolve my dental treatment.

But Food Services can, within its authority, explain the correct procedure so that a possible dietary need can be evaluated and, if there is a medical order, implemented.

That is what I am requesting.

I ask that no one interpret this message as an attempt to obtain preferential food treatment.

I am requesting food compatible with a health condition that has already been reported and evaluated by the dental department.

I also that this request not be answered only with a general sentence.

I want to know:

WHAT IS THE PROCEDURE?
WHO IS RESPONSIBLE?
WHAT IS THE NEXT STEP?

DO I NEED A MEDICAL ORDER?
WHO MUST ISSUE THAT ORDER?

---

IS A MODIFIED DIET AVAILABLE?
HOW CAN I BE EVALUATED?
WHEN WILL THIS BE DONE?

There are objective questions and I expect objective answers.

If Food Services is not the correct department to answer, I request that the message be forwarded to the responsible department.

I also request that the date of this second request be recorded so that it is documented that the institution was again informed of my difficulty eating.

I am trying to resolve this issue internally while respecting institutional rules.

I am not refusing food.

I am not demanding a specific menu without evaluation.

I am requesting an evaluation and a solution compatible with my condition.

My situation is already extremely difficult, and I do not want food to become another aggravating factor.

I ask for special attention because I remain in custody and do no have the same ability to seek outside care that a person in the community would have.

Therefore, when a health condition may require dietary modification, I need the internal system to function.

This is my SECOND FORMAL REQUEST.

My first request was sent on August 7, 2026.

To date, I have not received a response or solution of which I am aware.

I am now formally documenting that I continue to need assistance.

I request that this message be treated as an URGENT request for coordination between Food Services and Health Services/Dental.

I await a response and urgent action.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 12:32:58 PM

To: FINAL AND URGENT FORMAL RESPONSE - MESSAGE 1
Inmate Work Assignment: Gilmar Pereira Da Silva

FINAL AND URGENT FORMAL RESPONSE - DENTAL LOW
SUBJECT: FINAL AND URGENT FORMAL RESPONSE - IMMEDIATE CLARIFICATION OF "REFUSED TREATMENT" STATEMENT, DOCUMENTED DENTAL NEED, SPECIALTY REFERRAL, AND DEFINITIVE ACTION REQUIRED

TO: DENTAL LOW STAFF | FCC COLEMAN LOW

Dear Dental Low Staff,

I am submitting this communication because the response I received again does not address the specific problem I have repeatedly reported. I need to be absolutely clear:

I AM NOT ASKING TO BE TOLD AGAIN TO GO TO DENTAL SICK CALL.
I HAVE ALREADY ATTENDED DENTAL SICK CALL.
I HAVE NOT REFUSED TREATMENT.
I AM ASKING WHAT THE OFFICIAL INSTITUTIONAL PROCEDURE IS FOR ME TO RECEIVE CONTINUITY OF CARE AND SPECIALIZED EVALUATION WHEN DENTAL LOW HAS ALREADY TOLD ME THAT ORTHODONTIC TREATMENT IS NOT PROVIDED HERE.

This is not a matter of interpretation.
It is not a matter of me not knowing where to seek care.
It is not a matter of me avoiding treatment.
It is a matter of determining what happens after a patient has already sought care and the specific treatment needed is not available at the institution.
That question remains unanswered.

I. THIS IS THE CHRONOLOGY OF MY REQUESTS AND IT MUST BE CONSIDERED
To prevent any further misunderstanding of my situation, I am documenting the chronology again:
JULY 6, 2026
Dental Low responded to me through TRULINCS:
"WE DONT DO ORTHODONTIC TREATMENT HERE..."
This statement is extremely important because I was expressly informed that FCC Coleman Low does not provide orthodontic treatment.
JULY 30, 2026
Dental Low now states that I was on the call-out on that date and that:
"YOU REFUSE TREATMENT."

I therefore request an immediate and specific clarification:
WHAT TREATMENT DID I ALLEGEDLY REFUSE ON JULY 30, 2026?
I am requesting identification of the exact treatment, the professional who offered it, the date, the time, the procedure, and the specific record supporting the allegation that I refused treatment.

AUGUST 7, 2026
I sent another formal TRULINCS message explaining in detail that my situation involves:
a serious motorcycle accident;
mandibular reconstruction;
a titanium plate;
orthodontic treatment associated with my reconstructed jaw;
a damaged orthodontic appliance;
loss of four teeth;
difficulty chewing and eating;
the need for continuity of treatment; and

---

the absence of an orthodontic specialist at this institution.

Despite this detailed explanation, I subsequent received another response directing me to Dental Sick Call.

AUGUST 17, 2026
I again received the same general direction to use Sick Call.

AUGUST 18, 2026
I submitted another formal communication precisely because the previous response had not answered the central question.
I explained again that I was not simply requesting routine dental care.
I explained again that I had already sought care.
I explained again that I needed to know what procedure applies when the institution itself states that orthodontic treatment is not available here.

NOW
I have again received:
"YOU CAN MAKE SICK CALL AT ANY TIME"
And I have also received:
"YOU WERE ON THE CALL OUT 7/30/2026 AND YOU REFUSE TREATMENT."
These statements now require a specific and documented response.

II. I DO NOT ACCEPT BEING CHARACTERIZED AS HAVING "REFUSED TREATMENT" WITHOUT IDENTIFICATION OF THE TREATMENT.
I want this formally documented.
I HAVE NOT REFUSED TREATMENT.
If Dental Low believes that I refused treatment, then I respectfully request the factual basis for that statement.
Please Identify:
What treatment?
Which professional?
What date?
What time?
What procedure?
What document was signed or recorded?
What exactly did I allegedly say or do that constituted refusal?
Where is this alleged refusal documented in my EMR?

It is not appropriate for a statement of this significance to be repeated without identifying the specific treatment that I allegedly refused.
If a refusal of treatment document exists, I request that it be preserved and that I be permitted to obtain a copy through the appropriate Medical Records procedure.

III. ATTENDING SICK CALL AND REQUESTING CONTINUITY OF CARE IS NOT A REFUSAL OF TREATMENT
This distinction must be made clear.
I went to sick call.
I sought assistance.
I explained my condition.
I explained my history.
I explained the appliance.
I explained my tooth loss.
I explained my difficulty eating.
I requested assistance.

Therefore, it is not reasonable to characterize my continuing request for a solution as a refusal of treatment.
If I am appearing for care and asking for my unresolved condition to be addressed, that is the opposite of refusing treatment.

IV. THE QUESTION IS NOT "WHERE DO I GO?" THE QUESTION IS "WHAT HAPPENS NEXT?"
This is the question that Dental Low must answer.
WHAT HAPPENS AFTER SICK CALL WHEN THE NECESSARY TREATMENT IS NOT AVAILABLE AT THIS INSTITUTION?
If the answer is:

---

"Sick Call."
Then my question remains:
WHAT HAPPENS AFTER SICK CALL?
If the answer is again:
"Sick Call."
Then there is no resolution to the underlying problem.
I cannot remain indefinitely in a cycle in which I am repeatedly directed back to the same point of entry while the specific condition I am reporting remains unresolved.

V. PROGRAM STATEMENT P6400.03 MAKES THE SPECIALTY-REFERRAL QUESTION ESSENTIAL
This is one of the most important parts of my request.
BOP Program Statement P6400.03 "Dental Services" identifies orthodontic tooth movement as Advanced Dental Treatment.
The policy also provides mechanisms involving Specialty Services, including referral arrangements through the Health Services Administrator (HSA) following applicable Utilization Review (UR) approval by the Regional Chief Dentist (RCD).
The policy also states that orthodontic treatment is not within the ordinary scope of Bureau dental services.

Therefore, if Dental Low tells me that orthodontic treatment is not provided here, that does not answer my question.
It makes my question even more important:
WHAT IS THE SPECIALTY-REFERRAL PROCEDURE IN MY CASE?
I am not asking Dental Low to perform orthodontic treatment if it does not have the authority or capability to do so.
I am asking Dental Low to tell me what institutional mechanism exists when specialized treatment is required but is not available locally.

VI. MY CASE IS NOT A COSMETIC REQUEST
I need this to be understood clearly.
I am not requesting orthodontic treatment for cosmetic reasons.
My orthodontic appliance is associated with treatment following a serious motorcycle accident and mandibular reconstruction involving a titanium plate.
My concern is continuity of care and protection of my health.
My appliance has been damaged.
I have reported the loss of four teeth.
I have reported difficulty chewing and eating.
A panoramic X-ray has been performed by Dental Low.

This is therefore not simply a request for cosmetic orthodontics.
It is a request for appropriate evaluation and continuity of care related to my documented dental and mandibular history.

VII. THE PANORAMIC X-RAY MUST BE CONSIDERED
Dental Low has already performed a panoramic X-ray.
I respectfully request that:
1. the image be preserved;
2. the radiology report be preserved;
3. the clinical interpretation be documented;
4. the result be considered in determining appropriate care;
5. the need for specialist evaluation be assessed; and
6. if specialty care is indicated, the appropriate referral procedure be initiated.

If Dental Low determines that specialist evaluation is not medically indicated, I also request that this determination be documented in writing with the corresponding clinical rationale.
What cannot continue is a situation in which clinical documentation exists while the patient receives no clear explanation of what the next step is.

VIII. TIME IS NOT NEUTRAL IN THIS CASE
I am extremely concerned because my condition remains unresolved while time continues to pass.
I have reported:
loss of four teeth;
damage to the orthodontic appliance;
difficulty chewing;
difficulty eating;

---

a history of mandibular reconstruction;
and the need for specialized follow-up.

I am not claiming that every possible future consequence will necessarily occur.
I am asking qualified professionals to evaluate the risk of deterioration and document that evaluation.

The Supreme Court recognized the constitutional principles concerning serious medical needs in Estelle v. Gamble, 429 U.S. 97 (1976), and the deliberate-indifference standard was later addressed in Farmer v. Brennan, 511 U.S. 825 (1994).
I am not stating that Dental Low has already been legally determined to have violated the Constitution.
I am stating something much more fundamental:
A serious health condition that has been reported, documented, and remains unresolved must be meaningfully evaluated and appropriately addressed.

IX. 18 U.S.C. Section 4042 MUST ALSO BE CONSIDERED
The Bureau of Prisons has statutory responsibilities concerning persons in federal custody.
18 U.S.C. Section 4042 establishes BOP responsibilities relating to the care, custody, protection, and subsistence of federal prisoners.
I am therefore not requesting a privilege.
I am requesting appropriate care, appropriate evaluation, and appropriate guidance concerning the procedure available to me.

X. I AM NOT ASKING DENTAL LOW TO DO THE IMPOSSIBLE
If Dental Low does not have an orthodontic specialist, I understand.
If a particular procedure cannot be performed locally, I understand.
If authorization is required, I understand.
If Utilization Review is required, I understand.
If the HSA or RCD must become involved, I understand.

But someone must tell me:
WHAT IS THE PROCEDURE?
I cannot create the institutional procedure myself.
I cannot determine who has authority.
I cannot simply wait indefinitely.
And I cannot continue receiving the same generic Sick Call Response.

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 04:44:30 PM

To: FINAL AND URGENT FORMAL RESPONSE - MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

XI. I FORMALLY REQUEST AN EXPLANATION OF THE ALLEGED "REFUSAL"
I respectfully request that Dental Low answer the following:
1. Is there a record stating that I refused treatment?
2. If yes, what exact treatment did I allegedly refuse?
3. Which professional documented the alleged refusal?
4. What was the date and time?
5. What procedure was being offered?
6. What exactly does the EMR state?
7. Was I offered treatment specifically related to the orthodontic/mandibular condition I have been reporting?
8. If not, why is the alleged refusal being used to characterize my conduct regarding my current request?
9. If the record is inaccurate or incomplete, what procedure is available to correct or supplement it?

XII. I FORMALLY REQUEST AN ANSWER REGARDING SPECIALTY REFERRAL
I also request specific answers to the following:
1. Has my case been submitted for Utilization Review?
2. If not, why not?
3. Has the Health Services Administrator been informed of my request for specialized dental care?
4. Has the Regional Chief Dentist been consulted?
5. Is Specialty Services referral available in my circumstances?
6. Who has the authority to initiate their referral?
7. What procedure must I follow?
8. Is there a form or written request that I must submit?
9. Is there a clinical reason why specialist evaluation is not indicated?
10. If specialist evaluation is not indicated, I request that the clinical rationale be documented.

XIII. REQUEST FOR IMMEDIATE PRESERVATION OF RECORDS
I formally request preservation of all records related to my situation, including:
EMR;
Dental Sick Call records;
dental notes;
panoramic X-ray;
radiology report;
treatment plans;
referrals;
Utilization Review;
Specialty Services;
any record concerning alleged refusal treatment;
TRULINCS messages;
my communications;
Dental Low responses;
appointment records;
and all other documentation relating to my dental condition and requests for treatment.

Please ensure that these records are preserved and not deleted, altered, or lost.

XIV. THIS IS NO LONGER A SIMPLE REQUEST FOR ASSISTANCE
I want this point clearly documented.
I have sent multiple messages.
I have personally sought assistance from Dental Low.
I have attended Sick Call.
I have explained my medical and dental history.

---

I have explained the mandibular reconstruction.
I have explained the appliance.
I have explained the tooth loss.
I have explained my difficulty eating.
A panoramic X-ray has been performed.

I was told that orthodontic treatment is not provided locally, and yet I continue to receive a response to go back to Sick Call.

THIS MUST BE RESOLVED
Not because I refuse to follow institutional procedures.
But precisely because I have been following the procedures available to me and am now asking the institution to tell me what the next procedure is.

XV. REQUEST FOR IMMEDIATE ESCALATION
If Dental Low Staff does not have the authority to answer or resolve these issues, I respectfully request that this communication be immediately forwarded to the appropriate authority.

As applicable, I request review by:
Health Services Administrator (HSA);
Regional Chief Dentist (RCD);
Utilization Review (UR);
Specialty Services;
or another appropriate BOP authority.

I am not asking an employee to exceed his or her authority.
I am asking that the person who has the authority be notified and given the opportunity to address the matter.

XVI. FORMAL NOTICE OF MY CONTINUING ATTEMPT TO RESOLVE THIS MATTER
I am attempting to resolve this matter through the institutional channels available to me.
I am documenting my requests.
I am asking specific questions.
I am seeking treatment.
I am appearing when instructed.
I am following the procedures available to me.
However, if this matter continues without a substantive response or appropriate action, I will continue using the administrative and legal mechanisms available to protect my health and rights.

This statement is not intended as a threat.
It is a formal record that I am making every reasonable effort to resolve the matter internally before seeking assistance from other competent authorities.

XVII. FINAL REQUEST: PLEASE DO NOT SEND ANOTHER GENERIC SICK CALL RESPONSE
Please do not respond again simply:
"GO TO SICK CALL."
I have already gone to Sick Call.
The question is:
"IF FCC COLEMAN LOW DOES NOT PROVIDE THE SPECIALIZED ORTHODONTIC TREATMENT I REQUIRE, WHAT IS THE OFFICIAL PROCEDURE FOR ME TO RECEIVE THE NECESSARY SPECIALIST EVALUATION AND CONTINUITY OF CARE?"

I need this question answered.
If the procedure is:
HSA.....please say so.
RCD.....please say so.
Utilization Review.....please say so.
Specialty Services.....please say so.
Another procedure.....please say so.
If no referral is available, please state that formally.
If specialist evaluation is not clinically indicated, please state that formally and provide the clinical rationale.

---

If specialist evaluation is indicated, please initiate or identify the procedure necessary to initiate the referral.

But please do not continue responding to a specific question concerning specialized treatment and referral with a generic Sick Call response.

XVIII. MY REQUEST IS URGENT
I am trying to protect my health.
I am trying to prevent further deterioration.
I am trying to preserve my remaining teeth.
I am trying to preserve my ability to chew and eat properly.
I am trying to continue treatment related to my mandibular reconstruction.
I am trying to obtain the assistance that the BOP's own dental policy recognizes may require specialty care.

I AM NOT ASKING FOR SPECIAL TREATMENT.
I AM ASKING FOR THE CORRECT PROCEDURE TO BE IDENTIFIED AND FOLLOWED.

For these reasons, I respectfully request that this communication be treated as:
URGENT MEDICAL/DENTAL REQUEST - SPECIALTY REFERRAL/CONTINUITY OF CARE

I request that this communication be preserved in the appropriate records and that I receive an individualized, objective, clinical and documented response.
I also request clarification of the statement that I "refused treatment" and that this statement not be used generically to characterize my conduct without identifying the specific treatment allegedly refused...

My health is not a trivial matter.
My treatment is not a cosmetic matter.
My request is not simply a Sick Call request.
And my request for a concrete answer cannot continue to be left unresolved.
I am asking for a solution.
I respectfully await a specific response.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low | COL-B-D
Case No. 8:25-CR-144-KKM-SPF

---

FROM: 74744511
TO: Psychology Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 08:31:24 PM

To: FOR MR. B. KENNEDY - PSYCHOLOGY
Inmate Work Assignment: Gilmar Pereira Da Silva

SUBJECT: THANK YOU AND FOLLOW-UP TO OUR CONVERSATION | REQUEST FOR URGENT ASSISTANCE

Dear Mr. B. Kennedy,

I sincerely want to thank you for your prompt response to my messages and, especially for the attention you gave me yesterday. I truly appreciate your willingness to meet with me given the urgent and sensitive nature of the situation I have been experiencing.

I also sincerely appreciate that you scheduled a follow-up appointment for me on Thursday, August 27, 2026, at 2:00 PM, and I fully intend to attend that appointment.

I also want to clarify why I was unable to report to the Psychology Department at 1:00 PM. I was at the Education Department attending my ESL course. I did not see your first message until I returned to B4 approximately at 1:10 PM. I was then waiting for authorization for the next movement, so I remained ready to leave at 2:00 PM and report to the Psychology Department. For that reason, I was unable to arrive at 1:00 PM. I also did not see your second message in time because I was preparing and waiting for the movement to report to your office.

Fortunately, we were able to meet in person yesterday, approximately from 2:05 PM until 3:55 PM, and I am very grateful for that opportunity.

I sincerely hope that our conversation allowed you to understand the seriousness of what I have been experiencing since my first days at FCC Coleman Low, particularly following the eight extremely difficult days I spent in the SHU, which I consider the beginning of many of the difficulties and consequences I have continued to experience.

I also want to document one point that I consider extremely important: my current suffering is not only psychological. It is directly connected to several unresolved problems I continue to face, including my dental condition.

My orthodontic appliance is broken/damaged, and this has become one of the concrete sources of my distress and suffering. In addition, I have reported the loss of four teeth and difficulty chewing and eating, and this entire situation is connected to my history of a serious motorcycle accident, mandibular reconstruction, and the use of a titanium plate. I appreciate that you remember having seen me when I was in the SHU, and that you were able to recollect that at the time I had not yet lost the four teeth. That means a lot to me.

What concerns me the most is that I have already been evaluated by Dental Services, a panoramic X-ray has been performed, and Dental Low has already informed me that orthodontic treatment is not provided here. I have repeatedly sought assistance to determine how I can continue this treatment, but I still have not received a definitive solution.

For that reason, I hope you understand that the psychological distress I am experiencing cannot be separated from the concrete circumstances I am living through. The broken orthodontic appliance, the loss of teeth, the difficulty eating, the lack of a solution for my dental treatment, the events surrounding my SHU placement, and the continuing sequence of unresolved problems have all directly contributed to the level of suffering I am experiencing.

I sincerely hope, with great confidence, that you may be able to help me, directly or indirectly, find an urgent solution to these circumstances, whether through the Psychology Department or, when appropriate, by helping guide or refer me to the professionals and departments that have the authority to address the problems that are outside your direct area of responsibility.

If you have any questions about any part of my situation, I am completely available and willing to explain again any fact, document, date, or circumstance that you believe is necessary.

At this very difficult and sensitive point in my life, what matters most to me is being able to have the problems I have been

---

documenting finally understood and appropriately addressed.

I also respectfully ask that you document our conversation yesterday and the importance of this appointment, because for me this was a very important moment in my continuing effort to obtain help.

The documents I left with you represent only a small portion of everything I have been doing to seek assistance.

If you have the opportunity, I respectfully ask that you review those documents. They demonstrate the numerous attempts I have made through the departments available to me, including the Warden, Dental Low, Health Services/Medical, Trust Fund/Commissary, Food Services, and Psychology, as well as the many formal requests I have submitted through TRULINCS.

Once again, thank you sincerely for meeting with me and for being willing to listen to my situation.

I sincerely hope I can count on your help and guidance, especially because I am trying to find a solution before this continuing suffering causes even greater consequences in my life.

Thank you very much for your attention, professionalism and willingness to listen.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low | COL-B-D

October 4, 2026
VIA U.S. MAIL / OFFICIAL CORRESPONDENCE
Charles N. Baldis
Special Counsel
U.S. Office of Special Counsel
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
EMERGENCY REQUEST FOR IMMEDIATE REVIEW, PROTECTIVE ACTION,
WRITTEN RESPONSE, PRESERVATION OF EVIDENCE, AND REFERRAL IF NECESSARY
Concerning ongoing medical/dental deterioration, repeated unanswered or ineffective requests for assistance, fear of retaliation, and the need for immediate independent intervention at FCC Coleman Low
From Gilmar Pereira da Silva Jr.
BOP Register No. 74744-511
Current Institution FCC Coleman Low
Current Unit COL-B-D / B4
Criminal Case United States v. Gilmar Pereira da Silva Jr.., Case No. 8:25-cr-144-KKM-SPF
Purpose Emergency request for active intervention, protection, written acknowledgment and response, preservation of evidence, and immediate referral to any authority with jurisdiction if OSC cannot itself provide the requested relief.

URGENT NOTICE:
I am asking that this submission not be treated as ordinary correspondence that can be silently routed away or left unanswered. I am asking for a written acknowledgment that it was received, a written statement identifying what office or official is reviewing it, and a written disposition or referral. I am presently reporting continuing physical injury and deterioration inside FCC Coleman Low, including a broken orthodontic appliance whose exposed metal is cutting my mouth, jaw pain, compromised remaining teeth, prior tooth loss, severe oral discomfort, difficulty eating, disturbed sleep, and escalating fear about what will happen to my health if nothing changes.

I. DIRECT PERSONAL APPEAL TO THE SPECIAL COUNSEL
Dear Special Counsel Baldis:
My name is Gilmar Pereira da Silva Jr. I am a federal inmate presently confined at FCC Coleman Low. I write because, after months of asking for help through institutional and administrative channels, I remain inside the same institution, with the same unresolved underlying problem, while my physical condition and emotional distress continue to worsen.
I am not writing to exaggerate my circumstances, to accuse every person at FCC Coleman Low of personal wrongdoing, or to bypass legitimate procedures. I am writing because I have repeatedly used procedures, submitted requests, sought medical and dental attention, pursued administrative remedies, asked the Warden and Unit Team for assistance, sought Reduction in Sentence/Compassionate Release consideration, and sought help outside the institution. Despite that continuing effort, I do not have the specialized treatment and durable resolution that I have been requesting.
I previously sought assistance from the Office of Special Counsel when Mr. Hampton Dellinger, or a successor/acting official, was associated with the office. I am therefore asking that this new submission be treated as a continuation and escalation of my efforts to obtain meaningful federal oversight, not as an isolated first complaint. If the Office has any prior submission from me, I respectfully ask that it be located, associated with this letter, and reviewed together with the present record.
I understand that OSC's statutory jurisdiction may not provide a direct remedy for every condition-of-confinement issue raised here. I therefore make a very specific request: please determine promptly what OSC can lawfully do; preserve and act on any matter within OSC's authority; and, for any matter outside that authority, transmit or refer this emergency submission to the federal office or official that can act, while telling me in writing exactly where it was sent. I am asking not to be left without an answer merely because one office may lack authority over part of the problem.
II. WHAT I AM ASKING FOR RIGHT NOW
Immediate written acknowledgment that this submission was received and read.
Immediate independent review of the continuing dental/maxillofacial problem and the history of requests for care, including whether delay has permitted avoidable deterioration.
Immediate action to secure a clinically appropriate evaluation and treatment plan by a qualified provider capable of addressing the broken orthodontic appliance, oral injuries, missing/compromised teeth, jaw reconstruction history, titanium hardware, jaw pain, chewing problems, and risk of additional damage.
Written protection against retaliation for seeking medical care, filing grievances, communicating with oversight bodies,

---

seeking compassionate release, preserving evidence, or continuing to report what is happening.

A written assurance that I will not be transferred as a retaliatory response to this complaint or merely to move the problem elsewhere. I am expressly requesting protection where I am while the matter is reviewed, unless a transfer is medically necessary and genuinely arranged for treatment with safeguards and notice.

Preservation of relevant video, audio, housing, movement, SHU, SENTRY, medical, dental, psychology, TRULINCS, administrative-remedy, mail, Unit Team, Warden, and staff records before any routine deletion or overwriting occurs.

Review of my RIS/Compassionate Release history and the documented efforts to obtain processing and a meaningful written disposition.

If OSC lacks jurisdiction to order any requested relief, immediate referral to the office with authority to act, accompanied by a written notice to me identifying that office and the date of referral.

A written, itemized response. Even if every requested remedy cannot be granted, I need to know that a responsible official actually read the record and decided what will be done.

III. WHY THIS IS AN EMERGENCY

As of October 4, 2026, my current condition is not simply the same complaint repeated. I am reporting that the orthodontic appliance remains damaged and that exposed metal is cutting the inside of my mouth. My mouth is injured and uncomfortable. I am experiencing jaw pain. Teeth that remain are, in my understanding and experience, compromised after months without the specialized treatment I have repeatedly sought. I previously lost multiple teeth after entering FCC Coleman Low. I am also experiencing severe bad breath that I associate with my deteriorated oral condition and missing teeth. These symptoms are causing physical discomfort, embarrassment, anxiety, and fear of further loss or infection.

I am not sleeping or eating normally. The inability to know what will happen next - whether I will receive care, whether more teeth will be lost, whether my reconstructed jaw will be affected, whether the broken appliance will continue injuring my mouth, whether I will be punished or transferred for continuing to complain - has become a constant source of fear. I am asking that these statements be treated as a current report requiring clinical evaluation, not as a substitute for examination or diagnosis. Every additional day matters to me because the problem has already persisted for months. I am asking for active, urgent, emergency attention before additional harm becomes irreversible.

IV.. RELEVANT PRE-CUSTODY MEDICAL/DENTAL CONDITION

Before entering federal custody, I had a significant maxillofacial history. Following a motorcycle accident, I underwent reconstructive surgery involving my mandible/jaw and have reported the presence of titanium hardware. I also had an orthodontic appliance being used as part of ongoing treatment. This was not merely cosmetic from my perspective; continuity of dental/orthodontic management was important because of my prior reconstruction and existing dental condition.

The institution's own May 15, 2026 dental record documented 'ORTHO TREATMENT IN PROGRESS.' That record also documented missing teeth and authorized dental imaging, including panoramic imaging. I include this fact because it shows that my orthodontic status was not created later as an explanation for my complaints; it was recorded shortly after my arrival.

V. ARRIVAL AT FCC COLEMAN LOW AND THE FIRST DAYS OF CUSTODY

I arrived at FCC Coleman Low on May 4, 2026. My account of the first days has remained central to every later request because I believe the deterioration began immediately after arrival. I was placed in the Special Housing Unit (SHU) for approximately eight days, with records and my prior statements referring to cells 130 and 129.

During that period, I reported being placed in isolation without receiving an explanation that made sense to me. I reported inadequate clothing and shoes, serious difficulty obtaining basic hygiene, inability to communicate normally with family, and lack of the medical, dental, and psychological assistance I was asking for. I also reported headaches, body pain, intense emotional distress, humiliation, shouting, mocking or insulting remarks, and fear. Among the words I previously reported hearing were expressions such as 'welcome to hell,' together with insults directed at me. I have repeatedly asked that objective records - including camera footage, logs, movement records, staff rosters and other institutional data - be preserved and reviewed so that what occurred does not depend only on competing memories.

On or about May 6, 2026, I reported damage/breakage involving my orthodontic appliance or wire. On or about May 7, I reported the beginning of tooth loss. Those events are critical because they connect the earliest period of confinement to the later documented pattern of dental complaints. I later reported that approximately three to four, and ultimately about four, teeth had been lost, while I continued to fear additional loss..

After approximately eight days in the SHU, I was transferred to B4. I also reported that the early period in B4 was frightening and unstable, including exposure to conduct involving threats, drugs, or intoxication around me. Whether every part of that environment can now be reconstructed from records is precisely why I have repeatedly requested preservation and independent review.

VI. EARLY DENTAL DOCUMENTATION AND CONTINUING REQUESTS

On May 15, 2026, a BOP dental record (BP-A0618) documented 'ORTHO TREATMENT IN PROGRESS.' It also reflected missing teeth and authorization for dental imaging and prophylaxis. The significance of that record is not that it proves every treatment was performed; rather, it establishes that my dental/orthodontic condition was known and documented very early in custody.

On June 2, 2026, I made an urgent request to Dental. I continued trying to obtain assistance because the orthodontic problem had not been resolved. On July 2, I submitted an electronic Dental request. A Dental response dated approximately July 6-7

---

stated, in substance, that orthodontic treatment was not provided there and directed me to Dental Sick Call.
That response did not solve the underlying problem. If the institution could not provide the required specialized orthodontic/maxillofacial service internally, my repeated position has been that the next step should have been an effective plan for appropriate specialty care rather than an indefinite cycle of requests..
On July 21, 2026, I submitted/used Dental Sick Call and reported the need for adjustment of my braces/appliance, risk of further tooth loss, and that approximately three or four teeth had already been lost. This was an explicit warning that the condition was progressing.
On July 30, 2026, a dental encounter was documented in connection with cleaning/gross debridement and gingivitis.. A BOP form contains the notation 'PATIENT REFUSED TO SIGN.' I have stated that I did not sign that form. I have also consistently distinguished a cleaning or mouthwash-related encounter from the specialized evaluation and treatment I was seeking for the damaged appliance, lost teeth, and reconstructed jaw. A cleaning encounter, whether accepted, declined, or disputed in its documentation, did not resolve the orthodontic/maxillofacial problem.
I have reported that panoramic imaging was taken/opened and that Dr. Gina Torres-Marin later viewed or opened the PANOREX. On August 24, 2026, I again attempted to obtain Dental Sick Call assistance and reported problems with the form/response and continuing need for care. I ask that the actual dental chart, images, referrals, encounter notes, orders, refusals, signatures, and audit trail be obtained and reviewed rather than relying on summaries.

