---

NOV 20 2026 PM1:26
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION
UNITED STATES OF AMERICA v. GILMAR PEREIRA DA SILVA JUNIOR
Case No. 8:25-cr-144-KKM-SPF | BOP Register No. 74744-511

PRO SE SUPPLEMENTAL MEMORANDUM PROVIDING FORMAL NOTICE OF INTERDEPARTMENTAL ADMINISTRATIVE OMISSIONS, FAILURES TO RESPOND TO DOCUMENTED MEDICAL RISKS, POSSIBLE DELIBERATE INDIFFERENCE, AND IMPAIRMENT OF THE ADMINISTRATIVE REMEDY PROCESS

For consideration as a possible supplement to AO 250 and separate delivery, with proof of service, to the appropriate institutional authorities

I. PURPOSE, SCOPE, AND CENTRAL ASSERTIONS

I, Gilmar Pereira da Silva Junior, a federal prisoner in the custody of FCC Coleman Low, submit this pro se statement to document a sequence of requests for assistance, notices of health risks, and administrative requests addressed to numerous departments and staff members. I affirm that I repeatedly reported deterioration of my dental and mandibular condition; that numerous recipients received messages, COP-OUTs, BP-A0148 forms, and printed documentary copies; and that I continue to suffer without an effective specialized clinical solution. This memorandum does not replace my administrative remedies, my AO 250 motion, or any separate civil action that may be available.

This memorandum specifically addresses failures of institutional coordination and response: who knew of the risk, what each person received, the responsibilities of that position, what action was or was not taken, and the outcome. I request individualized review rather than a generalized presumption of wrongdoing by every employee who received a copy of a complaint.

I use the Portuguese term "prevaricação" in its ordinary sense of a possible failure or misuse of official duties warranting investigation. I do not claim that this label, by itself, establishes a federal crime or that every employee who received a communication is automatically criminally liable. I request investigation of any misconduct supported by evidence and referral to a competent authority where warranted.

II. SERIOUS MEDICAL CONDITION AND CONTINUING HARM

I reported to the institution on 05/04/2026 with a history of a motorcycle accident, mandibular reconstruction involving a titanium plate, and ongoing therapeutic orthodontic treatment. During my initial confinement, including time in the Special Housing Unit, my orthodontic appliance was damaged. I report the loss of four teeth, a retained tooth fragment in my gum, oral cuts, dental and deep mandibular pain, difficulty chewing and eating, and continuing deterioration. I have repeatedly requested an appropriate clinical response and specialized evaluation.

The dental record dated 05/15/2026, identified in my communications as BP-A0618, contains the notation "ORTHO TREATMENT IN PROGRESS." The institution also possesses or obtained a panoramic PANOREX examination. My communications reflect that specialized orthodontic care was not available on site. I request examination of the original clinical records, the PANOREX image, and the decisions concerning referral and treatment.

I do not presume a diagnosis of infection, titanium-plate failure, or a specific clinical causal relationship without a professional assessment. I request appropriate investigation of those possibilities. My direct and unequivocal assertion is that I continue to experience pain, wounds, and functional limitations despite repeated requests for care, and that being summoned to appointments does not, by itself, prove that the underlying condition was resolved.

III. METHOD FOR ESTABLISHING NOTICE AND RESPONSIBILITY

For each department or employee identified below, I request verification of four matters: (a) the full content of the message or document received; (b) the date, method, and evidence of receipt; (c) the recipient's actual duties and ability to act or refer the matter; and (d) the response, referral, omission, or other action taken. Receipt of notice is important evidence of knowledge, but individual legal liability requires analysis of each person's actual conduct and authority.

I affirm that I personally delivered printed documents and used TRULINCS, COP-OUTs, and BP-A0148 forms to contact multiple departments. I request preservation of logs, receipts, distribution records, sent and received messages, internal notes, and copies actually delivered. If a recipient denies receiving a notice, the records and copies should be examined. If the notice was received and forwarded, the subsequent recipient and the result of that referral should be identified.

This analysis must distinguish no response from an inadequate response. Silence can obstruct access to assistance; a reply that merely redirects a serious medical complaint without identifying a concrete next step can also be insufficient. Neither conclusion should be assumed without examining the actual text and circumstances of the communication.

