SENSITIVE DIRECT SUBMISSION TO THE REGIONAL DIRECTOR
28 C.F.R. § 542.14(d)(1) ADMINISTRATIVE REMEDY REQUEST
SENSITIVE AND EMERGENCY ADMINISTRATIVE REMEDY REQUEST
REQUEST FOR DIRECT REGIONAL ACCEPTANCE, PROTECTION AGAINST INSTITUTIONAL EXPOSURE, URGENT CLINICAL ASSESSMENT, AND PRESERVATION OF EVIDENCE
To: Regional Director Southeast Region, Federal Bureau of Prisons

Petitioner: Gilmar Pereira da Silva Junior | BOP Register No. 74744-511 | FCC Coleman Low | Related judicial proceeding: United States v. Gilmar Pereira da Silva Junior, No. 8:25-cr-144-KKM-SPF, Middle District of Florida, Tampa Division.
Date signed: NOVEMBER 7, 2026

I. EXPRESS REQUEST FOR ACCEPTANCE AS A SENSITIVE ADMINISTRATIVE REMEDY

I, Gilmar Pereira da Silva Junior, submit this administrative remedy directly to the Regional Director, expressly marked SENSITIVE pursuant to 28 C.F.R. § 542.14(d)(1). I request that the Regional Administrative Remedy Coordinator recognize the sensitive nature of this grievance and accept it without requiring initial submission to the Warden at FCC Coleman Low. I do not seek an abstract exemption from ordinary procedure. The concrete basis for direct regional filing is that this grievance challenges the conduct of persons and departments within the institution including its leadership, medical and dental services, and custodians of treatment records and I fear increased danger to my health, retaliation, inaccurate records, and further intimidating encounters if the full grievance is returned to those same institutional channels without safeguards.

I request a reasoned written admissibility decision, handling of this correspondence with the discretion permitted by applicable rules, and concrete measures to avoid unnecessary disclosure to staff directly implicated whenever institutional consultation is necessary. I recognize that a SENSITIVE designation does not guarantee absolute confidentiality, prevent all internal investigation, or eliminate the administration's ability to investigate. I ask that the risk of exposure be individually assessed before referral.

II. OBJECTIVE REASONS WHY LOCAL PROCESSING IS UNSAFE

FCC Coleman Low leadership was repeatedly informed of my medical condition through formal requests, TRULINCS messages, COP-OUTs, BP-A0148 forms, Health Services requests, and communications personally delivered. I reported that since 05/04/2026 my therapeutic orthodontic appliance has remained damaged; that I lost four teeth; and that I suffer oral injuries, dental and jaw pain, a retained tooth fragment in my gum, difficulty chewing, and a history of mandibular reconstruction with a titanium plate. I communicated this information not only to Dental Low but also to the Warden and other departments. The continuing harm is why I have persisted.

This grievance is also sensitive because of a recent incident. I was summoned to Dental Low through Call-Outs, where, based on my firsthand experience, a new dentist who did not identify herself spoke in a threatening tone and said she would record that I refused to provide information, although I asked her to review the existing records. I expressly dispute any characterization of my position as a blanket refusal of medical care. I am requesting effective care and specialist evaluation, not rejecting treatment. My concern that my medical record may be inaccurately characterized, combined with my complete dependence on the institution for treatment and outside referrals, makes the protection under § 542.14(d)(1) concretely relevant.

My grievance concerns the very personnel and channels to which an incarcerated person is ordinarily directed. I have sought intervention from Counselor J. Toro; Case Manager T. Chin; Psychology, including Mr. B. Kennedy; Health Services, including Mr. J. Lozada; Captain S. Ximenes; Chapel, including Mr. J. Alba; Trust Funds; Food Services; and institutional leadership, including Mr. A. Mendoza and Mrs. C. C. Rhodes. I have stated that I delivered printed communications and documents to several recipients. The records should establish who received each message, when, and what action fell within that person's duties. I do not assign individual liability merely because someone holds an office.

III. DISTINCTION BETWEEN A SENSITIVE REMEDY, BP-11, AND COMPASSIONATE RELEASE

This SENSITIVE submission is an administrative grievance seeking direct regional access because local processing presents a risk. It is not itself a BP-11 and must not be treated as a substitute for an appeal already directed to the General Counsel. BP-11 is the ordinary Central Office appeal governed principally by 28 C.F.R. § 542.15. Section 542.14(d)(1) separately permits an initial filing at the regional level when its particular requirements are met. I request separate registration and consideration of these procedures, even if the same supporting records are relevant to both.

