NOV 23 2026 PM2:31
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
UNITED STATES OF AMERICA, Plaintiff,

v.

GILMAR PEREIRA DA SILVA JUNIOR, Defendant.

Case No. 8:25-cr-144-KKM-SPF
DEFENDANT'S PRO SE SUPPLEMENTAL MEDICAL MEMORANDUM AND MOTION FOR EXPEDITED CONSIDERATION OF PENDING COMPASSIONATE-RELEASE REQUEST
18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b)(1)(C)
I. PURPOSE AND RELATION TO THE PENDING AO 250
I, Gilmar Pereira da Silva Junior, Federal Bureau of Prisons Register No. 74744-511, submit this supplemental memorandum in the existing criminal case in support of my AO 250 pro se motion for compassionate release dated October 16, 2026. I request that the Clerk docket this filing in the same criminal case and associate it with my pending AO 250. I do not commence a separate action, withdraw the original motion, or seek to replace its previously submitted grounds and attachments.
This supplement focuses on the specific medical-care provision in U.S.S.G. § 1B1.13(b)(1)(C): a medical condition requiring long-term or specialized care that is not being provided and without which there is a risk of serious deterioration in health or death. My existing records establish an ongoing therapeutic orthodontic course, a reconstructed mandible, and a continuing dental and functional problem. I request prompt review of the existing evidence and an opportunity for an independent specialist to evaluate and document the current risks and treatment needs. My request is not for cosmetic orthodontics.
II. THE DOCUMENTED MEDICAL BASELINE AND THE ONSET OF INSTITUTIONAL CUSTODY
Before entering federal custody, I underwent mandibular reconstruction involving titanium hardware and was receiving therapeutic orthodontic treatment. On May 4, 2026, I voluntarily reported to FCC Coleman Low. Approximately two hours after arrival, I was placed in the Special Housing Unit without an explanation communicated to me, where I remained until May 12, 2026. During this period my orthodontic appliance was damaged. The resulting deterioration did not begin as an elective request for cosmetic alignment; it affected a preexisting course of treatment in a patient with reconstructed mandibular anatomy. On May 15, 2026, Dental Low completed BOP form BP-A0618 identifying "ORTHO TREATMENT IN PROGRESS." That institutional notation is significant because it acknowledges an active treatment course shortly after my arrival, rather than a new preference for orthodontics arising in prison. Panoramic dental imaging was also performed. The underlying imaging and radiology interpretation are in institutional custody and should be obtained and reviewed by a clinician qualified to evaluate mandibular hardware, tooth loss, and oral pathology. The mere presence of titanium hardware on imaging does not by itself establish a current hardware complication; it makes appropriate specialized evaluation especially important.
III. WRITTEN ACKNOWLEDGMENT OF THE LIMITS OF LOCAL CARE
On June 7, 2026, at 12:32 p.m., Dental Low sent me a TRULINCS communication stating: "WE DON'T DO ORTHODONTIC TREATMENT HERE, BUT IF YOU ARE EXPERIENCING PAIN DISCONFORT OR ANY DENTAL CONCERN SICK CALL IS AVAILABLE: OPEN DENTAL SICK CALL IS MONDAY TUESDAY, AND THUERSDAY AT 0730. IT IS FIRST COME, FIRST SEEN." This quotation is reproduced as provided, including its spelling. It is a direct written acknowledgment that orthodontic treatment is not performed at this facility.
An open sick-call window is not a substitute for a specialist's assessment of a damaged therapeutic appliance, a reconstructed mandible, progressive tooth loss, and functional impairment. The institution's statement does not prove that the entire Bureau of Prisons lacks external referral authority. It does, however, place a concrete obligation at issue: whether the institution has actually arranged clinically necessary care beyond its local scope. To date, I have not received a completed outside specialist consultation, a coordinated written treatment plan, or a specialist's written assessment of the consequences of further delay.
IV. PROGRESSION OF SYMPTOMS AND INADEQUATE RESOLUTION
My continuing problems include persistent mandibular and oral pain, difficulty chewing and eating normally, damage to the therapeutic orthodontic appliance, loss of multiple teeth, and a tooth fragment remaining in the gum. I have also experienced discomfort and halitosis. These are concrete symptoms affecting daily oral function. I have sought care repeatedly rather than abandoning treatment. On July 21, 2026, I submitted a Dental Sick Call request addressing braces adjustment, tooth loss, and impaired chewing. On July 23, 2026, I was informed that orthodontic treatment was outside the facility's scope. On July 30, 2026, an institutional record concerning a cleaning visit included a notation of refusal of treatment; I dispute that characterization. I did not refuse appropriate treatment for my actual condition.