---

VII. REQUESTS TO MEDICAL, DENTAL, PSYCHOLOGY, FOOD SERVICES, AND OTHER INSTITUTIONAL CHANNELS
My efforts have not been limited to one Dental request. Over the course of my confinement, I have sought help through Medical/Health Services, Dental, Psychology, Food Services, the Warden, Unit Team, Case Management, Trust Funds/Commissary, TRULINCS communications, and the Administrative Remedy process. I have also sought records and objective evidence because I became increasingly concerned that verbal requests and individual forms were not producing a durable solution.
On August 7, 2026, I sent a TRULINCS communication to Psychology titled 'REQUEST FOR URGENT ASSISTANCE OR WHAT PROCEDURE I SHOULD FOLLOW TO PROTECT MY HEALTH.' This reflects that by early August I was not merely asking for a routine appointment; I was asking how to protect my health because the ordinary path had not resolved the problem.
I have reported contact with Psychology staff, including B.. Kennedy, and a continuing sense of abandonment when those contacts did not result in the resolution I was seeking. I have also repeatedly tried to obtain guidance about the correct procedure, forms, and officials to contact. The cumulative problem is that I have kept asking, but I remain the person carrying the physical consequences while offices redirect me from one process to another.
VIII. ADMINISTRATIVE REMEDY HISTORY
I pursued the BOP Administrative Remedy process concerning my medical/dental circumstances. The record I have assembled includes Remedy No. 1287596-F1 and Remedy No. 1289925-F1. I received a rejection notice on August 17, 2026 in connection with the remedy process and continued trying to correct and resubmit what was required.
My BP-9 submissions sought concrete relief: examination; treatment or replacement related to the teeth I had lost; evaluation and treatment of the damaged orthodontic appliance; prevention of further deterioration; specialty referral when the institution could not provide the necessary service; and written answers.
A Warden response dated August 28, 2026 became part of the administrative record. I then faced additional procedural obstacles while attempting to pursue BP-10 review, including difficulty obtaining the BP-10 form, assistance from the Unit Team, copies, complete returned originals, an appropriate mailing envelope, and processing help. I also reported difficulty accessing or obtaining responses from the Counselor, Unit Manager, Case Manager, Warden/Open House, and TRULINCS channels in the COL-B-D/B4 setting.
These details matter because an administrative process is not meaningful to a prisoner if he is required to use it but cannot reliably obtain the forms, documents, copies, envelopes, access, or assistance necessary to complete it. I ask that the underlying remedy file, rejection notices, response dates, submission logs, and all associated documents be preserved and independently reviewed.
IX. FOURTH FORMAL AND URGENT REQUEST TO THE WARDEN
By August 16, 2026, I had reached the point of submitting what I identified as my 'FOURTH FORMAL AND URGENT' request to the Warden. I stated that three prior requests had not produced the needed response and described progressive dental deterioration and lack of specialized treatment. That submission also included a section addressing Reduction in Sentence/Compassionate Release.
The fact that I described it as a fourth urgent request is important to me. I was not beginning the process in August. I was documenting the accumulation of failed attempts and the worsening consequences.
X. REDUCTION IN SENTENCE / COMPASSIONATE RELEASE EFFORTS
My efforts to obtain Reduction in Sentence (RIS) / Compassionate Release are part of the same health crisis. I have asked the institution to process and decide my request because I believe my medical/dental deterioration, reconstructed jaw, damaged appliance, tooth loss, difficulty chewing, and need for specialized care warrant serious consideration.
On August 28, 2026, at approximately 3:00 p.m., I personally delivered RIS-related documents at the Warden's office. Captain S. Ximenes received and reviewed the materials and, as I understood it, they were to be forwarded to the Warden.
On August 31, 2026, at approximately 8:00 a.m., I received through another inmate an A4 sheet titled 'INMATE REQUEST TO STAFF MEMBER RESPONSE.' It did not provide a clearly identifiable signed decision by the Warden. I was informed that it came from Case Manager T. Chin and that I should proceed through the Unit Team/Case Manager. At approximately 10:00 a.m., I spoke with Ms. Chin and was told to submit a COP-OUT before speaking with her and that a COP-OUT through TRULINCS would not be accepted or validated for that purpose.
On September 2, 2026, I submitted a BP-A0148 COP-OUT/Inmate Request to Staff to Case Manager T. Chin. The request stated that I was following the instructions provided on August 31 and respectfully requested the appropriate form and processing for my RIS/Compassionate Release through my Unit Team.
That COP-OUT was not returned to me until September 30, 2026. As I have reported, the returned document did not contain the kind of clear disposition, signature, date, or substantive resolution that would tell me that my RIS request had actually been decided. The passage of time without a clear written answer has intensified my fear that documents are being moved, returned,

---

or redirected without anyone taking responsibility for a final decision.

I am not asking OSC to decide my criminal sentence. I am asking for oversight and immediate referral concerning whether my repeated requests are being received, processed, documented, and answered; whether my health needs are being addressed while those processes continue; and whether I am being placed in an impossible procedural loop while my condition worsens.

XI. REQUESTS FOR OUTSIDE HELP

I have not confined my efforts to FCC Coleman Low. I have sought outside assistance and prepared or transmitted requests to federal oversight and legal channels because internal efforts were not resolving the problem. Those efforts have included seeking assistance from the Office of Special Counsel, including during the period associated with Mr. Hampton Dellinger or a successor/acting official; preparing requests for independent review by Department of Justice oversight channels; seeking assistance connected to federal defense counsel; and preparing materials for other governmental review.

My records also reflect efforts involving or directed toward DOJ/OIG-type oversight, CIGIE-related review, and legal assistance through Federal Public Defender channels, including Ryan J. Maguire. A September 2, 2026 communication from Federal Public Defender-related counsel was previously identified in my materials as recommending consideration of a medical furlough. I have also explored medical furlough and escorted medical trip options because my central objective has consistently been access to appropriate care and a safe resolution.

I do not want to overstate the record by assigning dates, case numbers, or responses to outside offices where I do not presently have the complete transmission record in front of me. What I can state unequivocally is that I have repeatedly looked outside the institution for help because the internal process has not produced the result I need. I ask OSC to search its own systems for any prior submission under my name and Register Number and to consider this letter together with any earlier file.

The emotional impact of repeatedly asking different officials for help and still remaining in the same condition is profound. Each unsuccessful effort increases the feeling that no one is actually reading the entire record. That is why a written acknowledgment and written disposition are themselves essential forms of relief: they will at least tell me that a responsible office has received, understood, and acted on what I am reporting.

XII. PRESENT PHYSICAL SUFFERING

My present suffering must not be reduced to a list of forms. I am living with the consequences in my mouth and jaw every hour. I report the following current and continuing problems:

A broken/damaged orthodontic appliance, with exposed metal presently cutting the inside of my mouth.

Prior loss of multiple teeth after entering FCC Coleman Low and continuing fear that additional teeth will be lost.

Jaw pain in the context of a prior mandibular reconstruction and reported titanium hardware.

Concern that remaining teeth are compromised because the underlying orthodontic/dental problem has not received the specialized treatment I have requested.

Difficulty chewing and eating comfortably.

Severe bad breath that is causing distress and embarrassment and that I believe is associated with my deteriorated oral condition; I request clinical evaluation rather than assumptions about its cause.

Ongoing oral discomfort and fear of infection or additional irreversible damage.

Disturbed sleep and reduced ability to eat normally because of pain, discomfort, worry, and uncertainty.

I understand that only qualified clinicians can diagnose the precise cause, severity, and treatment required. My point is that those clinicians must actually evaluate the whole problem, including the appliance and reconstructed jaw, rather than treating isolated symptoms while the underlying condition continues.

XIII. EMOTIONAL AND PSYCHOLOGICAL SUFFERING

The physical problem is inseparable from the psychological burden of living with it inside a prison where I feel I have exhausted one channel after another. I have described panic, fear, sleep disturbance, helplessness, humiliation, and persistent anxiety. I now find myself afraid even to ask for help because I do not know whether a request will be ignored, returned, misunderstood, or followed by some adverse consequence.

I live with the constant fear of not knowing what will happen to me or to my health from one day to the next. I worry about further tooth loss, infection, damage to my jaw, worsening pain, and the possibility that the passage of time will make later repair more difficult. I also worry that continuing to complain may expose me to retaliation or an unwanted transfer.

I am asking the Special Counsel to understand that the absence of a clear response is itself worsening the suffering. A person can endure a difficult process more rationally when he knows who is responsible, what is being reviewed, and what will happen next. I do not have that certainty. I need a written answer.

XIV. EXPRESS REQUEST: NO RETALIATORY TRANSFER

I want this point to be unmistakably clear: I do not want to be transferred as retaliation for this complaint, for my administrative remedies, for seeking compassionate release, for requesting preservation of evidence, or for continuing to seek medical and dental care.

Moving me to another institution simply because I complained would not resolve what happened and could disrupt access to records, witnesses, pending requests, and continuity of care. I therefore request written protection against retaliatory transfer or other adverse treatment.

This request is not intended to prevent a medically necessary movement that is genuinely arranged to obtain appropriate specialized treatment. If an outside medical transfer or escorted trip is clinically required, that is different. What I oppose is

---

being moved for punitive, retaliatory, concealment, or convenience reasons rather than having the substance of my complaint addressed.

XV. EXPRESS REQUEST: PROTECTION FROM RETALIATION

I respectfully request written assurance that I will not be punished, threatened, intimidated, placed in restrictive housing, deprived of privileges, subjected to adverse classification, targeted through fabricated disciplinary allegations, denied medical/dental access, interfered with in mail or legal/oversight communications, or otherwise treated adversely because I have sought help.

I am not asserting in this paragraph that each of those retaliatory acts has already occurred. I am identifying the protections I need because I am afraid of what may happen as I continue escalating my requests. That distinction is important. I want protection before fear becomes reality.

I also ask that any staff member who is required to respond to this matter be instructed to preserve records and to avoid direct or indirect interference with my ability to communicate with oversight bodies, counsel, courts, or health professionals.

---

XVI. OBJECTIVE EVIDENCE THAT CAN CONFIRM OR REFUTE WHAT I AM REPORTING
I am not asking anyone to accept my account blindly. I am asking for an investigation that uses the records the government already controls. The truth can be tested through objective evidence. I request immediate preservation and review of, at minimum:

SHU housing, cell assignment, movement, admission, release, and observation records for my first days at FCC Coleman Low, including references to cells 130 and 129.

Available surveillance video and audio from intake/reception, SHU corridors and relevant common areas, movement routes, B4 areas, Dental/Health Services waiting or public areas where legally maintained, and other locations tied to disputed events.

SENTRY or other BOP electronic records reflecting housing, movement, classification, staff actions, appointments, call-outs, and relevant chronological entries.

Dental records, including BP-A0618 dated May 15, 2026; imaging authorizations; PANOREX and other radiographs; July 30 BP-S358.060; clinical notes; periodontal findings; orthodontic observations; referrals; consult requests; refusal forms; signatures; audit history; and all subsequent encounters.

Medical/Health Services records relating to pain, jaw complaints, nutrition/eating concerns, infection concerns, medications, referrals, and requests for outside specialty evaluation.

Psychology records and TRULINCS communications, including my August 7 request for urgent assistance/procedure to protect my health.

Dental Low requests dated June 2 and July 2 and the July 6/7 response stating orthodontic treatment was not provided there.

July 21 and August 24 Dental Sick Call materials and associated call-out/encounter records.

Administrative Remedy records for Remedy Nos. 1287596-F1 and 1289925-F1, including submissions, rejections, resubmissions, routing, response dates, and copies of all attachments.

The August 16 fourth formal and urgent Warden submission and any routing, scanning, logging, review, or response record.

The August 28 RIS/Compassionate Release packet received by Captain S. Ximenes, including any Warden office receipt, routing, email, scan, note, or disposition.

The August 31 A4 response sheet, related Unit Team records, and any record identifying its author and purpose.

My September 2 COP-OUT to Case Manager T. Chin and the version returned September 30, including any routing, notes, signatures, date stamps, or electronic record.

Unit Team/Open House logs, counselor and case manager access records, TRULINCS messages, copy requests, envelope requests, mail logs, and records relevant to my efforts to pursue BP-10 and other review.

Any prior correspondence or case record held by OSC under my name, Register No. 74744-511, or concerning FCC Coleman Low.

XVII. WHY PRESERVATION MUST OCCUR NOW
Some institutional records may be retained only for limited periods or may be overwritten in the ordinary course. Because my allegations reach back to May 2026 and involve continuing events, I request that preservation instructions be issued immediately wherever legally possible. The purpose is not to presume wrongdoing; it is to ensure that later review is based on evidence rather than on the absence of evidence that once existed.
I have asked before for preservation of camera footage and other records. If some early footage has already been overwritten, I ask that the responsible office identify what retention policy applied, when the footage ceased to exist, and whether any preservation request was received before deletion.

XVIII. THE CENTRAL FAILURE I AM ASKING SOMEONE TO END
The central problem is not that I have been completely silent or that FCC Coleman Low has absolutely no record of me. The opposite is true. There are records. There have been requests, appointments, forms, messages, remedies, responses, redirections, and conversations. Yet the underlying condition remains unresolved.
A system can generate paperwork while a human being continues to deteriorate. That is what I am asking an independent federal official to examine. I need someone to look across the entire chronology instead of treating each request as a disconnected event.
From my perspective, everyone who has dealt with my requests inside FCC Coleman Low has had some opportunity to know that I am reporting a serious and continuing problem. I do not mean that every employee personally knows every detail. I mean that the institution has been repeatedly placed on notice through its own channels. The accumulated record should now make it impossible to treat this as a new or minor complaint.

XIX. REQUEST FOR AN INDEPENDENT VISIT OR DIRECT FACT-FINDING

---

If lawful and practicable, I ask that an independent official or investigator speak with me directly and, if possible, observe my present condition. I believe a direct interview and visual observation of my mouth/appliance would immediately clarify why I am continuing to ask for urgent help.

I also ask that investigators obtain the records directly from their custodians rather than requiring me to reconstruct every document from inside the institution. My access to copies, forms, envelopes, records, and outside communication is inherently limited.

XX. REQUEST FOR CLINICAL ACTION - NOT MERELY ANOTHER PAPER RESPONSE

A written response alone is not enough if my mouth continues to be injured. I request immediate clinical triage and a comprehensive evaluation that addresses the whole condition. At minimum, the evaluating provider should determine whether the exposed/broken orthodontic hardware requires immediate adjustment or removal; whether oral lacerations require treatment; whether there is infection or periodontal disease; the condition and prognosis of remaining teeth; the consequences of prior tooth loss; whether the reconstructed mandible/titanium hardware is implicated; whether new imaging is required; and whether an outside orthodontist, oral/maxillofacial surgeon, prosthodontist, periodontist, or other specialist is clinically indicated.

I am not dictating a diagnosis or a particular procedure. I am asking for a qualified, timely determination by clinicians who can actually address the condition, followed by implementation of the treatment plan.

XXI. REQUEST FOR REVIEW OF RELEASE-RELATED OPTIONS

While immediate treatment is necessary regardless of release status, I also ask that the history of my RIS/Compassionate Release request be independently reviewed for proper receipt, routing, processing, and disposition. I have been trying to obtain a clear answer while the health issue continues.

I have a proposed release plan and have represented that I can reside at 4418 Spring Blossom Dr., Kissimmee, Florida 34746, with Andreza responsible for the residence. I have stated that proof of address can be provided; that my passport is with the Brazilian Federal Police; that I previously complied with electronic monitoring without reported violation; that I have work opportunities I can document; that I have access to a Cargo Van Express 2500 and Andreza also has transportation; and that health insurance and/or provider payment arrangements can be pursued after release when quotations and enrollment can be completed. These facts are relevant to my effort to show that I am seeking a structured, lawful, medically responsible solution rather than simply asking to leave without a plan.

I understand that the sentencing court, not OSC, decides any motion under 18 U.S.C. § 3582(c)(1)(A). I include this information so that an oversight reviewer understands the full context and why delays in institutional processing matter.

XXII. REQUEST FOR WRITTEN RESPONSE AND ACCOUNTABILITY

I respectfully request a written response that addresses each of the following questions:

Was this submission received, and what case/reference number has been assigned?

Who is the responsible reviewing official or unit?

Does OSC have jurisdiction over any part of the allegations or requested protection?

If OSC lacks jurisdiction over some or all of the matter, to what agency, office, inspector general, or official has it been referred, and on what date?

What steps, if any, have been requested to preserve evidence?

What steps, if any, have been taken or requested to protect me from retaliation while review is pending?

Has FCC Coleman Low/BOP been asked to ensure immediate clinical evaluation of the current oral injuries and broken appliance?

Has the RIS/Compassionate Release processing history been referred for review by an authority capable of addressing it?

What additional documents, declarations, authorizations, or identifying information do you need from me?

When should I expect the next written status update?

XXIII. REQUEST FOR REFERRAL RATHER THAN CLOSURE WITHOUT HELP

If the Office of Special Counsel concludes that I, as a federal prisoner rather than a federal employee, cannot invoke a particular OSC complaint mechanism, I ask that this letter not simply be closed with a jurisdictional statement. My request is that the information be routed, referred, or transmitted to the federal component with authority to address the reported danger to health, possible institutional failures, evidence preservation, and retaliation concerns, to the extent the law permits.

If OSC cannot make such a referral, I ask that the written response identify the specific office that I should contact and the correct procedure. I have spent months being redirected. I need a concrete path, not another generic instruction to 'follow the process' without identifying how the process can actually produce the required care.

XXIV. DECLARATION OF GOOD FAITH AND ACCURACY

I am making this submission in good faith because I need help. The statements about what I personally experienced are my own factual assertions based on my memory and records available to me. References to BOP documents are intended to identify records that can be independently checked. Where I do not possess a complete record, I have avoided inventing dates, names, case numbers, or responses.

I specifically request that investigators test my statements against institutional records, medical and dental records, communications, administrative-remedy files, and preserved video/audio where available. I welcome verification because I want the matter decided on the truth.

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I do not consent to my current suffering being dismissed merely as 'my allegation' when the government possesses records capable of confirming material portions of the chronology. I am asking for those records to be examined.

XXV. FINAL EMERGENCY APPEAL

I am a human being. My life and health are deteriorating while time passes. I have tried to follow instructions, submit forms, ask the correct people, document what is happening, and seek help through both internal and external channels. I have asked for clemency and compassion. I have asked for treatment. I have asked for forms. I have asked for answers. I have asked for protection. I have asked that evidence be preserved.

At this moment, I am still inside FCC Coleman Low with a damaged orthodontic appliance cutting my mouth, jaw pain, a history of tooth loss after entering custody, compromised oral health, difficulty eating, disturbed sleep, and constant fear about what will happen next. The emotional burden of believing that documents are not being read or acted upon has become almost unbearable.

I am asking you to make this submission different from the others by ensuring that it reaches a responsible human being, is read as a complete chronology, is acted upon within lawful authority, and produces a written answer.

I do not want retaliation. I do not want a punitive transfer. I want protection, appropriate medical/dental care, preservation of the truth, proper processing of my pending requests, and a lawful solution.

I will continue asking for help while God gives me the strength to fight for my health and my life. I respectfully ask the United States government not to require further deterioration before someone acts.

Respectfully submitted,

__________________________
Gilmar Pereira da Silva Jr.
BOP Register No. 74744-511
FCC Coleman Low
Unit COL-B-D / B4
Date signed: OCTOBER 4, 2026

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/08/2026 05:08:33 PM

To: DENTAL LOW STAFF / TEAM DENTAL LOW
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT URGENT TO DENTAL LOW STAFF | TEAM DENTAL LOW

Dear Dental Low Staff or Team Dental Low of the FCC COLEMAN LOW - UNIT: COL-B-D

Since orthodontic treatment is outside the scope of routine FBOP dental services, what DENTAL SPECIALTY-REFERRAL PROCESS

was initiated to address the clinical consequences of my damaged Orthodontic Braces Appliance and tooth loss?

Respectfully,

Gilmar Pereira da Silva Jr.
BOP Reg. Number: 74744-511
FCC COLEMAN LOW - UNIT: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/08/2026 04:58:36 PM

To: DENTAL LOW STAFF or TEAM DENTAL LOW
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT TO DENTAL LOW STAFF | TEAM DENTAL LOW

Dear Dental Low Staff or Team Dental Low of FCC COLEMAN LOW,

After my orthodontic braces appliance was damaged and I experienced tooth loss, was a CURRENT TREATMENT PLANING

EXANMINATION PERFOMED, and where is the updated treatment plan?

Respectfully,

Gilmar Pereira da Silva Jr.
BOP Reg. Number: 74744-511
FCC COLEMAN LOW - UNIT: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/08/2026 02:37:22 PM

To: DENTAL LOW STAFF AND GENERAL TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear Dental Low Staff, good afternoon,

I am requesting URGENTE a clinical determination and clarification of whether my condition qualifies for specialty evaluation

or another appropriate course of care under BOP policy.

Respectfully,

Gilmar Pereira da Silva Jr.
Reg. Number.: 74744-511
FCI COLEMAN LOW

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/08/2026 10:25:00 AM

To: COP OUT TO DENTAL LOW STAFF / TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT to Dental Low Staff,

Dear DENTAL LOW STAFF / DENTAL LOW TEAM

Good Morning,

>>>>>>>>>>>>>>> I need and let me know: <<<<<<<<<<<<<<<<

1. What exact treatment did I allegedly refuse?

2. On what date?

3. Who offered it?

4. What where the risks and consequences explain to me?

5. Where is the BP-A0358 Medical Treatment Refusal Form?

6. Where is my signature?

7. Where are the provider and witness signatures?

Gilmar Pereira da Silva Junior
Reg. Number: 74744-511
FCI COLEMAN LOW

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/08/2026 10:10:26 AM

To: DENTAL LOW STAFF
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear Dental Low Staff,

Good Morning,

I need, please, identify exactly what anatomical structures were examined under the Head & Neck / Soft Tissue section and explain what findings supported 'WNL' in my A&O Dental Examination.

Gilmar Pereira da Silva Junior
Reg.Number.: 74744-511
FCC COLEMAN LOW

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/09/2026 05:04:14 PM

To: HEALTH SERVICES STAFF or HEALTH SERVICES TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT TO HEALTH SERVICES LOW TO STAFF AND HEALTH SERVICES LOW TEAM

Dear Health Services Low Staff | Health Services Low Team,

Has Health Services been made aware of my current medical and dental condition?

Is there a Health Services provider responsible for coordinating my case?

Is my case being followed as a condition requiring continuity of care?

Can Health Services confirm what actions have been take since I was informed that the necessary treatment might require outside care?

I request a specific response identifying the next action Health Services will take in my case?

Respectfully,

Gilmar Pereira da Silva Jr.
Reg. Number.: 74744-511
FCC COLEMAN LOW | UNIT: COL-B-D | B4

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/09/2026 11:53:03 AM

To: DENTAL LOW STAFF and DENTAL LOW TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

BP-A0148 | COP OUT
INMATE REQUEST TO STAFF | CDFRM
U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAL OF PRISONS

TO: DENTAL LOW STAFF or DENTAL LOW TEAM
FROM: GILMAR PEREIRA DA SILVA JUNIOR
WORK ASSIGMENT: GILMAR PEREIRA DA SILVA JUNIOR
DATE: SEPTEMBER 9, 2026
REGISTER NO.: 74744-511
UNIT: COL-B-D | B4

SUBJECT: URGENT

My mandible was reconstructed after a serious accident and i have a titanium plate. Will this condition be considered in my dental evaluation?
Will the PANOREX already performed be reviewed by the dentist to evaluated possible consequences involving my teeth and mandible?

RESPECTFULLY,

GILMAR PEREIRA DA SILVA JUNIOR
BOP REG. NUMBER: 74744-511
FCC COLEMAN LOW | UNIT: COL-B-D | B4

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/09/2026 03:23:19 PM

To: DENTAL LOW STAFF
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear DENTAL LOW STAFF,

If DENTAL LOW cannot provide the necessary treatment, what is the procedure to request a referral to a specialist?

Respectfully,

Gilmar Pereira da Silva Jr.
# 74744-511
FCC COLEMAN LOW | B4

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/09/2026 10:26:41 AM

To: DENTAL LOW STAFF or DENTAL LOW TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT - BP-A0148
INMATE REQUEST TO STAFF | CDFRM
U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAL OF PRISONS

TO: DENTAL LOW STAFF or DENTAL LOW TEAM
FROM: GILMAR PEREIRA DA SILVA JUNIOR
WORK ASSIGMENT: GILMAR PEREIRA DA SILVA JUNIOR
DATE: SEPTEMBER 9, 2026
REGISTER NO.: 74744-511
UNIT: COL-B-D | B4

SUBJECT: URGENTE

My orthodontic appliance is damaged. Can the dentist evaluate and formally documented it's condition?

RESPECTFULLY,

GILMAR PEREIRA DA SILVA JR.
BOP REG. NUMBER: 74744-511
FCC COLEMAN LOW - UNIT: COL-B-D | B4

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/09/2026 09:32:36 AM

To: DENTAL LOW STAFF and TEAM DENTAL LOW - COP OUT
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT to DENTAL LOW | TEAM DENTAL LOW

Dear Dental Low Staff and Team Dental Low,

I'm requesting a complete dental evaluation of my current condition. When can I be evaluated by the dentist?

Respectfully,

Gilmar Pereira da Silva Junior
BOP Reg. Number: 74744-511
FCC COLEMAN LOW - UNIT: COL-B-D

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/10/2026 09:10:58 AM

To: WARDEN LOW
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear Warden Low,

Has the Warden been formally informed of my health situation?

Was my URGENT request submitted to administration forwarded for review?

Who is currently responsible for reviewing my complaint?

Has the Warden received or reviewed the requests I previously submitted?

I request confirmation that my situation is being addressed administratively.

Respectfully,

Gilmar Pereira da Silva Jr
BOP Register Number: 74744-511
FCC COLEMAN LOW | COL-B-D | B4

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/10/2026 09:02:47 AM

To: DENTAL LOW STAFF or DENTAL LOW TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

COP OUT TO DENTAL LOW STFF

Dear Dental Low Staff and Dental Low Team,

I would like to know whether a dentist has evaluated my current condition since I reported the problems involving my appliance and tooth loss?

Respectfully,

Gilmar Pereira da Silva Jr
BOP Reg. No.: 74744-511
FCC COLEMAN LOW | COL-B-D | B4

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/10/2026 11:59:24 AM

To: WARDEN LOW
Inmate Work Assignment: 74744-511

Dear Warden Low,

Has administration reviewed how my previous requests were handled?

Has it been verified whether my requests were actually received and reviewed?

Who supervises the implementation of actions requested in my submissions?

Is there administrative follow-up regarding my case?

When was the last administrative review conducted?

Respectfully,

Gilmar Pereira da Silva Junior

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 09/10/2026 09:22:47 AM

To: HEALTH SERVICES STAFF or HEALTH SERVICES TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear Health Services Low and Health Services Team,

What is the continuity-of-care plan for my condition?

Is there a medical evaluation considering my history of mandibular reconstruction?

Is my dental condition being considered together with my medical history?

Is there documentation in my medical record indicating future follow-up?

When will my next Health Services evaluation take place?

Respectfully,

Gilmar Pereira da Silva Junior
#74744-511
FCC COLEMAN LOW
UNIT.: B4

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/15/2026 10:42:02 AM

If you have any inquiries regarding your case, you can make sick call. Sick calls are available on Mondays, Tuesdays, and Thursdays at 7:30 AM.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, September 10, 2026 11:53 AM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: DENTAL LOW STAFF or DENTAL LOW TEAM
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

Dear Dental Low Staff or Dental Low Team,

My orthodontic appliance has been damaged since my time in SPECIAL HOUSE UNIT (SHU). Is there any documented evaluation
of its current condition? and i have reported tooth loss and difficulty chewing. Have these changes been documented in my dental evaluation?

RESPECTFULLY,

GILMAR PEREIRA DA SILVA JR.
BOP REG. No.: 74744-511
FCC COLEMAN LOW
COL-B-D (B4)

---

FROM: Warden LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/17/2026 02:32:01 PM

If you're dissatisfied with the outcome, you may proceed to the next level by submitting a BP-10.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Friday, August 7, 2026 1:41 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: GENERAL WARDEN
Inmate Work Assignment: Gilmar Pereira da Silva

Dear Warden,

I am respectfully requesting your urgent attention to my case once again. Dental low has already stated that there is no Orthodontic Specialist available to treat my condition, and Program Statement P6400.03 - Dental Services itself confirms that this type of specialized treatment is not offered at this facility. I must reinforce that my Orthodontic appliance can not be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction with a titanium plate.

I have already attended Sick Call and was seen, but without any resolution to the main problem. I respectfully ask what I should do given this situation. I also remind you that I previously sent a message requesting urgent attention to my BP-9, and I received a response that dis not address the issue reported, an issue that can not wait any longer.

I request effective actions and than you so much for your attention,

Respectfully,
Gilmar Pereira da Silva Jr.
Reg. Number.: 74744-511
FCC COLEMAN LOW

---

FROM: Warden LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 09/17/2026 02:22:01 PM

Your administrative remedy (1289925-F1) was closed on September 2, 2026. If you have not received a copy of the response, please see your unit counselor. If you are dissatisfied with the outcome, you may proceed to the next level by submitting a BP-10.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Wednesday, August 12, 2026 1:25 AM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Warden (BP-9 Follow Up)
Inmate Work Assignment: N/A

FORMAL AND URGENT REQUEST - THIRD REQUEST FOR RESPONSE TO BP-9

Dear Warden,

I respectfully submit this message as my THIRD FORMAL REQUEST for a response to my BP-9, which I submitted on July 20, 2026, for processing under the Federal Bureau of Prisons Administrative Remedy Program.

Since submitting my BP-9, I have been waiting for the Warden's formal response. As of today, August 11, 2026, I have not received the Warden's decision or response to my BP-9, and I have not received any written notification informing me that an extension of time was necessary to respond to my request.

I respectfully ask that the status of my BP-9 be reviewed immediately and that I be provided with the formal response to my administrative remedy.

ADMINISTRATIVE REMEDY RESPONSE TIME

I respectfully bring attention 28 C.F.R. Sec. 542.18, which establishes the response periods applicable to requests and appeals under the Administrative Remedy Program.