IV. FEDERAL BUREAU OF PRISONS AND FCC COLEMAN LOW ADMINISTRATION

The Federal Bureau of Prisons manages the institution and has statutory duties of care and protection under 18 U.S.C. § 4042 (a)(2) (3). I request that central and local administrators identify the operating policies applied to my case, the options for outside referral, the means of coordination among departments, and the persons responsible for monitoring cases in which the

---

on-site service states that a needed specialty is unavailable.
An abstract assertion that medical services are available at the institution is not enough to explain my unresolved situation. I request identification of concrete actions: when my condition was evaluated, by whom, what was decided, whether a specialist was considered, what interim protections were adopted, and how the outcome was monitored. Institutional responsibility must be evaluated through actual records and acts.

V. WARDEN AND ACTING WARDEN: NOTICE, SUPERVISION, AND CONTINUITY

I repeatedly sought help from the Warden identified in my correspondence as Mr. A. Mendoza and the Acting Warden identified as Mrs. C. C. Rhodes. I report urgent requests, including a formal submission dated 08/16/2026, and delivery of supporting materials. I request identification of each official's period of service, the correspondence actually received, and referrals issued in their names. I do not assign personal constitutional liability solely on the basis of rank; I request investigation of actual knowledge, authority to act, and effective response.
Institutional leadership could request review, designate responsibility for responses, check administrative-remedy processing, and examine whether the absence of on-site specialty services required coordination for outside care. The inquiry must determine what each official actually knew and did, rather than treating delegation as either automatic proof of compliance or automatic proof of wrongdoing.

VI. HEALTH SERVICES LOW AND MEDICAL: TRIAGE, ASSESSMENT, AND CONTINUITY OF CARE

I contacted Health Services and its medical staff, including the employee identified in my correspondence as Mr. J. Lozada. I requested help for a condition involving mandibular reconstruction, pain, tooth loss, and difficulty eating. I demand review of document receipt, clinical recording of symptoms, urgency classification, and decisions about specialized evaluation. Medical responsibility does not necessarily end with forwarding the complaint to Dental Low without considering whether mandibular, functional, or systemic concerns require other specialties.
I request identification of the professionals who examined me, the notes they made, imaging orders, medications offered, assessments of pain and eating ability, and any referral or refusal of referral. If medical staff concluded that further assessment was unnecessary, I request the clinical basis and date of that conclusion.

VII. DENTAL LOW: DIRECT CLINICAL KNOWLEDGE AND INSUFFICIENT RESPONSES

Dental Low has direct knowledge of my condition through examinations, requests, and treatment records. Dr. Gina examined me, and a PANOREX study was performed; the records reflect ongoing orthodontic treatment. I submitted requests in June, July, and August, including a Dental Sick Call on 08/24/2026, and disputed any characterization that I refused treatment. Offering a cleaning or limited procedure does not prove adequate evaluation of the broken appliance, reconstructed mandible, lost teeth, retained fragment, or need for a specialist.
During recent Call-Out contacts, I report that an unidentified professional addressed me in an intimidating manner and threatened to record that I refused to provide information already contained in my medical records. I contest any inaccurate refusal notation and request preservation of the original record, identification of the employee, and an opportunity to place my written response in the file. My request that staff review existing records must not automatically be transformed into a blanket refusal of care.
I request clinically appropriate assessment, access to a different professional where feasible, clear explanation of procedures, and faithful recording of my statements. My fear of returning to Dental Low does not mean that I am waiving necessary care, although an appropriate in-person evaluation may be required.

VIII. FOOD SERVICES LOW: NOTICE OF DIFFICULTY CHEWING

I contacted Food Services because tooth loss, pain, and my mandibular condition interfere with my ability to chew and eat. I request identification of the communications received, their dates, recipients, and any referrals to medical staff. I do not assert that Food Services is authorized to diagnose or treat dental disease.
If Food Services received a concrete notice of difficulty eating, I request clarification of whether it was referred to medical personnel, whether the need for a medically indicated modified diet was evaluated, and whether any practical accommodation was implemented. The question is how the department responded within its proper role.

IX. PSYCHOLOGY: PSYCHOLOGICAL DISTRESS AND SAFE ACCESS TO CARE

I sought help from Psychology, specifically Mr. B. Kennedy, and used TRULINCS, including an urgent request identified as dated 08/07/2026. I report fear, emotional distress, and increasing apprehension about attending Dental Low after the interactions described above. I request preservation of communications and clarification of any assessment or referral made in response.
I do not claim that Psychology could provide orthodontic treatment. The question is whether reports of distress, panic, and barriers to accessing medical care were recorded and, where appropriate, communicated to those responsible for safety and treatment. I request a safe process that does not treat my requests for help as misconduct.