I sent my BP-10 on 09/25/2026 and, to my knowledge, received neither a response nor written notice of extension before preparing this request. I ask for verification of the actual Administrative Remedy Index entry, receipt date, any communicated extension, and the consequence prescribed by § 542.18. If the applicable period expired without a valid response, that regulation permits the absence of a response to be treated as a denial at that level for purposes of further appeal. I do not claim that silence constitutes approval or a victory on the merits. I ask that this circumstance be examined without imposing an

---

artificial obstacle to the BP-11 I am preparing.
Separately, on 08/28/2026, I requested Reduction in Sentence / Compassionate Release from the Warden based on my medical condition. The request was delivered on 09/02/2026, and on 10/07/2026 I received a denial bearing a 09/23/2026 heading and a 10/06/2026 signature. That process is governed by 18 U.S.C. § 3582(c)(1)(A) and 28 C.F.R. §§ 571.61 571.63, and has requirements distinct from a Sensitive Administrative Remedy. This document does not automatically reopen any judicial deadline, replace my AO 250, or merge those separate procedural regimes.
IV. CLINICAL AND DOCUMENTARY HISTORY MATERIAL TO THE PRESENT RISK
On 05/15/2026, dental record BP-A0618 stated "ORTHO TREATMENT IN PROGRESS." Requests to Dental Low followed in June and July 2026, together with communications indicating that specialized orthodontic treatment was unavailable at the institution. I received treatment/cleaning on 07/30/2026 and attended Dental Sick Call on 08/24/2026. A panoramic PANOREX examination was also performed; its images and report remain under institutional control. These contacts show that the institution possessed clinical information sufficient to investigate the problem; they do not, by themselves, show that the underlying condition was resolved.
My condition is not limited to temporary discomfort or a preference for a particular treatment. I affirm that I have lost teeth, suffer persistent pain in my previously reconstructed jaw, sustain cuts inside my mouth, and experience a remaining tooth fragment. Qualified professionals must determine appropriate treatment through an actual examination. Nevertheless, the administration should explain whether the fragment was evaluated, the appliance assessed, the risk to remaining teeth reviewed, a pain and nutrition plan established, and a specialist referral considered. My continued lack of access to such a plan despite repeated requests supports independent and priority review.
V. THE DECISIVE REGULATORY PROVISION: § 542.14(d)(1)
Section 542.14(d)(1) allows an inmate to submit a request directly to the Regional Director when the inmate reasonably believes that the issue is sensitive and that his safety or well-being would be endangered if the grievance became known at the institution. It requires the clear marking "Sensitive" and a written explanation for not submitting locally. If the Regional Administrative Remedy Coordinator agrees, the request is accepted. Otherwise, the rejection must be communicated in writing without returning the request, and the regulation provides an opportunity to resubmit locally with a reasonable extension of time granted by the Warden.
My explanation goes to the heart of that exception. The grievance challenges departments controlling my care and records; describes a recent intimidating encounter and threatened notation of refusal; shows my continuing dependence on those departments; and concerns a current health risk. I request that the Coordinator assess these considerations together rather than dismiss the filing as mere disagreement with a medical decision. I seek protection of the grievance process while seeking care for injuries and deterioration that I affirm are continuing.
VI. DEADLINES, ADMINISTRATIVE SILENCE, AND PRESERVATION OF APPEAL RIGHTS
Section 542.18 generally provides, after an accepted request is entered in the Administrative Remedy Index, 20 calendar days for the Warden, 30 for the Regional Director, and 40 for the General Counsel to respond, subject to specified extensions and written notice. It also requires a Warden response by the third calendar day where a request has been determined to be an emergency threatening immediate health or welfare. SENSITIVE and EMERGENCY are distinct classifications; this document's title does not automatically convert the regional response period to three days. I nevertheless request immediate medical triage and express assessment of urgency.
For my pending BP-10, I request the filing history, any Remedy number, proof of registration, and any extension notice. If the applicable response period expired without a response, I request acknowledgment that silence may be treated as a denial for purposes of BP-11, without making a late response a prerequisite to proceeding. For this Sensitive Remedy, I request separate registration, notice of acceptance or rejection, and identification of the regional-level response deadline.
VII. DUTY OF CARE AND POSSIBLE DELIBERATE INDIFFERENCE
The Eighth Amendment and Estelle v. Gamble, 429 U.S. 97 (1976), and Farmer v. Brennan, 511 U.S. 825 (1994), provide the standards for evaluating deliberate indifference to serious medical needs. An unfavorable clinical outcome alone is insufficient; the seriousness of the need, actual knowledge of a substantial risk, and each official's response must be examined. I ask the Regional Office to assess the sequence of notifications, examinations, responses, and omissions against these elements, including whether prolonged failure to arrange necessary care permitted avoidable deterioration.
Section 4042(a)(2) (3) of Title 18 imposes general duties of care and protection on the BOP. I invoke it as a standard for supervision and safety, not as an automatic entitlement to damages or individual criminal liability. The law does not permit a finding, without evidence, that every named employee acted with the same intent or had equal authority to resolve the problem. I therefore request an individualized inquiry into receipt, actual knowledge, ability to intervene, and actions taken.