---

Further requests, including a September 10, 2026 TRULINCS inquiry concerning documentation of the damaged appliance and lost teeth, did not produce the specialist findings I requested. A September 15 response again directed me to routine sick-call hours. I have been examined within Dental Low, including by a dentist identified to me as Dr. Gina, and panoramic imaging has been performed, yet I still lack a documented multidisciplinary determination of the present condition, the status of my reconstruction and appliance, the cause and implications of tooth loss, and the indicated course of treatment.
I also brought my detailed medical concerns to Health Services Low and requested coordination. Personnel declined to accept documentation I attempted to present and told me that Health Services did not become involved in Dental Low matters. I experienced conflicting and incomplete responses from these departments and unanswered written requests, including cop-outs. An administrative division between dental and general medical services cannot resolve the clinical question of who will coordinate care when the condition may involve oral surgery, reconstruction, infection risk, nutrition, and continuing orthodontic treatment.

V. NECESSITY OF AN INDEPENDENT, SPECIALIZED CLINICAL ASSESSMENT

The essential missing evidence is a current, qualified medical opinion connecting my documented anatomy and symptoms to a specific diagnosis, required treatment, the consequences of non-treatment, and the urgency of intervention. I request an external oral and maxillofacial surgeon to evaluate the reconstructed mandible, titanium hardware, retained tooth fragment, pain, and need for further imaging or intervention. A qualified orthodontist must evaluate the damaged therapeutic appliance, whether it can safely remain in place or requires supervised modification or removal, and how interruption affects the treatment course. Depending on examination findings, a periodontist and prosthodontist should assess periodontal health, missing teeth, function, and restorative planning, in coordination with a dentist experienced in complex cases.
I am not asking this Court to presume that infection, hardware failure, or an imminent fatal outcome has already been medically diagnosed. Those are material clinical questions that a qualified specialist must investigate promptly. The need to establish or exclude those risks does not diminish the current evidence of pain, tooth loss, impaired mastication, and prolonged absence of a comprehensive plan. It explains why a routine sick-call referral, without documented specialist follow-through, is insufficient to answer the issues presented in my compassionate-release motion.
The external specialist should document diagnoses; review the original reconstruction history and panoramic imaging; assess any infection, inflammation, bone or hardware issue; describe present chewing and nutritional limitations; identify procedures and referrals required; state the clinically reasonable timeline; address whether delay creates a risk of serious deterioration; and specify whether care can be delivered consistently in custody through actual outside appointments. A written report should be supplied for inclusion in the medical record and, subject to applicable filing procedures and privacy safeguards, for the Court's consideration.

VI. ADMINISTRATIVE NOTICE, REQUESTS FOR RELIEF, AND THE PENDING MOTION

My concerns have been brought to institutional officials through clinical requests, TRULINCS communications, cop-outs, and administrative remedies. I initiated a BP-8 process in August 2026, pursued BP-9 review, and mailed a BP-10 regional appeal on September 25, 2026. I requested BP-11 central-office review in November after receiving no timely regional response or extension notice. These remedy proceedings are evidence of repeated notice and continuing efforts to obtain treatment; they should not be confused with the separate statutory 30-day or exhaustion gateway applicable to a defendant-filed motion under 18 U.S.C. § 3582(c)(1)(A).
I also submitted a reduction-in-sentence request to institutional leadership. On August 28, 2026, I delivered a formal RIS package, with supporting documentation, and subsequently pursued the matter through my Unit Team. The Warden's denial letter bears a September 23, 2026 header and an October 6, 2026 signature, and was delivered to me on October 7, 2026. I dated my AO 250 motion October 16, 2026. The Warden and relevant institutional leadership have therefore had notice of the need for specialized care and of my request for compassionate-release review. I ask the Court to consider the underlying submissions and correspondence, rather than treating the denial itself as a substitute for a specialist's clinical findings.