I understand that, once a Request or Appeal is accepted and logged into the Administrative Remedy Index, the Warden generally has 20 calendar days to provide a written response.

The regulation also provides for an extension of the response period under certain circumstances, but the inmate is to be informed in writing of such an extension.

As of today, I have not received any written notice informing me that the Warden requires or has granted an extension of time to respond to my BP-9.

I therefore respectfully request that the status of my BP-9 be verified and that the formal response be provided to me as soon as possible.

EXTREME URGENCY OF MY REQUEST

I respectfully ask that you understand that this is not an ordinary administrative request.

The matters described in my BP-9 concern circumstances that, according to my personal experience and the facts I reported, have had serious consequences for my physical health, dental condition, emotional well-being, and overall ability to function during my confinement.

I have repeatedly sought assistance.

I have requested help from different institutional departments and staff members.

---

I have used the administrative channels available to me.

I have repeatedly requested assistance and explanations.

I continue to pursue an institutional resolution through the procedures established by the Bureau of Prisons.

For these reasons, the continued absence of a response is causing me substantial concern because I remain without a formal determination regarding the issues raised in my BP-9.

I am not asking for special treatment.

I am asking for my administrative remedy to be reviewed and for the formal response required under the Administrative Remedy Program to be provided to me.

MY GOOD-FAITH EFFORT TO CONTINUE THE ADMINISTRATIVE PROCESS:

On August 10, 2026, I also contacted my Unit Counselor J. Toro and requested a BP-10 because I intend to continue through the Administrative Remedy Program and do want there to be any misunderstanding that I have voluntarily failed to pursue any administrative step.

I was informed that I would have to wait for the Warden to return the BP-9 before the BP-10 could be provided to me.

I am therefore submitting this message to formally document that I am actively attempting to continue the administrative remedy process and that I am not voluntarily refusing, abandoning, or bypassing the administrative procedure.

My intention is to comply fully with all applicable administrative requirements.

FORMAL REQUEST

Accordingly, I respectfully request:

1. That the status of my BP-9 submitted on July 20, 2026 be immediately reviewed;
2. That the date on which my BP-9 was actually logged into the Administrative Remedy Index be confirmed;
3. That I be provided with the Warden's formal written response to my BP-9;
4. If an extension of time has been granted or is being claimed, that I be informed in writing of the extension and the new anticipated response date;
5. That, given the urgent nature of the issues raised in my BP-9, my request be treated with the highest practicable priority;
6. That it be documented that this is my THIRD REQUEST for a response to my BP-9;
7. That it be documented that, on August 10, 2026, I contacted Counselor J. Toro to request a BP-10 and expressly demonstrated my intention to continue the Administrative Remedy Program;
8. That no administrative delay be attributed to me because I am actively seeking a response and attempting to continue the administrative process;
9. That I receive a written response to this request.

I respectfully ask that Warden to consider the seriousness and urgency of the matters raised in my BP-9 and the continuing impact that these circumstances are having on my health and daily life within the institution.

I am not seeking conflict with the administration. I am seeking an institutional, documented, and appropriate resolution of matters that I believe are extremely important to my health, well-being, and legal rights.

Thank you for your attention to this matter. I respectfully await the formal response to my BP-9.

Respectfully,

Gilmar Pereira da Silva Jr.
Register No. 74744-511
FCC Coleman Low

---

MASTER STATEMENT OF FACTS
Allegations of Violations of Fundamental Rights, Medical and Dental Negligence, Conditions of Confinement, and Progressive Deterioration of Health
Author: Gilmar Pereira da Silva Junior
Institution: Federal Correctional Complex Coleman Low (FCC Coleman Low)
PURPOSE OF THIS STATEMENT
This Master Statement of Facts has been prepared for the purpose of recording, in chronological, organized, and detailed form, the events I experienced since my admission to the Federal Correctional Complex Coleman Low, on May 4, 2026, which, in my understanding, contributed to the progressive deterioration of my health condition. The purpose of this document is to present a faithful account of the facts I witnessed and experienced, indicating, whenever possible, the evidence that may corroborate each event narrated.
This statement may serve as a basis for administrative appeals, judicial petitions, and other applicable legal measures, as well as for communications directed to the competent authorities, including the Federal Bureau of Prisons (BOP), the Department of Justice (DOJ), the Office of Inspector General (DOJ-OIG), the Office of Special Counsel (OSC), members of the United States Congress, and the Federal Court responsible for my case. The facts narrated herein should be analyzed together with medical and dental records, radiographs, administrative records, BP-9, BP-10, and BP-11 forms, TRULINCS records, internal Bureau of Prisons records, video recordings, audio recordings, and all other existing evidence or evidence that may be produced.
My objective is to present a clear, precise, and chronological description of the events so that the competent authorities may evaluate them in light of the available evidence and applicable law.
CHAPTER I
My medical condition prior to admission to the Federal Correctional Complex Coleman Low
Prior to my admission to the Federal Correctional Complex Coleman Low, I already had a complex medical condition resulting from a serious motorcycle accident. As a consequence of that accident, I underwent jaw reconstruction surgery, during which a titanium plate was implanted for the purpose of stabilizing the bone structure. Following that surgery, I became dependent on specialized dental follow-up and on the permanent use of an orthodontic appliance as an essential part of the reconstructive treatment. Periodic maintenance of this appliance is part of the treatment of the jaw reconstruction and does not serve a cosmetic purpose. The absence of the necessary adjustments can compromise the stability of the reconstructed jaw and increase the risk of new clinical complications.
This orthodontic appliance does not serve a cosmetic purpose. Its use is exclusively therapeutic, being necessary to preserve the stability of the reconstructed jaw, maintain proper dental alignment, reduce the risk of bone loss, avoid structural displacement, and prevent further complications arising from the accident and the surgery. Before my incarceration, my treatment was monitored by specialized professionals, precisely because it was a complex case of jaw reconstruction.
This entire medical condition can be evidenced by imaging exams, medical records, dental records, and other documents produced prior to my admission to the prison system. This clinical condition already existed before my entry into the Federal Correctional Complex Coleman Low and, therefore, did not arise during the period of custody.
CHAPTER II
My admission to the Federal Correctional Complex Coleman Low
On May 4, 2026, I was admitted to the Federal Correctional Complex Coleman Low. On that date, my need for continuity of specialized dental treatment was already known, as it was part of the treatment begun after the reconstruction of my jaw. However, shortly after my arrival, I did not receive dental care consistent with my clinical condition.
Instead, I was sent to the Special Housing Unit (SHU), where I remained for approximately eight days in isolation. To this date, based on the administrative documents to which I have had access, I have found no justification explaining the need for this measure. This issue was later raised by me through the BP-9 administrative remedy, in which I requested that the facts be reviewed by the competent authorities.
My stay in the SHU occurred precisely at the moment when I needed continuity of specialized dental treatment, a situation that, in my understanding, contributed to the interruption of the care my condition required. At that time, I did not yet imagine that this interruption would mark the beginning of a continuous process of deterioration of my oral health and of the reconstructed structure of my jaw.
CHAPTER III
The conditions faced during my stay in the Special Housing Unit (SHU)
During the approximately eight days I remained in the Special Housing Unit (SHU), I experienced a situation that, in my perception, was incompatible with the needs of my medical and dental condition. During that period, my main concern was to ensure continuity of the specialized treatment I already required prior to my admission to the Federal Correctional Complex Coleman Low. However, during the time I remained in the SHU, I did not receive dental care consistent with that need.

---

In addition to the absence of specialized follow-up, I also faced difficulties related to basic oral hygiene conditions. During that period, I remained without access to the care necessary for maintenance of my orthodontic appliance and the health of my reconstructed jaw. I also requested assistance on several occasions; however, in my perception, my requests did not result in measures capable of addressing the needs of my clinical condition.
Beyond the physical aspects, this period of isolation produced significant emotional impact. Uncertainty regarding the continuity of my treatment, combined with the conditions of confinement, increased my concern about the possibility of a worsening of my health. The events that occurred during my stay in the SHU were later reported by me in the BP-9 administrative remedy.
I request that all records related to this period be preserved, including security camera footage, movement logs, internal communications, administrative reports, and other documents that may contribute to clarifying the facts.
CHAPTER IV
The onset of the deterioration of my health condition
It was during the period I remained in the SHU that I began to notice the first signs of deterioration of my dental condition. Until then, my reconstructive treatment depended on specialized follow-up and periodic maintenance of the orthodontic appliance, precisely to preserve the stability of the reconstructed jaw following the motorcycle accident.
Without that follow-up, I began to notice progressive changes in my clinical condition. The interruption of treatment, combined with the absence of proper maintenance of the orthodontic appliance, caused my concern to grow gradually. As time passed, the problems ceased to represent merely a temporary interruption of treatment and began to produce concrete consequences for my health.
What initially required only the continuation of specialized care progressively evolved into an increasingly complex condition, marked by the continuous deterioration of my oral condition. In my perception, each period without specialized care increased the risk of new complications and reduced the chances of fully preserving the outcome of the reconstruction of my jaw.
CHAPTER V
The continued absence of specialized treatment
Even after leaving the SHU, my situation was not effectively resolved. From May 2026 to the present date, I continue to await specialized dental care consistent with the complexity of my clinical condition.
During this period, I attended the institution's dental department on several occasions, seeking assistance to prevent my condition from continuing to worsen. Despite these visits, the specialized treatment I need was not provided.
Over the months, I continued to report the progression of my symptoms and to express concern about the consequences of the delay in continuing the treatment begun before my incarceration. My intention has always been to preserve my health and avoid permanent damage. However, as time passed, my condition continued to develop unfavorably, increasing my concern about the future consequences should specialized treatment remain unavailable. This situation began to affect not only my oral health but also my quality of life, causing progressive difficulty eating, constant concern about the stability of my jaw, and fear of further tooth loss.
CHAPTER VI
The loss of four teeth and the progressive deterioration of my clinical condition
As the months passed and in the absence of continuity of specialized dental treatment, my health condition began to show progressive deterioration. The most serious consequence of this process was the loss of four teeth, a fact that significantly altered my oral condition and increased my concern regarding the preservation of the structure of my reconstructed jaw.
In my perception, these losses do not represent an isolated event, but are part of a continuous process of deterioration that began after the interruption of the specialized treatment I had needed since before my admission to the prison system. In addition to the tooth loss, I began to face progressive difficulty chewing food, changes in the functioning of the orthodontic appliance, and constant concern about the possibility of further structural damage.
My main concern has always been to prevent the reconstruction of my jaw from being compromised by the absence of specialized follow-up. As the situation worsened, my fear also increased that new damage might become permanent if treatment continues to be postponed. To this day, I continue to live daily with this concern and with the limitations arising from the progression of my clinical condition.

---

CHAPTER VII
The dental visits conducted and the acknowledgment of the need for specialized treatment
Throughout the dental visits conducted at the Federal Correctional Complex Coleman Low, I sought to provide detailed information about my medical condition and to explain that my orthodontic appliance is part of a reconstructive treatment begun after a serious motorcycle accident. During this period, I underwent a panoramic radiograph performed by the institution itself. According to what I was told during the dental visit, the analysis of that exam confirmed the complexity of my clinical condition. I was also informed that my case required specialized dental treatment. As I understood the information provided, the dental team acknowledged that the treatment my condition required could not be performed at that facility.
This understanding was later reiterated at other dental visits. According to what I was told, my condition required evaluation and treatment by professionals with specialization appropriate to the complexity of the case. In my understanding, this information indicated that the dental team itself acknowledged the need for specialized treatment that was not available at the facility where I was in custody. This increased my concern about the continuity of my treatment and the possible effects of the delay in adopting an adequate solution.
Even in light of this situation, I continued to await a solution that would allow for continuity of the treatment begun prior to my incarceration. Meanwhile, my condition continued to develop negatively.
CHAPTER VIII
The events of July 30, 2026, and the continued absence of adequate treatment
On July 30, 2026, at approximately 7:30 a.m., I was again sent to the dental department of the Federal Correctional Complex Coleman Low for a dental cleaning. During this visit, I again reported my entire clinical condition, informing them that my orthodontic appliance is broken, that I have already lost four teeth, and that I remain concerned about the progressive deterioration of the reconstruction of my jaw.
On that occasion, the only measure actually taken was the provision of an oral antiseptic. Given the seriousness of my situation, I asked the dentist to review the panoramic radiograph existing in the Federal Bureau of Prisons' files, as I understand that this exam objectively demonstrates the complexity of my case. However, in my perception, that radiograph was not reviewed during the visit. According to what I was told during that consultation, I was again informed that my case requires specialized dental treatment that is not available at that facility.
As I understood the information received, this was the third occasion on which dental team professionals acknowledged that the treatment my condition requires cannot be performed at the Federal Correctional Complex Coleman Low. Still during that visit, I was informed that my treatment should be carried out urgently outside the correctional institution, due to the complexity of my clinical condition and the risk of continued deterioration should treatment continue to be postponed. In my understanding, this information indicates that the institution was aware of the seriousness of my clinical condition and of the need for evaluation for specialized treatment, based on the visits conducted and the existing dental records.
On that occasion, I was presented with a document for signature that, as I understood it, stated that I was refusing the dental recommendations that had been provided during the visit. I immediately clarified that this information did not correspond to reality.
I explained that at no time did I refuse dental care. On the contrary, since my arrival at the Federal Correctional Complex Coleman Low I have continuously been requesting the specialized treatment I need. I also clarified that my concern has always been to obtain adequate care to prevent the deterioration of my clinical condition. Because I understood that the document did not correctly reflect my position, I chose not to sign it. After explaining once again the seriousness of my situation, I stated that I remain without access to the specialized treatment considered necessary and that my state of health continues to deteriorate.
After I stated that I would not sign the document because I understood it did not correctly reflect my position, the visit was ended and I was instructed to return immediately to Unit B4, being told that my signature would not be required. I returned to the unit without any concrete measure being adopted to resolve my problem. In my perception, this episode reinforced my concern that, despite the visits conducted, the main clinical need underlying my requests remained unresolved, since the specialized treatment I consider necessary remains unavailable.
The events that occurred on July 30, 2026, as reported herein, reinforce my perception that, despite the visits conducted and the information provided to me, I continue to lack access to the specialized treatment that I consider necessary to preserve my health and prevent the worsening of my clinical condition.
CHAPTER IX
Documents and evidence that may corroborate the facts narrated
The facts described in this statement may be analyzed together with the existing documents and records, including, as applicable:

- BP-9, BP-10, and BP-11 administrative forms;
- administrative records of the Federal Bureau of Prisons (BOP);

---

messages and communications made through TRULINCS;
medical and dental records;
panoramic radiograph performed by the institution itself;
dental evaluations recorded in the medical file;
records of admission to and stay in the Special Housing Unit (SHU);
internal movement records;
security camera footage, if existing;
audio recordings, if existing;
medical documents produced prior to my incarceration;
documentation regarding the motorcycle accident;
documentation of the jaw reconstruction surgery;
documentation regarding the titanium plate implant;
and any other documents or records that may be produced or obtained during any administrative or judicial proceeding.

In my understanding, these documents may contribute to clarifying the facts narrated in this statement.

CHAPTER X

Legal basis

The facts described in this statement may be analyzed by the competent authorities in light of applicable law, including, as the case may be:

the Fifth Amendment to the United States Constitution (Due Process);
the Eighth Amendment to the United States Constitution, particularly regarding protection against cruel and unusual punishment and the provision of care for serious medical needs;
18 U.S.C. § 4042, which establishes the general duties of the Federal Bureau of Prisons relating to the custody, protection, and care of persons under its responsibility;
the Federal Tort Claims Act (FTCA), where applicable;
the Prison Litigation Reform Act (PLRA), depending on the nature of any claim;
internal Federal Bureau of Prisons policies relating to medical and dental care;
and other applicable federal regulations.

In addition, the facts may be considered in light of international principles aimed at protecting persons deprived of liberty, including the United Nations Standard Minimum Rules for the Treatment of Prisoners (the Nelson Mandela Rules), to the extent they may serve as an interpretive reference. This statement is not intended to substitute for the legal analysis of the competent authorities, but to present the facts so that they may be considered together with the existing evidence and applicable law.

CHAPTER XI

Request for preservation of evidence

Given the relevance of the facts narrated herein, I respectfully request that all records related to the events described in this statement be preserved, including, among others:

medical and dental records;
radiographs and imaging exams;
administrative records;
electronic records;
medical and dental forms;
internal communications related to my care;
Special Housing Unit (SHU) records;
movement records;
security camera video footage;
audio recordings, if existing;
TRULINCS records;
and any other document that may contribute to clarifying the facts.

I understand that the preservation of this evidence may allow for a complete and objective analysis of the events reported.

CHAPTER XII

Final considerations

Since my admission to the Federal Correctional Complex Coleman Low on May 4, 2026, my main concern has always been to continue the specialized dental treatment begun before my incarceration. Over the months, however, my health condition has developed in a manner I consider concerning. According to the facts reported in this statement, the interruption of specialized care was followed by the progressive deterioration of my clinical condition, the loss of four teeth, the deterioration of my orthodontic appliance, and increasing difficulty chewing, sleeping, and carrying out daily activities.

I also sought dental care on several occasions and repeatedly reported the need for specialized treatment. As described in this statement, during these visits I was informed, more than once, that my case required specialized treatment not available at the institution.

At the visit conducted on July 30, 2026, according to what I was told, I was again advised that my treatment should be carried

---

out outside the institution due to the complexity of the case and the need for specialized care. Despite this, to the present date, I continue to lack access to the treatment I consider necessary to preserve my health and prevent the worsening of my clinical condition.

My objective in presenting this statement is not to anticipate legal conclusions or to assign responsibility, which will be for the competent authorities to determine. My purpose is to record, in an organized, chronological, and faithful manner, the facts I experienced since my admission to the Federal Correctional Complex Coleman Low, indicating the evidence that, in my understanding, may contribute to clarifying the events.

I respectfully request that this statement be reviewed together with all existing documentation, so that the competent authorities may assess my clinical situation, verify the facts reported, and take the measures they deem appropriate in light of the evidence and applicable law. I declare, under penalty of the legal sanctions applicable to false statements, that the facts narrated herein correspond, to the best of my personal knowledge, to what I experienced and to what I was told during the visits described, subject to review by the competent authorities regarding the evidence and legal issues involved.

While this situation remains unresolved, my health condition continues to develop. Each day without the specialized treatment I consider necessary increases my concern about the possibility of further permanent damage, additional tooth loss, and compromise of the reconstruction of my jaw.

I present this statement in good faith for the purpose of reporting, as faithfully as possible, the events I experienced during my time at the Federal Correctional Complex Coleman Low. My objective is to allow the competent authorities to review the facts objectively, taking into account the existing documentation, institutional records, and any other evidence that may be produced.

GILMAR PEREIRA DA SILVA JR. # 74744-511

BP-9 - EXHIBIT - C . PAGE 1 OF 2

Detailed summary of what happened when I spent 8 terrible days at the SHU, so that the due responsible officers of FCC Coleman Low are aware of everything I went through and that they can review all this when they look at the recording that the FCC Coleman Low cameras recorded, as well as being able to obtain the audios of every day or of all the moments that I am involved, I COME THROUGH THIS TESTIMONY FORMALLY REQUEST THAT I OBTAIN AND THAT ALL IMAGES AND AUDIOS BE PRESERVED, due to what happened to me I am suffering the irreparable sequelae in the My day-to-day for my life and my health here inside unit B4. I Gilmar Pereira da Silva Jr., Reg. #74744-511 will detail everything I experienced when they put me in a very irresponsible way and without giving me any kind of information where I was going (SHU):

-First day I volunteered at FCC COLEMAN LOW and arrested at SHU: 05/04/2026 - I arrived at the Low unit around 11:00 am, then I took the photo and the fingerprints, I changed clothes where they already gave me torn clothes and a very dirty shoe, they put me in a waiting room, an officer J. Ivory had the first interview with me and at no time did he tell me that I would go to a SHU, on the contrary, he told me that I didn't worry about anything and that everything was fine, then I returned to the same waiting room and after 1 hour of waiting I changed my clothes again, they gave me orange clothes that were torn and with a totally different size from what I wear, I wear the medium size and they gave me clothes with size 2XL, they gave me torn and dirty socks, they gave me a pair of Sandals also different from my size, I politely questioned about this situation and the Officer gave me the answer that he would not have my size to give me. After that a guard led me to the SHU unit and I asked the Officer where he was taking me and where I was and he answered me the following: -"WELCOME TO HELL". I went to an isolated cell in SHU #130 and whenever I saw an Officer I asked why I was there, isolated and without any assistance, the answer of all of them was just a smile of sarcasm and very menacing and with an irony of a lot of discrimination with me, they will not give me the right to make any kind of phone call.

-Second day arrested in the SHU: 05/05/2026 - But one day I was isolated in the same cell #130. In the morning with a lot of politeness I asked a question to the Officer in order to know if I could talk to any Supervisor and the Officer ordered me to shut up. Still in the morning a team of Psychologists showed up to pay me a visit I insistently asked them to help me so that I could understand what was happening to me and I was simply ignored by all of them. On this day I started to have a lot of headache and I started to get very worried about what was happening to me, I was in a totally very noisy environment on the part of the other prisoners and also on the part of the Officers who only talked to the prisoners screaming. I came across the situation that I didn't have any kind of hygiene and cleaning accessory with me and I also had no one to help me.

-Third day arrested at the SHU:05/06/2026 - I continued in the same cell and already with a strong headache and no maintenance with my hygiene, (to which I use orthodontic appliance because I suffered a motorcycle accident in which I broke my jaw and had to have surgery, after that I had the need to use dental appliances so as not to lose my teeth), I began to realize that the steel wire of my orthodontic appliance had broken and that my teeth were already very flexible. At 06:30 am when the Officer came to bring breakfast, I insistently asked him to help me because I was not well with my health and the Officer replied saying that she was not a doctor to help me or anyone. I spent the whole day asking for help from all the Officers who passed through the corridor and none of them paid attention to me, some of them laughed at the situation and others pretended that they were not listening to my cry for help. At 10:00 pm, at the time of counting the prisoners, all prisoners must be standing and staying next to their beds, I was already so weakened with my health that I could not stand up so quickly as the officers demand, so the Officer arrived at the door of the cell where I was, he knocked with a lot of force on the door and asked me if I was "DUMB" for not having understood his order for me to stand up and once again I asked for help and once again no one helped me. I really already had my health totally weakened, my oral hygiene totally without doing and my emotional and psychological state very shaken.

-Fourth day arrested at SHU: 05/07/2026 - In the morning I asked for my teeth, I believe with all certainty that this happened due to lack of maintenance with my oral hygiene which I am obliged to do due to the use of my orthodontic appliance. I kept asking for help and I was very humiliated, humiliated and discriminated against by the Officers. In the afternoon I was lying down when 3 officers arrived in the cell (2 women and 1 man), knocking a lot on the door, screaming and ordering me to put my hands out so that I would be handcuffed. I obeyed the order of the Officers and asked where I was going and the guard told me to shut up, I begged a lot for help, for medicines to take and for a doctor to see me and at this moment all the Officers laughed at my situation. Then they transferred me to the cell next to #129, with this cell transfer I was no longer able to be aware of what could happen to my life, besides I did not have clean clothes to wear, hygiene products to use, no kind of medical assistance and no kind of contact with anyone, going through a situation that I was 24 hours a day without seeing the sun, being very humiliated and discriminated against by all the officers who were present there day after day.

BP-9 - EXHIBIT - C - PAGE 2 OF 2

-Fifth day imprisoned in the SHU: 05/08/2026 - I woke up very weak, feeling very bad, where the sadness and disappointment of living took over me, every time I asked for help from the Officers I felt much weaker emotionally and physically, I gave my life in the hands of GOD and prayed a lot so that he could free me from that situation, at this moment I thought a lot about my family and especially about my children who need me so much. I kept wondering why these officers were trying not only me, but all the prisoners who were there.

-Sixth day arrested in the SHU: 05/09/2026 - On this day I no longer had hope of living, I no longer knew what to do with my life, because in addition to not having any kind of help I also did not know why I was in a cell with everything restricted, my mind no longer knew how to reason correctly and I did not know what would happen to me with the 37 months of sentence that I would have to serve in this cell. No one from FCC COLEMAN LOW helped me in ANYTHING that a human being who is imprisoned has and should have his rights preserved. On this day the same Officer who was at the reception of the LOW unit on 05/04/2026, where he was the one who received me and did all my entry process in FCC COLEMAN LOW, this officer saw me at SHU and was very surprised, came to the door and I wonder why I was there, I replied that I did not know and that I was in great need of help and that I did not know if I would be able to stay alive for a long time, because I was already very weak, this same Officer withdrew and could not get me Help in nothing.

-Seventh day arrested at the SHU: 05/10/2026 - I stayed the whole Sunday lying down with a lot of headache with a lot of pain throughout the body, the situation remained the same without any kind of assistance from any official.

-Eithth day arrested in the SHU: 05/11/2026 - With my very weakened health and I was 100% emotionally shaken and already with my dental appliance totally broken and with loss of teeth. In the morning I received the visit of two Officers who removed me from the cell telling me that I was going to my house, they put me in a waiting cell, I waited for 30 minutes, after that the same officers removed me from this waiting cell. I asked where I was going and one of the officers answered me saying that I was a criminal, that I would not go home and that my place was to live eternally imprisoned. At that moment there should be an average of about 5 Officers and everyone laughed at the situation. Then I was taken back to the same cell as SHU #129 and once again I was private and without any kind of assistance. After that I was removed from the cell again, at this moment I was called a bum by the Officer, he led me to the same reception that I entered on the first day in FCC COLEMAN LOW. I was taken to unit B4 where I stayed for 5 more days without any kind of assistance from any Officer. I came across a real chaos, in a world without law, where those who rule and those who lead the rules are the prisoners who were there, I had to put up with people smoking drugs, threating me all the time and I had and I have to live with people who drink get stuck out of yes. I'm very afraid that the situation will lose control for good. I trust a lot in the work of the Officers who work here and I understand that the minority make a point of mistreating prisoners, just as I suffered and felt on my skin all this that I reported.

The other days of my life are being very challenging, because all the time I feel humiliated and very discriminated against in everything I do within FCC COLEMAN LOW. Whenever I go to ask for some information to an Officer I am treated with a lot of ignorance and a lot of disrespect, I no longer know who to ask for help, I really hope that everything returns to normal in my life and that GOD protects me today and always.

PAGE 01 OF 06



BP-10
REGIONAL ADMINISTRATIVE APPEAL
APPEAL OF PROCEDURAL REJECTION AND REQUEST FOR CORRECTION OF THE ADMINISTRATIVE RECORD

Inmate: Gilmar Pereira da Silva Jr.
Register No.: 74744-511
Institution: FCC Coleman Low
Remedy ID: 1287596-F1
Date of original BP-9: July 20, 2026
Date logged as received: August 10, 2026
Rejection Notice: August 17, 2026
Subject: Medical/Dental Care Delay or Access To

I. NATURE AND PURPOSE OF THIS APPEAL

I respectfully submit this Regional Administrative Appeal concerning the procedural rejection of Administrative Remedy Request No. 1287596-F1 and the material discrepancies I identified during the processing of my BP-8 and BP-9.
This appeal is not intended to circumvent the Bureau of Prisons Administrative Remedy Program.
On the contrary, I have consistently attempted to comply with the Administrative Remedy Program, including attempting informal resolution, submitting supporting documentation, complying with institutional procedures, and repeatedly requesting institutional attention to my medical and dental concerns.
The purpose of this appeal is to request review by the Regional Office because the administrative record appears to contain material discrepancies relating to:

- the claim that I did not attempt informal resolution;
- the true subject of my BP-9;
- the identification of "FSA Eligibility" as a subject I did not raise;
- the processing of, and dates associated with, my BP-8;
- the signature appearing in the Unit Manager's Review section;
- the extensive documentation submitted together with my BP-8 and BP-9;
- my repeated requests for urgent attention; and
- the absence of a substantive decision addressing the medical and dental issues I actually raised.

I respectfully request that the Regional Office review the complete administrative record and, where appropriate, direct that my medical/dental claim be accepted and properly processed.

II. THE UNDERLYING COMPLAINT INVOLVES SERIOUS MEDICAL AND DENTAL ISSUES

My administrative remedy concerns a serious and ongoing dental condition.
I arrived at FCC Coleman Low on May 4, 2026, following my self-surrender.
I was subsequently placed in the SHU.
During my time in the SHU, I experienced circumstances that, according to my complaint, contributed to the deterioration of my dental condition, including difficulty obtaining basic dental hygiene items and the breakage of my orthodontic brace.
I subsequently lost four teeth.
My orthodontic brace is not used for cosmetic purposes. It is related to a prior motorcycle accident and a surgery performed on my jaw.
I remain concerned that the current condition of my brace and the absence of adequate treatment may result in further tooth loss or further deterioration of my dental condition.
For this reason, my administrative remedy requests proper professional dental evaluation and treatment.

III. THE RECORD DEMONSTRATES MY ATTEMPTS AT INFORMAL RESOLUTION

The Rejection Notice dated August 17, 2026 states:
"YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION."
I respectfully dispute this characterization.
The BP-8 I submitted expressly documented my attempts to obtain informal assistance.
My BP-8 states that approximately one week after leaving the SHU, I went to Medical and requested assistance after losing four teeth.
It also states that, on July 2, 2026, I submitted an electronic request to the Dental Low staff, requesting urgent dental care related to my broken orthodontic brace and explaining that I was at risk of losing additional teeth.
On July 6, 2026, I received a response from Dental Low stating:

---

"We don't do orthodontic treatment here, but if you are experiencing pain, discomfort or any dental concern sick call is available "

The response also directed me regarding dental sick call.
This is significant because it establishes a concrete sequence of:
REQUEST FOR HELP INSTITUTIONAL RESPONSE CONTINUED ATTEMPT TO OBTAIN TREATMENT.
BOP regulations generally require that a matter be raised informally before the formal administrative remedy is submitted.
My position is that the documents submitted with my BP-8 demonstrate that this attempt was made.
IV. THE BP-8 EXPRESSLY IDENTIFIED THE MEDICAL/DENTAL PROBLEM
The BP-8 contained a detailed attachment identified as:
"SPECIFIC COMPLAINT."
That attachment explained:

- my arrival at FCC Coleman Low on May 4, 2026;
- my placement in the SHU;
- the loss of four teeth;
- the breakage of my orthodontic brace;
- the relationship between my orthodontic treatment and my prior jaw surgery;
- the difficulty obtaining basic dental hygiene items; and
- my ongoing fear of losing additional teeth.