X. TRUST FUNDS: RECEIPT OF DOCUMENTS AND REFERRAL OF WARNINGS

I contacted Trust Funds personnel and delivered or forwarded information about my situation. I recognize that this department has no authority to diagnose or treat dental conditions. The relevant inquiry is whether it received documents identifying an immediate risk and, if so, what action was taken to refer those documents to an appropriate official.
I do not assign Trust Funds a duty to solve a clinical problem beyond its responsibilities. I request that it not be omitted from the documentary reconstruction if it actually received evidence or warnings. Its records may corroborate dates and institutional

---

notice.

---

XI. COUNSELOR J. TORO AND UNIT TEAM: ACCESS AND REFERRALS
I sought help from Counselor Mr. J. Toro and other Unit Team members, submitted documents, and requested assistance obtaining answers and medical care. The Unit Team is an important institutional communication channel. I request verification of messages received, responses given, and referrals to Health Services, Dental Low, and leadership.
When I reported a health risk, a useful response should not have consisted solely of stating that the issue belonged to Dental Low without clarifying how the warning would be transmitted or followed up. I request review of the available records to determine what was actually done.
XII. CASE MANAGER T. CHIN AND ABSENCE OF AN AVAILABLE UNIT MANAGER
I sought help from Case Manager Mrs. T. Chin, including through a COP-OUT dated 09/02/2026 that, according to my records, was returned on 09/30/2026. I also state that I did not have an available Unit Manager to whom I could turn for help. I request confirmation of the records and identification of the alternative official responsible for addressing urgent matters.
The practical unavailability of a Unit Management official, combined with delayed responses or absent referrals, may create real barriers to using institutional channels. I request investigation of those barriers and the measures available to overcome them.
XIII. CAPTAIN S. XIMENES, CHAPEL J. ALBA, AND OTHER CHANNELS OF ASSISTANCE
I sought assistance from Captain Mr. S. Ximenes, including in connection with delivery of my administrative Reduction in Sentence / Compassionate Release request dated 08/28/2026, and from Chapel staff, specifically Mr. J. Alba. I request identification of the documents received, referrals made, and any response provided.
I do not assign clinical duties to Chapel staff or automatic responsibility for medical decisions to the Captain. I request examination of whether concrete warnings of risk were received and whether they were referred to the appropriate decision-makers. This is a question of documentary notice and the response within each person's role.
XIV. TRULINCS, BP-A0148, COP-OUTS, AND PRINTED DOCUMENTS AS EVIDENCE OF NOTICE
TRULINCS messages, BP-A0148 forms, handwritten COP-OUTs, and printed copies delivered in person are central to establishing institutional notice. I request preservation of complete message contents, transmission dates, recipient identities, delivery logs, responses, and related internal communications.
I affirm that I deliberately printed and delivered copies to demonstrate the seriousness and persistence of my condition. Any claim of lack of knowledge should be examined against available records and delivery evidence, rather than accepted without verification. Proof of sending should be distinguished from proof of receipt and review.
XV. ADMINISTRATIVE REMEDY PROGRAM: ABSENT, INADEQUATE, OR NONRESPONSIVE REPLIES
I used BP-8, BP-9, BP-10, and BP-11 procedures in seeking administrative relief, including a BP-9 dated 07/20/2026, rejection on 08/17/2026, resubmission on 08/18/2026, response dated 09/10/2026 associated with Remedy 1289925-F1, and BP-10 submitted on 09/25/2026. I request a complete accounting of receipt, processing, rejection, extension, and response records at each level.
28 C.F.R. § 542.18 establishes response periods of 20 calendar days for the Warden or CCM, 30 for the Regional Director, and 40 for the General Counsel, generally measured from receipt in the Administrative Remedy Index. It also provides a three-calendar-day Warden response when a request is determined to be an emergency threatening immediate health or welfare, and specifies extension and deemed-denial rules. The correct deadline depends on registration, classification, level, and any properly communicated extension.
Nonresponsive answers must be assessed for their substance. If the request sought specialist evaluation and protection against worsening injury, an answer that simply refers the matter to Sick Call without addressing the medical history, unavailable specialty, or lost teeth may be insufficient. The legal evaluation depends on the documents, the role of each administrative level, and the care actually offered.
XVI. EMERGENCY ADMINISTRATIVE REMEDY AND THE DUTY TO ASSESS RISK
In prior submissions I used the phrase "EMERGENCY ADMINISTRATIVE REMEDY, IMMEDIATE THREAT TO HEALTH AND WELFARE" and stated: "I AM REPORTING AN IMMEDIATE THREAT TO MY HEALTH AND WELFARE AND REQUESTING EMERGENCY PROCESSING UNDER 28 C.F.R. SECTION 542.18." I request the original requests, their dates of receipt, emergency classifications, and written responses. My use of the word "emergency" alone does not establish formal classification; the agency's actual processing records must be examined.
Even if the administration did not formally classify a particular remedy as an emergency, notice of a persistent physical risk still required a clinical assessment appropriate to the information provided. Administrative classification is not a medical examination, and the absence of an emergency designation does not erase notice of the warning. I request investigation of whether triage occurred, who conducted it, what information was considered, and what resulted.
XVII. CONSTITUTIONAL FRAMEWORK: ESTELLE, FARMER, AND INDIVIDUAL RESPONSIBILITY
Under the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97 (1976), recognizes protection against deliberate indifference to serious medical needs. Farmer v. Brennan, 511 U.S. 825 (1994), explains the subjective knowledge and disregard of a