---

VIII. EXPEDITED MEDICAL PROCESSING 28 C.F.R. § 571.62(c)
Section 571.62(c) expressly provides that when the basis for a sentence-reduction request is the inmate's medical condition, staff shall expedite the request at all levels. That rule must be considered in reviewing the processing of my medical Compassionate Release request. Section 571.62(a)(1) requires prompt Warden review and addresses forwarding to the Office of General Counsel when the Warden considers the request worthy of approval. Section 571.63(a) requires written notice and reasons when the Warden denies a request.
The duty to expedite does not require automatic approval or prescribe a single numerical deadline for every stage. A denial nevertheless does not eliminate the need to determine whether relevant medical records were considered, whether the response addressed the circumstances actually presented, and whether medical urgency received the required priority. I request preservation of the internal review file, including medical materials submitted to the Warden and the reasons supporting the decision.
IX. RELEVANCE OF U.S.S.G. § 1B1.13(b)(1)(C) AND 18 U.S.C. § 3582(c)(1)(A)
U.S.S.G. § 1B1.13(b)(1)(C) addresses circumstances in which a defendant suffers from a medical condition requiring specialized or long-term care that is not being provided and, without that care, faces risk of serious deterioration in health or death. I request review of the medical evidence to determine whether the damaged therapeutic appliance, tooth loss, jaw pain, retained fragment, and lack of specialist access satisfy those criteria. I do not claim automatic relief under the guideline; judicial review also depends on other statutory requirements, including the factors in 18 U.S.C. § 3553(a).
The regional sensitive process may generate evidence relevant to AO 250, particularly confirmation of unavailable specialties, outside consultation requests, current clinical findings, and reasons for denials. It does not replace a Court decision on sentence reduction. I ask the Regional Office to preserve records clarifying actual treatment availability and to avoid equating access to routine general dentistry with access to necessary specialized care.
X. REQUESTS FOR INFORMATION MUST NOT BE RECAST AS REFUSAL OF TREATMENT
I contest any record treating my request to consult my medical file, concerns about staff conduct, or request for assessment by another clinician as a general refusal of care. I affirm that I continue to request appropriate treatment. If a refusal form exists, I request a complete copy, the identity of its author, date, the specific information allegedly refused, signature, and an opportunity to attach my written objection. Any specific refusal, if one occurred, must be accurately described and not extended to procedures or consultations I did not decline.
My fear of returning to Dental Low stems, in my experience, from encounters I perceived as intimidating and the lack of a lasting solution. I ask that this fear be addressed through clinical communication and safety measures, not punishment or exclusion from care. I request respectful assessment, accurate documentation of my statements, and, when clinically indicated and administratively possible, referral to an independent or outside professional.
XI. URGENT RELIEF REQUESTED FROM THE REGIONAL OFFICE
1. Accept and register this request as SENSITIVE under 28 C.F.R. § 542.14(d)(1), and issue a specific written admissibility decision.
2. Avoid unnecessary disclosure of the full grievance to staff directly challenged, consistent with legitimate investigative and security needs.
3. Assign an independent regional review of the medical history, administrative requests, and institutional actions, identifying responsible personnel and dates.
4. Arrange urgent clinical triage of pain, oral injuries, the retained tooth fragment, chewing difficulties, and risks involving the orthodontic appliance and reconstructed jaw.
5. Require a reasoned assessment of the need for an orthodontist, oral and maxillofacial surgeon, or other specialist, and document any referral, postponement, or denial.
6. Preserve PANOREX images, Dental Low notes, Call-Out records, alleged refusal forms, medical records, outside consultation requests, and clinical communications.
7. Verify the filing and deadlines for my BP-10 submitted on 09/25/2026, and identify its registration number, extensions, and actual status without prejudicing preparation of BP-11.
8. Identify the receipt and handling of requests to the Warden and Acting Warden, including Emergency Administrative Remedy submissions.
9. Examine compliance with 28 C.F.R. § 571.62(c) in processing my medical Compassionate Release request and preserve relevant internal records.
10. Ensure protection against retaliation, improper alteration of records, or adverse treatment arising from this grievance, BP-11, or AO 250.
11. Provide an individualized response identifying facts, dates, decisions, and concrete action rather than referring generically to departments already notified.