VII. APPLICATION OF THE GOVERNING LAW

Section 3582(c)(1)(A) of Title 18 authorizes the sentencing court, upon a properly presented motion and after considering the applicable factors under 18 U.S.C. § 3553(a), to reduce a term of imprisonment where extraordinary and compelling reasons exist and the governing policy statement is satisfied. The statute permits a defendant to move after full exhaustion of the administrative appeal process or the lapse of 30 days from the Warden's receipt of the request, whichever occurs earlier. My August 28, 2026 formal RIS submission and the October 7 denial are relevant to that gateway, subject to the Court's determination of receipt and the existing docket.
U.S.S.G. § 1B1.13(b)(1)(C) specifically recognizes a medical condition requiring long-term or specialized medical care that is not being provided, where lack of such care creates a risk of serious deterioration in health or death. The provision does not require me to show terminal illness. It does require an individualized evidentiary connection between the condition, the required care, the absence of that care, and the serious risk from non-treatment. The May 15 institutional acknowledgment, June 7 written limitation of local orthodontic services, continuing functional symptoms, and uncompleted specialist assessment bear directly on those elements. A current expert report would address the central unresolved clinical element: the nature and magnitude of the risk of deterioration without timely treatment.
I further request consideration of U.S.S.G. § 1B1.13(a), including the applicable danger assessment under 18 U.S.C. § 3142(g), and the sentencing factors under § 3553(a). My previously filed release plan provides for residence with my partner, family

---

support, continued medical treatment, supervision, and compliance with court-imposed conditions. I previously complied with electronic monitoring and have participated in ESL, ACE, and other rehabilitative activities. These considerations do not replace the medical standard; they inform whether a reduction with supervised release would be appropriate if the Court finds extraordinary and compelling reasons.

The duty of the Bureau of Prisons to provide for the safekeeping and care of federal prisoners under 18 U.S.C. § 4042(a), together with the constitutional prohibition against deliberate indifference to serious medical needs, provides important context for the treatment history. See Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825 (1994). I do not ask the Court to adjudicate an independent damages claim or convert this criminal motion into a separate civil medical-care lawsuit. The care history is presented as evidence relevant to the specific compassionate-release criteria and the need for expedited review.

---

VIII. URGENCY, TRUST, AND NEED FOR AN ACCOUNTABLE CLINICAL PLAN

The prolonged absence of an external assessment has left me without a reliable explanation of what is happening to my teeth, appliance, reconstructed jaw, and oral function. My symptoms continue while the record remains incomplete on the very questions that determine medical urgency. I have lost confidence in the ability of the present local process to evaluate my condition impartially and have felt threatened in interactions with the new Dental Low team. I request a neutral outside assessment and protection from retaliation for seeking medical treatment, maintaining records, or petitioning this Court.

An accurate specialist opinion should not be withheld merely because the facility does not perform the treatment itself. The practical issue is whether a medically necessary external evaluation and treatment pathway is being arranged, completed, and documented. Each further delay risks obscuring progression and postpones a decision about whether my needs can be met in custody. I request expedited consideration because my ability to eat and function is already affected and because the consequences of additional delay have not been professionally assessed.

IX. REQUESTED RELIEF

I respectfully request that the Court: (1) docket this memorandum as a supplement to my pending October 16, 2026 AO 250 motion in Case No. 8:25-cr-144-KKM-SPF; (2) consider the BP-A0618 record dated May 15, 2026, the June 7, 2026 TRULINCS message, panoramic imaging, dental records, written requests, administrative remedies, RIS materials, and other properly submitted exhibits; (3) expedite consideration of the pending compassionate-release motion in light of ongoing functional impairment and the absence of a definitive specialist assessment; (4) if appropriate under the Court's authority and procedures, direct a prompt government response addressing whether an outside oral and maxillofacial and orthodontic evaluation has been arranged, when it will occur, and whether a written treatment plan and risk assessment exist; (5) permit supplementation with the resulting specialist report and pertinent records, with appropriate protection of sensitive medical information; and (6) grant the reduction of sentence requested in my AO 250, including time served followed by appropriate supervised release, if the Court finds the statutory and guideline requirements satisfied, or otherwise grant such relief as is legally available and appropriate.

I further ask that my medical concerns be evaluated without retaliation and that no assumption be drawn against me from a disputed notation of treatment refusal. This filing requests an evidence-based decision, not a presumption that every unconfirmed complication is present. The established symptoms and institutional acknowledgments warrant immediate attention, and the absent specialist opinion is a material gap that should be addressed rather than allowed to perpetuate delay.

X. VERIFICATION AND SIGNATURE

I declare under penalty of perjury under the laws of the United States of America that the factual statements concerning my own experiences, requests, symptoms, and communications in this memorandum are true and correct to the best of my personal knowledge. References to institutional records describe the documents identified above; medical diagnoses and future risks requiring expert evaluation are expressly identified as such.

Executed on: 13/11/2026

Gilmar Pereira da Silva Junior, Pro Se
BOP Register No. 74744-511
FCC Coleman Low
P.O. Box 1031
Coleman, FL 33521