Accordingly, the BP-8 did not present a vague or undefined complaint.
It identified a specific medical/dental condition and requested assistance.
V. THE BP-8 ALSO IDENTIFIED THE REQUESTED TREATMENT
The BP-8 contained a separate attachment identified as:
"WHAT I NEED."
In that document, I requested:

- dental/orthodontic care;
- treatment related to the four lost teeth;
- treatment related to the broken portion of the orthodontic brace;
- proper adjustment of the brace;
- professional evaluation; and
- treatment necessary to prevent further tooth loss.

Accordingly, the administrative remedy identified both:
THE PROBLEM
and
THE REQUESTED RELIEF
VI. "FSA ELIGIBILITY" DOES NOT CORRESPOND TO THE COMPLAINT I SUBMITTED
The Rejection Notice identifies:
SUBJECT 1: DENTAL CARE DELAY OR ACCESS TO
and
SUBJECT 2: FSA ELIGIBILITY
I respectfully state that I did not submit a complaint regarding FSA Eligibility as part of this administrative remedy.
I did not raise an FSA eligibility issue.
I did not request a determination regarding FSA Eligibility.
I did not identify FSA Time Credits as part of my medical/dental complaint.
My submission concerned:

- dental treatment,
- the loss of four teeth,
- a broken orthodontic brace,
- requests for dental treatment, and
- the risk of further dental deterioration..

I am willing to comply with the instruction that unrelated matters be submitted separately.
However, I respectfully request that the Regional Office determine why an FSA-related issue appears in the administrative record associated with Remedy No. 1287596-F1.
I further request that the document or information that gave rise to that classification be identified.
VII. THE ADMINISTRATIVE RECORD MUST REFLECT THE COMPLAINT ACTUALLY SUBMITTED
The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of matters relating to his confinement.
For this procedure to function properly, the administrative record must correctly identify the issue actually raised.
In this case, the record identifies an FSA issue that I did not raise.
I therefore respectfully request that the Regional Office review:

---

the original BP-8;
the original BP-9;
all attachments;
all exhibits; and
the administrative record associated with Remedy No. 1287596-F1.

VIII. DISCREPANCY RELATED TO THE DATE OF THE BP-8

There is also a relevant chronological discrepancy.
My records indicate that I submitted my BP-9 on July 20, 2026, the date appearing on Part A of the BP-9.
However, the BP-8 reflects July 27, 2026 in connection with its delivery/processing by the Counselor.
I respectfully request verification of:

the date the BP-8 was actually delivered;
the date it was received;
the date it was reviewed;
the date it was processed;
the identity of the staff member who processed it; and
the date it was forwarded to the Administrative Remedy Coordinator.

I further request preservation of any records capable of establishing this chronology.

IX. CONCERN REGARDING THE SIGNATURE IN THE UNIT MANAGER'S REVIEW

The BP-8 also contains a signature attributed to the Unit Manager's Review section.
I have reason to question whether this signature actually corresponds to the signature of the Unit Manager, Mr. J. Ivory, because it appears inconsistent with other signatures of the same staff member appearing on institutional documents to which I have access.
I am deliberately avoiding making an unsupported accusation that a specific staff member falsified a document.
Instead, I respectfully request:

preservation of the original BP-8;
preservation of the administrative processing record;
identification of the person who completed the Unit Manager's Review section;
verification of the person who signed that section; and
appropriate investigation if the discrepancy warrants further review.

The purpose of this request is to protect the integrity of the administrative record.

X. THE BP-9 CONTAINED EIGHT EXHIBITS

My BP-9 contained eight exhibits, identified A through H.
These exhibits contained documentation supporting the facts described in my complaint, including information relating to:

my arrival;
my time in the SHU;
my dental condition;
the loss of four teeth;
my broken orthodontic brace;
my prior jaw surgery;
my attempts to obtain dental treatment;
my communications with institutional staff; and
the treatment requested.

I therefore respectfully request that the administrative record contain and preserve all of this documentation.

XI. THE JUNE 3, 2026 COMMUNICATION IS ALSO PART OF THE CHRONOLOGY

My BP-8 included an attachment concerning a communication I sent on June 3, 2026 to the Case Manager and Unit Manager, questioning why I had been placed in the SHU despite having self-surrendered.
To date, I have not received a substantive response to that communication.
I include this information because it demonstrates that I was already attempting to obtain answers and assistance through institutional channels before the subsequent development of the administrative process.

XII. REPEATED REQUESTS FOR URGENT ATTENTION

After submitting my BP-9, I repeatedly contacted the Warden through TRULINCS requesting attention to my administrative remedy.
These communications occurred on:

July 31, 2026
August 11, 2026
August 14, 2026
August 16, 2026

These communications were particularly significant because the underlying complaint involves an ongoing medical/dental condition and my fear of suffering further tooth loss.

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D [redacted]

---

I respectfully request that these communications be preserved and considered as part of the administrative chronology.
XIII. THE AUGUST 17 REJECTION WAS PROCEDURAL, NOT A DECISION ON THE MERITS
The document I received on August 17, 2026 is expressly identified as:
"REJECTION NOTICE ADMINISTRATIVE REMEDY."
The document does not contain a substantive decision resolving my medical/dental allegations.
Accordingly, I understand that my underlying medical/dental complaint has not yet been substantively reviewed on the merits within the institutional Administrative Remedy Program.
This distinction is important.
A procedural rejection should not be treated as a determination that my medical/dental allegations are without merit.
XIV.. ABSENCE OF THE WARDEN'S SIGNATURE
I also note that the returned BP-9 does not contain a substantive response from the Warden addressing the merits of my medical/dental complaint.
I respectfully acknowledge that the document returned to me was a procedural rejection, not a substantive response on the merits.
For this reason, I do not base this appeal solely on the absence of the Warden's signature.
Instead, I request that the Regional Office determine whether the rejection was correctly processed and whether the administrative record correctly reflects the submission I made.
This distinction matters because BOP policy permits a Coordinator to reject a Request or Appeal without a decision on the merits when the submission does not meet a program requirement, provided the rejection identifies the reason and, where the defect is correctable, provides an opportunity to correct and resubmit.

---

XV. REQUEST FOR PRESERVATION OF THE COMPLETE ADMINISTRATIVE RECORD
Because of the discrepancies described above, I respectfully request preservation of the complete administrative record associated with Remedy No. 1287596-F1, including:

the original BP-8;
the BP-8 attachments;
the original BP-9;
Exhibits A H of the BP-9;
the Rejection Notice of August 17, 2026;
receipt records;
records in the Administrative Remedy Index;
processing records;
staff communications;
TRULINCS communications;
relevant electronic submissions;
dates of receipt;
dates of processing; and
any other records documenting the processing of this remedy.

XVI. REQUEST FOR CORRECTIVE ACTION BY THE REGIONAL OFFICE
I respectfully request that the Regional Office:

review the complete record of Remedy No. 1287596-F1;
determine whether the rejection based on an alleged failure to attempt informal resolution is consistent with the documentation contained in the BP-8;
determine why FSA Eligibility was identified as Subject 2;
determine whether the administrative record correctly represents the medical/dental complaint actually submitted;
review the chronology of the BP-8;
preserve the original BP-8;
review the discrepancy relating to the signature in the Unit Manager's Review;
preserve the relevant processing records;
recognize that the medical/dental complaint and any FSA-related matter are distinct issues;
direct that the institution accept and properly process the medical/dental complaint at the appropriate institutional level, should the Regional Office determine the rejection was improper;
alternatively, accept the medical/dental complaint for processing at the Regional level, if authorized;
provide a written explanation of any remaining procedural deficiency that must still be corrected; and
ensure that any future administrative record correctly identifies the issue actually submitted.

XVII. GOOD-FAITH COMPLIANCE
I respectfully reiterate that I have attempted to comply with the Administrative Remedy Program in good faith.
I:

attempted informal resolution;
went to Medical;
went to Dental;
submitted an electronic request to Dental Low;
received and retained the institutional response;
submitted a BP-8;
submitted a BP-9;
provided supporting documentation;
repeatedly requested attention to my administrative remedy; and
continued attempting to obtain adequate medical and dental care.

I am not attempting to circumvent the administrative procedure.
I am requesting that the process correctly reflect the complaint I submitted and that I be given the opportunity to obtain meaningful administrative review.

XVIII. REQUEST FOR PROTECTION AND PRESERVATION OF THE ADMINISTRATIVE RECORD
I respectfully request that no document related to Remedy No. 1287596-F1 be altered, discarded, replaced, separated from the record, or otherwise modified without proper documentation.
I further request preservation of the original documents and any electronic records necessary to establish their chronology and

---

processing history.

XIX. CONCLUSION

The issue presented in this appeal is not simply whether a procedural requirement exists.

I acknowledge and respect the requirements of the Bureau of Prisons Administrative Remedy Program.

The issue is whether those requirements were correctly applied to the complaint and documentation I actually submitted.

The record I provided documented my attempts to obtain informal resolution, my medical and dental concerns, the loss of four teeth, my broken orthodontic brace, my requests for treatment, and my ongoing concern regarding further dental deterioration.

At the same time, the administrative record contains an apparent subject-matter discrepancy in identifying FSA Eligibility, an issue I did not raise in this medical/dental complaint.

There are also chronological and documentary concerns that I respectfully request be preserved and reviewed.

For these reasons, I respectfully request review by the Regional Office and appropriate corrective action.

I remain committed to complying with the Administrative Remedy Program and to pursuing my medical and dental concerns through the proper administrative channels.

Respectfully,
Gilmar Pereira da Silva Jr.
Register No. 74744-511
FCC Coleman Low
Coleman, Florida

GILMAR PEREIRA DA SILVA JR
# 74744-511 — UNIT. B4
FCI COLEMAN LOW

GP

ATTACHMENT 3

# UNITED STATES DISTRICT COURT

FOR THE

MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Case No. 8:25-CR-00144-KKM-SPF
(Write the number of your criminal case.)

v.

GILMAR PEREIRA DA SILVA JÚNIOR
Write your full name here.

## COVER SHEET FOR ADDITIONAL INFORMATION

**In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)**

**NOTICE**

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain a person's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only* the last four digits of a social security number, the year of a person's birth, a minor's initials, and the last four digits of a financial account number.

If you attach documents to this form that you believe should not be publicly available, you may request permission from the court to file those documents under seal. If the request is granted, the documents will be placed in the electronic court files but will not be available to the public.

Do you request that the attachments to this document be filed under seal?

☒ Yes ☐ No



PEREIRA DA SILVA JR, GILMAR 74744511

ATTACHMENT 3

## ADDITIONAL INFORMATION

To the extent that you have additional information that supports your motion for compassionate release, please attach those records or that information to this document.

### SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

OCTOBER 16, 2026
Date

Signature

GILMAR PEREIRA DA SILVA JR.
Printed Name

74744-511
Federal Bureau of Prisons Register No.

FCC COLEMAN LOW
Federal Bureau of Prisons Facility

P.O. Box 1031, COLEMAN, FL-33521
Institution's Address



PEREIRA DA SILVA JR, GILMAR 74744511

Before completing this application, please review Program Statement 5050.50, Compassionate Release/Reduction in Sentence (RIS), available in the law library.

## REDUCTION IN SENTENCE APPLICATION

**NAME:** GILMAR PEREIRA DA SILVA **Unit:** COL-B-D **REG No.** 74744-511 **Date:** 09/03/2026

**WHO IS YOUR PHYSICIAN (circle):** Franco Archer → DENTAL LOW (GINA TORRES-MARIN, DMD)

Choose **One** Criteria: You can only apply under one criteria.

**Extraordinary/Compelling Circumstances:**

- [ ] Medical Circumstances:
  - [ ] Terminal Medical Condition – Terminal Diagnosis with 18 months or less life expectancy.
  - [ ] Debilitated Medical Condition – Illness that has you partially (50%) or completely (100%) disabled.
- [ ] Elderly Inmates with a Medical Condition:
  - [ ] "New Law" Elderly Inmates – Have to have served 30 years of a sentence.
  - [ ] Elderly with Medical Conditions – 65 yrs. old or older, a deteriorating medical condition, served 50% of your sentence.
- [ ] Elderly Inmates without a Medical Condition: - 65 yrs. old or older, Served 10 yrs. or 75% of your sentence (which is greater)
- [ ] Death or Incapacitation of the Family Member Caregiver of an inmate's dependent child: -provide verifiable documentation the child is "suddenly" without a caretaker, the family member is in an incapacitated state and is unable to care for the child.
- [ ] Incapacitation of a Spouse or Registered Partner: -Provide verifiable medical documentation of incapacitated state.
- [X] Other:-Extraordinary and Compelling Circumstance

### To be filled out by Inmate:

Briefly describe your medical condition or extraordinary and compelling circumstance:
PROGRESSIVE AND SERIOUS DENTAL DETERIORATION WITH MULTIPLE TOOTH LOSS AND CONTINUING RISK OF FURTHER LOSS, MANDIBULAR INJURY AND MANDIBULAR RECONSTRUCTION.

If you have applied before, has anything changed in your medical condition since your last application? NO, AND SEE EXHIBITS

Proposed Release Plan (**must have ALL of the following**): — SEE EXHIBITS/ATTACHMENTS:

Name and contact information of who you will live with: ANDREZA CRISTINA MARTINS - (689) 233-4301

When was the last time you spoke to this person concerning your release plan? SEPTEMBER 03, 2026.

Is this person willing to care for you? YES, ANDREZA AND MY FAMILY... SEE EXHIBITS

Address of where you will be living: 4418 SPRING BLOSSOM DR - KISSIMMEE, FL - 34746-2302

Where will you receive your medical treatment (if applicable)? I INTED TO SEEK THREE CLINICS/HOSPITALS NEAR MY RESIDENCE.

How will you pay for your treatment (if applicable)? FAMILY SUPPORT, HEALTH-INSURANCE... SEE EXHIBITS

Additional Comments: SEE EXHIBITS AND MY CONDITION INVOLVES A PREVIOUSLY RECONSTRUCTED MANDIBLE, TITANIUM PLATE, THERAPEUTIC ORTHODONTIC APPLIANCE, BREAKAGE OF THAT APPLIANCE, LOSS OF TEETH, DIFFICULTY CHEWING, POTENCIAL NEED FOR: RECONSTRUCTION, ORAL AND MAXILLOFACIAL TREATMENT, IMPLANTS AND SURGICAL PROCEDURES.

Before completing this application, please review Program Statement 5050.50, Compassionate Release/Reduction in Sentence (RIS), available in the law library.

**If the inmate has not provided adequate information and documentation as set forth on this form and in P.S 5050.50, the Warden may deny the inmate's request at the institution level.**

## For Staff Use Only:

**Before completing this review, please read Program Statement 5050.50, Compassionate Release/Reduction in Sentence (RIS), updated January 17, 2019. Please note that inmates should, under most circumstances, request a RIS is writing before an eligibility review is completed. Inmates may qualify for a RIS under several categories as outlined below:**

**MEDICAL WITH A TERMINAL DIAGNOSIS (Category: Med Terminal)**
**1. Does the inmate have a documented medical diagnosis from a physician with a prognosis of life expectancy of 18-months or less?**
**Yes No**
**If yes, list the terminal diagnosis. If no, inmate does not qualify under this category.**

____________________________________________________________

**MEDICAL WITH A NON-TERMINAL DIAGNOSIS (Category: Med Non-Terminal)**
**1. Does the inmate have a documented medical diagnosis of an incurable, progressive illness or has the inmate suffered a debilitating injury from which he/she will not recover?**
**Yes No**

**2. AND, is the inmate completely disabled, unable to perform activities of daily living and totally confined to a bed or chair OR is the inmate only capable of limited self-care and confined to a bed or chair more than 50% of waking hours?**
**Yes No**

**If "Yes", list the medical diagnosis. If "No" is checked for either of the above items the inmate does not qualify under this category.**

____________________________________________________________

**INMATES AGE 65 OR OLDER WITH A MEDICAL CONDITION (Category: Elderly Med Condition/65/50%)**
**1. Has inmate served at least 50% of their sentence? (If no, inmate does not qualify under this category. If yes, proceed.)**
**Yes No**

**2. Does inmate suffer from a documented chronic or serious medical condition?**
**Yes No**

**3. Has the inmate experienced a deteriorating mental or physical health condition that substantially diminishes his/her ability to function in a correctional environment?**
**Yes No**

**4. Will conventional treatment provide a substantial improvement to the inmate's mental or physical condition? (If yes, inmate does not qualify under this category)**
**Yes No**

**If "Yes" on item 2 or 3, list the condition. (Either item 2 or 3 above must be checked "Yes" for inmate to qualify under this category.)**

____________________________________________________________

**INMATES AGE 65 OR OLDER REGARDLESS OF MEDICAL CONDITION (Category: Elderly Other/65/75%)**
**1. Has inmate served the greater of 10 years or 75% of their term of imprisonment to which they were sentence? (If no, inmate does not qualify under this category)**
**Yes No**

**CAREGIVER (Non-Med Caregiver)**
**If an inmate is applying for a RIS due to the death or incapacitation of their child's caregiver or the incapacitation of their spouse or registered partner, refer him/her to PS 5050.50 for the required documentation. Staff are not responsible for gathering the inmate's supporting documentation.**

GILMAR PEREIRA DA SILVA JR - # 74744-511 -

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| TO: (Name and Title of Staff Member) T. CHIN - CASE MANAGER | DATE: 09/02/2026 |
| FROM: GILMAR PEREIRA DA SILVA JR. | REGISTER NO.: 74744-511 |
| WORK ASSIGNMENT: WARDEN LOKI | UNIT: B4 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I AM FOLLOWING THE INSTRUCTIONS PROVIDED TO ME ON AUGUST 31, 2026, AND I RESPECTFULLY REQUEST THE APPROPRIATE AND RESOLUTION FOR MY REDUCTION IN SENTENCE (RIS) / COMPASSIONATE RELEASE FORM AND PROCESSING THROUGH MY UNIT TEAM.

— SEE EXHIBITS / ATTACHMENTS:

* EXHIBIT A: 31 AUGUST 2026 RESPONSE;
* EXHIBIT B: COPY RIS/COMPASSIONATE RELEASE REQUEST SUBMITTED AUGUST 28, 2026;
* EXHIBIT C: FORMAL DECLARATION REGARDING THE HANDLING;
* EXHIBIT D: FORMAL AND URGENT REQUEST TO THE UNIT TEAM - RIS/CR;
* EXHIBIT E: FORMAL REQUEST FOR WRITTEN ACKNOWLEDGEMENT/RECEIPT;
* EXHIBIT F: SUPPORTING DOCUMENTATION.

(Do not write below this line)

DISPOSITION:

| | |
|---|---|
| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate

PDF Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

**INMATE REQUEST TO STAFF MEMBER RESPONSE**

Inmate Name: PEREIRA DA SILVA JR, GILMAR (B14-988L)

Register Number: 74744-511
Unit: B-4 Unit

This is correspondence to address your Reduction in Sentence request.

On Friday, August 28,2026, you took a cop out to the Lieutenant's office referencing a request for Reduction in Sentence/ Compassionate Release. The steps you took are incorrect; this is done through your unit team. You can obtain a form through your case manager during open house hours or by submitting a cop out to the case manager during mainline, or by placing it in the designated box in your unit which is checked daily Monday-Friday. Once the form is completed you are to return it back to the case manager.

You are advised to follow the steps above to properly submit for a Reduction in Sentence.

I hope this addresses your concerns.

"REQUEST — URGENT — EXTRAORDINARY —"

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE *EXHIBIT: B FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| TO: (Name and Title of Staff Member) WARDEN OF FCC COLEMAN LOW | DATE: AUGUST 28, 2026 |
| FROM: GILMAR PEREIRA DA SILVA JUNIOR | REGISTER NO.: BOP # 74744-511 |
| WORK ASSIGNMENT: | UNIT: B4 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I, GILMAR PEREIRA DA SILVA JUNIOR, BOP REGISTER No. 74744-511, RESPECTFULLY SUBMIT THIS FORMAR REQUEST FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE PURSUANT TO 28 C.F.R SESSION 571.61 AND 18 U.S.C. SESSION 3582(c)(1)(A). I RESPECTFULLY REQUEST THAT THIS DOCUMENT (SEE ATTACHED 01) BE FORMALLY RECEIVED, LOGGED, AND TREATED AS MY ADMINISTRATIVE REQUEST TO THE WARDEN FOR CONSIDERATION OF A POSSIBLE REDUCTION IN SENTENCE, BASED UPON EXTRAORDINARY AND COMPELLING MEDICAL CIRCUMSTANCES THAT DEVELOPED AND MATERIALLY DETERIORATED DURING MY INCARCERATION. UNDER 28 C.F.R. SESSION 571.61(a), AN INMATE'S REQUEST MUST BE SUBMITTED TO THE WARDEN...

DATE: AUGUST 28, 2026 —

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF Prescribed by P5511

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94



PDF Prescribed by P5511

GILMAR PEREIRA DA SILVA JR – # 74744-511

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FORMAL REQUEST TO THE WARDEN
REDUCTION IN SENTENCE / COMPASSIONATE RELEASE
28 C.F.R. § 571.61
18 U.S.C. § 3582(c)(1)(A)
REQUESTING INMATE: Gilmar Pereira da Silva Junior
BOP REGISTER NUMBER: 74744-511
INSTITUTION: FCC Coleman Low
CASE: United States v. Gilmar Pereira da Silva Junior
CASE NO.: 8:25-cr-144-KKM-SPF
SENTENCING COURT: United States District Court
LOCATION OF CASE: Tampa, Florida
FEDERAL CIRCUIT: United States Court of Appeals for the Eleventh Circuit
FEDERAL PUBLIC DEFENDER: Ryan J. Maguire
DATE OF REQUEST: August 28, 2026
I. FORMAL REQUEST
TO THE WARDEN OF FCC COLEMAN LOW
I, Gilmar Pereira da Silva Junior, BOP Register No. 74744-511, respectfully submit this FORMAL REQUEST FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE pursuant to 28 C.F.R. §571.61 and 18 U.S.C. §3582(c)(1)(A).
I respectfully request that this document be formally received, logged, and treated as my administrative request to the Warden for consideration of a possible Reduction in Sentence, based upon extraordinary and compelling medical circumstances that developed and materially deteriorated during my incarceration.
Under 28 C.F.R. §571.61(a), an inmate's request must be submitted to the Warden and must include, at a minimum, the extraordinary or compelling circumstances asserted and a proposed release plan, including residence, means of support, and, when the basis involves health, where medical treatment will be received and how that treatment will be paid for.
I therefore respectfully request that August 28, 2026 be recorded as the formal date of submission of this request.
II. BASIS OF THE REQUEST
This request is not based merely upon ordinary dental discomfort.
It arises from the totality of the following circumstances:

1. history of a motorcycle accident;
2. significant mandibular injury;
3. mandibular reconstruction;
4. titanium plate;
5. use of a therapeutic orthodontic appliance;
6. breakage of the appliance after my arrival at FCC Coleman Low;
7. subsequent onset of tooth loss;
8. loss of approximately four teeth;
9. difficulty chewing;
10. need for specialized evaluation;
11. potential need for orthodontic treatment;
12. potential need for oral and maxillofacial treatment;
13. potential need for bone reconstruction;
14. potential need for dental implants;
15. potential surgical procedures;
16. continuing unresolved condition;
17. repeated attempts to obtain treatment;
18. difficulties concerning access to specialized treatment;
19. an extremely difficult period in the SHU for which, to this date, I have not received a satisfactory explanation despite repeatedly requesting one; and
20. the need for specialized post-release treatment to determine the actual extent of the damage and the treatment required for reconstruction.

This request should therefore be evaluated based upon the complete medical, functional, and human circumstances, rather than merely the number of teeth lost.

* EXHIBIT: B



---

III. MEDICAL AND DENTAL HISTORY
Before my incarceration, I suffered a serious motorcycle accident resulting in a mandibular injury.
As a result, I underwent mandibular reconstruction and placement of a titanium plate.
I also use a therapeutic orthodontic appliance related to my condition.
This fact is particularly important because my mandible had already undergone reconstruction before the events forming the basis of this request.
Accordingly, my condition should not be treated as a routine or merely cosmetic dental issue.
My medical history involves:
trauma mandibular reconstruction titanium plate therapeutic orthodontic treatment appliance failure dental deterioration tooth loss chewing difficulty need for specialized evaluation.
IV. CHRONOLOGY OF EVENTS
1. Arrival at FCC Coleman Low
I arrived at FCC Coleman Low on approximately May 4, 2026.
My arrival at the institution marked the beginning of a new phase in the treatment of my medical and dental condition.
2. May 6, 2026 Appliance Failure
Approximately two days after my arrival, on May 6, 2026, my therapeutic orthodontic appliance broke.
The breakage occurred in the context of my prior mandibular reconstruction and titanium plate.
3. May 7, 2026 Beginning of Tooth Loss
Approximately on May 7, 2026, I began experiencing tooth loss.
The condition was not definitively resolved.
4. Loss of Approximately Four Teeth
As the problem progressed, approximately four teeth were lost.
This loss represents a concrete and permanent physical change, rather than merely temporary pain or discomfort.
5. Functional Difficulty Chewing
In addition to tooth loss, I developed difficulty chewing, affecting a basic function involving eating and the normal functioning of my mouth and jaw.
6. Attempts to Obtain Dental Care
I sought treatment through the mechanisms available within the institution.
I used Dental Sick Call and other available procedures to request evaluation.
7. July 21, 2026 Dental Sick Call / Dental Complaint
On July 21, 2026, a Dental Complaint form was used documenting the need for adjustment of the appliance and the dental risk associated with the condition, together with information that approximately 3 4 teeth had already been lost.
8. Period in the SHU
I also experienced several extremely difficult days in the SHU, under circumstances that, in my understanding and based upon what I personally experienced, were inappropriate and remain unexplained to me.
To this date, despite repeatedly asking questions and requesting an explanation, I have not received a clear and satisfactory explanation regarding why I was placed there or regarding the circumstances surrounding my time in the SHU.
That period significantly aggravated my emotional and physical difficulties during incarceration.
I respectfully request preservation and review of all records concerning my SHU placement, including:

- date of entry;
- date of release from SHU;
- stated reason for placement;
- classification;
- medical records;
- administrative records;
- orders or authorizations;
- communications;
- staff reports;
- movement records; and
- all other documentation concerning my SHU placement.

I am not presenting the SHU circumstances as an independent basis for compassionate release.
However, they are part of the overall context of the difficulties and deterioration I experienced during incarceration and should be considered together with the medical circumstances described herein.
V. WHY THIS IS MORE THAN ORDINARY TOOTH LOSS
I respectfully request a comprehensive evaluation of my condition.
I am not asserting that tooth loss, standing alone, automatically constitutes an extraordinary and compelling reason.
The concern arises from the combination of:
MEDICAL HISTORY
motorcycle accident;

---

mandibular injury;
mandibular reconstruction;
titanium plate;
therapeutic orthodontic treatment.

DETERIORATION DURING INCARCERATION

appliance failure;
tooth loss;
approximately four teeth lost;
chewing difficulty;
lack of definitive reconstruction.

CURRENT NEED

orthodontic evaluation;
oral and maxillofacial evaluation;
evaluation of bone reconstruction;
evaluation of the titanium plate;
evaluation of possible implants;
evaluation of potential surgical treatment; and
comprehensive treatment planning.

I am asking qualified specialists to determine the actual degree of damage currently present.

VI. NEED FOR SPECIALIZED POST-RELEASE TREATMENT

My plan is not simply to leave the condition untreated.
Immediately upon release, I intend to obtain comprehensive specialized evaluations.
I intend to seek three separate clinics or hospitals near my residence, obtaining three independent evaluations and three separate treatment estimates.
As medically appropriate, I intend to obtain evaluations from:

an orthodontic specialist;
an oral and maxillofacial surgeon;
a dental implant specialist;
a specialist capable of evaluating bone reconstruction;
a professional capable of evaluating the mandibular reconstruction and titanium plate; and
a professional capable of determining whether surgical treatment is necessary.

My objective is to obtain a complete medical/dental report determining the degree of damage currently present in my jaw.
At this time, I do not have the ability to determine on my own the true extent of bone loss, structural alteration, or impairment of my mandibular reconstruction.
For that reason, I intend to obtain independent evaluations to determine:

1. the current condition of my mandible;
2. the extent of any bone loss;
3. the actual damage caused;
4. which teeth may be restored;
5. which teeth require replacement;
6. whether implants are necessary;
7. whether surgery is necessary;
8. whether bone reconstruction is necessary;
9. what orthodontic treatment is required;
10. the expected duration of treatment; and
11. the estimated total cost.

VII. PROPOSED RELEASE PLAN

The following release plan is expressly incorporated into this request.

1. RESIDENCE

Upon release, I intend to reside at:
4418 Spring Blossom Dr.
Kissimmee, FL 34746
United States
This is my proposed residence following release, subject to any conditions imposed by the Court and the Probation Office.

2. PERSON WITH WHOM I INTEND TO LIVE

I intend to reside with my girlfriend:
Andreza Cristina Martins
She will be one of my primary sources of immediate support during my reintegration into family and professional life.

3. PETS

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I have:

- one small female dog; and
- two pet cats.

Returning to my home environment will also allow me to resume my family and personal responsibilities concerning my pets.

VIII. FAMILY SUPPORT

Initially, in addition to my employment, I will receive immediate support from my girlfriend, my parents, my sister, and my oldest son.

My support network includes:

3.1. Girlfriend
Andreza Cristina Martins
Primary residential and immediate support.

3.2. Father
Gilmar Pereira da Silva Junior
Family support and assistance during reintegration.

3.3. Mother
Maria das Graças Gomes da Silva
Family and emotional support.

3.4. Sister
Gilmara Gomes da Silva
Family support and assistance during reintegration.

3.5. Oldest Son
João Vitor de Lima e Silva
Age: 23
Family support and direct family relationship.

IX. MEDICAL, DENTAL, ORAL-MAXILLOFACIAL, IMPLANT AND POTENTIAL SURGICAL TREATMENT

Immediately after release, I intend to begin a comprehensive specialized evaluation.

My plan is to obtain three independent evaluations from clinics or hospitals near my residence.

I intend to seek specialized evaluation in:

Orthodontics;
Oral and Maxillofacial Surgery;
Dental Implantology, if clinically indicated;
Bone Reconstruction;
Oral Surgery; and
Dental Rehabilitation.