---

substantial risk of serious harm required for deliberate-indifference liability. Neither decision constitutes a finding that a named employee violated my rights; they supply the governing standard for assessing the evidence.
I affirm that my communications described injuries, tooth loss, pain, difficulty eating, a damaged appliance, a reconstructed mandible, and the need for specialized care. Proof of receipt is relevant to knowledge of the risk. The next inquiry is what each recipient could do and whether reasonable measures were taken within that person's authority. An employee's lack of dental credentials does not authorize ignoring a warning of danger, but it also does not make that employee responsible for treatment beyond the employee's competence.
Individual liability does not arise automatically from title, proximity to events, or receipt of a copy. The inquiry must identify conduct and omissions, including any avoidable delay, obstruction, failure to refer a warning, or failure to act despite knowledge and capacity. Allegations must be supported by the relevant documents and applicable legal standards.
XVIII. 18 U.S.C. § 4042, ADMINISTRATIVE RULES, AND LIMITS OF REMEDIES
18 U.S.C. § 4042(a)(2) (3) establishes institutional duties of care and protection in federal custody. I invoke the statute as a statement of BOP responsibilities, not as a claim that it independently creates an automatic damages remedy or private cause of action against every employee. 28 C.F.R. §§ 542.10 542.19 govern the administrative program and provide standards for examining access, processing, responses, and deadlines.
For purposes of AO 250, continuing unmet needs for specialized medical care may be relevant under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(1)(C), subject to applicable requirements, evidence, and 18 U.S.C. § 3553(a). Administrative grievance processing and the compassionate-release procedure have different legal functions and requirements.
XIX. OUTSIDE AGENCIES: COMMUNICATIONS AND TRACEABILITY
In addition to internal channels, I report seeking help from outside agencies and institutions, including OIA, OIG, DOJ, the Office of Special Counsel, oversight organizations, the Civil Rights Division, IACHR/CIDH, OHCHR, the United States Senate, the White House, Brazilian consular authorities, the Federal Public Defender, and the U.S. Attorney's Office. I identify these communications to demonstrate sustained efforts to obtain protection, without assuming that every recipient has jurisdiction over my case or that mailing alone proves receipt and review.
I request collection of mailing records, receipts, reference numbers, and actual responses. My 10/04/2026 letter to Special Counsel Charles N. Baldis is one example of the outside correspondence for which I seek documentary confirmation and preservation.
XX. RISK OF RETALIATION, REFUSAL NOTATIONS, AND NEED FOR PROTECTION
I report fear of retaliation and concern that my continued requests for treatment will be mischaracterized as misconduct or refusal of care. I particularly contest any blanket refusal notation based on my asking professionals to consult existing records or disagreeing with a specific procedure. I request preservation of the original entry, identification of its author, the clinical context, any explanation given, and an opportunity to attach my written objection.
I demand that my use of administrative remedies, contacts with outside authorities, and requests for medical records not lead to improper restrictions, intimidation, or interference with access to care. Any alleged retaliation should be investigated on the basis of particular acts, dates, persons, and supporting evidence.
XXI. INDIVIDUALIZED ADMINISTRATIVE REQUESTS
I request that FCC Coleman Low leadership acknowledge receipt of this notice in writing; identify a coordinator responsible for obtaining responses from all departments; provide a chronology of each material communication, its recipient, and its disposition; and produce the clinical and administrative decisions explaining why the condition remains without an effective specialized resolution.
I request that Health Services and Dental Low provide a priority clinical assessment addressing the retained fragment, oral injuries, pain, tooth loss, damaged appliance, and reconstructed mandible; evaluate the need for an appropriate specialist; and document any interim protective measures, referrals, refusals, or scheduling decisions.
I request that Food Services consider, through appropriate clinical channels, any medically indicated dietary adjustment; that Psychology document and evaluate my distress and fear of seeking care; and that Unit Team, Counselor, Case Manager, Trust Funds, Chapel, and other recipients identify what warnings they received and what referrals they made within their respective duties.
I request that the Administrative Remedy Coordinator provide copies of or access to relevant index records, receipt dates, emergency classifications, rejections, responses, extensions, and reasons. I request complete preservation of original electronic messages, BP-A0148 forms, COP-OUTs, printed documents received, PANOREX materials, and medical records, including metadata and amendment histories where available.