---

12. Explain the procedure for obtaining necessary administrative and clinical records without improper obstacles to my appeal rights.

XII. REQUEST FOR PROTECTION AGAINST RETALIATION AND INACCURATE RECORDS

I request formal instruction that no adverse action be taken because I sought medical assistance, filed administrative remedies, or communicated with authorities. Any subsequent disciplinary, clinical, or administrative event related to these matters should be documented in a verifiable manner with an opportunity to contest it. This request does not presume that retaliation has already been judicially established; it responds to the concrete risk I described, including the threatened notation of an alleged refusal and my continuing dependence on the professionals named in this grievance.

XIII. SUPPORTING DOCUMENTATION AND PRESERVATION

I request review of copies actually enclosed and preservation of originals of: (a) requests to the Warden and Acting Warden, including the formal request dated 08/16/2026; (b) TRULINCS messages, COP-OUTs, and BP-A0148 forms; (c) BP-8, BP-9, BP-10, BP-11 and corresponding index entries; (d) BP-A0618 records dated 05/15/2026, PANOREX, and care on 07/30/2026 and 08/24/2026; (e) responses indicating orthodontic treatment is unavailable at the institution; (f) the Compassionate Release request dated 08/28/2026 and denial received on 10/07/2026; and (g) recent Call-Out records and any refusal notations. No exhibit should be represented as enclosed unless physically included in the mailing.

XIV. IF THE REGIONAL COORDINATOR DOES NOT FIND THE MATTER SENSITIVE

If the Regional Administrative Remedy Coordinator does not accept the SENSITIVE classification, I request a written decision and instructions for resubmission. Under § 542.14(d)(1), the Warden shall allow a reasonable extension of time for local resubmission. I ask that the regional decision explain how it evaluated the risks described, including the threatened refusal notation and disclosure of the grievance to involved professionals. Rejection for lack of sensitivity should not be confused with a decision on the medical merits or denial of the BP-11 still being prepared.

XV. POTENTIAL USE AS AN ATTACHMENT TO BP-11 WITHOUT CONFUSING PROCEDURES

If a copy of this document accompanies my BP-11, I ask that it be considered only as supplemental evidence of continuing harm, the need for protection, and response failures relevant to the Central Office appeal. The Central Office should decide BP-11 under the separate requirements of § 542.15 and deadlines of § 542.18. Filing a Sensitive Remedy with the Regional Director must not be characterized as replacing a properly filed BP-11 with the General Counsel or as a means of bypassing formalities governing a distinct appeal.

XVI. PERSONAL DECLARATION AND FINAL REQUEST

I affirm that I continue to suffer oral and mandibular symptoms, that I have repeatedly sought assistance for months, and that, to my knowledge, I have not received an effective specialized solution. I request regional intervention because I reasonably fear that routing the entire grievance through the very departments I challenge may increase my risk, interfere with care, or produce inaccurate records. I demand a written sensitivity determination, urgent clinical evaluation, protection against retaliation, and a substantive response to the issues raised.

I am not asking the Regional Office itself to grant a sentence reduction; that relief is reserved for the applicable legal process. I request that the Regional Office exercise its administrative supervisory, investigative, and protective responsibilities and preserve evidence relevant to my AO 250 and other available proceedings. A formal response alone is no substitute for effective medical care, and continuing risk calls for concrete, documented action.

Respectfully submitted, [signature]

_______________________________

Gilmar Pereira da Silva Junior | BOP Register No. 74744-511

Data: 11/07/2026

DECLARATION UNDER PENALTY OF PERJURY 28 U.S.C. § 1746

I declare under penalty of perjury under the laws of the United States of America that the factual statements in this request concerning my symptoms, requests, communications, documents received, and events I personally witnessed are true and correct to the best of my personal knowledge. The contents of institutional records not yet provided, undisclosed internal decisions, and legal conclusions are presented as matters for verification by the competent authority. Executed at FCC Coleman Low, Florida, on 11/07/2026.

Signature: [signature]