The primary objective is to obtain a complete medical/dental report determining the current degree of impairment involving my mandible.

I currently do not know the true extent of the bone loss, structural damage, or impairment of my mandibular reconstruction.

Therefore, I intend to obtain independent evaluations concerning:

- bone loss;
- mandibular condition;
- titanium plate;
- remaining teeth;
- potential restoration;
- dental implants;
- surgery;
- bone grafting;
- reconstruction;
- orthodontic treatment;
- periodontal treatment;
- estimated treatment duration; and
- estimated treatment cost.

---

X. PAYMENT FOR TREATMENT
Because of the nature and seriousness of the existing damage, I intend to seek urgent medical and dental care immediately after release.
Initially, I will receive assistance from my family.
I also intend to reactivate my health insurance, which was lost because of my incarceration.
I further intend to return to work so that I can regain my ability to generate income and pay for treatment.
If financing becomes necessary for medical, dental, oral-maxillofacial, or surgical procedures, I intend to seek a lawful financing arrangement.
For any financial activity or procedure subject to my supervised-release conditions, I will notify my Probation Officer in advance and obtain any authorization that may be required.
My goal is to ensure that all treatment is pursued lawfully, transparently, and consistently with all supervision requirements.
XI. EMPLOYMENT AND FINANCIAL SUPPORT
Following release, I intend to return to my regular professional activities in:
FLOOR INSTALLATION
I have work opportunities available to me throughout the State of Florida, with the possjbility of full-time employment and, depending upon availability, potentially work throughout the week.
My objective is to return to lawful employment immediately after release, generate legitimate income, and use that income for:

- personal support;
- family assistance;
- housing;
- transportation;
- medical treatment;
- dental treatment;
- necessary expenses; and
- legally required financial obligations.

XII. TRANSPORTATION
I have my own work vehicle.
Accordingly, I will have the ability to:

- travel to work;
- attend medical appointments;
- attend dental appointments;
- attend oral and maxillofacial appointments;
- report to supervision;
- comply with Probation Office requirements; and
- attend other authorized obligations.

I am prepared to begin lawful employment immediately following release, subject to the conditions imposed by the appropriate authorities.
XIII. COMMUNICATION AND AVAILABILITY
Following release, I will maintain my telephone number available 24 hours per day for necessary communications.
I will also have regular access to my email.
I am willing to provide updated contact information and promptly report any changes in residence, telephone number, employment, or other information required during supervised release.
XIV. DRUG TESTING
I am willing to submit to any number of drug tests determined or deemed necessary by the supervising authorities.
My intention is to demonstrate through objective testing my commitment to compliance with supervised-release conditions.
I am willing to fully cooperate with:

- drug testing;
- monitoring;
- appointments;
- reporting;
- visits;
- verification procedures;
- supervision requirements; and
- any other measures ordered by the Court or Probation Office.

* EXHIBIT: B



---

XV. MY YOUNGEST SON
Another extremely important part of my reintegration plan concerns my youngest son:
João Miguel Leandro de Lima e Silva
He is currently only six years old.
I intend to resume and continue providing him with education, care, affection, guidance, and responsible paternal presence.
My intention is to be present in his life in a responsible and positive manner, supporting his development, education, and emotional needs.
I believe that my reintegration into the community will allow me to resume my role as a father and positively contribute to his development.
XVI. REMAINING IN THE UNITED STATES AND THE STATE OF FLORIDA
I do not intend to leave the United States.
I also do not intend to leave the State of Florida.
My proposed residence, employment, medical treatment, family support, and reintegration plan are all centered in Florida.
My passport was surrendered and, according to the information available to me, has been in the custody of the Brazilian Federal Police since the beginning of 2025.
Before my incarceration at FCC Coleman Low, I was also subject to extensive monitoring by authorities.
That monitoring included:

- electronic monitoring;
- personal visits by a Federal Police Officer to my residence;
- personal visits by a Federal Police Officer to my workplace;
- numerous visits over a period exceeding one year;
- monitoring beginning in 2025;
- monitoring continuing until the date of my first day at FCC Coleman Low;
- numerous telephone calls; and
- video calls.

During that entire period of monitoring, to the best of my knowledge and based upon my experience, I never committed an infraction that resulted in a violation of the conditions imposed upon me.
I am willing to continue under any monitoring mechanism deemed necessary.
XVII. PUBLIC SAFETY
I do not consider myself a threat to the community.
I am willing to comply strictly with every condition imposed upon me.
I have a defined plan involving:

- residence;
- employment;
- family support;
- medical treatment;
- transportation;
- communication;
- supervision;
- drug testing; and
- continued residence in Florida.

I am requesting an opportunity to return to the community under structured and supervised conditions.
XVIII. ABSENCE OF ADDICTION
I state that I do not have any type of addiction.
I am willing to undergo the testing necessary to objectively demonstrate my commitment to remaining free from prohibited drugs and substances.
XIX. NO GANG AFFILIATION
I state that I am not and have never been a member of any gang.
I do not associate with or support gangs or gang-related activities.
I am willing to comply with all security and supervision conditions imposed by the authorities.
XX. EFFORTS TO RESOLVE THE MATTER ADMINISTRATIVELY
Before submitting this request, I attempted to use the institutional mechanisms available to me.
These included:

- Dental Sick Call;
- Dental Complaint;
- treatment requests;
- TRULINCS communications;
- communications to the Warden;
- administrative procedures;

BP-8;
BP-9;
requests for intervention; and
other communications concerning my condition.
I also submitted previous TRULINCS communications directly to the Warden.
These efforts demonstrate that I have attempted to resolve this matter through institutional channels.
XXI. REQUEST FOR COMPLETE RECORD REVIEW
I respectfully request preservation and review of:
1. medical records;
2. dental records;
3. Dental Sick Calls;
4. Dental Complaints;
5. X-rays;
6. panoramic imaging;
7. orthodontic-appliance records;
8. mandibular-reconstruction records;
9. titanium-plate records;
10. dental-loss records;
11. treatment records;
12. BP-8;
13. BP-9;
14. BP-10, if any;
15. BP-11, if any;
16. TRULINCS communications;
17. communications to the Warden;
18. institutional responses;
19. referral records;
20. specialist-availability records;
21. specialized-treatment unavailability records;
22. SHU records;
23. movement records;
24. staff reports;
25. medical records concerning the SHU period; and
26. any other relevant documentation.

XXII. REQUEST FOR COMPLETE MEDICAL EVALUATION
I respectfully request a complete medical and dental evaluation, particularly because my condition involves a previously reconstructed mandible.
I request evaluation of:
1. current mandibular condition;
2. titanium plate;
3. therapeutic orthodontic appliance;
4. missing teeth;
5. remaining teeth;
6. bone condition;
7. periodontal condition;
8. structural condition;
9. chewing function;
10. need for reconstruction;
11. need for bone grafting;
12. need for implants;
13. need for surgery;
14. need for oral and maxillofacial surgery;
15. need for orthodontic treatment;
16. possible infection;
17. risk of deterioration;
18. need for specialized treatment; and
19. availability of such treatment within the BOP.

XXIII. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES
28 C.F.R. §571.61 provides that an inmate may initiate a request when particularly extraordinary or compelling circumstances

* EXHIBIT : B




---

could not reasonably have been foreseen by the court at the time of sentencing.
My request concerns a medical condition whose relevant deterioration occurred during incarceration.
The sequence is significant:
arrival at FCC Coleman Low   appliance failure   onset of tooth loss   loss of approximately four teeth   difficulty chewing   repeated treatment requests   continuing unresolved condition   need for specialized treatment.
I therefore respectfully request evaluation based upon my present condition and its development during incarceration.

XXIV. SAFETY, SUPERVISION AND RESPONSIBILITY

I understand that a Reduction in Sentence is not determined solely by the existence of a medical condition.
I understand that applicable considerations include the relevant legal factors and public safety.
For this reason, I have presented a concrete reintegration plan.
Following release:

- I will reside at a defined address;
- I will remain in Florida;
- I will work;
- I will have family support;
- I will have transportation;
- I will maintain telephone and email access;
- I will submit to drug testing;
- I will comply with supervision;
- I will obtain specialized treatment;
- I will not leave the country;
- I do not intend to leave Florida; and
- I will comply with every condition imposed.

XXV. FORMAL REQUEST TO THE WARDEN

For all of the foregoing reasons, I respectfully request that the Warden:

1. formally receive this document on August 28, 2026;
2. officially record the date of receipt;
3. treat this document as my formal request under 28 C.F.R. §571.61;
4. conduct a complete investigation and evaluation of the circumstances presented;
5. review my medical and dental records;
6. review my SHU records;
7. review my Dental Sick Calls and Dental Complaints;
8. review my TRULINCS communications;
9. consider my previous efforts to obtain treatment;
10. determine the nature and extent of my medical condition;
11. determine whether specialized treatment is required;
12. determine whether such treatment is available within the BOP;
13. determine the anticipated treatment timeline;
14. determine whether there is a risk of deterioration if treatment remains unavailable or is delayed;
15. consider my proposed release plan;
16. consider my proposed residence;
17. consider my family support;
18. consider my ability to immediately return to lawful employment;
19. consider my willingness to remain in Florida;
20. consider my willingness to comply with supervised release;
21. consider my willingness to submit to drug testing;
22. consider my willingness to comply with monitoring;
23. consider my medical and dental treatment plan;
24. consider my ability to finance treatment;
25. consider my plan to reactivate health insurance;
26. consider my immediate family support;
27. consider my six-year-old son and the importance of resuming my paternal role;
28. favorably refer the request if the circumstances warrant approval; and
29. if the request is denied, provide a written decision and identify the administrative procedures available to me.

XXVI. REQUEST FOR REDUCTION IN SENTENCE

Based upon the totality of the circumstances, I respectfully request that the Bureau of Prisons consider a Reduction in Sentence.
Specifically, I request consideration of a reduction to:
TIME SERVED

* EXHIBIT: B




---

with a period and conditions of supervised release deemed appropriate by the Court.
Alternatively, I respectfully request any other lawful sentence-reduction mechanism that would permit me to obtain the specialized medical and dental treatment necessary.

XXVII. FAMILY SUPPORT AND REINTEGRATION PLAN

This request is not simply a request for release without structure.

I present:

RESIDENCE:
4418 Spring Blossom Dr., Kissimmee, FL 34746

GIRLFRIEND:
Andreza Cristina Martins

FAMILY SUPPORT:
Parents, sister, girlfriend, and oldest son.

EMPLOYMENT:
Floor Installation full-time employment opportunities in Florida.

TRANSPORTATION:
Own work vehicle.

TREATMENT:
Three independent evaluations at clinics/hospitals near my residence.

INSURANCE:
Intent to reactivate health insurance previously lost because of incarceration.

FINANCING:
Potential financing, subject to supervision requirements and communication with the supervising officer.

COMMUNICATION:
Telephone available 24 hours per day and regular email access.

TESTING:
Willingness to submit to drug testing.

LOCATION:
Florida.

INTERNATIONAL TRAVEL:
No intention to leave the United States.

SUPERVISION:
Full willingness to comply with all conditions imposed.

FAMILY:
Desire to resume family life and my paternal role with my six-year-old son.

XXVIII. FINAL STATEMENT
I am not asking that my conviction be disregarded.
I am not asking for preferential treatment.
I am not claiming that every dental problem constitutes an extraordinary and compelling reason for compassionate release.
I am requesting individualized consideration of the totality of my medical condition and the extraordinary circumstances that developed during my incarceration.
My condition involves a previously reconstructed mandible, titanium plate, therapeutic orthodontic appliance, breakage of that appliance, loss of approximately four teeth, difficulty chewing, potential need for reconstruction, potential need for oral and maxillofacial treatment, possible implants and surgical procedures, and the absence of a definitive solution.
I sought treatment.
I used available institutional mechanisms.
I submitted complaints.
I sent communications.
I sought intervention.
I continued requesting treatment.
My condition nevertheless remains unresolved.
At the same time, I present a concrete, verifiable, and structured release plan, including a defined residence, family support, immediate employment opportunity, transportation, planned specialized treatment, ability to contribute toward treatment costs, health-insurance reactivation, continuous communication, willingness to undergo drug testing, and full commitment to supervision.
I therefore respectfully request that this matter receive an individualized, serious, documented, and prompt review.
I specifically request that the complete medical condition be evaluated, rather than focusing solely on the number of teeth lost.
Respectfully submitted,

Gilmar Pereira da Silva Junior
BOP Register No. 74744-511
Date: August 28, 2026

Signature
FEDERAL PUBLIC DEFENDER
Ryan J. Maguire
United States Federal Public Defender / Defense Counsel
United States District Court Tampa, Florida
Eleventh Circuit

* EXHIBIT: C





---

31 DE AGOSTO DE 2026

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FCC COLEMAN LOW

INMATE: Gilmar Pereira da Silva Jr.
REGISTER NUMBER: 74744-511
UNIT: B-4 UNIT
FACILITY: FCC Coleman Low
DATE: August 31, 2026

SUBJECT:

FORMAL DECLARATION REGARDING THE HANDLING OF MY REDUCTION IN SENTENCE / COMPASSIONATE RELEASE REQUEST AND THE EVENTS OF AUGUST 31, 2026

I, Gilmar Pereira da Silva Jr., Register Number 74744-511, respectfully submit this Declaration to create a clear and contemporaneous record of the events that occurred on August 31, 2026, concerning my request for Reduction in Sentence (RIS) / Compassionate Release.

I make this declaration in good faith and to the best of my knowledge and recollection.

I. PRIOR FORMAL REQUEST AUGUST 16, 2026

On August 16, 2026, I submitted a formal COP-OUT/request addressed to the Warden concerning the continuing and serious circumstances affecting me.

The subject of that submission was:

"FOURTH FORMAL AND URGENT: THREE PRIOR REQUEST WITHOUT RESPONSE, PROGRESSIVE DETERIORATION OF MY HEALTH, LACK OF SPECIALIZED DENTAL TREATMENT, LACK OF RESPONSE FROM INSTITUTIONAL DEPARTMENTS, AND REQUEST FOR IMMDIATE INTERVENTION"

Within that document, in Chapter XVII "REQUEST FOR EVALUATION FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE," I expressly requested consideration and evaluation for Reduction in Sentence / Compassionate Release.

Therefore, the RIS/Compassionate Release issue was not first raised on August 28 or August 31. It had already been expressly presented to institutional leadership on August 16, 2026.

At the time of the events described below, I had not received a substantive response addressing the merits of that Chapter XVII request.

II. PERSONAL DELIVERY TO THE WARDEN AUGUST 28, 2026

On August 28, 2026, at approximately 3:00 p.m., I personally delivered documents concerning my situation and my request for Reduction in Sentence / Compassionate Release to the Warden's office at FCC Coleman Low.

The documents were personally received and read by Captain S. Ximenes.

I understood this delivery to be a serious and direct effort to place my request before institutional leadership and obtain

* EXHIBIT: C

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

appropriate action and direction.

III. WRITTEN RESPONSE RECEIVED ON AUGUST 31, 2026

On August 31, 2026, at approximately 8:00 a.m., I received an A4 sheet of paper through another inmate.

The document was titled:

"INMATE REQUEST TO STAFF MEMBER RESPONSE"

It identified:

INMATE NAME: PEREIRA DA SILVA JR, GILMAR (B14-988L)
REGISTER NUMBER: 74744-511
UNIT: B-4 UNIT

The document stated, in substance, that my Reduction in Sentence request had been handled incorrectly because I had taken a COP-OUT to the Lieutenant's Office, and that the RIS request was to be made through my Unit Team.

It further stated that I could obtain a form through my Case Manager during Mainline or by placing the request in the designated box in my unit, and that after completing the form I should return it to the Case Manager.

The document concluded:

"YOU ARE ADVISED TO FOLLOW THE STEPS ABOVE TO PROPERLY SUBMIT FOR A REDUCTION IN SENTENCE."

IV. CONCERN REGARDING THE FORM OF THE RESPONSE

The A4 sheet I received did not contain, to my observation, a handwritten signature, the name of the person who prepared or signed the response, or other identifying information that would allow me to determine who personally reviewed or authored the response.

I therefore sought clarification rather than assuming that the document represented a final or substantive response to my previously submitted ten-page request.

I am not making a factual accusation that the document was fabricated. Rather, I am formally documenting that I received it without an identifiable signature or named author, and that this created uncertainty for me regarding its official status, the person responsible for the response, and the scope of the review that had actually occurred.

This distinction is particularly important because my prior written submission expressly contained a Chapter XVII request for RIS / Compassionate Release.

V. CONVERSATION WITH CASE MANAGER T. CHIN

After learning that the document had been delivered through another inmate, I asked who had provided it.

I was informed that it had come from Case Manager T. Chin.

At approximately 10:00 a.m. on August 31, 2026, I went to speak with Case Manager T. Chin.

My purpose was to understand what form I was being instructed to complete and, importantly, to explain that my situation was urgent and that my request concerned an emergency involving my continuing circumstances and my desire to obtain meaningful relief and appropriate professional assistance.

During the conversation, I was told that I first needed to submit a COP-OUT in order to speak with her.

I also understood her to state that she did not accept, receive, or validate COP-OUTs submitted through TRULINCS / Electronic Request to Staff.

* EXHIBIT: C



---

I am documenting this statement because it is directly relevant to my understanding of the available communication channels and to my ability to obtain guidance concerning the RIS process.

I further understood from the conversation that "they" had not provided her with substantive information concerning my underlying case or the details of the request I had submitted to the Warden.

VI. THE CENTRAL PROBLEM

My concern is not simply that I was instructed to use a different form.

My concern is that, despite repeatedly attempting to obtain assistance and direction, I continue to experience uncertainty concerning:

1. whether my prior RIS request was formally received;
2. whether the Warden personally reviewed the substance of my Chapter XVII request;
3. whether the August 28 submission was formally entered into the appropriate institutional process;
4. whether the August 31 response constitutes a substantive response to the request already submitted;
5. whether the Unit Team has opened or will open a formal RIS request;
6. what exact form I am required to complete;
7. who is responsible for receiving and processing that form; and
8. when I can expect written confirmation that my request has actually entered the RIS process.

VII. REQUEST FOR IMMEDIATE CLARIFICATION

I respectfully request that FCC Coleman Low provide me with a clear written answer identifying:

* the proper RIS / Compassionate Release form;
* the staff member responsible for receiving it;
* the date on which my request will be considered officially received;
* whether my August 16 Chapter XVII request was treated as an RIS request;
* whether my August 28 submission was received and referred to the appropriate Unit Team;
* whether the August 31 A4 response constitutes only procedural guidance or a substantive decision;
* and what further action I must take to ensure that my RIS request is properly processed.

VIII. GOOD-FAITH PURPOSE

I am not attempting to circumvent institutional procedures.

To the contrary, I am attempting to comply with the procedures I am now being instructed to follow.

I am therefore submitting the present declaration and a formal RIS request through the Unit Team so that there can be no reasonable uncertainty that I have made a direct, written and identifiable request for consideration.

My circumstances are serious and time-sensitive from my perspective. I respectfully ask that the institution treat this matter with the urgency appropriate to the circumstances and provide me with a clear written record of the action taken.

I respectfully request that this Declaration be maintained with my institutional records and associated with my RIS / Compassionate Release request.

I declare that the foregoing is true and correct to the best of my knowledge and recollection.

Respectfully submitted,

Gilmar Pereira da Silva Jr.
Register No. 74744-511
B-4 Unit
FCC Coleman Low

Date: August 31, 2026

* EXHIBIT: D



---

FORMAL REQUEST FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE

TO THE UNIT TEAM

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FCC COLEMAN LOW

INMATE: Gilmar Pereira da Silva Jr.
REGISTER NUMBER: 74744-511
UNIT: B-4 UNIT
DATE: August 31, 2026

SUBJECT:

FORMAL AND URGENT REQUEST FOR REDUCTION IN SENTENCE (RIS) / COMPASSIONATE RELEASE REQUEST FOR IMMEDIATE UNIT TEAM PROCESSING, WRITTEN ACKNOWLEDGMENT, AND FORWARDING THROUGH THE PROPER BOP PROCEDURE

To the Unit Team:

I respectfully submit this document as my formal request for Reduction in Sentence (RIS) / Compassionate Release and request that it be accepted, date-stamped/recorded as received, and processed through the appropriate Bureau of Prisons procedure.

I am submitting this request directly to the Unit Team because, on August 31, 2026, I was advised that RIS requests are to be initiated through the Unit Team.

I am expressly attempting to comply with that instruction.

I. THIS REQUEST IS ALSO A FORMAL CLARIFICATION OF MY PRIOR REQUESTS

This request should not be interpreted as if the issue of Reduction in Sentence / Compassionate Release arose for the first time today.

The issue was expressly raised previously.

On August 16, 2026, I submitted a formal and urgent COP-OUT to the Warden with the following subject:

"FOURTH FORMAL AND URGENT: THREE PRIOR REQUEST WITHOUT RESPONSE, PROGRESSIVE DETERIORATION OF MY HEALTH, LACK OF SPECIALIZED DENTAL TREATMENT, LACK OF RESPONSE FROM INSTITUTIONAL DEPARTMENTS, AND REQUEST FOR IMMDIATE INTERVENTION."

In Chapter XVII, I expressly included:

"REQUEST FOR EVALUATION FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE."

Accordingly, this present filing is intended to ensure that my request is now unmistakably submitted through the Unit Team, while preserving the date and history of my previous efforts.

II. AUGUST 28, 2026 PERSONAL DELIVERY TO THE WARDEN'S OFFICE

On August 28, 2026, at approximately 3:00 p.m., I personally delivered documents concerning my RIS / Compassionate Release request to the Warden's office.

* EXHIBIT: D





---

The documents were received and read by Captain S. Ximenes.

I made this personal delivery because I considered the matter sufficiently serious and urgent that I needed to place my request directly before institutional leadership.

III. AUGUST 31, 2026 PROCEDURAL RESPONSE RECEIVED

On August 31, 2026, at approximately 8:00 a.m., I received an A4 document titled:

"INMATE REQUEST TO STAFF MEMBER RESPONSE."

The response stated that my RIS request had been submitted through the incorrect channel and instructed me to obtain the appropriate form through my Case Manager or designated unit box, complete it, and return it to the Case Manager.

The document did not contain, to my observation, an identifiable signature or named author.

Rather than refusing to follow the instruction, I am now following it.

IV. REQUEST FOR IMMEDIATE ACCEPTANCE

I respectfully request that the Unit Team:

1. Accept this document as my formal RIS / Compassionate Release request;
2. Provide me with the correct BOP RIS form, if a separate form is required;
3. Permit me to complete any required form without unnecessary delay;
4. Confirm in writing the date on which my RIS request is officially received;
5. Identify the staff member responsible for processing the request;
6. Associate this request with my August 16, August 28, and August 31 submissions;
7. Ensure that the request is reviewed under the applicable BOP RIS procedures;
8. Ensure that my request is presented to the Warden for appropriate consideration;
9. Provide me with a written response concerning the action taken; and
10. Preserve a record of my submission and the date of receipt.

V. REQUEST FOR URGENT CONSIDERATION

I respectfully emphasize that I am not submitting this request as a routine administrative matter.

My circumstances have become increasingly serious and, from my perspective, urgent and potentially life-changing.

I have repeatedly attempted to obtain meaningful institutional assistance and direction.

I have submitted written requests.

I have used institutional communication channels.

I have submitted COP-OUTs.

I personally delivered documents to the Warden's office.

I sought assistance from institutional departments.

I have now followed the additional direction given to me on August 31 and am submitting this request through the Unit Team.

I respectfully ask that the institution not allow the question of which procedural channel I should use to become an additional delay in the consideration of the substance of my request.

VI. REQUEST FOR EVALUATION

* EXHIBIT: D

PAGE 03 OF 04

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I respectfully request that the Unit Team initiate and facilitate the appropriate institutional review of my request for Reduction in Sentence / Compassionate Release based upon the totality of my circumstances, including the matters documented in my prior submissions.

I request consideration of all relevant medical, dental, personal, institutional, rehabilitative, family, release-planning, and other circumstances applicable to my case.

I further request that the institution consider the information contained in my prior submissions rather than treating this filing as an isolated document.

VII. RELEASE PLAN

If RIS / Compassionate Release is granted or otherwise recommended, I request that the institution consider the release plan already provided in my prior documentation.

Proposed residence:
4718 Spring Blossom Dr.
Kissimmee, FL 34746

I request that the appropriate Unit Team staff review the release plan and advise me in writing if any additional information is required.

VIII. MASTER CHRONOLOGY RIS / COMPASSIONATE RELEASE

This chronology is provided in narrative form so that the history of my request is preserved in a single document.

August 16, 2026: I submitted a fourth formal and urgent COP-OUT to the Warden concerning three prior requests without response, progressive deterioration of my health, lack of specialized dental treatment, lack of response from institutional departments, and a request for immediate intervention. In Chapter XVII, I expressly requested evaluation for Reduction in Sentence / Compassionate Release.

August 28, 2026: At approximately 3:00 p.m., I personally delivered documents concerning my situation and RIS / Compassionate Release request to the Warden's office at FCC Coleman Low. The documents were received and read by Captain S. Ximenes.

August 31, 2026: At approximately 8:00 a.m., I received an A4 document titled "INMATE REQUEST TO STAFF MEMBER RESPONSE." The document advised that the RIS request should be submitted through the Unit Team and instructed me to obtain the appropriate form through my Case Manager or designated unit box.

The document, as received by me, did not contain an identifiable signature or named author.

After asking who had provided the document, I was informed that it had been provided by Case Manager T. Chin.

At approximately 10:00 a.m., I personally sought out Case Manager T. Chin to obtain clarification regarding the form and to explain the urgency of my circumstances. I was told that I first needed to submit a COP-OUT to speak with her. I also understood her to state that she did not accept, receive, or validate COP-OUTs submitted through TRULINCS / Electronic Request to Staff.

Rather than allowing this procedural uncertainty to delay my request further, I am now submitting this formal RIS request directly to the Unit Team.

IX. REQUEST TO PRESERVE THE AUGUST 16 DATE

Because my August 16 submission expressly contained a Chapter XVII request for RIS / Compassionate Release, I respectfully request that the institution preserve and identify that prior request in my records.

I am not asking the Unit Team to disregard the current procedural instructions.

I am asking the Unit Team to process the present request while also preserving the history of my earlier request so that there is

* EXHIBIT : D



---

a complete and accurate institutional record.

X. REQUEST FOR WRITTEN RESPONSE

I respectfully request written confirmation addressing:

A. Date received;
B. Name/title of receiving staff member;
C. Whether this constitutes a formal RIS request;
D. Whether an additional BOP form is required;
E. Whether the August 16 Chapter XVII request is being associated with this request;
F. Whether the August 28 submission was received and considered;
G. Whether the request has been forwarded to the Warden/appropriate reviewing authority; and
H. What further action, if any, is required from me.

XI. GOOD-FAITH COMPLIANCE

I respectfully emphasize that I am trying to comply with every instruction given to me.

If the institution's position is that the RIS request must be submitted through the Unit Team, I am doing precisely that now.

I therefore respectfully request that this submission be accepted and processed without further procedural uncertainty or unnecessary delay.

I ask for urgent consideration because I believe my circumstances require immediate attention.

Respectfully submitted,

Gilmar Pereira da Silva Jr.
Register No. 74744-511
B-4 Unit
FCC Coleman Low

Date: August 31, 2026

Signature: ____________________

* EXHIBIT: E

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

REQUEST FOR WRITTEN ACKNOWLEDGMENT / RECEIPT

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FCC COLEMAN LOW

INMATE: Gilmar Pereira da Silva Jr.
REGISTER NUMBER: 74744-511
UNIT: B-4 UNIT
DATE: August 31, 2026

SUBJECT:

FORMAL REQUEST FOR WRITTEN ACKNOWLEDGMENT / RECEIPT OF REDUCTION IN SENTENCE / COMPASSIONATE RELEASE REQUEST

To the Unit Team / Appropriate Staff Member:

I respectfully request written acknowledgment that the attached Formal Request for Reduction in Sentence / Compassionate Release has been received.

Because there has been uncertainty concerning the handling of my previous submissions, I respectfully request a clear record of the date and person receiving this document.

My prior history includes:

August 16, 2026: Formal COP-OUT to the Warden containing Chapter XVII expressly requesting evaluation for Reduction in Sentence / Compassionate Release.

August 28, 2026: Personal delivery of documents to the Warden's office, received and read by Captain S. Ximenes.

August 31, 2026: Receipt of an A4 document advising me to initiate the RIS request through the Unit Team.

I am now submitting the request through the Unit Team in accordance with that instruction.

I RESPECTFULLY REQUEST THAT THE FOLLOWING BE COMPLETED

DATE RECEIVED: SEPTEMBER 8, 2026

TIME RECEIVED: 08:26 AM

NAME OF STAFF MEMBER RECEIVING:

T. CHIN

TITLE / POSITION:

UNIT. TEAM - COL-B-D / B4 - CASE MANAGER

UNIT / DEPARTMENT:

UNIT. TEAM - COL-B-D

SIGNATURE / INITIALS:

CASE MANAGER REFUSED TO SING - 09/08/2026

* EXHIBIT : E



TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

II. DOCUMENTS SUBMITTED

I am submitting: — SEE EXHIBITS —

1. Formal Request for Reduction in Sentence / Compassionate Release;
2. Declaration / Statement of Events August 31, 2026;
3. This Request for Written Acknowledgment / Receipt;
4. Relevant prior documentation concerning my August 16, 2026 request;
5. Documentation concerning my August 28, 2026 personal delivery, when available.
6. SUPPORTING DOCUMENTATION

III. REQUEST FOR RECORD PRESERVATION

I respectfully request that this acknowledgment be retained with the institutional record of my RIS / Compassionate Release request.

I also respectfully request that the institution identify the date on which this request was received so that there is no uncertainty concerning the commencement of the institutional processing of this request.

I am making this request solely to establish an accurate and transparent record and to ensure that I am complying with the procedures communicated to me.

Respectfully,

Gilmar Pereira da Silva Jr.
Register No. 74744-511
B-4 Unit
FCC Coleman Low

Date: August 31, 2026

Inmate Signature: [signature]

STAFF RECEIPT

I acknowledge receipt of the above submission.