XXI. INDIVIDUALIZED ADMINISTRATIVE REQUESTS

I request that FCC Coleman Low leadership acknowledge receipt of this notice in writing; identify a coordinator responsible for obtaining responses from all departments; provide a chronology of each material communication, its recipient, and its disposition; and produce the clinical and administrative decisions explaining why the condition remains without an effective specialized resolution.

I request that Health Services and Dental Low provide a priority clinical assessment addressing the retained fragment, oral injuries, pain, tooth loss, damaged appliance, and reconstructed mandible; evaluate the need for an appropriate specialist; and document any interim protective measures, referrals, refusals, or scheduling decisions.

I request that Food Services consider, through appropriate clinical channels, any medically indicated dietary adjustment; that Psychology document and evaluate my distress and fear of seeking care; and that Unit Team, Counselor, Case Manager, Trust Funds, Chapel, and other recipients identify what warnings they received and what referrals they made within their respective duties.

I request that the Administrative Remedy Coordinator provide copies of or access to relevant index records, receipt dates, emergency classifications, rejections, responses, extensions, and reasons. I request complete preservation of original electronic messages, BP-A0148 forms, COP-OUTs, printed documents received, PANOREX materials, and medical records, including metadata and amendment histories where available.

XXII. REQUESTS WITHIN THE COURT'S AUTHORITY IN THE AO 250 PROCEEDING

If filed in the criminal case, I request that the Court accept this statement as an informational supplement to AO 250, if procedurally appropriate, and consider the continuing deterioration, repeated institutional notice, and unresolved specialized-care issues to the extent relevant to the compassionate-release motion.

I request prompt consideration in light of the reported risk of worsening harm, an opportunity to supplement medical evidence as appropriate, and any other relief within the Court's lawful authority. I do not ask the criminal court in this proceeding to enter an automatic civil or criminal judgment against every named employee or to replace the proper administrative or judicial processes for investigating misconduct.

XXIII. FINAL DECLARATION, RESERVATION OF RIGHTS, AND DEMAND FOR A CONCRETE RESPONSE

I affirm that I repeatedly requested assistance, reported my symptoms to multiple employees and departments, used forms and messages, sought in-person care, and pursued administrative review. I continue to experience pain and impairment and seek an effective response. I request that the institution identify not merely the existence of communications but the actual measures undertaken to protect my health.

I do not waive any rights, do not accept the conversion of my complaints into a blanket refusal of treatment, and do not regard the mere existence of administrative responses as proof that the risk was addressed. I request specific answers, complete records, reasoned decisions, and concrete protective measures. I affirm the facts within my personal experience; other facts should be established through records and any responsibility assessed under applicable law.

My life and health require effective action. The federal administration controls access to treatment and must demonstrate how it is responding to the risks communicated. I respectfully request a serious, individualized, documented, and timely response.

DECLARATION UNDER PENALTY OF PERJURY 28 U.S.C. § 1746

I, Gilmar Pereira da Silva Junior, declare under penalty of perjury under the laws of the United States of America that the foregoing statements concerning events I personally witnessed, symptoms I experienced, communications I sent or delivered, and responses I received are true and correct to the best of my personal knowledge. References to institutional records, the responsibility of others, medical conclusions, and legal characterizations must be evaluated against the evidence by the competent authority. Executed on 11/07/2026, at FCC Coleman Low, Florida.

Signature: ______________________

Gilmar Pereira da Silva Junior | BOP Register No. 74744-511

CERTIFICATE OF SERVICE COMPLETE AFTER ACTUAL MAILING

I certify that on 11/07/2026, I served a true copy of this document upon counsel for the United States in Case No. 8:25-cr-144-KKM-SPF by the institutional legal-mail system / United States Postal Service, using the verified service address. This certificate must be completed and signed only after actual service and must accurately reflect the recipient and method used.

Signature: ______________________