Date: SEPTEMBER 8, 2026

Time: 08:26 AM

Staff Name: T. CHIN

Title: UNIT TEAM / CASE MANAGER

Signature/Initials: CASE MANAGER REFUSED TO SING - 09/08/2026

* EXHIBIT : F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/29/2026 08:24:57 PM

To: FORMAL DOCUMENTATION OF PERSONAL DELIVERY
Inmate Work Assignment: Gilmar Pereira Da Silva

SUBJECT: FORMAL DOCUMENTATION OF PERSONAL DELIVERY, REDUCTION IN SENTENCE / COMPASSIONATE RELEASE REQUEST.
AUGUST 28, 2026

Dear Warden-FCC Coleman Low,

I am sending this TRULINCS message to formally document and preserve a contemporaneous record of the events that occurred yesterday, August 28, 2026, concerning my formal request for Reduction in Sentence / Compassionate Release under 28 C.F.R. Section 571.61 and 18 U.S.C. Section 3582(c)(1)(A).

Yesterday, August 28, 2026, at approximately 3:00 PM, I personally went to the appropriate institutional area to deliver my formal request addressed to the Warden of FCC Coleman Low.

I personally delivered the following documents:

ATTACHED 01 - COMPLETE 10-PAGE FORMAL REQUEST TO THE WARDEN

"UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
FORMAL REQUEST TO THE WARDEN
REDUCTION IN SENTENCE / COMPASSIONATE RELEASE
28 C.F.R. Section 571.61
18 U.S.C. Section 3582(c)(1)(A)"

This document is dated August 28, 2026, was personally signed by me, contains 10 pages, and constitutes my complete formal request for Warden review and consideration of Reduction in Sentence / Compassionate Release.

BP-A0148 - INMATE REQUEST TO STAFF

"U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
INMATE REQUEST TO STAFF
BP-A0148
CDFRM
PRESCRIBED BY P5511
THIS FORM REPLACES BP-148.070 AND BP-S148.070
FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER"

At FCC Coleman Low, I understand this form to be used as an INMATE REQUEST TO STAFF / "COP-OUT." I addressed this request to the Warden as an additional and contemporaneous administrative record specifically to document and reinforce the delivery of my formal Reduction in Sentence / Compassionate Release request.

At approximately 3:00 PM, on August 28, 2026, the Warden was not physically present at the institution. I therefore delivered the documents to CAPTAIN S. XIMENES of FCC Coleman Low.

Captain S. Ximenes reviewed the documents and informed that the Warden was not at the institution and that he would deliver the documents to the Warden.

I thanked Captain Ximenes and clearly explained that I wanted the documents delivered to the Warden and formally considered as my request.

* EXHIBIT : F



TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I am sending this TRULINCS / "Electronic Request to Staff" message to the Warden for the specific purpose of creating an additional contemporaneous written record confirming that I personally attempted and completed delivery of my formal request through an authorized institutional staff member when the Warden was not physically present.

I respectfully request that this message, together with the documents personally delivered yesterday, August 28, 2026, be preserved as part of the administrative record concerning my Reduction in Sentence / Compassionate Release request.

I also respectfully request confirmation, when administrative possibly, that the Warden received the documents from Captain S. Ximenes and that the request has been logged and received, on August 28, 2026.

For clarity, I am making every reasonable effort available to me to pursue the BOP Administrative process, to comply with the requirement that I use available administrative remedies, and to provide the institution with a meaningful opportunity to review and resolve my situation before further judicial action is considered.

I am not attempting to bypass the BOP administrative process. To the contrary, I am documenting my continued and good-faith efforts to use that process.

I am also providing a copy of this communication and the underlying documentation to my Federal Defender so that counsel may accurately inform the Court of yesterday's (August 28, 2026) events and of my continued efforts to pursue administrative remedies.

I respectfully ask the Warden to review my request as soon as practicable, particularly because the request concerns serious and continuing medical/dental circumstances and because I have repeatedly sought institutional assistance and appropriate treatment.

I understand that the 30-day period referenced in 18 U.S.C. Section 3582(c)(1)(A) is relevant to the statutory exhaustion framework following receipt of a request by the Warden. I therefore respectfully request that the actual date of receipt of my request be accurately recorded and preserved.

I am not asking for special treatment or preferential handling. I am asking only that my formal request be received, accurately recorded, reviewed under the applicable procedures, and answered in accordance with applicable law and BOP regulations.

Please preserve this TRULINCS / "Electronic Request to Staff" communication as part of the administrative record.

Thank you for your attention to this matter.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low
Case No. 8:25-cr-144-KKM-SPF
August 29, 2026

PAGE 03 OF 22
* EXHIBIT: F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 12:32:58 PM

To: FINAL AND URGENT FORMAL RESPONSE - MESSAGE 1
Inmate Work Assignment: Gilmar Pereira Da Silva

FINAL AND URGENT FORMAL RESPONSE - DENTAL LOW
SUBJECT: FINAL AND URGENT FORMAL RESPONSE - IMMEDIATE CLARIFICATION OF "REFUSED TREATMENT" STATEMENT, DOCUMENTED DENTAL NEED, SPECIALTY REFERRAL, AND DEFINITIVE ACTION REQUIRED

TO: DENTAL LOW STAFF | FCC COLEMAN LOW

Dear Dental Low Staff,

I am submitting this communication because the response I received again does not address the specific problem I have repeatedly reported. I need to be absolutely clear:

I AM NOT ASKING TO BE TOLD AGAIN TO GO TO DENTAL SICK CALL.
I HAVE ALREADY ATTENDED DENTAL SICK CALL.
I HAVE NOT REFUSED TREATMENT.
I AM ASKING WHAT THE OFFICIAL INSTITUTIONAL PROCEDURE IS FOR ME TO RECEIVE CONTINUITY OF CARE AND SPECIALIZED EVALUATION WHEN DENTAL LOW HAS ALREADY TOLD ME THAT ORTHODONTIC TREATMENT IS NOT PROVIDED HERE.

This is not a matter of interpretation.
It is not a matter of me not knowing where to seek care.
It is not a matter of me avoiding treatment.
It is a matter of determining what happens after a patient has already sought care and the specific treatment needed is not available at the institution.
That question remains unanswered.

I. THIS IS THE CHRONOLOGY OF MY REQUESTS AND IT MUST BE CONSIDERED
To prevent any further misunderstanding of my situation, I am documenting the chronology again:
JULY 6, 2026
Dental Low responded to me through TRULINCS:
"WE DONT DO ORTHODONTIC TREATMENT HERE..."
This statement is extremely important because I was expressly informed that FCC Coleman Low does not provide orthodontic treatment.
JULY 30, 2026
Dental Low now states that I was on the call-out on that date and that:
"YOU REFUSE TREATMENT."

I therefore request an immediate and specific clarification:
WHAT TREATMENT DID I ALLEGEDLY REFUSE ON JULY 30, 2026?
I am requesting identification of the exact treatment, the professional who offered it, the date, the time, the procedure, and the specific record supporting the allegation that I refused treatment.

AUGUST 7, 2026
I sent another formal TRULINCS message explaining in detail that my situation involves:
a serious motorcycle accident;
mandibular reconstruction;
a titanium plate;
orthodontic treatment associated with my reconstructed jaw;
a damaged orthodontic appliance;
loss of four teeth;
difficulty chewing and eating;
the need for continuity of treatment; and

the absence of an orthodontic specialist at this institution.

Despite this detailed explanation, I subsequent received another response directing me to Dental Sick Call.

AUGUST 17, 2026
I again received the same general direction to use Sick Call.

AUGUST 18, 2026
I submitted another formal communication precisely because the previous response had not answered the central question.
I explained again that I was not simply requesting routine dental care.
I explained again that I had already sought care.
I explained again that I needed to know what procedure applies when the institution itself states that orthodontic treatment is not available here.

NOW
I have again received:
"YOU CAN MAKE SICK CALL AT ANY TIME"
And I have also received:
"YOU WERE ON THE CALL OUT 7/30/2026 AND YOU REFUSE TREATMENT."
These statements now require a specific and documented response.

II. I DO NOT ACCEPT BEING CHARACTERIZED AS HAVING "REFUSED TREATMENT" WITHOUT IDENTIFICATION OF THE TREATMENT.
I want this formally documented.
I HAVE NOT REFUSED TREATMENT.
If Dental Low believes that I refused treatment, then I respectfully request the factual basis for that statement.
Please Identify:
What treatment?
Which professional?
What date?
What time?
What procedure?
What document was signed or recorded?
What exactly did I allegedly say or do that constituted refusal?
Where is this alleged refusal documented in my EMR?

It is not appropriate for a statement of this significance to be repeated without identifying the specific treatment that I allegedly refused.
If a refusal of treatment document exists, I request that it be preserved and that I be permitted to obtain a copy through the appropriate Medical Records procedure.

III. ATTENDING SICK CALL AND REQUESTING CONTINUITY OF CARE IS NOT A REFUSAL OF TREATMENT
This distinction must be made clear.
I went to sick call.
I sought assistance.
I explained my condition.
I explained my history.
I explained the appliance.
I explained my tooth loss.
I explained my difficulty eating.
I requested assistance.

Therefore, it is not reasonable to characterize my continuing request for a solution as a refusal of treatment.
If I am appearing for care and asking for my unresolved condition to be addressed, that is the opposite of refusing treatment.

IV. THE QUESTION IS NOT "WHERE DO I GO?" THE QUESTION IS "WHAT HAPPENS NEXT?"
This is the question that Dental Low must answer.
WHAT HAPPENS AFTER SICK CALL WHEN THE NECESSARY TREATMENT IS NOT AVAILABLE AT THIS INSTITUTION?
If the answer is:

* EXHIBIT : F




---

"Sick Call."
Then my question remains:
WHAT HAPPENS AFTER SICK CALL?
If the answer is again:
"Sick Call."
Then there is no resolution to the underlying problem.
I cannot remain indefinitely in a cycle in which I am repeatedly directed back to the same point of entry while the specific condition I am reporting remains unresolved.

V. PROGRAM STATEMENT P6400.03 MAKES THE SPECIALTY-REFERRAL QUESTION ESSENTIAL
This is one of the most important parts of my request.
BOP Program Statement P6400.03 "Dental Services" identifies orthodontic tooth movement as Advanced Dental Treatment.
The policy also provides mechanisms involving Specialty Services, including referral arrangements through the Health Services Administrator (HSA) following applicable Utilization Review (UR) approval by the Regional Chief Dentist (RCD).
The policy also states that orthodontic treatment is not within the ordinary scope of Bureau dental services.

Therefore, if Dental Low tells me that orthodontic treatment is not provided here, that does not answer my question.
It makes my question even more important:
WHAT IS THE SPECIALTY-REFERRAL PROCEDURE IN MY CASE?
I am not asking Dental Low to perform orthodontic treatment if it does not have the authority or capability to do so.
I am asking Dental Low to tell me what institutional mechanism exists when specialized treatment is required but is not available locally.

VI. MY CASE IS NOT A COSMETIC REQUEST
I need this to be understood clearly.
I am not requesting orthodontic treatment for cosmetic reasons.
My orthodontic appliance is associated with treatment following a serious motorcycle accident and mandibular reconstruction involving a titanium plate.
My concern is continuity of care and protection of my health.
My appliance has been damaged.
I have reported the loss of four teeth.
I have reported difficulty chewing and eating.
A panoramic X-ray has been performed by Dental Low.

This is therefore not simply a request for cosmetic orthodontics.
It is a request for appropriate evaluation and continuity of care related to my documented dental and mandibular history.

VII. THE PANORAMIC X-RAY MUST BE CONSIDERED
Dental Low has already performed a panoramic X-ray.
I respectfully request that:
1. the image be preserved;
2. the radiology report be preserved;
3. the clinical interpretation be documented;
4. the result be considered in determining appropriate care;
5. the need for specialist evaluation be assessed; and
6. if specialty care is indicated, the appropriate referral procedure be initiated.

If Dental Low determines that specialist evaluation is not medically indicated, I also request that this determination be documented in writing with the corresponding clinical rationale.
What cannot continue is a situation in which clinical documentation exists while the patient receives no clear explanation of what the next step is.

VIII. TIME IS NOT NEUTRAL IN THIS CASE
I am extremely concerned because my condition remains unresolved while time continues to pass.
I have reported:
loss of four teeth;
damage to the orthodontic appliance;
difficulty chewing;
difficulty eating;

* EXHIBIT: F




---

a history of mandibular reconstruction;
and the need for specialized follow-up.

I am not claiming that every possible future consequence will necessarily occur.
I am asking qualified professionals to evaluate the risk of deterioration and document that evaluation.

The Supreme Court recognized the constitutional principles concerning serious medical needs in Estelle v. Gamble, 429 U.S. 97 (1976), and the deliberate-indifference standard was later addressed in Farmer v. Brennan, 511 U.S. 825 (1994).
I am not stating that Dental Low has already been legally determined to have violated the Constitution.
I am stating something much more fundamental:
A serious health condition that has been reported, documented, and remains unresolved must be meaningfully evaluated and appropriately addressed.

IX. 18 U.S.C. Section 4042 MUST ALSO BE CONSIDERED
The Bureau of Prisons has statutory responsibilities concerning persons in federal custody.
18 U.S.C. Section 4042 establishes BOP responsibilities relating to the care, custody, protection, and subsistence of federal prisoners.
I am therefore not requesting a privilege.
I am requesting appropriate care, appropriate evaluation, and appropriate guidance concerning the procedure available to me.

X. I AM NOT ASKING DENTAL LOW TO DO THE IMPOSSIBLE
If Dental Low does not have an orthodontic specialist, I understand.
If a particular procedure cannot be performed locally, I understand.
If authorization is required, I understand.
If Utilization Review is required, I understand.
If the HSA or RCD must become involved, I understand.

But someone must tell me:
WHAT IS THE PROCEDURE?
I cannot create the institutional procedure myself.
I cannot determine who has authority.
I cannot simply wait indefinitely.
And I cannot continue receiving the same generic Sick Call Response.

➔ EXHIBIT: F

PAGE 07 OF 22

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Dental LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 04:44:30 PM

To: FINAL AND URGENT FORMAL RESPONSE - MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

XI. I FORMALLY REQUEST AN EXPLANATION OF THE ALLEGED "REFUSAL"
I respectfully request that Dental Low answer the following:
1. Is there a record stating that I refused treatment?
2. If yes, what exact treatment did I allegedly refuse?
3. Which professional documented the alleged refusal?
4. What was the date and time?
5. What procedure was being offered?
6. What exactly does the EMR state?
7. Was I offered treatment specifically related to the orthodontic/mandibular condition I have been reporting?
8. If not, why is the alleged refusal being used to characterize my conduct regarding my current request?
9. If the record is inaccurate or incomplete, what procedure is available to correct or supplement it?

XII. I FORMALLY REQUEST AN ANSWER REGARDING SPECIALTY REFERRAL
I also request specific answers to the following:
1. Has my case been submitted for Utilization Review?
2. If not, why not?
3. Has the Health Services Administrator been informed of my request for specialized dental care?
4. Has the Regional Chief Dentist been consulted?
5. Is Specialty Services referral available in my circumstances?
6. Who has the authority to initiate their referral?
7. What procedure must I follow?
8. Is there a form or written request that I must submit?
9. Is there a clinical reason why specialist evaluation is not indicated?
10. If specialist evaluation is not indicated, I request that the clinical rationale be documented.

XIII. REQUEST FOR IMMEDIATE PRESERVATION OF RECORDS
I formally request preservation of all records related to my situation, including:
EMR;
Dental Sick Call records;
dental notes;
panoramic X-ray;
radiology report;
treatment plans;
referrals;
Utilization Review;
Specialty Services;
any record concerning alleged refusal treatment;
TRULINCS messages;
my communications;
Dental Low responses;
appointment records;
and all other documentation relating to my dental condition and requests for treatment.

Please ensure that these records are preserved and not deleted, altered, or lost.

XIV. THIS IS NO LONGER A SIMPLE REQUEST FOR ASSISTANCE
I want this point clearly documented.
I have sent multiple messages.
I have personally sought assistance from Dental Low.
I have attended Sick Call.
I have explained my medical and dental history.

* EXHIBIT : F




---

I have explained the mandibular reconstruction.
I have explained the appliance.
I have explained the tooth loss.
I have explained my difficulty eating.
A panoramic X-ray has been performed.

I was told that orthodontic treatment is not provided locally, and yet I continue to receive a response to go back to Sick Call.

THIS MUST BE RESOLVED
Not because I refuse to follow institutional procedures.
But precisely because I have been following the procedures available to me and am now asking the institution to tell me what the next procedure is.

XV. REQUEST FOR IMMEDIATE ESCALATION
If Dental Low Staff does not have the authority to answer or resolve these issues, I respectfully request that this communication be immediately forwarded to the appropriate authority.

As applicable, I request review by:
Health Services Administrator (HSA);
Regional Chief Dentist (RCD);
Utilization Review (UR);
Specialty Services;
or another appropriate BOP authority.

I am not asking an employee to exceed his or her authority.
I am asking that the person who has the authority be notified and given the opportunity to address the matter.

XVI. FORMAL NOTICE OF MY CONTINUING ATTEMPT TO RESOLVE THIS MATTER
I am attempting to resolve this matter through the institutional channels available to me.
I am documenting my requests.
I am asking specific questions.
I am seeking treatment.
I am appearing when instructed.
I am following the procedures available to me.
However, if this matter continues without a substantive response or appropriate action, I will continue using the administrative and legal mechanisms available to protect my health and rights.

This statement is not intended as a threat.
It is a formal record that I am making every reasonable effort to resolve the matter internally before seeking assistance from other competent authorities.

XVII. FINAL REQUEST: PLEASE DO NOT SEND ANOTHER GENERIC SICK CALL RESPONSE
Please do not respond again simply:
"GO TO SICK CALL."
I have already gone to Sick Call.
The question is:
"IF FCC COLEMAN LOW DOES NOT PROVIDE THE SPECIALIZED ORTHODONTIC TREATMENT I REQUIRE, WHAT IS THE OFFICIAL PROCEDURE FOR ME TO RECEIVE THE NECESSARY SPECIALIST EVALUATION AND CONTINUITY OF CARE?"

I need this question answered.
If the procedure is:
HSA.....please say so.
RCD.....please say so.
Utilization Review.....please say so.
Specialty Services.....please say so.
Another procedure.....please say so.
If no referral is available, please state that formally.
If specialist evaluation is not clinically indicated, please state that formally and provide the clinical rationale.

* EXHIBIT: F





---

If specialist evaluation is indicated, please initiate or identify the procedure necessary to initiate the referral.

But please do not continue responding to a specific question concerning specialized treatment and referral with a generic Sick Call response.

XVIII. MY REQUEST IS URGENT
I am trying to protect my health.
I am trying to prevent further deterioration.
I am trying to preserve my remaining teeth.
I am trying to preserve my ability to chew and eat properly.
I am trying to continue treatment related to my mandibular reconstruction.
I am trying to obtain the assistance that the BOP's own dental policy recognizes may require specialty care.

I AM NOT ASKING FOR SPECIAL TREATMENT.
I AM ASKING FOR THE CORRECT PROCEDURE TO BE IDENTIFIED AND FOLLOWED.

For these reasons, I respectfully request that this communication be treated as:
URGENT MEDICAL/DENTAL REQUEST - SPECIALTY REFERRAL/CONTINUITY OF CARE

I request that this communication be preserved in the appropriate records and that I receive an individualized, objective, clinical and documented response.
I also request clarification of the statement that I "refused treatment" and that this statement not be used generically to characterize my conduct without identifying the specific treatment allegedly refused...

My health is not a trivial matter.
My treatment is not a cosmetic matter.
My request is not simply a Sick Call request.
And my request for a concrete answer cannot continue to be left unresolved.
I am asking for a solution.
I respectfully await a specific response.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low | COL-B-D
Case No. 8:25-CR-144-KKM-SPF

* EXHIBT: F



---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 07:46:52 PM

To: NO RESPONSE TO BP-9 - MESSAGE 1
Inmate Work Assignment: Gilmar Pereira Da Silva

FOURTH FORMAL AND URGENT REQUEST TO THE WARDEN

NO RESPONSE TO BP-9 - MEDICAL AND DENTAL EMERGENCY - EVIDENCE PRESERVATION - ACCESS TO RECORDS - PROTECTION FROM RETALIATION - REQUEST FOR IMMEDIATE ACTION

Date: August 16, 2026

TO: Warden - Federal Correction Complex, Coleman-Low

FROM: Gilmar Pereira da Silva Junior
BOP Register No. 74744-511
Unit: B4
Case No. 8:25-CR-144-KKM-SPF
United States District Judge: Katheryn Kimball Mizelle

SUBJECT: FOURTH FORMAL AND URGENT REQUEST: THREE PRIOR REQUESTS WITHOUT RESPONSE, PROGRESSIVE DETERIORATION OF MY HEALTH, LACK OF SPECIALIZED DENTAL TREATMENT, LACK OF RESPONSE FROM INSTITUTIONAL DEPARTMENTS, AND REQUEST FOR IMMEDIATE INTERVENTION

WARDEN:

I am sending this communication through TRULINCS FOR THE FOURTH TIME, after already submitting three prior urgent requests asking you to become directly aware of my situation, give special attention to my BP-9, and take immediate action to protect my health and address the problems I have been experiencing at FCC Coleman Low.

To date, I have not received an effective response, guidance, concrete intervention, or meaningful assistance that was resolved my situation.

This fourth communication therefore serves two purposes:

1. to request immediate intervention; and
2. to create a clear, contemporaneous formal record that I have repeatedly sought assistance through available institutional channels while my condition continues to deteriorate.

I am not sending this message for convenience.

I am sending it because I have repeatedly sought help and still have not received an adequate solution.

I. MY MEDICAL AND DENTAL CONDITION REQUIRES URGENT ATTENTION

When I entered FCC Coleman Low on May 4, 2026, I already had a complex medical and dental condition resulting from a serious motorcycle accident. I suffered a fractured jaw and underwent reconstructive mandibular treatment which has a therapeutic purpose. I do not use orthodontic treatment for cosmetic reasons.

Before incarceration, I required specialized follow-up and periodic maintenance.

My MASTER STATEMENT OF FACTS documents this pre-existing condition and the need for continued treatment.

During approximately right days in the Special Housing Unit (SHU), from May 4 through May 11, 2026, my orthodontic appliance was damaged.

* EXHIBIT: F



On May 6, I noticed that the wire had broken and that my teeth had become mobile.

I repeatedly requested help.

On May 7, I lost teeth and continued requesting medical, dental and medication assistance.

These events are documented chronologically in my MASTER STATEMENT OF THE FACTS.

After leaving the SHU, my condition was not resolved.

Over the following months, my condition continued to deteriorate. I have now lost four teeth, my orthodontic appliance remains broken, I have difficulty chewing, and I remain constantly concerned about protecting my reconstructed jaw.

II. BOP'S OWN POLICY RECOGNIZES THAT ORTHODONTICS IS NOT WITHIN THE NORMAL SCOPE OF BOP DENTAL SERVICES

There is an especially important issue in my case.

BOP's own Program Statement P6400.03 ("Patient Care") states that orthodontic treatment is not within the normal scope of Bureau of Prisons dental services.

BOP's official BP-A1041: Consent for Removal of Orthodontic Appliances, prescribed by P6400, also states that orthodontic treatment is not routinely within the scope of BOP Dental Services (BOP).

However, the same BOP policy provides that when dental services require specialist assistance, arrangements may be made for specialist care through the applicable approval process (BOP).

Therefore my question is direct:

If FCC Coleman Low does not have the specialist required to treat my condition, what procedure is BOP using to ensure that I receive the specialized treatment necessary to protect my reconstructed jaw and remaining teeth?

Simply telling me that the specialist is not available is not an adequate solution.

BOP policy itself provides a mechanism for situations requiring specialist assistance.

I therefore request a formal written response explaining what action will be taken.

III. BOP'S OWN PANORAMIC X-RAY DOCUMENTS MY CONDITION

FCC Coleman Low performed a panoramic X-ray as part of my dental care.

During my dental appointments, I was informed that my condition was complex and required specialized treatment that was not available at this institution.

Only July 30, 2026, I again reported:

*my broken orthodontic appliance;
*the loss of four teeth;
*my concern regarding my reconstructed jaw;
*and my need for specialized treatment.

I asked that the panoramic X-ray already maintained in BOP records be reviewed.

As I observed during the appointment, it was not reviewed.

During that same appointment, I was again informed that the specialized treatment required for my condition was not available at FCC Coleman Low and, as I understood it, that treatment should urgently be provided outside the institution.

* EXHIBIT: F





---

I request that the X-ray and all records relating to it are immediately located, preserved, and included in the review of my case.

IV. I AM NOT REFUSING TREATMENT

I want to make this absolutely clear:

I AM NOT REFUSING TREATMENT.

Since the first day I arrived at FCC Coleman Low, I have requested treatment.

During the July 30, 2026 appointment, I was presented with a document which, as I understood it, stated that I was refusing dental recommendations.

I did not sign that document because that statement was not accurate.

I want treatment.

I have repeatedly requested treatment.

My MASTER STATEMENT OF THE FACTS specifically documents this event.

V. I HAVE SOUGHT HELP FROM EVERY AVAILABLE DEPARTMENT

My situation has not been reported only to the Warden.

I have repeatedly sought assistance from:

HEALTH SERVICES LOW

I have sent messages requesting assistance.

I have not received an effective response resolving my situation.

DENTAL LOW

I have sent messages.

I have also appeared there personally.

On August 13, 2026, I personally went to Dental Low to deliver another urgent request for assistance and relief concerning my treatment.

At that time, I was informed that Dental Low had instructed the receptionist not to accept further formal complaints of this nature.

I request that this incident be formally documented and clarified.

PSYCHOLOGY

I have also requested assistance from Psychology and personally went to that department.

I have not received an effective solution.

FOOD SERVICES

I have also sent requests concerning Food Services.

I have not received an effective response.

* EXHIBIT: F



---

WARDEN

I have already sent three prior requests.

I am now sending the FOURTH FORMAL AND URGENT REQUEST.

I still have no adequate solution.

VI. FORMAL QUESTION TO THE WARDEN

Given all of this, I formally ask:

WHO CAN HELP ME IF I HAVE ALREADY CONTACTED THE RESPONSIBLE DEPARTMENTS AND CONTINUE TO RECEIVE NO RESPONSE OR SOLUTION?

I have attempted to use the internal procedures.

I have sent messages.

I have personally gone to departments.

I have filed Administrative Remedies.

I have requested medical and dental care.

I have requested assistance from the Warden.

And I still do not have an adequate solution.

If my situation continues without a response, I will have to seek assistance through all lawful external channels available to me, including my defense counsel, the federal court handling my case, appropriate federal oversight authorities, and other authorities with jurisdiction.

VII. FOURTH REQUEST FOR A RESPONSE TO MY BP-9

I have already submitted three prior TRULINCS requests asking the Warden to give special attention to my BP-9.

I have received no response.

I also have not been informed that any extension of time was required to respond to my BP-9.

Under 28 C.F.R. Sec. 542.18, once an Administrative Remedy Request is accepted and logged, the Warden generally has 20 calendar days to respond. When a request is determined to be an emergency threatening an inmate's immediate health or welfare, the regulation requires a response by the third calendar day after filing.

The regulation allows one 20-day extension at the institution level, but staff must inform the inmate of the extension in writing.

The same regulation provides that if an inmate does not receive a response within the applicable period, including any extension, the inmate may consider the absence of a response a denial at that level.

Therefore I formally request:

1. My BP-9 Remedy ID/number;
2. date received;
3. date logged;
4. current status;
5. whether it was accepted or rejected;
6. who is responsible for the response;
7. applicable response deadline;

* EXHIBIT: F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D [redacted]

---

8. whether an extension exists;
9. if an extension exists, when I was notified;
10. the new deadline.

I request a written response.

VIII. I DO NOT WANT THE LACK OF A RESPONSE USED AGAINST ME

I am attempting to comply with the administrative remedy procedure.

I therefore request that it not later be stated that I simply failed to use available administrative remedies.

I am using them.

I am documenting my attempts.

I requested a response three times.

I am now requesting it for the fourth time.

If the applicable response period has expired, I also request written guidance regarding the next available administrative step, including the BP-10.

BOP regulations provide that the BP-10 is the appeal to the Regional Director and that failure to receive a response within the applicable period may be treated as a denial at that level.

IX. TRULINCS FORMAL RECORD OF MY REQUESTS

BOP officially identifies TRULINCS as the electronic messaging system used at Bureau of Prisons institutions, including electronic communication with staff through the functions available at the institution. BOP also states that these messages are monitored and that the system has a 13,000-character limit (BOP).

I am not claiming that a TRULINCS message replaces a BP-9, BP-10, or BP-11.

I am requesting that my messages be treated and preserved as contemporaneous records of the notices I provided to the administration and the requests for assistance I made.

I therefore request preservation of all my TRULINCS messages concerning:

*the Warden;
*Health Services;
*Dental;
*Psychology;
*Food Services;
*Commissary;
*Unit Team;
*BP-9;
*and all other matters related to my health and the facts described herein.

* EXHIBIT : P PAGE 15 OF 22

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 08:55:01 PM

To: NO RESPONSE TO BP-9 - MESSAGE 2
Inmate Work Assignment: Gilmar Pereira Da Silva

X. IMMEDIATE PRESERVATION OF EVIDENCE

I formally request preservation of all evidence relating to my case, including:

*medical records;
*dental records;
*panoramic X-ray;
*images and examinations;
*dental evaluations;
*records concerning the four lost teeth;
*records concerning my orthdontic appliance;
*records concerning my mandibular reconstruction;
*TRULINCS;
*BP-8;
*BP-9;
*BP-10;
*BP-11;
*SENTRY records;
*SHU records;
*records concerning cells 130 and 129;
*movement records;
*staff schedules and logs;
*internal communications;
*video recordings;
*audio recordings, if any;
*July 30, 2026 dental records;
*records concerning my August 13, 2026 visit to Dental Low;
*and all other records relating to my case.

My MASTER STATEMENT OF THE FACTS already formally requests preservation of these materials.

XI. REQUEST FOR ALL MEDICAL AND DENTAL RECORDS

I have requested my records from Health Services Low three times.

However, the records I received appear to be incomplete.

Among the information I could not locate are records concerning the panoramic X-ray performed by the BOP, as well as TRULINCS communications relating to my treatment.

Under 5 U.S.C. Section 552a(d), subject to applicable legal exemptions, an individual may request access to records about himself maintained in a system of records and obtain copies of such records.

I therefore formally request copies of all records legally accesible to me, including:

*panoramic X-ray;
*interpretation/report of the X-ray;
*dental notes;
*evaluations;
*diagnoses;
*referrals;

---

*recommendations;
*records concerning my appliance;
*records concerning my four lost teeth;
*records concerning the need for a specialist;
*treatment records;
*and all other records concerning my condition.

If any record is lawfully withheld or redacted, I request written identification of what record was withheld, the legal basis for withholding it, and what review or appeal procedure is available, when applicable.

XII. MY INSTITUTIONAL RECORD SHOULD REFLECT MY REPEATED ATTEMPTS TO OBTAIN HELP

I request that all of my requests, communications, referrals, responses, decisions, and actions concerning this matter be properly documented.

I do not want my future institutional record to state that I failed to seek assistance.

I AM REPEATEDLY SEEKING ASSISTANCE.

I request that this fact be preserved in the appropriate institutional records.

XIII. PROTECTION AGAINST RETALIATION

I formally request protection against any form of retaliation arising from my exercise of my rights.

This includes, to the extent protected by applicable law:

*retaliation;
*threats;
*improper disciplinary action;
*interference with Administrative Remedies;
*interference with communication with my defense counsel;
*interference with access to courts;
*retaliatory transfer;
*retaliatory classification changes;
*or any other adverse action motivated by my complaints, requests for medical or dental care, or efforts to seek judicial review.

I am using available procedures.

I am not refusing to follow institutional rules.

I am attempting to obtain assistance and protection.

XIV. REQUEST FOR OFFICIAL NOTICE OF DECISIONS AFFECTING ME

I request that any significant decision directly affecting:

*my custody;
*my classification;
*medical treatment;
*dental treatment;
*access to Administrative Remedies;
*communication with defense counsel;
*transfer;
*or other rights directly related to my situation

be officially documented.

To the extent legally and operationally possible, I request notice stating:

---

*what decision was made;
*who made it;
*when it was made;
*the basis for the decision;
*what procedure was used;
*and what review or appeal mechanism was available.

XV. COPY CARD AND ACCESS TO COURTS

I have also reported another problem through TRULINCS.

For approximately two consecutive weeks, Commissary has reportedly had no Copy Cards available for purchase.

I sent a message requesting assistance.

I also personally went to Commissary.

I was unable to obtain an adequate solution.

This is particularly concerning because I am currently preparing administrative and judicial documents.

I understand that there is not necessarily an unlimited constitutional right to free copies.

However, meaningful access to the courts is constitutionally protected. I therefore request that, while Copy Cards are unavailable, the institution provide a lawful and reasonable method for obtaining the copies necessary for my legal documents, whether through the Law Library, Unit Team, or other appropriate institutional procedure.

I request a temporary solution while the item remains unavailable.

XVI. URGENT MEDICAL AND DENTAL EVALUATION

I request an immediate and complete evaluation of my condition, considering:

*prior accident;
*mandibular reconstruction;
*titanium plate;
*orthodontic appliance;
*broken appliance;
*four lost teeth;
*difficulty chewing;
*panoramic X-ray;
*prior dental history;
*FCC Coleman Low dental appointments;
*July 30 appointment;
*August 13 request;
*and all other existing records.

I request written answers to the following:

1. What is my current diagnosis?

2. What is the current condition of my reconstructed jaw?

3. What is the current condition of my orthodontic appliance?

4. What treatment is medically necessary?

5. What specialist is required?

* EXHIBIT : F





---

6. Is that specialist available at FCC Coleman Low?

7. If not, what procedure will be used to obtain the specialist?

8. Is there a risk of additional permanent injury from continued delay?

9. What treatment will be provided immediately while I await any referral?

10. What is the plan to prevent further loss and protect my mandibular reconstruction?

I request that these matters be documented in my medical record.

XVII. REQUEST FOR EVALUATION FOR REDUCTION IN SENTENCE / COMPASSIONATE RELEASE

I formally request that my circumstances be evaluated, as applicable, under BOP Program Statement 5050.50 and 18 U.S.C. Section 3582(c)(1)(A).

I understand that the Warden does not have the authority to independently modify the sentence imposed by Judge Katheryn Kimball Mizelle.

However, federal law permits, under certain circumstances, a defendant to seek a sentence reduction from the sentencing court based upon extraordinary and compelling reasons, after the applicable administrative requirement is satisfied. The statute provides that a defendant may proceed after exhausting administrative rights or after 30 days from the Warden's receipt of the request, whichever occurs first.

Therefore, I request that this communication be:

1. received;
2. officially recorded;
3. reviewed;
4. processed under the applicable procedure; and
5. answered in writing.

I request consideration of every legally available alternative, including:

*Reduction in Sentence / Compassionate Release
*Home Confinement;
*Prerelease Custody;
*or another lawful mechanism that would allow me to receive the specialized treatment I currently cannot adequately receive inside the institution.

If a lawful mechanism exists that would permit me to serve the remainder of my sentence outside the prison environment under conditions determined by the appropriate authorities, I request that possibility be formally evaluated.

My objective is to obtain the specialized treatment I urgently need and, to the extent possible, repair the damage to my health.

I also request that my Assistant Federal Public Defender Ryan J. Maguire receive the information necessary to urgently evaluate this possibility before the sentencing court.

XVIII MY SITUATION IS NOT AN ISOLATED COMPLAINT.

My situation did not begin now.

It began when I entered FCC Coleman Low on May 4, 2026.

I spent approximately eight days in the SHU.

My orthodontic appliance was damaged.

* EXHIBIT: F





---

I lost teeth.

I requested help.

I continued requesting help.

My condition continued to deteriorate.

I have now lost four teeth.

My appliance remains broken.

I have a reconstructed jaw with a titanium plate.

I have difficulty chewing.

There is a panoramic X-ray performed by BOP.

And I was informed during multiple dental encounters that my condition required specialized treatment that was not available at the institution.

XIX. I CANNOT CONTINUE WAITING

Warden,

I respectfully ask you to understand the seriousness of this situation.

I do not want to wait until additional or permanent damage occurs before action is taken.

I am asking for help now.

I am trying to protect my health now.

I am trying to protect my remaining teeth now.

I am trying to protect my reconstructed jaw now.

And I am attempting to do so through the institutional mechanisms available to me.

XX. IMMEDIATE ACTION REQUESTED.

I respectfully request that the Warden ensure or direct, as appropriate:

1. A formal response to my BP-9;
2. Written information concerning the BP-9 status, number, deadline, and any extension;
3. Written guidance concerning the BP-10 if the applicable response period has expired;
4. Urgent medical and dental evaluation;
5. Review and preservation of the panoramic X-ray;
6. Specialist evaluation of my orthodontic appliance;
7. Referral to a specialist when the required treatment is unavailable at the institution;
8. Preservation of all evidence;

* EXHIBIT : F



TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

9. Preservation of all relevant TRULINC communications;
10. Provision of legally accessible medical and dental records;
11. Official documentation of my August 13, 2026 visit to Dental Low;
12. Responses to requests submitted to Health Services, Dental, Psychology and Food Services;
13. A temporary lawful solution for obtaining necessary legal copies while Copy Cards are unavailable;
14. Protection against retaliation;
15. Official documentation of significant decisions affecting me;
16. Formal evaluation of Reduction in Sentence/Compassionate Release or another applicable lawful mechanism;
17. Communication of relevant action to my Assistant Federal Public Defender Ryan J. Maguirre as permitted.

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Warden LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/16/2026 09:26:52 PM

To: NO RESPONSE TO BP-9 - MESSAGE 3
Inmate Work Assignment: Gilmar Pereira Da Silva

XXI. FORMAL NOTICE REGARDING FURTHER LEGAL ACTION

This is my FOURTH FORMAL AND URGENT REQUEST to the Warden through TRULINCS.

I have contacted the responsible departments.

I have personally gone to institutional departments.

I have contacted Health Services.

I have contacted Dental.

I have contacted Psychology.

I have contacted Food Services.

I have contacted Commissary.

I have requested a response to my BP-9.

I have sent three previous messages to the Warden.

And I still do not have an adequate solution.

Therefore, if my situation continues without a response or effective action, I will continue using all lawful avenues available to me, including:

*my Assistant Federal Public Defender;
*the United States District Court handling my case;
*appropriate federal authorities;
*the Department of Justice;
*the DOJ Office of Inspector General;
*appropriate legislative authorities;
*and any other authority with jurisdiction.

This is not intended as a threat.

It is formal notice that I have attempted to resolve these matters internally and must seek additional lawful protection and guidance when internal mechanisms do not produce a solution.

XXII. FINAL REQUEST

Warden,

I respectfully request that this fourth communication be treated as a:

FORMAL, URGENT, AND PRIORITY REQUEST FOR INTERVENTION.

My health is deteriorating.

My orthodontic appliance remains broken.

* EXHIBIT : F

PAGE 22 OF 22

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

I have lost four teeth.

I have a reconstructed jaw.

There is a panoramic X-ray performed by the BOP.

There are medical records.

There are dental records.

There are TRULINCS messages.

There are Administrative Remedies.

There are SHU records.

There are dental appointments.

There are documents capable of corroborating the facts.

I am not asking anyone simply to believe my words.

I am asking that:

THE RECORDS BE RECEIVED.

THE EVIDENCE BE PRESERVED.

MY CONDITION BE EVALUATED.

THE NECESSARY TREATMENT BE PROVIDED.

MY BP-9 BE ANSWERED.

MY ADMINISTRATIVE RIGHTS BE PRESERVED.

MY RECORDS BE PROVIDED TO THE EXTENT PERMITTED BY LAW.

AND THAT I BE PROTECTED FROM RETALIATION FOR SEEKING HELP AND EXERCISING MY RIGHTS.

I am asking for help before additional and potentially permanent harm occurs.

Please do not leave this fourth request unanswered.

I respectfully request a formal written response, and clear information regarding what action will be taken and within what timeframe.

Respectfully,

Gilmar Pereira Da Silva Junior
BOP Register No. 74744-511
FCC Coleman Low Unit B4
Case No. 8:25-CR-144-KKM-SPF
United States District Judge Katheryn Kimball Mizelle

* EXHIBIT : F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Food Service
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/31/2026 10:17:02 AM

Food service doesn't accept "requests" for medical diets through TruLincs. You MUST submit a diet order to F/S staff, written by medical or dental.

To: SECOND FORMAL AND URGENT REQUEST - FOOD SERVICE
Inmate Work Assignment: Gilmar Pereira Da Silva

GILMAR PEREIRA DA SILVER JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLEMAN LOW | COL-B-D
DATE: AUGUST 18, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST - REQUEST FOR FOOD COMPATIBLE WITH MY DENTAL CONDITION AND IMMEDIATE ACTION

TO THE FOOD SERVICES TEAM - FCC COLEMAN LOW:

I am submitting this message as my SECOND FORMAL REQUEST FOR ASSISTANCE through TRULINCS because my first request, sent on August 7, 2026, requesting attention, assistance, and a solution because of my dental condition and the difficulty I have been experiencing eating, has not, to my knowledge, received a response or concrete action.

I am again requesting assistance because the situation continues and, each day the problem remains unresolved, my concern increases regarding my health, nutrition, and the long-term consequences that may result from being unable to eat adequately while my dental problem remains unresolved.

I NEED THIS SECOND REQUEST TO BE READ AND REVIEWED INDIVIDUALLY.

I am not asking Food Services to make a medical or dental diagnosis. I understand that prescribing a medical diet depends on an evaluation and clinical order. I am asking Food Services to formally acknowledge the difficulty eating that I am reporting, refer the matter to the appropriate department when necessary, and tell me what procedure I must follow to obtain food compatible with a possible clinical need.

The BOP officially states that its health services include medical, dental, and mental health care and that its Food Services program works together with medical treatment and nutritional guidance. BOP guidance concerning Medical Diets also establishes that special diets require a current dietary order. Therefore, if my condition requires a modified diet, I request that the matter be referred for the necessary clinical evaluation and, if an order is issued, that Food Services implement the corresponding diet.

My dental situation is specific and has already been repeatedly communicated.

I have a history of a serious motorcycle accident, jaw reconstruction, a titanium plate, and use of an orthodontic appliance related to the treatment. The appliance is damaged. I reported the loss of four teeth and difficulty eating. Dental Low performed an evaluation and panoramic X-ray, and I have been attempting to obtain a definitive solution for continued treatment.

I do not use an orthodontic appliance for cosmetic purposes.

My concern is that my daily food intake be compatible with the condition I am experiencing while the dental issue remains unresolved.

On August 7, 2026, I sent a formal request to Food Services through TRULINCS. I explained that I was experiencing difficulty eating because of damage related to the appliance and my dental condition and requested guidance, assistance, and a solution.

To date, I have not received an effective response or been informed of any concrete action.

* EXHIBIT: F



TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

This is therefore the SECOND TIME I have formally requested Food Services Intervention.

I do not consider it acceptable for a request concerning my ability to eat to remain unanswered, especially when the institution has already been informed that there is a documented dental problem under treatment.

The issue is not simply "what food I prefer."

The issue is whether I can adequately and safely consume the food provided given the dental condition I have reported.

When a person has difficulty chewing, pain, discomfort, or mechanical limitations involving the mouth and teeth, inadequate food may make it even more difficult to consume sufficient food and fluids. Depending on the individual's clinical condition, inadequate food intake my contribute to weight loss, insufficient calories and nutrients, worsening nutritional status, and difficulty recovering. I am not asserting that these consequences have already occurred in my case as a diagnosis; I am warning of the risk and requesting evaluation before the problem worsens.

In addition, if certain hard, crunchy, or difficult-to-chew foods are increasing my discomfort or making eating more difficult, a professional should evaluate whether temporary dietary modification is necessary.

That is precisely why I am requesting a coordinated solution among Food Services, Dental, and Health Services.

I AM NOT ASKING FOOD SERVICES TO PRESCRIBE A DIET.

I AM ASKING FOOD SERVICES NOT TO IGNORE THE PROBLEM.

If the decision must be medical, please refer my request to Health Services/Dental and inform me.

If there is a specific procedure for obtaining a Medical Diet or Special Diet, please inform me.

If I need a current medical order, please tell me and arrange or direct me to the necessary evaluation.

If a dietary order already exists in my medical record, please confirm, within applicable limits, whether it has been forwarded to Food Services.

If there is no order, please tell me which department should initiate the process.

WHAT CANNOT CONTINUE IS THE SILENCE.

I am already using other channels to seek a solution to my dental problem. I have sought assistance from Dental, Health Services, Psychology, the Warden, and other departments, and I have been using TRULINCS and Administrative Remedies.

My overall health situation is causing me distress and concern.

At the same time that I am trying to resolve my dental problem, I am also trying to preserve my administrative and judicial rights.

I have a federal criminal case, Administrative Remedies in progress, medical and dental documents, record requests, communications with my defense counsel, and hundreds of pages in documentation.

The lack of adequate food in the face of a condition that makes chewing difficult adds another physical concern to an already extremely difficult situation.

THEREFORE I REQUEST THE FOLLOWING IMMEDIATE ACTIONS:

1. Confirm receipt of this second request.
2. Locate and record my first request sent to Food Services on August 7, 2026.
3. Inform me in writing whether that request was referred to any department.
4. Immediately refer the issue to Health Services/Dental for clinical evaluation if Food Services does not have authority to determine the diet.
5. Inform me of the procedure I must follow to obtain a Medical Diet/Special Diet evaluation.

* EXHIBIT: F



6. Determine whether there is currently a dietary order relating to my condition.
7. If there is a dietary order, confirm that it is being communicated to and implemented by Food Services.
8. If there is no order, inform me which professional/department should evaluate the need.
9. While I await evaluation, inform me whether there is an institutional procedure for a temporary food solution when an inmate reports significant difficulty chewing.
10. Formally record that I reported difficulty eating because of my dental condition.
11. Preserve this message and the message sent on August 7, 2026 as part of the request record.
12. Inform me of the department responsible for the next step.
13. Inform me of the timeframe or expected date for evaluation or guidance.
14. If Food Services believes it cannot take any action, forward the request to the appropriate department instead of simply closing it.
15. If a modified diet is available only upon clinical order, arrange or direct the referral necessary for clinical evaluation.

I WANT TO MAKE CLEAR WHAT COULD HAPPEN IF THE SITUATION CONTINUES WITHOUT A SOLUTION.

I am not saying that all of these consequences will necessarily occur to me. I am identifying risks that need to be evaluated by professionals:

insufficient food intake;
insufficient calorie and nutrient intake;
weight loss;
worsening nutritional status;
dehydration if difficulty eating also affects fluid intake;
increased pain or discomfort when chewing;
greater difficulty maintaining an adequate diet;
worsening chewing difficulty;
possible negative effects on recovery and maintenance of health;
increased physical vulnerability while my dental problem remains unresolved;
increased physical and psychological distress;
and possible need for more complex medical intervention if a treatable problem remains unevaluated.

Again, I am not asserting that these consequences have already occurred or that they necessarily will occur. I am asking the institution NOT to wait for them to happen before taking action.

My request is preventive and urgent.

I am trying to prevent an already known problem from becoming a greater consequence.

I also need to document that my difficulty cannot be resolved simply by saying "seek Dental Sick Call," because I have already sought Dental and there is already a history of evaluation, panoramic X-ray, and requests for continued treatment.

Food Services do not need to resolve my dental treatment.

But Food Services can, within its authority, explain the correct procedure so that a possible dietary need can be evaluated and, if there is a medical order, implemented.

That is what I am requesting.

I ask that no one interpret this message as an attempt to obtain preferential food treatment.

I am requesting food compatible with a health condition that has already been reported and evaluated by the dental department.

I also that this request not be answered only with a general sentence.

I want to know:

WHAT IS THE PROCEDURE?
WHO IS RESPONSIBLE?
WHAT IS THE NEXT STEP?

* EXHIBIT: F



---

DO I NEED A MEDICAL ORDER?
WHO MUST ISSUE THAT ORDER?
IS A MODIFIED DIET AVAILABLE?
HOW CAN I BE EVALUATED?
WHEN WILL THIS BE DONE?

There are objective questions and I expect objective answers.

If Food Services is not the correct department to answer, I request that the message be forwarded to the responsible department.

I also request that the date of this second request be recorded so that it is documented that the institution was again informed of my difficulty eating.

I am trying to resolve this issue internally while respecting institutional rules.

I am not refusing food.

I am not demanding a specific menu without evaluation.

I am requesting an evaluation and a solution compatible with my condition.

My situation is already extremely difficult, and I do not want food to become another aggravating factor.

I ask for special attention because I remain in custody and do no have the same ability to seek outside care that a person in the community would have.

Therefore, when a health condition may require dietary modification, I need the internal system to function.

This is my SECOND FORMAL REQUEST.

My first request was sent on August 7, 2026.

To date, I have not received a response or solution of which I am aware.

I am now formally documenting that I continue to need assistance.

I request that this message be treated as an URGENT request for coordination between Food Services and Health Services/Dental.

I await a response and urgent action.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR

* EXHIBIT: F



TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/10/2026 04:40:35 PM

To: Medical Records
Inmate Work Assignment: N/A

URGENT REQUEST: COMPLETE REVIEW AND RELEASE OF MY MEDICAL AND DENTAL RECORDS

Dear Health Services/Medical Records Staff,

I respectfully request an URGENT and complete review of my Medical and Dental Records, because the records previously provided to me appear to be incomplete. The documents I received are missing certain diagnoses, portions of my medical and dental history, and other information, and several sections contain blank or incomplete fields.

I am not asking the Medical Department to create documents that do not exist. Rather, I am formally requesting that my medical, dental, clinical and related records be thoroughly reviewed in all applicable systems and files so that I may receive a complete and accurate copy of the records that actually exist concerning my care.

Please specifically review and provide, to the extent these records exist:

1. My initial medical evaluation upon arrival at FCC Coleman Low, including my complete intake medical assessment, medical history, diagnoses, complaints, examinations, findings and treatment or medical recommendations documented at the time;

2. All medical records relating to the period during which I was confined in the Special Housing Unit (SHU), including medical evaluations, sick-call requests, medical complaints, encounters, diagnoses, medications, clinical observations, treatment, referrals, and any other medical documentation generated during that period.

3. All medical evaluations performed after I was released from the SHU and transferred to Housing Unit B4, including any medical assessment, examination, complaint, diagnosis, or clinical note created at or around that time;

4. My complete Dental Services records, including my initial dental evaluation, dental history, diagnoses, examinations, treatment, procedures, progress notes, and other dental records;

5. The initial evaluation of my orthodontic condition and orthodontic appliance, including any documentation concerning the condition of my braces/appliance, teeth, prior orthodontic treatment, dental history, diagnosis, or evaluation performed when I arrived at the institution;

6. The panoramic X-ray that was performed, together with the corresponding radiology report, interpretation, or dental report;

7. Any dental evaluation or clinical documentation describing my condition based upon the panoramic X-ray, including the name and signature or identification of the dental professional responsible;

8. All medical records concerning requests or encounters with General Medicine / Primary Care, including requests that I submitted for general medical evaluation;

9. All records concerning requests, referrals, appointments, or evaluations involving Ophthalmology, Orthopedics, Psychology/Mental Health, and any other medical or clinical specialty that I requested, was referred to, or was evaluated by;

10. All electronic messages that I sent through TRULINCS concerning my medical or dental care, not only messages sent to the Dental Department, but also messages concerning or directed to General Medicine, physicians, Ophthalmology, Orthopedics, Psychology/Mental Health, Dental Services, and any other Health Services Department;

11. Any responses, referrals, appointments, medical encounters, or clinical notes generated as a result of those TRULINCS requests or messages, to the extent such records exist;

12. All diagnoses, medical histories, examination results, laboratory or imaging records, clinical notes, consultations, referrals, prescriptions, treatments, evaluations, and other records that are part of my Medical and Dental Records but were not included

* EXHIBIT: F





---

in the records previously provided to me.

I also respectfully request that the Medical Records Department compare the records previously provided to me against the records currently maintained in the applicable medical, dental, and electronic systems, in order to determine whether any pages, diagnoses, examinations, imaging studies, reports, clinical notes, histories, or other records were omitted from the copy I previously received.

If any requested record cannot be provided, I respectfully ask that I be informed specifically whether the record:

*does not exist;
*could not be located;
*is maintained in another medical, dental, or institutional system or department;
*or is subject to a specific review or restriction before disclosure.

This request is particularly important because I am attempting to maintain a complete and accurate record of my medical and dental history during my confinement at FCC Coleman Low, especially concerning the events surrounding my confinement in the SHU and the medical and dental care provided before, during, and after that period.

Accordingly, please treat this message as my formal request for a complete review and release of my existing Medical and Dental Records relating to my care.

I respectfully ask that the Medical Records Department carefully review all applicable records and systems before responding so that I may receive the most complete copy of my existing medical and dental records possible.

I would greatly appreciate the promptest possible response and processing of this request, given the importance of these records to my ongoing medical and dental care and to maintaining an accurate history of my treatment. I would also appreciate receiving a written response to this most urgent request.

Respectfully,

Gilmar Perreira da Silva Jr.
Register No. 74744-511

PAGE 01 OF 04

* EXHIBIT: F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Psychology Services LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/21/2026 09:02:01 AM

Good morning Mr. Pereira Da Silva,

Please report to the Psychology Department on the 1:00PM move today to address your concerns.

Thank you,

Dr. Kennedy

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, August 20, 2026 2:40 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: SECOND FORMAL AND URGENT REQUEST
Inmate Work Assignment: Gilmar Pereira Da Silva

SECOND FORMAL AND URGENT REQUEST - PSYCHOLOGY LOW

GILMAR PEREIRA DA SILVA JUNIOR
BOP REGISTER NO. 74744-511 | CASE NO. 8:25-CR-144-KKM-SPF
FCC COLEMAN LOW | COL-B-D
DATE: AUGUST 20, 2026

SUBJECT: SECOND FORMAL AND URGENT REQUEST FOR PSYCHOLOGICAL ASSISTANCE. NO RESPONSE TO THE AUGUST 7, 2026 REQUEST AND NEED FOR IMMEDIATE EVALUATION.

TO THE PSYCHOLOGY LOW TEAM (FCC COLEMAN LOW):

I am sending this message as my SECOND FORMAL REQUEST FOR HELP through TRULINCS because my first request, sent on August 7, 2026, under the subject "REQUEST FOR URGENT ASSISTANCE OR WHAT PROCEDURE I SHOULD FOLLOW TO PROTECT MY HEALTH," has not, to date, received an effective response, individualized guidance, or concrete action of which I am aware.

I am making this second request because I no longer know what procedure I should follow in order to be effectively heard and evaluated by the Psychology team.

I am not senting this message as a general complaint. I am asking that a mental-health professional individually review the situation I have been reporting and determine, within the scope of professional authority, what evaluation, care follow-up, or referral is necessary.

My psychological concern is directly related to events I have experienced since arriving at FCC Coleman Low, particularly the period during which I was placed in the SHU, a situation that I believe occurred improperly and that was deeply traumatic for me.

During my time in the SHU, I asked for help. I asked for clemency. I tried to explain that I was suffering and needed assistance. On the second day I was in the SHU, I had contact with the Psychology staff and specifically remember asking Mr. B. Kennedy, an employee who works in Psychology Low, for help. On that occasion, according to my experience, I did not receive the assistance I was requesting.

I am reporting this fact again because it is part of the source of the suffering I continue to carry.

Since then, I have been afraid that the psychological consequences of these events may remain with me for the rest of my life. I have ongoing concerns about the effects of everything that happened, the possibility of permanent emotional consequences, and the impact that continuing custody is having on me.

* EXHIBIT: F





---

I have also been facing serious medical and dental concerns at the same time.

My condition involves jaw reconstruction following a serious motorcycle accident, a titanium plate, an orthodontic appliance related to the treatment, a broken appliance, reported loss of four teeth, difficulty eating, and the absence of a definitive solution for continued treatment. I have already been evaluated by Dental, a panoramic X-ray was performed, and I continue trying to obtain a solution.

The fact that I am simultaneously facing physical, dental, administrative, and legal problems significantly increases my distress and sense of vulnerability.

I have repeatedly requested assistance through different channels. I have sent TRULINCS messages to the Warden, Dental, Health Services, Psychology, Food Services, and Trust Fund/Commissary. I have also personally gone to departments when possible and used Administrative Remedies.

Despite this, I continue encountering situations in which my requests remain unanswered or receive responses that do not resolve the main issue...

Specifically regarding Psychology, my first request was sent on August 7, 2026, and to this date I have not received a response that allows me to know whether I was referred for evaluation, whether my request was recorded, whether an appointment is scheduled, or what procedure I should follow.

Therefore, this second request needs to be treated as a formal and urgent request for evaluation and not simply filed as an ordinary message.

I NEED A PSYCHOLOGY PROFESSIONAL TO READ THIS MESSAGE AND ANSWER THE QUESTIONS BELOW:

1. Was my August 7, 2026 request received and recorded?
2. Was any evaluation or screening performed because of that request?
3. Is a Psychology appointment scheduled for me?
4. If not, what procedure should I follow to obtain an evaluation?
5. Can a Psychology professional conduct an individualized evaluation of the psychological effects related to the period I spent in the SHU and the other circumstances I have reported?
6. Can I receive psychological follow-up while I remain in custody?
7. If the professional determines that my situation requires more frequent follow-up, a referral, or another intervention, what procedure will be followed?
8. Is there any record of the requests for help I made while in the SHU, including the contact I had with Mr. B. Kennedy?
9. Can those records be preserved and included in my treatment history?
10. If Psychology determines that treatment is not indicated, I request that this conclusion be formally recorded and communicated rather than simply leaving my request unanswered.

I AM NOT ASKING ANYONE TO CONFIRM A CONCLUSION THAT HAS NOT YET BEEN EVALUATED.

I AM ASKING FOR A PROFESSIONAL EVALUATION.

I am not in a position to diagnose myself, I am not stating that I have a particular diagnosis. I am stating that I am suffering, that I am afraid of the psychological consequences of everything that happened, and that I need a professional to evaluate my situation.

I also need to make clear that my request is not limited to the present moment.

I am concerned about long-term effects.

I am afraid of leaving this experience carrying permanent psychological consequences. I am afraid that the events related to the SHU, the feeling of helplessness I experienced when I asked for help, the continuing medical and dental problems, and the lack of responses to my requests may leave lasting effects that follow me for the rest of my life.

That is precisely why I am asking for help BEFORE the situation becomes even more difficult.

* EXHIBIT: F



---

I do not want to wait until a more serious crisis occurs before someone considers my request urgent.

I do not want the absence of a response to be interpreted as the absence of suffering.

I do not want my ability to continue functioning within the institution to be automatically interpreted as proof that I do not need care.

I am doing what I can to communicate my situation in an organized and respectful manner.

I also ask that this request be considered together with my history of attempts to obtain medical, dental, and administrative assistance.

I am facing a sequence of problem that are already difficult individually. Taken together, they increase my sense of insecurity and vulnerability.

My current situation includes, among other matters:

suffering related to the period in the SHU;
a request for help made while in the SHU;
contact with Psychology on the second day of my SHU placement;
a request for help to Mr. B. Kennedy;
absence, according to my experience, of effective assistance on that occasion;
concern about permanent psychological consequences;
concern about my physical and dental health;
jaw reconstruction;
titanium plate;
broken orthodontic appliance;
reported loss of four teeth;
difficulty eating;
panoramic X-ray;
repeated requests to Dental and Health Services;
repeated TRULINCS messages;
Administrative Remedies;
BP-8 and BP-9;
difficulties obtaining copies of legal documents;
concern about administrative and judicial deadlines;
attempts to obtain intervention from my defense counsel;
and the need to preserve documents and evidence related to my case.

All of this is happening while I remain in custody.

Therefore, I ask that Psychology not analyze my message as an isolated request.

I ask that the situation be considered as a whole.

I also request preservation of the records related to my Psychology requests, including this message and the previous message sent on August 7, 2026.

If the institution has a specific procedure for requests for psychological assistance made through TRULINCS, I ask that the procedure be applied and that I be informed of it.

If I need to appear personally at Psychology, please tell me exactly when and how I should do so.

If I need to complete a form, please tell me which form.

If I need to undergo screening, please conduct the screening.

If I need to request Mental Health Sick Call, please tell me.

* EXHIBIT: F



---

If there is already an internal procedure that should have been initiated because of my first message, please inform me of its status.

WHAT CANNOT CONTINUE IS MY NOT KNOWING WHETHER MY REQUEST WAS RECEIVED, WHETHER IT WAS RECORDED, WHETHER IT WAS REVIEWED, AND WHETHER ANYONE IS TAKING ACTION.

I also request that, if there is an immediate concern regarding my psychological safety or well-being, a professional evaluate me without delay.

I am not requesting specific treatment without an evaluation. I am requesting access to an appropriate professional evaluation.

I also request that my request be treated confidentially within applicable limits and that any necessary referral be documented.

I request protection against any form of retaliation for requesting psychological assistance, reporting suffering, using TRULINCS, filing Administrative Remedies, or seeking legal assistance.

I am not making personal accusations against Psychology professionals.

I am am reporting facts as I experienced them and asking a professional to examine the situation.

I also do not want this message interpreted as an attempt to replace healthcare professionals.

On the contrary: I am asking the professionals to perform the evaluation that only they have the technical competence to conduct.

My goal is to protect my health.

I want to leave this situation without carrying avoidable psychological harm for the rest of my life.

That is why I am asking for help now.

THERFORE, I REQUEST THE FOLLOWING IMMEDIATE ACTIONS:

1. Confirmation of receipt of this second request.
2. Confirmation that the August 7, 2026 request was located and reported.
3. An individualized psychological evaluation.
4. Evaluation of psychological effects related to the period in the SHU.
5. Review of reports related to my contact with Psychology during the SHU, including the contact I remember having with Mr. B. Kennedy.
6. Evaluation of the need for psychological follow-up.
7. Establishment of a follow-up plan, if clinically indicated.
8. Clear guidance regarding the procedure I must follow to obtain care.
9. Formal documentation of any decision not to provide care, if that is the professional conclusion.
10. Preservation of this message and the August 7, 2026 message.
11. Information regarding the next step and approximate timeframe for an appointment.
12. Urgent evaluation if Psychology determines that my situation presents an immediate risk or requires emergency intervention.

Finally, I ask that this message not be answered merely with a generic instruction to seek assistance from another department.

I am already seeking help.

I await a response and urgent action.

Respectfully,

Gilmar Pereira Da Silva Jr.

Page 01 of 02
* EXHIBIT: F

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: Psychology Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/22/2026 08:31:24 PM

To: FOR MR. B. KENNEDY - PSYCHOLOGY
Inmate Work Assignment: Gilmar Pereira Da Silva

SUBJECT: THANK YOU AND FOLLOW-UP TO OUR CONVERSATION | REQUEST FOR URGENT ASSISTANCE

Dear Mr. B. Kennedy,

I sincerely want to thank you for your prompt response to my messages and, especially for the attention you gave me yesterday. I truly appreciate your willingness to meet with me given the urgent and sensitive nature of the situation I have been experiencing.

I also sincerely appreciate that you scheduled a follow-up appointment for me on Thursday, August 27, 2026, at 2:00 PM, and I fully intend to attend that appointment.

I also want to clarify why I was unable to report to the Psychology Department at 1:00 PM. I was at the Education Department attending my ESL course. I did not see your first message until I returned to B4 approximately at 1:10 PM. I was then waiting for authorization for the next movement, so I remained ready to leave at 2:00 PM and report to the Psychology Department. For that reason, I was unable to arrive at 1:00 PM. I also did not see your second message in time because I was preparing and waiting for the movement to report to your office.

Fortunately, we were able to meet in person yesterday, approximately from 2:05 PM until 3:55 PM, and I am very grateful for that opportunity.

I sincerely hope that our conversation allowed you to understand the seriousness of what I have been experiencing since my first days at FCC Coleman Low, particularly following the eight extremely difficult days I spent in the SHU, which I consider the beginning of many of the difficulties and consequences I have continued to experience.

I also want to document one point that I consider extremely important: my current suffering is not only psychological. It is directly connected to several unresolved problems I continue to face, including my dental condition.

My orthodontic appliance is broken/damaged, and this has become one of the concrete sources of my distress and suffering. In addition, I have reported the loss of four teeth and difficulty chewing and eating, and this entire situation is connected to my history of a serious motorcycle accident, mandibular reconstruction, and the use of a titanium plate. I appreciate that you remember having seen me when I was in the SHU, and that you were able to recollect that at the time I had not yet lost the four teeth. That means a lot to me.

What concerns me the most is that I have already been evaluated by Dental Services, a panoramic X-ray has been performed, and Dental Low has already informed me that orthodontic treatment is not provided here. I have repeatedly sought assistance to determine how I can continue this treatment, but I still have not received a definitive solution.

For that reason, I hope you understand that the psychological distress I am experiencing cannot be separated from the concrete circumstances I am living through. The broken orthodontic appliance, the loss of teeth, the difficulty eating, the lack of a solution for my dental treatment, the events surrounding my SHU placement, and the continuing sequence of unresolved problems have all directly contributed to the level of suffering I am experiencing.

I sincerely hope, with great confidence, that you may be able to help me, directly or indirectly, find an urgent solution to these circumstances, whether through the Psychology Department or, when appropriate, by helping guide or refer me to the professionals and departments that have the authority to address the problems that are outside your direct area of responsibility.

If you have any questions about any part of my situation, I am completely available and willing to explain again any fact, document, date, or circumstance that you believe is necessary.

At this very difficult and sensitive point in my life, what matters most to me is being able to have the problems I have been

* EXHIBITH : F





documenting finally understood and appropriately addressed.

I also respectfully ask that you document our conversation yesterday and the importance of this appointment, because for me this was a very important moment in my continuing effort to obtain help.

The documents I left with you represent only a small portion of everything I have been doing to seek assistance.

If you have the opportunity, I respectfully ask that you review those documents. They demonstrate the numerous attempts I have made through the departments available to me, including the Warden, Dental Low, Health Services/Medical, Trust Fund/Commissary, Food Services, and Psychology, as well as the many formal requests I have submitted through TRULINCS.

Once again, thank you sincerely for meeting with me and for being willing to listen to my situation.

I sincerely hope I can count on your help and guidance, especially because I am trying to find a solution before this continuing suffering causes even greater consequences in my life.

Thank you very much for your attention, professionalism and willingness to listen.

Respectfully,

GILMAR PEREIRA DA SILVA JUNIOR
BOP Register No. 74744-511
FCC Coleman Low | COL-B-D

—— ASSISTANCE – 08/24/26 01 OF 01

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D [redacted]

---

* EXHIBIT: F

FROM: 74744511
TO: Health Services LOW
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/07/2026 05:13:10 PM

To: HEALYH SERVICES - GENERAL
Inmate Work Assignment: GILMAR PEREIRA DA SILVA

SUBJECT: REQUEST FOR MY MEDICAL ASSISTENCE

Dear Health Services Staff,

I respectfully request your assistance regarding my medical and dental conduction.

My treatment requires specialized follow-up because of my reconstructed jaw after a serious motorcycle accident. Although I have been evaluated by Dental Services, I still have not received a solution for the treatment that has been discussed.

Please advise what additional medical steps can be taken to protect my health and help prevent further deterioration of my condition.

I have submited Sick Call request and attended Dental appoiments.

I must reinforce that my orthodontic appliance cannot be removed, per medical documentation resulting from a motorcycle accident that led to mandibular reconstruction with a titanium plate.

Thank you so much for your consideration.

Gilmar Pereira da Silva Jr.
Reg.: Number: 74744-511
FCC COLEMAN LOW

[redacted]

“URGENT: I HAVE A DAMAGED/BROKEN ORTHODONTIC APPLIANCE, HAVE LOST FOUR TEETH, AND HAVE DIFFICULTY CHEWING/EATING FOLLOWING PRIOR MANDIBULAR RECONSTRUCTION. I HAVE ALREADY REPORTED THIS TO DENTAL LOW AND WAS ADVISED TO USE SICK CALL. I AM NOT REFUSING TREATMENT. PLEASE EVALUATE ME AND DOCUMENTY MY CONDITION, AND ADVISE/INITIATE THE APPROPRIATE SPECIALTY REFERRAL OR CONTINUITY-OF-CARE PROCESS.

AUGUST 24, 2026. → GILMAR PEREIRA DA SILVA JR

REG.: NUMBER: 74744-511.

[redacted] ”

* EXHIBIT F 01

BP-S358.060
JUN 10

# MEDICAL TREATMENT REFUSAL

CDFRM

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

7-30-2026
Date

I, GILMAR PEREIRA DA SILVA JR 74744-511, refuse treatment recommended by the Federal Bureau of Prisons Medical staff for the following condition(s):

DESCRIBE CONDITION IN LAYMAN'S TERMINOLOGY:

Dental cleaning/gross debridement diagnosed and recommended by the dentist for gingivitis.

The following treatment(s) was/were recommended:

Gross debridement diagnosed and recommended by the dentist.

Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment:

Without completion of the recommended treatment you may experience pain, swelling, infection, loss of function and other medical problems up to and including death.

Federal Bureau of Prisons Medical staff members have carefully explained to me that the following possible consequences and/or complications may result because of my refusal to accept treatment.

I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and its employees from any and all liability for respecting and following my expressed wishes and directions.

Jodi Preston
PRESTON, JODI RDH 7-30-2026
Signature of Witness Date

Patient refused to sign
7-30-2026
Patient's Signature Date

Witness: N. [signature], DMD 07/30/2026

Monique Villegas EFDA 7-30-2024
Signature of Witness Date

COL--COLEMAN LOW FCI

* EXHIBIT: F

PAGE 01 OF 01

BP-A0618
JUN 16

# A&O DENTAL EXAMINATION

(Initial Clinical Dental Findings)

U.S. DEPARTMENT OF JUSTICE — FEDERAL BUREAU OF PRISONS




| | | | |
|---|---|---|---|
| Occlusion: Class (I)/II/I II / edent. / MM | | | |
| Oral Hygiene: | Good | Fair ✓ | Poor |
| CPITN: | 1 2 (3) 4 | 1 (2) 3 4 | 1 2 (3) 4 |
| | 1 2 (3) 4 | 1 2 (3) 4 | 1 2 (3) 4 |
| Head & Neck / Soft Tissue: (WNL) lesion:__mm/cm location:___color:____ | | | |
| D: 0 | Classification: bite: ant, open, cross | | |
| M: 8 | | | |
| F: 6 | Pain Scale: 0/10 | | |

| | |
|---|---|
| Dental Prostheses at Intake: Yes (No) Type: Age: Condition: | Comments: ortho treatment in progress |
| Intra-oral Photos Taken: Yes No ✓ | Radiographs Taken: (Document findings on A&O encounter) Yes No ✓ |
| Instructed how to obtain urgent and non-urgent dental care: Yes: ✓ No: | |
| Treatment Priorities: None: ✓ | Non-urgent: Urgent: Referred to Sick Call: |
| Radiographs authorized: PAs: ✓ BWs: ✓ Panorex: ✓ | Prophylaxis authorized: (Yes ✓) No (Approval valid 18 months from examination date) |
| Patient Name: Pereira Dasilva Jr, Gilmar | Dentist Signature: [signature] |
| Register Number: 74744-511 / Institution: COM/(COL)/COP/CLP | Date: 05/15/2026 / Signature Block/Stamp: Jorge Nieto, DMD; (Gina Torres-Marin, DMD); Pedro Gonzalez, DMD; Troy Brown, DMD; Daniel, Rosa-Serrano, DMD; Nguyen Pham, DMD |

*EXHIBIT: F

PAGE 01 OF 01

# LOW Medical Sick Call

**DATE:** 08/24/26

**INSTRUCTIONS/INSTRUCCIONES:**

You must fill out this form completely; All numbers 1 – 12 or refuse to be seen. Sick call sign up is Monday, Tuesday, Thursday, and Friday.

Debe llenar este formulario completamente; todos los números 1 – 12 o se niegan a ser visto. Dias de visitas por enfermedad son Lunes, Martes, Jueves y Viernes por la mañana.

I, (1) GILMAR PEREIRA DA SILVA JR. Reg. Number/ Reg. número: (2) #74744-511
(Last Name, First Name)/(Apellido, primer nombre)
requests to be seen at sick call for/solicito servicio por personal médico (3):

________ Medical Complaint/ Queja médica

✓ Dental Complaint/queja dental URGENT:

Describe your main complaint/Describe tu queja principal (4): I HAVE A DAMAGED/BROKEN ORTHODONTIC APPLIANCE, HAVE LOST FOUR TEETH, AND HAVE DIFFICULTY CHEWING/EATING FOLLOWING PRIOR MANDIBULAR RECONSTRUCTION. PLEASE EVALUATE ME AND DOCUMENT MY CONDITION.

How long have you had this problem?/¿Cuánto tiempo tienes este problema? (5):

— Hours/ Horus — Days/ Dias ± 4 Months/Meses — Years/Anos

What have you done to attempt to fix this problem?/ ¿Qué hiciste para intentar solucionar este problema?(6) I HAVE ALREADY REPORTED THIS TO DENTAL AND WAS ADVISED TO USE SICK CALL...

Have you purchased medications from the commissary for this condition?/¿Has comprador medicamentos de la Comisaria para esta condición? (7) N/A Yes/Si N/A No

Signature/ Firma (8) [redacted] Date/ Fecha: (9) 08/24/2026.

Housing Unit/Unidad (10) B4

Work/Trabajo (11) N/A

In case medical needs to call you back, do you have any other call out appointments for today? If yes, then where? En caso de que el médico necesite hablarle, ¿tiene alguna otra cita de llamadas para hoy? Si es así, ¿dónde? (12) EDUCATION - 12:00 PM -> 02:00 PM

With your signature you acknowledge your understanding of the Federal Bureau of Prisons Health Care Rights and Responsibilities [redacted] AND I AM NOT REFUSING TREATMENT.

<u>One sick call visit for each complaint.</u> You may be advised to report to the commissary for over-the-counter medication in accordance with Program Statement 6541.02. Per Program Statement 6031.02, you must pay a fee for health care services of $2.00 per health care visit if you receive health care services in connection with a health care visit that you requested

Con su firma usted reconoce su comprensión de la Oficina Federal de Prisiones de Derechos y Responsabilidades de Cuidado de Salud [redacted]

Según la Declaración del Programa 6031.02 usted debe pagar una tarifa de $2.00 por visita medica que usted solicite o inicie. Se le recominda pasar por la comisaria y comprar medicamentos y artículos de primera necesidad según la Declaración del Programa 6541.02

...I HAVE ALREADY REPORTED THIS TO DENTAL LOW AND WAS ADVISED TO USE SICKCALL. I AM NOT REFUSING TREATMENT. PLEASE EVALUATE ME AND DOCUMENT MY CONDITION, AND ADVISE/INITIATE THE APPROPRIATE SPECIALTY REFERRAL OR CONTINUITY-OF-CARE PROCESS.

[redacted]

* EXHIBIT: F PAGE 01 OF 01

# COL Medical Sick Call

**DATE:** 07/20/26

**INSTRUCTIONS/INSTRUCCIONES:**

You must fill out this form completely; All numbers 1 – 12 or refuse to be seen.
Sick call sign up is Monday, Tuesday, Thursday, and Friday morning.
Debe llenar este formulario completamente; todos los números 1 – 12 o se niegan a ser visto. Dias de visitas por enfermedad son Lunes, Martes, Jueves y Viernes por la mañana.

**I, (1)** GILMAR PEREIRA DA SILVA JR **Reg. Number/ Reg. número: (2)** 74744-511
(Last Name, First Name)/(Apellido, primer nombre)
**requests to be seen at sick call for/solicito servicio por personal médico (3):**

_____ **Medical Complaint/ Queja médica**

__✓__ **Dental Complaint/queja dental**

**Describe your main complaint/Describe tu queja principal (4):** I HAVE BRACES THAT NEED TO BE ADJUSTED. WITHOUT ADEQUATE DENTAL CARE I'M AT RISK OF LOSING TEETH. I ALREDY LOST 3 TEETH. OR 4 TEETH.

**How long have you had this problem?/¿Cuánto tiempo tienes este problema? (5):**

_____ **Hours/ Horus** _____ **Days/ Dias** __2__ **Months/Meses** _____ **Years/Anos**

**What have you done to attempt to fix this problem?/ ¿Qué hiciste para intentar solucionar este problema?(6)**
I CAN'T FIX THIS ALONE.

**Have you purchased medications from the commissary for this condition?/¿Has comprador medicamentos de la Comisaria para esta condición? (7)** __✓__ **Yes/Si** _____ **No**

**Signature/ La Signatura (8)** [redacted] **Date/La Fecha: (9)** 07/21/06

**Housing Unit/Unidad (10)** B4
**Work/Trabajo (11)** __________
**In case medical needs to call you back, do you have any other call out appointments for today? If yes, then where? En caso de que el médico necesite devolverte la llamada, ¿tiene alguna otra cita de llamadas para hoy? Si es así, ¿entonces dónde? (12)** __________

With your signature you acknowledge your understanding of the Federal Bureau of Prisons Health Care Rights and Responsibilities

**<u>One sick call visit for each complaint.</u> You may be advised to report to the commissary for over-the-counter medication in accordance with Program Statement 6541.02. Per Program Statement 6031.02, you must pay a fee for health care services of $2.00 per health care visit if you receive health care services in connection with a health care visit that you requested**

Con su firma usted reconoce su comprensión de la Oficina Federal de Prisiones de Derechos y Responsabilidades de Cuidado de Salud

**Según la Declaración del Programa 6031.02 usted debe pagar una tarifa de $2.00 por visita medica que usted solicite o inicie. Se le recominda pasar por la comisaria y comprar medicamentos y artículos de primera necesidad según la Declaración del Programa 6541.02**

* EXHIBIT : F

PAGE 01 of 01

Outlook

**46faf52a-bd65-4e9d-a97e-dcaefc5a744c**

**From** COL-InmateToDental (BOP) <COL-InmateToDental@bop.gov>
**Date** Mon 7/6/2026 12:28 PM
**To** ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>

We don't do Orthodontic treatment here, but if you are experiencing pain,discomfort or any dental concern sick call is available:

Open dental sick call is **Monday, Tuesday, and Thursday at 0730**. It is first come, first seen.

---

**From:** ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
**Sent:** Thursday, July 2, 2026 1:40 PM
**Subject:** ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Dental
Inmate Work Assignment: N/A

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
46faf52a-bd65-4e9d-a97e-dcaefc5a744c
Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

I'm in urgent need of dental care because I have braces that need to be adjusted every 15 days. This is due to the fact that I was in a motorcycle accident that resulted in a surgery on my jaw. When I arrived to Coleman-Low I was put in SHU for several days and my braces were broken during that time. Without adequate dental care I'm at risk of losing teeth.

Thank you,

* EXHIBIT: F

Page 01 of 01

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/06/2026 12:32:02 PM

We don't do Orthodontic treatment here, but if you are experiencing pain,discomfort or any dental concern sick call is available: Open dental sick call is Monday, Tuesday, and Thursday at 0730. It is first come, first seen.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, July 2, 2026 1:40 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Dental
Inmate Work Assignment: N/A

I'm in urgent need of dental care because I have braces that need to be adjusted every 15 days. This is due to the fact that I was in a motorcycle accident that resulted in a surgery on my jaw. When I arrived to Coleman-Low I was put in SHU for several days and my braces were broken during that time. Without adequate dental care I'm at risk of losing teeth.

Thank you,

GILMAR PEREIRA DA SILVA JR.
FCC COLEMAN LOW - B4

* EXHIBIT: F

PAGE 01 OF 01

TRULINCS 74744511 - PEREIRA DA SILVA JR, GILMA - Unit: COL-B-D

---

FROM: 74744511
TO: COL- Units B3/B4
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 06/03/2026 10:23:26 AM

To: Case Manager & Unit Manager
Inmate Work Assignment: N/A

Good Morning,

I arrived here at Coleman-Low on May 4th, 2026. I'm now coming up on 30 days, and I understand that I will soon have my first team. I wanted to provide an electronic and documented message regarding the matter below in the hopes that this can come up during my team, or if you can respond me in other manner that would be fine too.

I self-surrendered, and the day I arrived I was put in SHU where I stayed for 8 days. Prior that, during an intake interview I was asked if I had any drug/substance history, if I had any family problems and if I had any history of violence, and I answered in the negative to all of those questions. I was then put in SHU, which was confusing because no one ever told me that there was an investigation, nor was I told that I was going to be put in a disciplinary unit or location.

For the entire week, I asked every day to the guards in SHU why I was there, and all of them gave me no response or ignored me. There was even an officer who saw during intake and later when he saw me in the SHU he asked me "why are you here?!" and I told him I did not know why. I was given little to no clothes for days nor was I given amenities for hygiene or medication. On the 8th day, three officers came to my SHU cell and told me that I was "going home," and then I was put in a holding cell, and after one hour they took me back to the SHU. Then later they finally took me out of the SHU and brought me to B4 which is my current unit. As of today, I still do not understand why any of this happened. I do not know if there was an investigation, nor do I know why I was put in a disciplinary unit/cell. It was my first day here, and I self-surrendered, so it makes no sense why I was put in SHU in the first place, much less why I was left there for 8 days.

Again, with my first team coming up I plan to bring this up, but I wanted to provide this message prior so that you are aware of this situation and my request for answers.

Thank you for your attention,

GILMAR PEREIRA DA SILVA JR
# 74744-511
FCI COLEMAN LOW

Capital One *EXHIBIT: F



**Platinum Secured Card | World Mastercard ending in 9974**
May 26, 2026 - Jun 24, 2026 | 30 days in Billing Cycle

## Payment Information

Payment Due Date
PAST DUE

For online and phone payments, the deadline is 12 midnight ET, except on the statement closing date when the deadline is 8 p.m. ET.

Upcoming statement closing date: July 25, 2026

New Balance
$258.17

Minimum Payment Due
$258.17

**IMPORTANT:** Your account has charged off and is now serviced by the Recoveries department at 1-800-258-9319. Your full balance is due. Any payment you make will reduce your balance and help pay off your debt faster. The amount you owe may differ if you've entered into a separate payment agreement.

## Account Summary

| | |
|---|---|
| Previous Balance | $252.09 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Transactions | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $0.00 |
| Interest Charged | + $6.08 |
| **New Balance** | **= $258.17** |
| Available Credit (as of Jun 24, 2026) | N/A |

GILMAR PEREIRA DA SILVA JR - # 74744-511

## Account Notifications

ⓘ Welcome to your account notifications. Check back here each month for important updates about your account.

Pay or manage your account at capitalone.com    Customer Service: 800-227-4825    See reverse for Important Information

Capital One

2013433    01 AB 0.64 **AUTO T3 0 5790 34746-230218 -C21-P13457-I

GILMAR PEREIRA
4418 SPRING BLOSSOM DR
KISSIMMEE, FL 34746-2302

Payment Due Date: **Past Due**    Account ending in 9974

| New Balance | Minimum Payment Due | Amount Enclosed |
|---|---|---|
| $258.17 | $258.17 | $ ________ |

Please send us this portion of your statement and only one check (or one money order) payable to Capital One to ensure your payment is processed promptly. Allow at least seven business days for delivery.

Capital One
P.O. Box 60519
City of Industry CA 91716-0519

1 5178058719089974 24 025817002600000000

* EXHIBIT: F

TD

T STATEMENT OF ACCOUNT

Go paperless. Scan the QR code to opt in to paperless statements.

AB 01 009233 45373 H 27 A

GILMAR P SILVA
4418 SPRING BLOSSOM DR
KISSIMMEE FL 34746-2302

| | |
|---|---|
| Page: | 1 of 2 |
| Statement Period: | Jun 18 2026-Jul 17 2026 |
| Cust Ref #: | 4451171907-673-T-### |
| Primary Account #: | 445-1171907 |

## 2026 Annual Privacy Notice

Privacy Notice: Our privacy notice describes how we collect, share and protect your personal information. It has not materially changed since May 2015. For a copy, go to tdbank.com/exc/pdf/privacy_shareinformation.pdfor call 888-937-1050.

**TD Complete Checking**

GILMAR P SILVA

Account # 445-1171907

---

TD

T STATEMENT OF ACCOUNT

Go paperless. Scan the QR code to opt in to paperless statements.

AB 01 009311 89120 H 28 A

GILMAR P SILVA
4418 SPRING BLOSSOM DR
KISSIMMEE FL 34746-2302

| | |
|---|---|
| Page: | 1 of 2 |
| Statement Period: | May 18 2026-Jun 17 2026 |
| Cust Ref #: | 4451171907-673-T-### |
| Primary Account #: | 445-1171907 |

## 2026 Annual Privacy Notice

Privacy Notice: Our privacy notice describes how we collect, share and protect your personal information. It has not materially changed since May 2015. For a copy, go to tdbank.com/exc/pdf/privacy_shareinformation.pdfor call 888-937-1050.

**TD Complete Checking**

GILMAR P SILVA

Account # 445-1171907

GILMAR PEREIRA DA SILVA JR. - # 74744-511

GILMAR PEREIRA DA SILVA JR - # 74744-511

*EXHIBIT: F

Progressive

**PROGRESSIVE**®

**0284 *******ECRWSH**R-059
21318002-023-01445855 003835
Gilmar Pereira
4418 Spring Blossom Dr
Kissimmee FL 34746-2302

**Let us help you save on your car insurance**

Dear Gilmar,

---

FROM: 74744511
TO: Trust Fund
SUBJECT: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D
DATE: 08/11/2026 04:38:14 PM

To: Commissary (Trust Fund)
Inmate Work Assignment: N/A

URGENT: COPY CARD OUT-OF-STOCK ISSUE DIRECTLY AFFECTING MY ADMINISTRATIVE AND COURT PROCEEDINGS

Dear Trust Fund / Commissary Staff,

I respectfully request URGENT ATTENTION to an issue that is directly affecting my ability to comply with deadlines and requirements associated with my ongoing administrative and judicial proceedings.

For the second consecutive week, COPY CARDS have been listed as "OUT OF STOCK" on the Commissary list.

I understand that inventory and supply issues can occur. However, in my particular situation, this shortage is creating a serious problem because I currently have ongoing administrative remedies, matters pending before the Court and formal administrative and judicial filings that must be prepared, copied, and submitted within deadlines established by courts and government agencies.

I am required to make numerous copies on a regular basis, including copies of:

*Administrative Remedies;
*BP-9
*BP-10
*BP-11
*administrative requests and responses;
*medical and dental records;
*declarations;
*motions;
*petitions;
*exhibits;
*documents intended for the Court;
*documents intended for administrative agencies; and
*copies that I must maintain for my own records and proof of submission and receipt.

These copies are not merely a matter of personal convenience.

They are necessary for me to properly exercise my legal rights and comply with deadlines applicable to administrative and judicial proceedings that are currently ongoing.

CURRENT SITUATION AND RISK OF MISSED DEADLINES

I have now been unable to obtain the COPY CARDS I regularly need for approximately two weeks because the item continues to be unavailable.

As a result, some documents that require copying are already delayed, while other documents must be prepared and submitted urgently.

I am particularly concerned that the continued unavailability of COPY CARDS may place me in a position where I am unable to meet an administrative or court deadline through no lack of diligence or effort on my part, but simply because the normal means available to me for making required copies in unavailable for purchase.

Missing an administrative or judicial deadline could have extremely serious consequences for my legal situation and my life.

I am making every effort to comply with the deadlines imposed upon me and to properly use all available administrative

---

procedures. I therefore need an institutional solution that will allow me to continue preparing and submitting my documents while COPY CARDS remain unavailable.

IMMEDIATE NEED

At this time I need to purchase six (6) COPY CARDS.

I am not requesting an excessive quantity or requesting them for an unrelated personal purpose.

The requested quantity is directly related to the substantial amount of documentation that I currently need to produce because of my ongoing administrative and judicial proceedings.

REQUEST FOR AN IMMEDIATE ALTERNATIVE

In light of this situation, I respectfully request that TRUST FUND / COMMISSARY urgently inform me:

1. When COPY CARDS are expected to become available for purchase;
2. Whether there is a specific inventory or supply problem causing the current shortage;
3. Whether there is any temporary limitation or other restriction affecting their availability;
4. What alternative institutional procedure is immediately available for me to obtain copies of legal and administrative documents while COPY CARDS remain "OUT OF STOCK";
5. Whether I may request assistance from the Unit Team, Law Library, Education Department, Trust Fund, or another appropriate department to obtain the copies I currently need;
6. What procedure I must follow to obtain copies of documents related to imminent court processes and ongoing Administrative Remedies;
7. Whether there is a specific form or institutional procedure that I should use to request these copies directly from staff; and
8. Most importantly, whether there is an alternative solution that can be made available to me IMMEDIATELY, given that I have already been unable to obtain necessary copies for approximately two weeks.

FORMAL REQUEST

I respectfully ask that this matter be treated as URGENT, because the continued unavailability of COPY CARDS is beginning to directly interfere with my ability to prepare, reproduce, and submit documents within the deadlines established by the administrative and judicial procedures in which I am currently involved.

I am making every effort to comply with all applicable requirements and deadlines, and I do not want the unavailability of a Commissary item necessary to reproducing legal documents to result in adverse consequences to my administrative or court proceedings.

I intend to purchase six (6) COPY CARDS as soon as they become available, and I am respectfully requesting that I be provided with an institutional alternative while the supply is unavailable.

If FCC Coleman Low has an established procedure for inmates who have an imminent need to reproduce documents for court or administrative proceedings, I respectfully request that I be informed immediately of that procedure and how I can access it.

Thank you for your prompt attention and for understanding the seriousness and urgency of this situation. I would also appreciate receiving a documented/written response to this most urgent request.

Respectfully,

Gilmar Perreira da Silva Jr.
Register No. 74744-511
FCC Coleman Low

---

FROM: Dental LOW
TO: 74744511
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/06/2026 12:32:02 PM

We don't do Orthodontic treatment here, but if you are experiencing pain,discomfort or any dental concern sick call is available: Open dental sick call is Monday, Tuesday, and Thursday at 0730. It is first come, first seen.

---

From: ~^! PEREIRA DA SILVA JR, ~^!GILMAR <74744511@inmatemessage.com>
Sent: Thursday, July 2, 2026 1:40 PM
Subject: ***Request to Staff*** PEREIRA DA SILVA JR, GILMAR, Reg# 74744511, COL-B-D

To: Dental
Inmate Work Assignment: N/A

I'm in urgent need of dental care because I have braces that need to be adjusted every 15 days. This is due to the fact that I was in a motorcycle accident that resulted in a surgery on my jaw. When I arrived to Coleman-Low I was put in SHU for several days and my braces were broken during that time. Without adequate dental care I'm at risk of losing teeth.

Thank you,